FILED

OCT 1 0 2006

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

1  Leslie Schwaebe Akins (Bar No. 138678)
   Dennis R. Villavicencio (Bar No. 166300)
2  AKINS & VILLAVICENCIO, LLP
   P.O. Box 131253
3  Carlsbad, California 92013
   (760) 931-2920 telephone
4  (760) 603-0547 facsimile

5  Attorney for Plaintiff and Creditor
   Alfonso Fiero
6

7              UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9

10  ALFONSO FIERO, an individual, as          CASE NO. LA 01-26497-BB
    Assignee of the Judgment issued April
11  6, 1999 in favor of Judgment Creditor     COMPLAINT TO REOPEN
    FIERO BROTHERS, INC., Assignor,           BANKRUPTCY OF DEBTOR CERY
12  pursuant to the Assignment dated          PERLE TO DETERMINE
    March 1, 2006,                            DISCHARGEABILITY OF COMPLAINT
13                                            BASED ON FRAUD, DEFALCATION BY
                        Plaintiff,            FIDUCIARY, AND WHERE CREDITOR
14      v.                                    WAS OMITTED FROM SCHEDULES

15                                            (11 U.S.C. §§ 523(a)(2)(A),(a)(3), and
    CERY B. PERLE, an individual,             (a)(4))
16
                        Defendant,            Hon. Judge Sheri Bluebond
17                                            Date Reopened: 9/13/06

18

19        Plaintiff and creditor ALFONSO FIERO ("Plaintiff"), as assignee of the Judgment

20  entered in the Los Angeles Superior Court on April 1, 1999 in case no. BS 055659 in favor

21  of FIERO BROTHERS, INC. ("Fiero Brothers"), against Defendant CERY PERLE

22  ("Defendant"), et al, pursuant to the Assignment between Plaintiff and Fiero Brothers dated

23  March 1, 2006, by Leslie Schwaebe Akins, Esq., of AKINS & VILLAVICENCIO, LLP, his

24  undersigned counsel, brings forth his complaint against Defendant and hereby alleges as

25  follows:

26  ///

27  ///

28  ///

_____
            COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY
                                1

**I.**

**FIRST CAUSE OF ACTION**

**(DETERMINATION OF DISCHARGEABILITY BASED ON FRAUD,**

**FRAUDULENT PRETENSE AND FRAUDULENT MISREPRESENTATION**

**11 U.S.C. § 523(a)(2)(A))**

1.      This is a core proceeding over which this court has jurisdiction under title 28 U.S.C. § 157(b).

2.      Defendant is the debtor in this chapter 7 case.  Plaintiff is a creditor of Defendant.

3.      This is an adversary proceeding to determine the dischargeability of a debt.

4.      Defendant is indebted to Plaintiff in the sum of $ 350,000 on a debt resulting from a judgment entered in the Los Angeles Superior Court Case No. BS 055659 on April 6, 1999 (the "Judgment"). The Judgment was issued by the Los Angeles Superior Court after the Court granted Fiero Brothers' Petition to Confirm an Arbitration Award issued in an arbitration proceeding before the National Association of Securities Dealers Regulation, Inc. ("NASD"), case number 98-00587 (the "NASD Arbitration"). The NASD Arbitration was brought by Claimant Fiero Brothers, Inc. ("Fiero Brothers") against Respondents Waldron & Co., Inc.("Waldron"), Cery Perle (Defendant in this bankruptcy), Ed Harris, Ed Wedbush, Wedbush Morgan Securities ("Wedbush") and Key West Securities, Inc. ("Key West") (collectively, "Respondents")

5.      On February 17, 1998, Fiero Brothers filed with the NASD its Statement of Claim and Demand for Arbitration against Respondents.  Fiero Brothers' Statement of Claim charged that Respondents, while acting as fiduciaries, fraudulently obtained Fiero Brothers' property by purchasing shares of Shopping.Com common stock for Fiero Brothers at prices that were greater then the prevailing market rates for said stock, and by charging Fiero Brothers excessive mark ups in the purchase of said stock, which resulted in Fiero Brothers being defrauded out of hundreds of thousands of dollars.  Additionally, Fiero Brothers asserted that Respondents through their control of virtually all of the

1  Shopping.Com stock, and through their use of fraudulent misrepresentations, omissions
2  of facts, and deceptive practices, fraudulently manipulated the market price and trading
3  volume for Shopping.Com stock, engaged in secret transactions, and took other illegal
4  actions aimed to mitigate their own personal losses, to the detriment of Shopping.Com
5  shareholders, including Fiero Brothers.

6        6.      Fiero Brothers detailed the fraud in its Second Amended Statement of Claim
7  (attached hereto as **Exhibit "A"**) dated March 18, 1998 as follows:

8        •      Defendant Perle was the president and principal of Waldron, a registered
9               broker-dealer. Defendant Harris was an undisclosed principal of Waldron.
10              Wedbush acted as the clearing agent for Waldron. Mr. Wedbush was a
11              principal of Wedbush. (¶¶ 2-6)

12       •      In 1998, Fiero Brothers, a registered broker-dealer and a market-maker of
13              certain stock traded on the NASDAQ system, had a short position in
14              Shopping.Com stock (ticker IBUY). (¶¶ 1, 7-8)

15       •      Waldron was an underwriter of IBUY shares and the principal market maker
16              of IBUY shares. IBUY was a bulletin board security. (¶ 9)

17       •      Waldron supported the price of IBUY shares in the marketplace through
18              secret practices, undisclosed to Fiero Brothers, that included artificial market
19              making activity, parking IBUY shares in its customers' accounts, guarantees
20              against loss and fraudulent purchasing." (Second Amended Complaint, ¶¶
21              10, 11.)

22       •      In January and February 1998, Waldron, its customers, and its customers'
23              accounts that it controls at other broker dealers control and have a beneficial
24              interest in nearly the entire public float. (¶¶ 12, 13)

25       •      Respondent Harris, an undisclosed principal of Waldron, purchased 500,000
26              shares of IBUY for his own account and for accounts that he controlled.
27              Waldron also maintained in inventory approximately 400,000 shares of IBUY.
28              Waldron's customers owned and controlled hundreds of thousands of shares

1    of IBUY, acquired when IBUY went public. (¶ 14)

2   •   As it became more expensive for Waldron to continue supporting the market

3       price for IBUY shares in its inventory and customer accounts, Defendant, as

4       president and control person of Waldron 1)) directed Waldron's trading room

5       to not accept sell orders for IBUY shares; and 2) pressured registered

6       representatives to purchase IBUY shares for their customers without regard

7       to suitability. (¶¶ 15, 16)

8   •   As the price for IBUY shares continued to fall, Waldron ran into problems

9       meeting its margin and net capital requirements, and experienced a troubling

10      number of Reg-T extension and sell outs.  Upon discovering

11      these facts Wedbush, which also faced financial exposure if Waldron failed,

12      began engaging in illegal acts to protect itself. ( ¶ 17, ¶ 18).

