1  Leslie Schwaebe Akins (Bar No. 138678)
   Dennis R. Villavicencio (Bar No. 166300)
2  AKINS & VILLAVICENCIO, LLP
   7157 Argonauta Way
3  Carlsbad, California 92009
   (760) 931-2920 telephone
4  (760) 603-0547 facsimile

5  Attorney for Plaintiff
   Alfonso Fiero

6

FILED
DEC - 5 2006

ORIGINAL

7                       UNITED STATES DISTRICT COURT
                        CENTRAL DISTRICT OF CALIFORNIA
8                            LOS ANGELES DIVISION

9
   In re:                                    CASE NO. LA-01-26497 BB
10
   CERY B. PERLE,                            Adv. 06-01971 BB
11
                    Debtor,
12                                           PLAINTIFF ALFONSO FIERO'S
                                             OPPOSITION TO DEFENDANT/
13                                           DEBTOR'S MOTION TO DISMISS FOR
                                             FAILURE TO STATE ANY CLAIM,
14                                           IMPROPER PROCESS, AND
                                             IMPROPER SERVICES OF PROCESS
15

16 ALFONSO FIERO, an individual, as          Date:  December 19, 2006
   Assignee of the Judgment issued April     Time:  2:00 p.m.
17 6, 1999 in favor of Judgment Creditor     Dept.: 1682
   FIERO BROTHERS, INC., Assignor,           Judge: Hon. Sheri Bluebond
18 pursuant to Assignment dated March 1,
   2006,
19                  Plaintiff,

20 v.

21

22

23

24 CERY B. PERLE,

25                  Defendant.

26

27

28
                        OPPOSITION TO MOTION TO DISMISS

                                                       Case No. LA 01-26497 BB
                                       1               Adv. No. 06-10971

Plaintiff Alfonso Fiero, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor Fiero Brothers, Inc., Assignor, pursuant to Assignment dated March 1, 2006 (hereafter, "Plaintiff"), hereby files this Opposition to Defendant Cery B. Perle's Motion to Dismiss for Failure to State Any Claim, Improper Service, and Improper Service of Process ("Motion to Dismiss") and hereby responds as follows:

## I.
## INTRODUCTION

As Defendant and Debtor Cery B. Perle ("Defendant") summarized, this action arises out of an NASD arbitration, whereby Mr. Perle, and his former company Waldron & Co., Inc. were found jointly and severally liable to Plaintiff's assignor, the Fiero Brothers (hereafter, "Fiero"), for the market manipulation of stocks bought and sold by Fiero through Defendant and his firm. The charges contained in Fiero's Second Amended Statement of Claim, which is equivalent to a complaint in civil court, was securities fraud, breach of fiduciary duty, and violation of NASD Code of Conduct Rule 11810. There was no claim for negligence or other non-intentional conduct.

After hearing, the NASD Panel entered an award of $350,000 for Fiero. This award was confirmed in the Los Angeles Superior Court, and a judgement was entered on April 6, 1999. An Abstract of Judgment was later recorded in the Los Angeles Superior Court on January 4, 2000.

In May 2001, Defendant filed for bankruptcy protection. However, Defendant chose not to include Fiero in the Creditor Matrix filed with the Bankruptcy Court; nor did Defendant provide Fiero with notice of hid bankruptcy in any other form. In the last eighteen months, Fiero learned that Defendant had become involved with another company, and had assets in the millions of dollars. Fiero then engaged an attorney to attempt to collect on his Judgment against Defendant. In response, Defendant's attorneys contacted Plaintiff's counsel and informed Plaintiff's counsel of Defendants' bankruptcy. Fiero then stopped its collection efforts while the matter was researched. In the interim,

Fiero assigned the Judgment to Plaintiff. Plaintiff then filed the Petition to reopen Defendant's bankruptcy so that Plaintiff's complaint to determine the Dischargability of Plaintiff's claim could be determined by this Court. Defendant then filed the instant Motion to Dismiss.