13  •   Wedbush conspired with Defendant Perle to manipulate the price of IBUY

14      shares and conduct a buy-in at an artificially inflated price.  Wedbush and

15      Waldron acted together to effectuate the scheme. ( ¶ 19).

16  •   Waldron convinced other market makers of IBUY to raise their bids in

17      exchange for Waldron agreeing to buy said stock from the market makers at

18      a higher price, thereby creating an appearance of upward momentum ¶ 20);

19  •   On four occasions Waldron, through Wedbush, executed buy-ins against

20      Fiero Brothers for IBUY shares at prices that were approximately twenty

21      percent (20%) more than the already artificially inflated market price (¶ 21).

22  •   The buy-ins against Fiero Brothers of IBUY stock at the inflated prices were

23      not reported by Perle to Waldron or Wedbush. (¶ 22)

24  •   Before each buy-in, Waldon would act to move the artificial price of IBUY

25      even higher than its then outrageous price.  Once the price was sufficiently

26      high to make up Waldron's net capital, Wedbush and Waldron cashed in on

27      the scheme by buying in above the artificial price they created. "Importantly-

28      because it already controlled all of the IBUY shares - Waldron did nothing

---

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

4

1    more than sell shares to itself at prices significantly higher than what it

2    originally paid.   Thus, the buy-ins were not completed in arms-length

3    transactions; they were fictitious trades in which Waldron purported to sell to

4    itself." (¶ 24.)  Within minutes of the buy-ins, the price for IBUY shares fell

5    dramatically. (¶ 26)

6    •    Wedbush withheld the manipulative activities from Fiero Brothers. (¶ 25)

7         Further, Wedbush participated in the fraud by such actions that included

8         polling market makers for "guaranteed delivery" of IBUY shares knowing full

9         well that Waldron had possession of the majority of IBUY stock. (¶ 23)

10   •    When the price of IBUY shares fell, Wedbush directed Waldron to liquidate

11        half of its proprietary position before the opening of the market, and

12        prevented Waldron from making a market in IBUY shares, causing the price

13        for IBUY shares to fall by approximately thirty percent (30%). (¶¶ 26-29)

14   •    When Waldron began making a market in IBUY stock again, the price

15        artificially increased by as much as one hundred percent (100%). (¶ 30)

16   •    After two stock research reports published in March 1998 issued "sell"

17        recommendations on IBUY stock, the share price began to fall.  One report

18        stated that the price of IBUY was "overvalued", and had an "exuberant

19        valuation" at $29.+ per share, and was estimated that $5.00 per share "would

20        be more appropriate."    The other research report initiated a sell

21        recommendation stating that Waldron completely dominates and controls

22        almost every share and can basically place the price anywhere it wants." (¶

23        31.)

24   •    To prop up the price, Waldron purchased 600,000 shares of IBUY between

25        $27 and $30.  This resulted in Waldron violating its net capital requirements,

26        causing Wedbush to terminate its clearing agent agreement with Waldron.

27        Without a clearing agent, Waldron could not support the price for IBUY

28        stock, causing a further price decline. (¶ 32)

---

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

1      •    In an effort to mitigate the capital losses caused by Waldron's fraudulent

2           manipulation of IBUY, in an unreported transaction (i.e., not reported to the

3           tape) Wedbush bought-in Fiero Brother's short IBUY position at a price five

4           points above the then falling market price for IBUY shares. (¶33)

5      •    Since February 12, 1998, there were eight fraudulent buy-ins of IBUY shares

6           by Waldron and Wedbush, completed at prices above the then prevailing

7           market price for IBUY shares.  Waldron used the above-market buy-in

8           scheme to finance its upward manipulation of the price of IBUY shares;

9           Wedbush continued said fraudulent scheme to mitigate its losses and stay

10          in business. (¶ 34)

11     •    The foregoing acts violate Rule 11810(c)1C of the NASD Uniform Practice

12          Code which states: "[Where a buy-in is executed] members must be

13          prepared to defend the price at which the "buy-in" is executed relative to the

14          current market at the time of the "buy-in." As a result of the fraudulent buy-

15          ins, Fiero Brothers were damaged in excess of $510,000 plus interest. (¶¶

16          35- 41)

17     •    Respondents' foregoing acts violated 17 CFR 240.10b-5 "when in connection

18          with the Buy-In of IBUY they acted together in a common scheme to

19          manipulate the price of IBUY shares and to defraud Fiero Brothers."

20          Respondents' acts were intended to defraud Fiero Brothers, were completed

21          as planned, and resulted in damages to Fiero Brothers in excess of

22          $510,000. (¶¶ 43-47.)

23     •    Respondents Wedbush and Waldron were fiduciaries of Fiero Brothers;

24          Respondents Perle and Harris, as the presidents and control persons of

25          Waldron and Wedbush, were also fiduciaries of Fiero Brothers.

26          Respondents had a fiduciary duty to Fiero Brothers to execute buy-ins and

27          purchase IBUY shares at the best available price.  Since Waldron and

28          Wedbush dominated and controlled IBUY shares, they had a fiduciary duty

1    to Fiero Brothers to not charge more than a 5% mark-up on IBUY shares

2    they sold out of their proprietary accounts.  The prices that Respondents

3    charged Fiero Brothers were marked-up significantly from Waldron's

4    contemporaneous cost for IBUY shares and were excess.  As a

5    result of these excessive mark-ups, Respondents breached their fiduciary

6    duties to Fiero Brothers, causing damages that exceeded $510,000. (¶¶ 51-

7    56)

8    7.    On September 17, 1998, the NASD issued an arbitration award (attached

9    hereto as **Exhibit "B"**) in favor of Fiero Brothers as follows:

10    CASE SUMMARY

11    Claimant alleged that Respondent Waldron & Co., Inc. engaged in artificial market making

12    activity, parking arrangements, guarantees against loss, and fraudulent purchasing in

13    connection with Shopping.com (IBUY") stock.

14

15    Claimant alleged that Respondent Wedbush Morgan Securities, Inc. and Edward Wedbush

16    conspired to manipulate the price of IBUY and conduct a buy-in at an artificially inflated

17    price.

18

19    Respondent Waldron & Co., Inc. Counter-claimed against Fiero Bros., Inc. alleging corrupt

20    market practices and perversion of the arbitration process.  Respondent Waldron & Co.,

21    Inc.  Cross-claimed against Third Party Respondent Key West

22    Securities, Inc. alleging that Key West Securities acted in collusion with Fiero Brothers, Inc.

23

24    Respondents denied each and every allegation of wrongdoing set forth in the Claimant's

25    Statement of Claim.

26    / / /

27    / / /

28    / / /

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY

RELIEF REQUESTED

(Omitted)

OTHER ISSUES CONSIDERED AND DECIDED

(Omitted)

AWARD

1.     Respondents Waldron & Co., Inc., Cerly Perle and Ed Harris are jointly and severally liable to and shall pay Claimant the sum of $350,000.00 in compensatory damages.

2.     Respondent Wedbush Morgan Securities is liable to and shall pay Claimant the sum of $50,000.00 in compensatory damages.