## II.

## PLAINTIFF'S FIRST CAUSE OF ACTION IS PROPER

## AND MUST NOT BE DISMISSED

Defendant urges this court to dismiss his first claim for fraud, claiming that Plaintiff has failed to plead and can not plead a viable claim for common law fraud based on market manipulation. For support, Defendant cites to *Fezzani v. Bear Sterns & Co., Inc.*, 384 F.Supp.2d 618, 643, 647-648 (S.D.N.Y. 2004) for the proposition *"market manipulation is not sufficient to satisfy the requisite elements to establish common law fraud."* (Motion to Dismiss, p.7:27-28.) However, this statement is directly contradicted by the later reviewing court's statement: "The Court concluded that case law in this district supported the plaintiffs' argument that common-law fraud could be established on a market manipulation theory based on a defendant's actions." *Fezzani v. Bear, Stearns & Co.*, 2004 U.S. Dist. LEXIS 15610 at *10 (S.D.N.Y. 2004), citing *Fezzani*, 2004 U.S. Dist. LEXIS 5825, 2004 WL 744594, at *25 (citing *Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F. Supp. 332, 336-38 (S.D.N.Y. 1982)).

In *Minpeco, S.A. v. ContiCommodity Services, Inc.*, referred to above, the court stated:

> Relying in part on its interpretation of the common law of fraud, the United States Supreme Court reached the same conclusion as to the federal securities laws. In *Chiarella v. United States*, 445 U.S. 222, 63 L. Ed. 2d 348, 100 S. Ct. 1108 (1980), the Court held that a buyer of shares has no duty to disclose nonpublic information to the sellers, unless there is a confidential or fiduciary relationship between the buyer and the sellers:
>
> "No duty could arise from [Chiarella's] relationship with the sellers of the target company's securities . . . He was not their agent, he was not a fiduciary, he was not a person in whom the sellers had placed their trust and confidence."

---

OPPOSITION TO MOTION TO DISMISS

3

Case No. LA 01-26497 BB
Adv. No. 06-10971

445 U.S. at 232.

Thus, defendants are correct that the law did not impose upon them a duty to speak merely because they were on the opposite side of the market from plaintiff. However, even between parties who do not have a fiduciary or other confidential relationship, a duty to speak does arise where defendants have engaged in "some act or conduct which deceived plaintiffs." *Moser v. Spizzirro*, 31 A.D.2d 537, 295 N.Y.S.2d 188, 189 (2d Dept. 1968), aff'd 25 N.Y.2d 941, 305 N.Y.S.2d 153, 252 N.E.2d 632 (1969). Accord: *Perin v. Mardine Realty*, supra, 5 A.D.2d at 685, 168 N.Y.S.2d at 648. Defendants' response that they did not say anything false is therefore insufficient: **conduct, even without speech, may be "tantamount to a false representation."** *D'Alessandra v. Manufacturers Cas. Ins. Co.*, 106 N.Y.S.2d 561, 564, 567 (Sup.Ct. Kings Co. 1951) (Bartels, J.). See *Noved Realty Corp.*, supra, 250 A.D. at 6, 293 N.Y.S.2d at 341:

> HN3"The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment of material facts not equally within the knowledge or reach of plaintiff.'"

quoting *Stewart v. Wyoming Cattle Ranche Co.*, 128 U.S. 383, 32 L. Ed. 439, 9 S. Ct. 101 (1888). See also *Ziring v. Corrugated Container Corp.*, 183 Misc. 600, 604, 49 N.Y.S.2d 686, 691 (Sup. Ct. Kings Co. 1944) ("Actual or positive fraud includes cases of the intentional and successful employment of any cunning, deception, or artifice, used to circumvent, cheat, or deceive another.")

The question, then, is whether, measured by these criteria, the alleged actions of the defendants amounted to fraudulent conduct.