3.     All Respondents' Counter-claims are dismissed in their entirety;

4.     Each party shall bear its own costs, including attorneys fee.

5.     All claims for punitive damages are denied.

8.     On February 11, 1999 Fiero Brothers filed its Petition to Confirm Arbitration Award As To Respondents Waldron & Co., Inc., Cery Perle, Wedbush Morgan Securities, Inc., Ed Wedbush, and Key West Securities, Inc. And To Vacate Award As To Respondent Ed Harris ("Petition to Confirm Arbitration Award"). On March 17, 1999, Fiero Brothers' Petition to Confirm Arbitration Award was granted.

9.     On April 6, 1999, Judgment was issued in the Los Angeles Superior Court in Case No. BS 055659 in the amount of $350,215.00 against Waldron & Co., Inc. and Cery Perle. A true and correct copy of the April 6, 1999 Judgment is attached hereto as **Exhibit "C"**. On January 6, 2000 the Los Angeles Superior Court issued an Abstract of Judgment in the amount of $350,215 in favor of Fiero Brothers against Waldron and Defendant. A true and correct copy of the January 6, 2000 Abstract of Judgment is attached hereto as **Exhibit "D"**. On March 1, 2006, Fiero Brothers assigned the Judgment to Plaintiff. A true and correct copy of the Assignment of Asset is attached hereto as **Exhibit "E"**.

10.    The $350,215.00 debt owed by Defendant to Plaintiff is nondischargeable

under section 523(a)(2) of the United States Bankruptcy Code.

## II.

### SECOND CAUSE OF ACTION

### (DETERMINATION OF DISCHARGEABILITY BASED ON

### DEFALCATION OF FIDUCIARY)

11.    Plaintiff reincorporates by reference herein paragraphs 1 through 10, inclusive, above, as though fully set forth at this point.

12.    Defendant is indebted to Plaintiff in the sum of $ 350,215 on a debt for fraud or defalcation or both while acting in a fiduciary capacity as a result of the following events:

A.    Defendant was the president, principal and a control person of Waldron & Co., Inc., a registered broker-dealer and a member of the National Association of Securities Dealers, Inc. ("NASD"). Fiero Brothers is a registered broker-dealer and a member of the NASD.

B.    In 1998, both Waldron and Fiero Brothers made a market in Shopping.Com (IBUY) stock.

C.    In February 1998, Fiero Brothers held a short position in IBUY stock; whereas Waldron, in its inventory account and in accounts that it controlled, and in the accounts of its customers, controlled virtually all of the public float for IBUY.

D.    In February and March, 1998, Waldron, as the underwriter of the IBUY public offering, the primary market maker of IBUY stock, and holder and controller of virtually all of the public float of IBUY stock, acting as broker, "bought-in" thousand of shares of IBUY stock for Fiero Brothers (to reduce or close open short positions held by Fiero Brothers) at prices that were far in excess of the then prevailing market price for IBUY, and engaged in fictitious trades of IBUY stock whereby it diverted the profit from Fiero Brothers to itself.

E.    Additionally, in order to control and maintain the support price or artificially increase the demand and the price for IBUY stock, Waldron and its principal

---

Defendant Perle, engaged in a scheme, aided by Wedbush, to fraudulently manipulate the market for IBUY shares, create an artificial increasing price momentum for said stock, and create the appearance of an active market for IBUY.

F.   Waldron and Defendant engaged in these fraudulent and illegal acts and schemes without Fiero Brothers' knowledge.

G.   As a result of Waldron and Defendant's wrongful acts, Fiero Brothers suffered damages in excess of $510,000.

H.   Waldron and Defendant's fraudulent and wrongful acts violated NASD Rule 11810(c)(1)(C) of the NASD Uniform Practice Code. Further, such wrongful conduct constitutes securities fraud under 17 CFR 240.10b-5 which states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The facts setting forth the fraud and defalcation by Defendant are set forth at paragraph 6 hereinabove.

13.   The debt of $350,215 owed from Defendant to Plaintiff is nondischargeable under section 523(a)(4) of the United States Bankruptcy Code.

/ / /

/ / /

/ / /

**III.**

## (DETERMINATION OF DISCHARGEABILITY WHERE
## COMPLAINT BASED ON OMISSION OF CREDITOR
### FROM SCHEDULES- 11 U.S.C. § 523 (a)(3))

14.    Plaintiff reincorporates by reference herein paragraphs 1 through 13, inclusive, above, as though fully set forth at this point.

15.    Defendant commenced this chapter 7 case on May 25, 2001. At the time, Defendant owed to Plaintiff's assignor Fiero Brothers, Inc. a debt of $350,215.

16.    Defendant failed to include Fiero Brothers, Inc., Plaintiff's assignor, as a creditor in the schedules to his Chapter 7 bankruptcy case. The last day on which Fiero Brothers, Inc. could file a proof of claim has expired, and prior to such day neither Fiero Brothers, Inc. nor Plaintiff had any notice or actual knowledge of Defendant's Bankruptcy case.

17.    On March 11, 2002, the Bankruptcy Court issued its Order granting Defendant a discharge under section 727 of title 11, United States Bankruptcy Code.

18.    The $350,215 debt Defendant owes to Plaintiff is nondischargeable under section 523(a)(3) of the United States Bankruptcy Code.

WHEREFORE, Plaintiff prays that the court grant relief as follows:

1.    That the Court determines that:

A.    The arbitration award in NASD Case No. 98-00587 held that Defendant was jointly and severally liable to Fiero Brothers in the amount of $350,000 for compensatory damages (hereafter, the "Arbitration Award");

B.    By way of its Petition to Confirm Arbitration Award filed in the Los Angeles Superior Court, Case No. BS 055659, Fiero Brothers, Inc. properly confirmed the Arbitration Award into the Judgment;

C.    The Judgment was entered by the Los Angeles Superior Court on April 6, 1999 in the amount of $350,215; Abstract of Judgment was issued January 6, 2000 in the amount of $350,215;

D.      As a result of the foregoing, Defendant owes Fiero Brothers, Inc. the debt evidenced by the Judgment (hereafter, the "Judgment Debt") ;

E.      Fiero Brothers, Inc. assigned the Judgment Debt to Plaintiff on March 1, 2006 (hereafter, the "Assignment"); and

F.      As a result of the Assignment, Plaintiff is entitled to enforce the Judgment Debt against Defendant.

2.      The Judgment Debt of $ 350,215 is non-dischargeable.

3.      Plaintiff is entitled to have judgment against Defendant for $ 350,215 plus interest at the legal rate of 10 percent (10%) per annum from April 6, 1999, which is $95.924 per day.

4.      Plaintiff is entitled to recover his reasonable costs and attorney's fees, and

5.      Plaintiff is entitled to such other and further relief as this Court deems just and proper.

Dated:      September //_, 2006          Respectfully submitted,

                                        AKINS & VILLAVICENCIO, LLP

                                        By: _____
                                            Leslie Schwaebe Akins, Esq.
                                            Attorney for Plaintiff
                                            ALFONSO FIERO

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY
12

**EXHIBIT A**

NASD REGULATION, INC.

**COPY**

———————————————————X

In the Matter of the Arbitration Among

FIERO BROTHERS, INC.,

                Claimant,

     vs.