Other case law further supports the fact that conduct can support a claim for common law fraud. In *Willcox v. Harriman Sec. Corp.*, 10 F. Supp. 532, 535 (1933) the Court stated that stock market manipulation can support a claim for fraud:

> There can be no question that a cause of action against the Harriman Company for rescission of the exchange of stock is set forth. If persons boost the quoted price of a stock above its real value by fictitious sales in order to induce the public to take over their stock at the artificial levels, one who acquires stock for value from the manipulators may treat the transaction as one infected by fraud and may rescind. The fact that information as to the sales at artificial figures comes to the victims by reports or quotations published in the newspapers rather than by direct communications from the manipulators does not break the chain of causation. That is the very medium of information contemplated and intended by the operators of the plan. Further discussion of this phase of the case is unnecessary, in view of the recent opinion of Judge Woolsey in United States v. Brown (D.C.) 5 F. Supp. 81, decided November 23, 1933, with which I am in agreement.

See also, *In re Blech Sec. Litig.*, 961 F. Supp. 569, 587 (1987) (In refusing to dismiss common law fraud claims against defendants the Court stated: "As discussed above, Plaintiffs have adequately alleged these parties' direct and knowing participation in a

---

OPPOSITION TO MOTION TO DISMISS

4

Case No. LA 01-26497 BB
Adv. No. 06-10971

1 market manipulation scheme that injured the Plaintiffs. These allegations are also sufficient
2 to state a fraud claim under the New York common law.")
3 Plaintiff's fraud claim is predicated on the Fiero Second Amended Statement of Claim,
4 second count, that pleads securities fraud under Section 10(b) of the Securities Exchange
5 Act of 1934 and SEC Rule 10b-5, but includes the elements for common law fraud.

California Civil Code 1572 also includes conduct in the definition of fraud:

Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, my one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

3. The suppression of that which is true, by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

See also, Civil Code §§ 1709, 1710 (regarding deceit).

The market manipulation complained of is both conduct and the suppression of a fact by one bound to disclose it. Fiero sets forth the market manipulation scheme on pages 2 through 8 of the Second Amended Statement of Claim. On page 9, Fiero sets forth the claim for violation of Rule 11810(c)(1)(©) of the NASD Uniform Practice Code. On page 10, Fiero sets forth its claim for fraud by market manipulation, including incorporating by reference the paragraphs set forth on pages 2 through 8. Paragraphs specifically relevant to Fiero's fraud claim include Respondents' (including Defendant) conspiracy to manipulate stock prices of the identified stock (paragraphs 18, and 19), acts that constitute the market

OPPOSITION TO MOTION TO DISMISS

1 manipulation (paragraphs 10- 17, 20-24, and 27- 34), Fiero's ignorance of the market
2 manipulation (paragraph 11 and 25) committed securities fraud by engaging in the market
3 manipulation scheme and by manipulating the price of stock bought for and sold to Fiero,
4 in violation of 17 CFR 240.10b-5. At paragraph 44, Fiero pleads scienter (intent to
5 defraud); at paragraph 45, Fiero pleads that the scheme was accomplished. Further, at
6 paragraph 46, Fiero pleads that it was damaged and the claimed amount of damage.

7 Each of the elements of common law fraud are specifically pleaded in the second
8 count of Fiero's Second Amended Statement of Claim, which forms the basis of Plaintiff's
9 First Count for Fraud. However, should the court disagree, Plaintiff specifically requests
10 leave to amend his first claim for fraud, so that any perceived deficiencies in pleading may
11 be eradicated, and the count allowed to proceed to trial.

### III.
### PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY IS PROPER AND MUST NOT BE DISMISSED

15 Defendants next challenge Plaintiffs' second claim on the grounds that there was
16 no fiduciary relationship between Fiero and Defendant. To support his agreement,
17 Defendant only refers to the broker-dealer relationship between Defendant and Fiero,
18 ignoring that Fiero, in the Second Amended Statement of Claim, pleaded that Defendant's
19 company Waldron & Co., Inc. was an underwriter of the stock manipulated by the named
20 respondents (Complaint, ¶ 12(D), and that Defendant was the president, principal and
21 control person of Waldron & Co., Inc. (Complaint, ¶ 12(A).).