WALDRON & CO., CERY PERLE, ED HARRIS,
WEDBUSH, MORGAN SECURITIES, INC., and
ED WEDBUSH,

              Respondents.

———————————————————X

Arb. No. 98-00587

**SECOND AMENDED
STATEMENT OF CLAIM**

The following constitutes the Second Amended Statement of Claim and Request for

Immediate Injunction of Fiero Brothers, Inc. against Waldron & Co., Cery Perle, Ed Harris,

Wedbush, Morgan Securities, Inc. and Ed Wedbush.

## PARTIES

1.    Fiero Brothers, Inc. ("Fiero Brothers") is a registered broker dealer and a member

       of the National Association of Securities Dealers, Inc. ("NASD") with an office at

       120 Broadway, New York, New York.

2.    Waldron & Co. ("Waldron") was a registered broker dealer and a member of the

       NASD with an office at 19000 MacArthur Boulevard, Irvine, California.

3.    Cery Perle was the president and a principal of Waldron.

4.    Ed Harris was an undisclosed principal of Waldron.

5

5.    Wedbush, Morgan Securities, Inc. ("Wedbush") is a registered broker dealer and a
member of the NASD with an office at 1000 Wilshire Blvd., Suite 900, Los
Angeles, California. Wedbush acted as clearing agent for Waldron.

6.    Ed Wedbush is a principal of Wedbush.


## FACTS

7.    Among other activities in which it engages, Fiero Brothers acts, at all relevant
times did act, as a market maker for numerous securities trading on the NASDAQ
system. Thus, Fiero Brothers is responsible for maintaining an orderly market in
each issue for which it makes a market, and as such is obligated to purchase or sell
securities in each such issue for its own account as market conditions warrant. As
a result, a market maker such as Fiero Brothers must at least occasionally sell
shares that it does not own. This is known as taking a short position.

8.    As of February 12, 1998, Fiero Brothers had a short position in Shopping.Com
shares ("IBUY"), an issue in which Fiero Brothers makes a market.

9.    Waldron acted as an underwriter of IBUY shares, and was the primary market
maker in the security. IBUY is a bulletin board security.

10.    Commencing at or about the time of the initial public offering (and continuing
through the present) Waldron supported the price of the IBUY shares through
artificial market making activity, parking arrangements, guarantees against loss and
fraudulent purchasing.

11.  Waldron failed to disclose any of its manipulative activities to Fiero Brothers.

12.  In or about January 1998, the supply of IBUY shares exceeded the demand for the
     same. Rather than allow the price of IBUY to fall, Waldron purchased an
     inordinate amount of shares for its own account. Eventually, Waldron's net capital
     was insufficient to permit it to purchase the additional shares. Waldron then began
     parking the IBUY shares in customer accounts so that it might continue to prop up
     the price.

13.  The public float of IBUY shares is approximately 1,300,000 shares. Waldron and
     dominates and controls the market for IBUY. Moreover, by virtue of its parking
     activities, Waldron has cornered the market for IBUY. Upon information and
     belief, Waldron , its customers and accounts controlled by Waldron at other broker
     dealers have beneficial ownership of nearly the entire public float.

14.  Upon information and belief, Ed Harris -- an undisclosed principal of Waldron --
     has purchased as much as 500,000 shares of IBUY for accounts under his control.
     In addition, on February 12, 1998 Waldron maintained and inventory of more than
     400,000 shares of IBUY in its proprietary accounts. Moreover, in light of the fact
     that Waldron did the initial public offering of IBUY, Waldron's customers own
     hundreds of thousands of IBUY shares.

15.  As time passed, Waldron found it increasingly expensive and difficult to park stock
     in customer accounts and accounts Waldron controls at other firms on the street.
     To avoid being closed due to insufficient net capital, Cery Perle, president of

3

Waldron, directed its trading room not to accept sell orders from Waldron customers. Cery Perle also pressured registered representatives to purchase IBUY for their customers without regard to the suitability of the investment. Some registered representatives complied with Cery Perle's direction, but others resigned from Waldron to protect their customers.

16.    After leaving Waldron, the registered representatives sold their customers out of IBUY. This selling caused additional pressure on the price of IBUY shares. Nevertheless – determined not to allow the price of the stock to fall – Waldron continued to absorb the oversupply by purchasing the stock even though it did not have the funds to pay for it.

17.    Waldron soon began to have an unusual amount of regulation-T extensions and sell-outs. At that point, Wedbush became aware of Waldron's scheme. Since Wedbush clears for Waldron, its records reflected that Waldron had cornered the market in IBUY– that is, Waldron and its customers owned nearly the entire public float of IBUY.

18.    Wedbush realized that Waldron's position in IBUY threatened both Waldron's and Wedbush's viability. Were Waldron to close its doors, Wedbush would be responsible for Waldron's losses and market obligations. The potential loss to Wedbush exceeded $10,000,000 – a net capital hit which Wedbush could not survive. Faced with this dire circumstance, Wedbush determined to join Waldron's scheme rather than allow (or require) Waldron to close its doors. Thus, Wedbush

4

began engaging in illegal acts to protect itself.   Primary among its goals were to ensure that the NASD did not force Waldron to cease operation on the basis of insufficient net capital.

19. To this end, Edward Wedbush conspired and agreed with Carey Perle to further manipulate the price of IBUY and conduct a buy-in at an artificially inflated price. Wedbush and Waldron acted together to execute this scheme.

20. Waldron contacted "friendly" market makers in IBUY and asked them to raise their bids.  Waldron agreed to purchase any stock sold to the market makers at the higher prices, and to indemnify the market makers against loss.  By virtue of this orchestrated activity, Waldron artificially created the appearance of upward momentum in the price of IBUY shares.

21. On four separate occasions, Waldron, through Wedbush, executed buy-ins against Fiero Brothers for shares of IBUY at prices in excess of the artificially inflated market price. The following is a list of the dates of each buy-in, the number of shares bought-in against Fiero Brothers, the purported market price at the time of the buy-in and the price at which the buy-in was executed:

| DATE | No. of SHARES | "MARKET" PRICE | BUY-IN PRICE |
|---|---|---|---|
| February 12, 1998 | 35,350 | 21 5/8 - 21 3/4 | 25 1/8 |
| March 6, 1998 | 25,455 | 25 15/16 - 25 31/32 | 29 |
| March 11, 1998 | 36,428 | 29 1/4 - 29 5/16 | 36 |
| March 16, 1998 | 38,050 | 21 13/16 -21 7/8 | 26 1/2 |

5

22.    The buy-ins against Fiero Brothers on February 12, 1998 and March 16, 1998
were not reported by Waldron or Wedbush.

23.    Just prior to the buy-ins, Wedbush – knowing that Waldron had possession of all
of the IBUY shares – pretended to poll market makers for "guaranteed delivery"
of IBUY shares. In light of Waldron's position in IBUY, there was no need for
"guaranteed delivery". Wedbush's demand for "guaranteed delivery" was a
pretense which Waldron and Wedbush used to complete the fraud.