22 What Plaintiff did not plead is that Defendant was or is a fiduciary of Fiero, what
23 Defendant's fiduciary obligations were, under what authority is Defendant a fiduciary, and
24 how the wrongful actions constitute a breach or defalcation by a fiduciary. Therefore, as
25 presently stated, Plaintiff's second claim is defective and must be amended to withstand
26 a pleading challenge. Plaintiff therefore respectfully requests that this Court grant Plaintiff
27 leave to amend so that the pleading deficiencies can be addressed.

28

OPPOSITION TO MOTION TO DISMISS

6

Case No. LA 01-26497 BB
Adv. No. 06-10971

## IV.

## PLAINTIFF'S CLAIM FOR NON-DISCHARGABILITY UNDER BANKRUPTCY RULE 523 IS PROPER AND MUST NOT BE DISMISSED

A. <u>Neither Plaintiff nor Assignor Fiero Had Notice of Defendant's Bankruptcy.</u>

Defendant next asserts that Plaintiff's Third Claim based on Rule 523(a)(3)(B) must be dismissed as Plaintiff's assignor, Fiero, had "notice" of Defendant's bankruptcy, service of the complaint was improper and service of process was improper, and Fiero's claim was previously discharged in bankruptcy, notice notwithstanding. Plaintiff respectfully disagrees that the radical course of dismissal of this third claim is proper for the following reasons:

First, Plaintiff's assignor, Fiero, never received notice of Defendant's bankruptcy. Defendant attempts to prove notice by referring the Court to his Creditor Matrix (Ex. A to Request for Judicial Notice ("RJN")), and to the list of creditors set forth therein. On page 7 of the purported Creditor Matrix there is an entry for "Corsair Capital Partners, c/o MPR Law Practice." (Ex. B, p. 12 to RJN.) By this notation, Defendant contends that notice to no particular attorney at MPR Law Practice, some three years after Fiero went to arbitration, constitutes notice to Fiero. Defendant does not state the number of attorneys affiliated with MPR Law Practice, nor does Defendants assert that there is a connection between Corsair Capital Partners and Fiero.

Defendant's citation to Lompa v. Price (In re Price), 871 F.2d 97,98 (9th Cir. 1989) is factually distinguishable and not persuasive. In that case, plaintiff objected to the discharge of his claim, arguing that he did not receive notice of the debtor's bankruptcy. Plaintiff did not dispute that his lawyer received a notice during a time when Plaintiff was attempting to recover against the debtor. In finding that Plaintiff had received notice, the court stated:

> Counsel for the appellant in the present appeal was given actual notice of the bankruptcy proceedings in time to file a complaint, or at least to file a timely motion for an extension of time. At that time he was pursuing the same claim in state court that the appellant now seeks to have declared nondischargeable. We hold that **under these circumstances** notice to counsel constituted notice to the appellant.

> See *Maldonado v. Ramirez*, 37 B.R. 219, 221 (D.V.I. 1984) (notice to a creditor's attorney of a bankruptcy filing is usually sufficient **if the attorney received knowledge of it while representing his client in enforcing a claim against the bankrupt**) (citing 3 Collier on Bankruptcy para. 523.15(5)(c) (15th ed. 1983)), rev'd on other grounds, 757 F.2d 48, 51 (3d Cir. 1985) (agreeing with premise, but finding the evidence insufficient to indicate that counsel was enforcing the claim for the client when notice was received); *In re Fulton*, 3 B.R. 600, 603-04 (Bankr. E.D. Mich. 1980) (attorney who represents client in action affected by bankruptcy proceeding is impliedly authorized to receive notice on client's behalf regarding the action).