24.    Before each buy-in, Waldron would act to move the artificial price of IBUY even
higher than its then outrageous price. Once the artificial price was sufficiently high
to shore up Waldron's net capital, Wedbush and Waldron cashed in on the scheme
by buying-in above the artificial price they created. Importantly – because it
already controlled all of the IBUY shares – Waldron did nothing more than sell
shares to itself at prices significantly higher than what it originally paid. Thus, the
buy-ins were not completed in arms length transactions; they were fictitious trades
in which Waldron purported to sell to itself.

25.    Wedbush failed to disclose its manipulative activities to Fiero Brothers.

26.    Within minutes of the February 12, 1998 buy-in, the price of IBUY fell many
points and finally closed at $21.875. Realizing that the price of IBUY was falling
fast – and that Waldron needed to sell more stock at high prices to stay in
business – Wedbush directed Waldron to liquidate half of its proprietary position

6

before the market opened on February 13, 1998. Wedbush also prohibited Waldron from making a market.

27. As instructed, Waldron sold approximately 170,000 shares of IBUY at $20 per share – $1.875 per share less than the closing price and a full $5.25 below the Buy-In price – before the market opened on February 13, 1998, and did not make a market in IBUY that day.

28. Without Waldron to support the market on February 13, 1998, the price of IBUY shares fell as low as $16 per share.

29. On February 17, 1998 Waldron recommenced making a market in IBUY. By 9:30 a.m. on February 18, 1998, Waldron had artificially raise the price of IBUY to $22.0625. In the interim – i.e., after the close on February 17, 1998 and before the opening on February 18, 1998 – Waldron completed a large number of trades at a full $1.00 below its published market. Upon information and belief, these trades were additional sellouts of stock parked in customer accounts.

30. Waldron subsequently artificially increase the price of IBUY to a high of $32 ½ per share.

31. On or about March 11, 1998, Chatfield Dean & Co. published a research report with a "sell" recommendation on IBUY shares. The report stated that the IBUY shares were "overvalued", that $29+ per share was an "exuberant valuation" and estimated that a market price of $5 would be more appropriate. On or about that same day Key West Securities, Inc. initiated an immediate "sell" recommendation

7

for IBUY shares stating that "Waldron completely dominates and controls almost every share and can basically place the price anywhere it wants."

32.  These two reports caused a tremendous amount of selling pressure on IBUY shares. On March 13, 1998, Waldron purchased approximately 600,000 shares of IBUY at prices ranging from 27-30 (approximately $17,000,000 of IBUY stock). Because of Waldron's limited net capital, Wedbush ceased to clear for Waldron on March 16, 1998. Consequently, Waldron could not support the market in IBUY on March 16, 1998, and the price of IBUY fell nearly 8 points.

33.  Wedbush, hoping to mitigate the capital losses caused by Waldron's fraudulent acts and continue to operate, thereafter bought-in Fiero Brothers (March 16, 1998) at a price five points above the then-falling market price. Of course, this transaction was not reported to the tape.

34.  Since February 12, 1998, there have been at eight fraudulent buy-ins of IBUY shares by Waldron and Wedbush. Each fraudulent buy-in was completed above the prevailing market price for IBUY and, upon information and belief, involved fictitious trades by which Waldron sold securities to itself. Waldron used the above-market buy-in scheme as a method of financing its continuing upward manipulation of the price of IBUY shares. Wedbush now continues that scheme to mitigate its capital losses and stay in business.

12

## FIRST CLAIM FOR RELIEF

35.    Fiero Brothers repeats and realleges the allegations set forth in paragraphs 1

through 34 above as if fully set forth herein.

36.    The buy-ins against Fiero Brothers improperly were conducted above the

purported market price for IBUY.

37.    Respondents' actions violated Rule 11810(c)(1)(C) of the NASD Uniform Practice

Code (the "Code"). The Code sets forth, in pertinent part, the following:

> [Where a buy-in is executed] members must be prepared to defend
> the price at which the "buy-in" is executed relative to the current
> market at the time of the "Buy-in".

38.    Respondents can not justify the mark-ups they made on the IBUY shares.

39.    As a result of the buy-ins, Fiero Brothers has been damaged in excess of $510,000

plus interests.

40.    As a result of the buy-ins, Respondents have been unjustly enriched in excess of

$510,000.

41.    Respondents' conduct was inconsistent with the high standards of commercial

honor and the just and equitable principles of trade which NASD members must

observe.

9

13

## SECOND CLAIM FOR RELIEF

42.    Fiero Brothers repeats and realleges the allegations set forth in paragraphs 1

through 34 above as if fully set forth herein.

43.    The market price of IBUY properly should be approximately $5.00.

44.    Respondents violated 17 CFR 240.10b-5 when in connection with the Buy-In of

IBUY they acted together in a common scheme to manipulate the price of IBUY

shares and defraud Fiero Brothers.

45.    Respondents intended to defraud Fiero Brothers.

46.    Respondents completed the fraud as planned.

47.    As a result of the scheme to defraud, Fiero Brothers was damaged in excess of

$3,250,000 plus interest.

48.    As a result of the scheme to defraud, Respondents have been unjustly enriched in

excess of $3,250,000.

49.    Respondents' conduct was inconsistent with the high standards of commercial

honor and the just and equitable principles of trade which NASD members must

observe.

14

## THIRD CLAIM FOR RELIEF

50.    Fiero Brothers repeats and realleges the allegations set forth in paragraphs 1
through 34 above as if fully set forth herein.

51.    In executing the buy-ins Waldron and Wedbush were entrusted with purchasing
stock on behalf of Fiero Brothers. Waldron and Wedbush had a fiduciary duty to
Fiero Brothers – like any other customer on whose behalf it was acting – to
purchase IBUY shares at the best available price.

52.    Since Waldron and Wedbush dominated and controlled IBUY stock, it had a duty
to Fiero Brothers – like any other customer – not to charge a greater than 5%
mark-up on shares it sold out of its proprietary account.

53.    The prices which Waldron and Wedbush charged Fiero Brothers were mark-up
significantly from Waldron's contemporaneous cost for IBUY. Indeed, these
mark-ups were excessive.

54.    Waldron and Wedbush breached their fiduciary duties to Fiero Brothers.

55.    As a result of the excessive mark-ups, Fiero Brothers has been damaged in excess
of $510,000 plus interests.

56.    As a result of the excessive mark-ups, Respondents have been unjustly enriched in
excess of $510,000.

57.    Respondents' conduct was inconsistent with the high standards of commercial
honor and the just and equitable principles of trade which NASD members must
observe.

/5

W H E R E F O R E, Fiero Brothers requests the following:

(1)    entry of an award of $510,000 in damages against Respondents on the First
       Claim for Relief, plus interest, costs and attorneys' fees;

(2)    entry of an award of $3,250,000 in damages against Respondents on the
       Second Claim for Relief, plus interest, costs and attorneys' fees;

(3)    entry of an award of $510,000 in damages against Respondents on the
       Third Claim for Relief, plus interest, costs and attorneys' fees;

(4)    that this matter be referred to market regulation for disciplinary
       proceedings against Respondents; and

(5)    such other, further, and different relief as the arbitration panel may award
       in connection with this arbitration proceeding.