*Lompa v. Price*, supra, at 99.

Defendant has offered no evidence by which he can argue that Mr. Russo was representing Fiero at the time of Defendant's bankruptcy filing, nor that Mr. Russo was attempting to enforce the Judgment. In fact, Mr. Russo is not even identified on the Creditor Matrix. As such, it can hardly be said that Fiero received notice of Defendant's bankruptcy, nor that its claim was discharged.

### B. Plaintiff Will Re-Serve the Complaint to Cure Defective Service.

Plaintiff urges the court to allow Plaintiff leave to perfect proper service of the Complaint on Defendant. Plaintiff's counsel was unaware of the ten (10) day time limitation for service by mail set forth in Federal Rules of Bankruptcy Procedure 7004(e). While this is no excuse, it is a matter readily cured by re-service of the Complaint with a newly issued summons, and a technical defect, the consequence of which should be borne by Plaintiff's counsel, and not Plaintiff.

The Court previously indicated that Plaintiff had ninety days from September 12, 2006 to file and serve his Complaint. Plaintiff will therefore rectify the defective service prior to the hearing or, if preferable, wait to the outcome of the December 19, 2006 hearing provided that the Court extend the time for Plaintiff to serve the Complaint, or Amended Complaint. Either way, Plaintiff requests additional time to redress this defect in service.

/ / /

/ / /

/ / /

---

OPPOSITION TO MOTION TO DISMISS

8

Case No. LA 01-26497 BB
Adv. No. 06-10971

Case 2:06-ap-01971-BB    Doc 8    Filed 12/05/06    Entered 12/06/06 12:47:47    Desc
Main Document      Page 9 of 10

## V.

## CONCLUSION

Plaintiff contends that his fraud claim is sufficient to survive Defendant's Motion to Dismiss. However, Plaintiff agrees that his Second Claim for Breach of Fiduciary Duty and Third Claim under Bankruptcy Rule 523 are more susceptible to dismissal. However, the defects in these claims as currently pleaded may be cured by amendment. Further, the defective process and service of process are equally curable, and should not be deemed fatal to Plaintiff's action. Therefore, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss as to the First Claim for Fraud, and allow Plaintiff leave to amend as to all perceived defects.

DATED: December 5, 2006                   AKINS & VILLAVICENCIO, LLP

By: /s/ Leslie Schwaebe Akins
Leslie Schwaebe Akins, Esq.
Attorney for Plaintiff
Alfonso Fiero

OPPOSITION TO MOTION TO DISMISS

9

Case No. LA 01-26497 BB
Adv. No. 06-10971

**Alfonso Fiero, an individual, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor Fiero Brothers, Inc.**
**Case Number LA 01-26497-BB**

PROOF OF SERVICE

STATE OF CALIFORNIA  )
                     )
COUNTY OF SAN DIEGO  )

I am employed in the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 2333 State Street, Suite 200, Carlsbad, California 92008.

On December 5, 2006, I served **PLAINTIFF ALFONSO FIERO'S OPPOSITION TO DEFENDANT/ DEBTOR'S MOTION TO DISMISS FOR FAILURE TO STATE ANY CLAIM, IMPROPER PROCESS, AND IMPROPER SERVICES OF PROCESS**, on the interested parties in said action, by delivering it as follows:

Avisha A. Patel, Esq.
Pillsburg Winthrop Shaw & Pittman, LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
Attorney for Defendants

__X__ **(By Facsimile)** I caused each document to be sent by facsimile to the above-stated numbers(s)

__X__ **(By Overnight Mail)** I placed the envelope for collection and processing for mailing following the ordinary practice of this business with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid to the above address.

____ **(By Overnight Courier)** I caused such envelope with postage fully prepaid to be sent by United Parcel Service.

____ **(By Hand Delivery)** I caused each document to be hand delivered to the following address

I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **December 5, 2006**, at Carlsbad, California.

_____
Ashley Hall

PROOF OF SERVICE