Dated: Westchester, New York
       March 18, 1998

                                        Respectfully submitted,


                                        MPR Law Practice, P.C.
                                        43 Powder Horn Road
                                        Cortlandt Manor, NY 10566
                                        (914) 739-6000

                                        Attorneys for Fiero Brothers, Inc.

12

16

**EXHIBIT B**

AWARD

# NASD REGULATION, INC., OFFICE OF DISPUTE RESOLUTION

In the matter of the Arbitration Between

<u>Name of Claimant</u>

Fiero Brothers, Inc.

v.-

<u>Name of Respondents</u>

Waldron & Co., Inc., Cery Perle, Ed Harris
Wedbush Morgan Securities, Inc.,
Ed Wedbush, and Key West Securities, Inc.

Arbitration No.
98-00587

---

## REPRESENTATION

For Claimant:

Martin P. Russo, Esq.
MPR Law Practice, P.C.
New York, New York

For Respondents Waldron & Co., Inc.,
and Cery Perle:

H. Thomas Fehn, Esq.
Fields, Fehn & Sherwin
Los Angeles, California

For Respondents Wedbush Morgan
Securities, Inc., and Ed Wedbush:

Marie E. Eaton
Wedbush Morgan Securities, Inc.
Los Angeles, California

For Respondent Ed Harris:

Ed Harris (Did Not Appear)
In Pro Per
Los Angeles, California

F 002208

17

## CASE INFORMATION

| | |
|---|---|
| Statement Of Claim filed: | February 17, 1998 |
| Claimant's Submission Agreement Signed: | February 17, 1998 |
| Claimant's Answer to Counterclaim of Waldron & Co., Inc. and Cery Perle filed: | May 7, 1998 |
| Claimant's Answer to Counterclaim of Wedbush Morgan Securities, Inc. and Ed Wedbush filed: | May 7, 1998 |
| Statement of Answer filed by Respondents Wedbush, Morgan Securities, Inc. and Ed Wedbush: | March 31, 1998 |
| Respondents Wedbush, Morgan Securities, Inc.'s, and Ed Wedbush's Submission Agreement signed: | March 31, 1998 |
| Statement of Answer filed by Waldron & Co., Inc., Ed Harris, and Cery Perle; Counter Claim against Claimant Fiero Bros., and Cross Claim against Third Party Respondent Key West Securities, Inc. filed by Respondents Waldron & Co., Inc. and Cery Perle | April 16, 1998 |
| Statement of Answer filed by Respondent Key West Securities, Inc. | July 28, 1998 |

## HEARING INFORMATION

Pre Hearing Conference Dates / Sessions:

March 6, 1998 (1 session)
April 16, 1998 (1 session)
May 11, 1998 (1 session)
May 26, 1998 (1 session)
July 16, 1998 (1 session)
July 20, 1998 (1 session)
July 21, 1998 (1 session)
July 30, 1998 (1 session)
August 6, 1998 (1 session)
August 12, 1998 (1 session)
August 20, 1998 (1 session)

98-00587

F 002209

18

Hearing Dates / Sessions:

September 1, 1998 (2 sessions)
September 2 1998 (2 sessions)
September 3 1998 (2 sessions)
September 4 1998 (2 sessions)

Hearing Location:

Los Angeles, California

## CASE SUMMARY

Claimant alleged that Respondent Waldron & Co., Inc. engaged in artificial market making activity, parking arrangements, guarantees against loss, and fraudulent purchasing in connection with Shopping.Com ("IBUY") stock.

Claimant alleged that Respondent Wedbush Morgan Securities, Inc., and Edward W. Wedbush conspired to manipulate the price of IBUY and conduct a buy-in at an artificially inflated price.

Respondent Waldron & Co., Inc. Counter-claimed against Fiero Bros., Inc. alleging corrupt market practices and perversion of the arbitration process. Respondent Waldron & Co., Inc. Cross-claimed against Third Party Respondent Key West Securities, Inc., alleging that Key West Securities, Inc. acted in collusion with Fiero Brothers, Inc.

Respondents denied each and every allegation of wrongdoing set forth in the Claimant's Statement of Claim.

## RELIEF REQUESTED

Claimant, in its Second Amended Statement of claim, sought $510,000.00 in compensatory damages plus interest as a result of the buy-ins: $3,250,000.00 plus interest, as a result of Respondents defrauding Claimant; and $510,000.00 plus interest as a result of excessive markups, as well as costs, and attorney's fees for bringing the suit.

Counter-Claimant Wedbush Morgan Securities, in its Joint Response to Statement of Claim sought $750,000.00 compensatory and punitive damages.

Counter-Claimant Waldron & Co., in its Complaint for Defamation and Tortious Interference with Business Relations, sought unspecified general and special damages, plus interest, against all Respondents, jointly and severally.

Respondents requested that the Arbitration Panel dismiss the Claimant's claim in its entirety.

98-00587

F 002210

19

## OTHER ISSUES CONSIDERED AND DECIDED

On July 16, 1998, Case No. 98-01150, Fiero Bros. v. Wedbush Morgan Securities, Inc. consolidated into Case No. 98-00587.

On August 28, 1998, the Arbitration Panel granted Key West Securities' Motion to Dismiss.

On September 3, 1998, during the hearing, the Arbitration Panel granted Respondent Edward W. Wedbush's Motion to Dismiss.

The parties have agreed that the Award in this matter may be executed either in counterpart copies or that a handwritten, signed Award may be entered. In either case, the parties have agreed to receive conformed copies of the Award while the original remains on file with the NASD Regulation, Inc., Office of Dispute Resolution.

## AWARD

After considering the pleadings, the testimony, and the evidence presented at the hearing, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1) Respondents Waldron & Co., Inc., Cery Perle and Ed Harris are jointly and severally liable to and shall pay Claimant the sum of $350,000.00 in compensatory damages.

2) Respondent Wedbush Morgan Securities is liable to and shall pay Claimant the sum of $50,000.00 in compensatory damages.

3) All Respondents' Counter-claims are dismissed in their entirety.

4) Each party shall bear its own costs, including attorneys fees.

5) All claims for punitive damages are denied.

98-00587

F 002211

20

## FORUM FEES

Pursuant to Rule 10332(c) of the Code of Arbitration Procedure, the following forum fees are assessed jointly and severally against Waldron & Co., Inc., Cery Perle, and Ed Harris:

| | |
|---|---|
| Five Full-Panel Pre-Hearing Conference Sessions @ $1,000.00 / Session | = $5,000.00 |
| Six Discovery Pre-Hearing Conference Sessions @ $300.00 / Session | = $1,800.00 |
| Eight Hearing Sessions @ $1,000.00 / Session | = $8,000.00 |
| Total Fees Jointly and Severally Assessed against Respondents Waldron & Co., Inc., Cery Perle, and Ed Harris | = $14,800.00 |

Fees are payable to NASD Regulation, Inc.

## OTHER FEES

Pursuant to Rule 10333 of the Code, Claimant Fiero Brothers, Inc. has paid to NASD Regulation, Inc. the $1,500.00 member surcharge previously invoiced.

Pursuant to Rule 10333 of the Code, Respondent Wedbush Morgan Securities, Inc. has paid to NASD Regulation, Inc. the $1,500.00 member surcharge previously invoiced.

Pursuant to Rule 10333 of the Code, Respondent Waldron & Co., Inc. to NASD Regulation, Inc. the $1,500.00 member surcharge previously invoiced.

Pursuant to Rule 10333 of the Code, Third Party Respondent Key West Securities, Inc. shall pay to NASD Regulation, Inc. the $1,500.00 member surcharge previously invoiced.

Pursuant to Rule 10333 of the Code, Claimant Fiero Brothers, Inc. has paid to NASD Regulation, Inc. the $600.00 pre-hearing member process fee previously invoiced.

Pursuant to Rule 10333 of the Code, Respondent Wedbush Morgan Securities, Inc. has paid to NASD Regulation, Inc. the $600.00 pre-hearing member process fee previously invoiced.

Pursuant to Rule 10333 of the Code, Respondent Waldron & Co., Inc. has paid to NASD Regulation, Inc. the $600.00 pre-hearing member process fee previously invoiced.

Pursuant to Rule 10333 of the Code, Third Party Respondent Key West Securities, Inc. shall pay to NASD Regulation, Inc. the $600.00 pre-hearing member process fee previously invoiced.

Pursuant to Rule 10333 of the Code, Claimant Fiero Brothers, Inc. shall pay to NASD Regulation, Inc. the $50.00 balance remaining on the hearing member process fee previously invoiced.

Pursuant to Rule 10333 of the Code, Respondent Wedbush Morgan Securities, Inc. shall pay to NASD Regulation, Inc. the $2,500.00 hearing member process fee previously invoiced.

*98-00587*

F 002212

21

Pursuant to Rule 10333 of the Code, Respondent Waldron & Co., Inc. shall pay to NASD Regulation, Inc. the $2,500.00 hearing member process fee previously invoiced.

Pursuant to Rule 10333 of the Code, Third Party Respondent Key West Securities, Inc. shall pay to NASD Regulation, Inc. the $2,500.00 hearing member process fee previously invoiced.

*98-00587*

F 002213

## ARBITRATORS

| Name | Public / Industry |
| --- | --- |
| Robert L. Schouweiler, Esq. | Public Arbitrator |
| Walter W. Klosterman | Industry Arbitrator |
| Robert J. Ruben, Esq. | Public Arbitrator |

Concurring Arbitrators' Signatures

_____
Robert L. Schouweiler, Esq.

_____
Walter W. Klosterman

_____
Robert J. Ruben, Esq.

Date of Service:_____

98-00587

F 002214

23

## ARBITRATORS

Name ...........................................................................................................................Public / Industry
Robert L. Schouweiler, Esq.                                                                        Public Arbitrator
Walter W. Klosterman                                                                                Industry Arbitrator
Robert J. Ruben, Esq.                                                                               Public Arbitrator


Concurring Arbitrators' Signatures


_Robert L. Schouweiler_

Robert L. Schouweiler, Esq.


Walter W. Klosterman


Robert J. Ruben, Esq.


Date of Service:_____

98-00587

F 002215

24

## ARBITRATORS

Name .............................................................................................. Public / Industry

Robert L. Schouweiler, Esq. — Public Arbitrator
Walter W. Klosterman — Industry Arbitrator
Robert J. Ruben, Esq. — Public Arbitrator

Concurring Arbitrators' Signatures

_____
Robert L. Schouweiler, Esq.

_____
Walter W. Klosterman

_____
Robert J. Ruben, Esq.

Date of Service: _____

*Page 7 of 7*

98-00587

F 002216

25

## ARBITRATORS

| Name | Public / Industry |
|------|-------------------|
| Robert L. Schouweiler, Esq | Public Arbitrator |
| Walter W. Klosterman | Industry Arbitrator |
| Robert J. Ruben, Esq. | Public Arbitrator |

Concurring Arbitrators' Signatures

_____

Robert L. Schouweiler, Esq.

_____

Walter W. Klosterman

_____

Robert J. Ruben, Esq.

Date of Service:_____

98-00587

F 002217

26

**EXHIBIT C**

1    THE LAW OFFICES OF
2    MARK STEVEN KESSLER
     Mark Steven Kessler, Bar No. 57489
     11770 Bernardo Plaza Court, Suite 315
3    San Diego, California 92128
     (619) 675-9001
4
     Attorneys for Petitioner FIERO
5    BROTHERS, INC.



6
7
8
9          SUPERIOR COURT OF THE STATE OF CALIFORNIA
10         COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11    FIERO BROTHERS, INC.,         ) CASE NO. BS 055659
                               )
12              Petitioner    )
                               ) JUDGMENT
13          v.            )
                               )
14    WALDRON & CO., INC; CERY PERLE, ED )
     HARRIS;    WEDBUSH    MORGAN )
15    SECURITIES, INC.; ED WEDBUSH; AND )
     KEY WEST SECURITIES, INC.         )
16                                )
             Respondents.      )
17    _____ )

18         The award of Robert L. Schouweiler, Esq., Walter W. Klosterman, and Robert J. Ruben,

19    Esq., arbitrators, having been confirmed by order of this Court on March 17, 1999, and no

20    statement of decision having been requested by any party,

21         IT IS ADJUDGED that Petitioner FIERO BROTHERS, INC. recover from Respondents,

22    Waldron & Co., Inc. and Cery Perle the sum of Three Hundred Fifty Thousand Dollars

23    ($350,000.00), together with interest thereon at the rate of ten percent (10%) per year from

24    September 17, 1998, and costs of this proceedings in the sum of Two Hundred Fifteen Dollars

25    ($215.00).

26            4-6

27    Dated: March _____, 1999

28                                   _____
                                  JUDGE OF THE SUPERIOR COURT
                                  LAWRENCE W. CRISPO

ORIGINAL

JAN  6 2000   abstract 2
JAN 21 2000   Writ 2A

JUDGMENT
1

**EXHIBIT D**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address):   TELEPHONE NO.:

[XX] Recording requested by and return to:   (619) 299-5343

PETER D. LEPISCOPO, ESQ. CA139583
Law Offices Of Peter D. Lepiscopo
2635 Camino del Rio South, Suite 108
San Diego, California 92108

[XX] ATTORNEY FOR   [XX] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

NAME OF COURT: SUPERIOR COURT OF CALIFORNIA
STREET ADDRESS: LOS ANGELES COUNTY
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: CENTRAL DISTRICT

PETITIONER: FIERO BROTHERS, INC.

RESPONDENT: WALDRON & CO., INC., et al.

FOR RECORDER'S USE ONLY

CASE NUMBER:

**ABSTRACT OF JUDGMENT**

BS 055659

FOR COURT USE ONLY

1. The [X] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:

   a. Judgment debtor's
      Name and last known address
      WALDRON & CO., INC.
      1900 MacArthure Boulevard
      8th Floor
      Irvine, California 92612

   b. Driver's license No. and state:                    [X] Unknown
   c. Social Security No.:                                [X] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to (name and address): WALDRON & CO., INC., c/o H. Thomas Fehn, Esq.,
                     11755 Wilshire Boulevard, 15th Floor, Los Angeles,
                     California 90025

   e. [X] Additional judgment debtors are shown on reverse.

Date: January 4, 2000
Peter D. Lepiscopo, Esq. CA139583
(TYPE OR PRINT NAME)

► (SIGNATURE OF APPLICANT OR ATTORNEY)

2. a. [X] I certify that the following is a true and correct abstract
         of the judgment entered in this action.
   b. [ ] A certified copy of the judgment is attached.

3. Judgment creditor (name):
   FIERO BROTHERS, INC.
   whose address appears on this form above the court's name.

4. Judgment debtor (full name as it appears in judgment):
   WALDRON CO., INC. and CERY PERLE

5. a. Judgment entered on
      (date): 4/6/99
   b. Renewal entered on
      (date):
   c. Renewal entered on
      (date):

6. Total amount of judgment as entered or last renewed:
   $350,215.00 XXXXXXXXXXXXXXXXXXXX

7. [ ] An [ ] execution [ ] attachment lien
       is endorsed on the judgment as follows:
   a. Amount: $
   b. In favor of (name and address):

8. A stay of enforcement has
   a. [X] not been ordered by the court.
   b. [ ] been ordered by the court effective until
         (date):

9. [ ] This judgment is an installment judgment.

This abstract issued on
(date): January 6, 2000

JOHN A. CLARKE, CLERK
Clerk, by _____, Deputy
A.J. MORGAN

Form Adopted by Rule 982
Judicial Council of California
982(a)(1) (Rev. January 1, 1991)

ABSTRACT OF JUDGMENT
(Civil)

Code of Civil Procedure, §§ 488.480,
674,700.190

| PETITIONER: FIERO BROTHERS, INC.<br><br>RESPONDENT: WALDRON & CO., INC., et al. | CASE NUMBER:<br><br>BS 055659 |
| --- | --- |

### INFORMATION ON ADDITIONAL JUDGMENT DEBTORS

**10.** Name and last known address

CERY PERLE
3535 East Coast 219 Highway
Corona Del Mar, California
92625

Driver's license No. & state:                    [X] Unknown.
Social Security No.: 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          [ ] Unknown.
Summons was personally served at or mailed to (address):
CERY PERLE, c/o H. Thomas Fehn, Esq.,
11755 Wilshire Blvd., 15t Floor
Los Angeles, California 90025

**14.** Name and last known address

Driver's license No. & state:                    [ ] Unknown
Social Security No.:                              [ ] Unknown
Summons was personally served at or mailed to (address):

**11.** Name and last known address

Driver's license No. & state:                    [ ] Unknown.
Social Security No.:                              [ ] Unknown.
Summons was personally served at or mailed to (address):

**15.** Name and last known address

Driver's license No. & state:                    [ ] Unknown
Social Security No.:                              [ ] Unknown
Summons was personally served at or mailed to (address):

**12.** Name and last known address

Driver's license No. & state:                    [ ] Unknown.
Social Security No.:                              [ ] Unknown.
Summons was personally served at or mailed to (address):

**16.** Name and last known address

Driver's license No. & state:                    [ ] Unknown.
Social Security No.:                              [ ] Unknown.
Summons was personally served at or mailed to (address):

**13.** Name and last known address

Driver's license No. & state:                    [ ] Unknown.
Social Security No.:                              [ ] Unknown.
Summons was personally served at or mailed to (address):

**17.** Name and last known address

Driver's license No. & state:                    [ ] Unknown
Social Security No.:                              [ ] Unknown
Summons was personally served at or mailed to (address):

**18.** [ ] Continued on attachment 18.

982(a)(1) [Rev. January 1, 1991]

**ABSTRACT OF JUDGMENT**
**(CIVIL)**

Page two

**EXHIBIT E**

# Assignment of Asset

This agreement is made and entered into this 1st day of March, 2006, by and between Alfonso Fiero and Fiero Brothers Inc., a New York Corporation.

Whereas, on the 1st day of March, 2006, Fiero Brothers Inc. hereby assigns, transfers and sets over to Alfonso Fiero all rights, title and interest in the judgment awarded to Fiero Brothers in the case of "Fiero Brothers Inc. V. Cery Perle". This judgment was entered in the Superior Court of California, Los Angeles County on 4/6/99. This assignment is in consideration of alleged prior obligations.

The assignment enables Alfonso Fiero to seek enforcement of this judgment. Alfonso Fiero shall be entitled to all monies of the judgment, which rights are also assigned.

Fiero Brothers Inc. further warrants that it has full right and authority to transfer said judgment.

Signed this 1st day of March, 20006.

By: _____

Fiero Brothers Inc.
John Fiero, President

By: _____

Alfonso Fiero

RECEIVED

OCT 1 0 2006

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FORM 104 (10/06)                                                    2006 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Alfonso Fiero | Cery B. Perle |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Leslie Schwaebe Akins (SBN138678) Akins & Villavicencio LLP  760-931-2920 PO Box 131253, Carlsbad CA 92013 | Avisha A. Patel Pillsbury Winthrop LLP 725 S. Figueroa Street, Suite 2800 Los Angeles CA 90017 |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor  ☒ Other ☐ Trustee | ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor  ☐ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4). fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ **350,000** |

Other Relief Sought  Complaint to Reopen Bankruptcy Proceeding to Determine Dischargeability of Claim

FORM 104 (10/06), page 2

2006 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
| --- | --- |
| NAME OF DEBTOR<br>Cery B. Perle | BANKRUPTCY CASE NO.<br>LA-01-26497-BB |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISIONAL OFFICE | NAME OF JUDGE<br>Sheri Bluebond |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| --- | --- | --- |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
| --- | --- |
| DATE<br>October 10, 2006 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Leslie S. Akins |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Leslie Schwaebe Akins (SBN 138678)<br>Akins & Villavicencio LLP<br>PO Box 131253<br>Carlsbad, CA 92013<br>phone: (760) 931-2920<br>fax: (760) 603-0547<br><br>*Attorney for Plaintiff*  Alfonso Fiero | **RECEIVED**<br><br>OCt 1 0 2006<br><br>CLERK, U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ |

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |

| In re: | CHAPTER _____ |
|---|---|
| | CASE NUMBER LA 01-26497-BB |
| Debtor. | ADVERSARY NUMBER |
| Alfonso Fiero, an individual, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor Fiero Brothers, Inc.    Plaintiff(s).<br><br>vs.<br><br>Cery B. Perle, an individual    Defendant(s). | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint.  You must also send a copy of your written response to the party shown in the upper left-hand corner of this page.  Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|

- ☒ **255 East Temple Street, Los Angeles**
- ☐ **411 West Fourth Street, Santa Ana**
- ☐ **21041 Burbank Boulevard, Woodland Hills**
- ☐ **1415 State Street, Santa Barbara**
- ☐ **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference.  Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval.  The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*Revised December 1998 (COA-SA)*

# F 7004-1