1    KENNETH N. RUSSAK #107283
     DAVID L. STANTON #208079
2    AVISHA A. PATEL #217649
     avisha.patel@pillsburylaw.com
3    PILLSBURY WINTHROP SHAW PITTMAN LLP
     725 South Figueroa Street, Suite 2800
4    Los Angeles, CA  90017-5406
     Telephone: (213) 488-7100
5    Facsimile: (213) 629-1033

ORIGINAL

```
┌─────────────────────────────────┐
│            FILED                │
│                                 │
│          JAN 3 1 2007           │
│                                 │
│   CLERK, U.S. BANKRUPTCY COURT  │
│   CENTRAL DISTRICT OF CALIFORNIA│
│   BY              Deputy Clerk  │
└─────────────────────────────────┘
```

6

7

8              UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11

| | |
|---|---|
| In re: | No. LA 01-26497 BB |
| | Adv. 06-01971 BB |
| CERY B. PERLE, | |
| Debtor. | CHAPTER 7 |
| | NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE ANY CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALFONSO FIERO, an individual, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor FIERO BROTHERS, INC., Assignor, pursuant to the Assignment dated March 1, 2006, | [REQUEST FOR JUDICIAL NOTICE AND [PROPOSED] ORDER ON MOTION FILED CONCURRENTLY] |
| Plaintiff, | Date:    February 27, 2007 |
| | Time:    2:00 pm |
| vs. | Dept:    1475 |
| | Judge:   Hon. Sheri Bluebond |
| CERY B. PERLE, | |
| Defendant. | Fed. R. Civ. P. § 12(b)(6) |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

700599803v2

Case No. LA 01-26497-BB
Adv. No. 06-10971

1                            TABLE OF CONTENTS

2   I.    INTRODUCTION. .................................................................................................. 1

3   II.   ARGUMENT. ....................................................................................................... 4

4         A.    The First Cause of Action Must Be Dismissed because Plaintiff Has
                Not Stated, Nor Can He State, A Claim Within the Scope of
5               § 523(a)(2)(A). ........................................................................................ 4

6               1.    Plaintiff Has Not Pled, and Cannot Plead, Any
                      Representation. ................................................................................ 5
7
                2.    Plaintiff Has Not Pled, and Cannot Plead, Reliance. ........................ 6
8
          B.    The Second Cause of Action Must Be Dismissed Because Plaintiff
9               Has Not Stated, Nor Can He State, a Claim Within the Scope of
                § 523(a)(4). .............................................................................................. 8
10
          C.    The Third Cause of Action Must Be Dismissed because Plaintiff Has
11              Not Identified, Nor Can He Identify, Willful or Malicious Activity
                To Meet the Elements of § 523(a)(6). ....................................................... 10
12
                1.    Plaintiff Cannot Establish Willful and Malicious Conduct. ............. 11
13
          D.    The Fourth Cause of Action Must Be Dismissed because Plaintiff
14              Cannot State a Claim under § 523(a)(19). ................................................. 12

15              1.    Defendant's Chapter 7 Bankruptcy. ............................................... 12

16  III.  CONCLUSION. ................................................................................................... 13

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## Cases

3

Beneficial California, Inc. v. Brown (In re Brown),
4    217 B.R. 857 (Bankr. S.D. Cal. 1998)........................................................... 4

5   Brown v. Felsen,
     442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ................................. 3
6
Cantress v. Cal-Micro, Inc., et al. (In re Cantrell),
7    269 B.R. 413 (9th Cir. BAP 2001) ................................................................ 9

8   Comcast of Los Angeles, Inc. v. Sandoval (In re Sandoval),
     341 B.R. 282 (Bankr. C.D.Cal. 2006) ................................................... 10, 11
9
Del Bino v. Bailey (In re Bailey),
10   197 F.3d 997 (9th Cir. 1999)........................................................................ 10

11   In re Eashai,
     87 F.3d 1082 (9th Cir. 1996).......................................................................... 6
12
In re Harmon,
13   250 F.3d 1240 (9th Cir. 2001) ....................................................................... 5

14   Loomas v. Evans (In re Evans),
     181 B.R. 508 (Bankr. S.D.Cal. 1995).......................................................... 6, 8
15
Merchants Bank of California v. Oh (In re Oh),
16   278 B.R. 844 (Bankr. C.D.Cal. 2002) ......................................................... 11

17   Morgenthow & Latham v. Bank of New York Co., Inc.,
     305 A.D. 2d 74 (N.Y.A.D. 1 Dept. 2003) .................................................. 5, 7
18
Ragsdale v. Haller,
19   780 F.2d 794 (9th Cir. 1986) ......................................................................... 9

20   Shawmut Bank, N.A. v. Kreiss Associates, et al.,
     33 F.3d 1477 (9th Cir. 1994) ......................................................................... 9
21
Smith v. Gibbons (In re Gibbons),
22   289 B.R. 588 (Bankr. S.D.N.Y. 2003) .................................................. 12, 13

23   Sullivan & Long, Inc. v. Scattered Corp.,
     47 F.3d 857 (7th Cir. 1995).......................................................................... 2
24

## Statutes and Codes

25

United States Bankruptcy Code Section  523(a)(6) ............................. 4, 10, 11, 12
26
United States Bankruptcy Code, Section 523(a)(19) ................................. 4, 12, 13
27
United States Bankruptcy Code, Section 523(a)(2)(A)............................. 4, 6, 8, 12
28

1   United States Bankruptcy Code, Section 523(a)(4) ................................................. 4, 8, 9, 12

2   United States Code, Title 11, Section 727 .......................................................................... 12

3                                  <u>Rules and Regulations</u>

4   Federal Rule of Bankruptcy Procedure 7009 .......................................................................... 5

5   Federal Rule of Civil Procedure Section 12(b)(6) ......................................................... 8, 10

6   Federal Rule of Civil Procedure Section 9(B) ......................................................................... 5

7                                    <u>Other Authorities</u>

8   National Association of Securities Dealers Rule 11810(c)(1)(C) ......................................... 2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **TO THE HONORABLE JUDGE BLUEBOND, PLAINTIFF, AND ALL**

2    **PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD**:

3      **PLEASE TAKE NOTICE** that on February 27, 2007, at 2:00 pm, in Department

4    1475 of the above entitled Court, located at 255 East Temple Street, Los Angeles,

5    California, Defendant Cery B. Perle ("Perle") will, and hereby does, move this Court,

6    pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), made applicable by Federal

7    Rule of Bankruptcy Procedure ("FRBP") 7012(b), for an order dismissing Plaintiff's First

8    Amended Complaint To Reopen Bankruptcy of Debtor Cery Perle To Determine

9    Dischargeability of Complaint Based on Fraud, Defalcation by Fiduciary, Wilful

10   Misconduct, Securities Fraud Judgment ("Complaint") for failure to state any non-

11   dischargeable claim.

12      The grounds for this motion are that Plaintiff fails to state any claim, and indeed

13   cannot state any claim based on the underlying facts and allegations, that is

14   nondischargeable under any of sections 523(a)(2)(A), 523(a)(4), 523(a)(6), or 523(a)(19) of

15   the United States Bankruptcy Code.

16      This motion is based on this Notice of Motion and Motion and the Memorandum of

17   Points and Authorities filed herewith, the Request for Judicial Notice filed concurrently

18   herewith, the pleadings and records on file herein, and on such further evidence and

19   arguments as may be presented at or before the hearing.

20   Dated:  January 31, 2007.

21                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                        KENNETH N. RUSSAK

22                  DAVID L. STANTON
                        AVISHA A. PATEL

23                  725 South Figueroa Street, Suite 2800
                        Los Angeles, CA  90017-5406

24

25                  By

26                        Kenneth N. Russak
                       Attorneys for Defendant

27                  CERY B. PERLE

28

Case No. LA 01-26497-BB
Adv. No. 06-10971

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2    I.    <u>INTRODUCTION.</u>

3            When stripped to its essential allegations, the First Amended Complaint ("FAC"[1, 2])

4    presents the question whether the injuries Fiero Brothers, Inc. ("Fiero Bros.")[3] allegedly

5    suffered when defendant Cery Perle ("Perle") and his company Waldron & Co.

6    ("Waldron"), executed "buy-ins" at inflated prices gives rise to a non-dischargeable claim

7    under section 523 of the Bankruptcy Code.  Because the FAC falls far short of a plain and

8    simple statement of the essential allegations of Plaintiff's claims, it must be parsed to test

9    its legal sufficiency, but a careful reading of the FAC reveals the core truths of the dispute

10   before this court: (1) Fiero Bros., on the one hand, and Perle and his company Waldron, on

11   the other hand, were anonymous market participants in a public stock market who had no

12   direct dealings with one another and (2) the only claim which the National Association of

13   Securities Dealers ("NASD") determined in favor of Fiero Bros. was the claim that the buy-

14   in prices charged by Waldron and Perle were excessive under the buy-in rules of the

15   NASD.

16           In substance, the FAC alleges:

17           •    That Fiero Bros had a "short"[4] position in a stock named "IBUY" at the

18                same time as Waldron had a "long" position in that stock.  [FAC ¶¶ 14, 15]

19   ─────────────────────────

20   [1] The FAC was filed after Defendant's Motion to Dismiss Plaintiff's first Complaint was
     granted with leave to amend.

21   [2] All references to "FAC" herein refer to Plaintiff's First Amended Complaint To Reopen
     Bankruptcy of Cery Perle To Determine Dischargeability of Complaint Based on Fraud,
22   Defalcation by Fiduciary, Wilful Misconduct, Securities Fraud Judgment filed in this
     Court on January 8, 2007.

23   [3] The term "Fiero Bros." and "Plaintiff" generally will be used interchangeably in this
24   motion, as it appears that the Plaintiff is a former principal of Fiero Bros.

     [4] "A short sale is a sale at a price fixed now for delivery later.  A trader sells stock short
25   when he thinks the price of the stock is going to fall, so that when the time for delivery
     arrives he can buy it at a lower price and pocket the difference.  If, for example, he sells
26   the stock short at 50 cents a share, and the price falls to 40 cents before he delivers the
     stock, he can buy the stock for 40 cents a share, deliver it to the buyer, and have made a
27   profit of 10 cents.... If the seller fails to make delivery (maybe he doesn't have the
     stock), the rules entitle the buyer to "buy in" the stock, that is, to go out and purchase it
28                                                                              (continued...)

1    • When IBUY share prices began to fall, Waldron and Perle supported the
2    price of IBUY shares by unspecified "artificial market making activity,"
3    "parking" IBUY shares in Waldron customer accounts, selling shares to
4    third parties with guarantees that those third parties would not suffer losses
5    from their purchases, unspecified "fraudulent purchasing," and directing its
6    trading room not to accept sell orders for IBUY shares. They were
7    motivated to do so by a desire to avoid a loss in value of the IBUY shares
8    they owned so as to maintain the net capital requirements imposed upon
9    them by securities regulations and laws. [FAC ¶¶ 17-19, 21.]

10    • Fiero Brothers failed to deliver the IBUY shares which it had agreed to
11    deliver on the settlement dates for its short sales.[5] Waldron apparently
12    (although it is not expressly alleged) held the long side of those contracts
13    and, upon Fiero Bros.' failure to deliver, "bought-in"[6] the missing shares at
14    artificially inflated prices and charged the prices to Fiero Bros. The buy-in
15    transactions "were fictitious trades in which Waldron purported to sell to
16    itself intended solely to drive up the price of IBUY stock." [FAC ¶ 25.]

17    • The excess of the buy-in prices over the then market prices of the IBUY
18    shares totaled $617,942. [FAC ¶ 24.]

19    • The excessive buy-in prices violated Rule 11810(c)(1)(C) of the National
20    Association of Securities Dealers ("NASD"), which states "[Where a buy-in

21    (...continued)
     on the open market and charge the price to the short seller. [Citation omitted.] If in our
22    example the price had risen by the end of five working days to 65 cents and the seller did
     not deliver, the buyer would go into the market, buy the stock at 65 cents, and charge the
23    price back to the short seller. After the completion of the transaction, the buyer would
     have stock worth 65 cents that he had obtained at a net cost of 50 cents (50 cents + 65
24    cents minus 65 cents). Notice that a short seller's potential loss is unlimited, since it is
     simply the difference between the sale price and the market price—which could be
25    anything." *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 859 (7th Cir. 1995).

26    [5] Fiero Bros. had issued "naked shorts," *i.e.* contracts to sell IBUY shares at a future date at
     a lower price, without owning or borrowing IBUY shares to deliver on the settlement
27    date.

     [6] *See* fn. 4, *supra*.
28

1    is executed] members must be prepared to defend the price at which the

2    "buy-in" is executed relative to the current market at the time of the "buy-

3    in." [FAC ¶ 33.]

4    • Fiero Bros. commenced an arbitration before the NASD in which it

5    requested "$510,000.00 in compensatory damages plus interest as a result of

6    the buy-ins; $3,250,000.00 plus interest as a result of defendants defrauding

7    Claimant; and $510,000 plus interest as a result of excessive markups, as

8    well as costs, and attorney's fees for bringing the suit." [FAC at Ex. B. at p.

9    3 of 7[7]]

10    • The arbitrators ruled partially in favor of Fiero Bros., as follows:

11    "Respondents Waldron & Co. are jointly and severally liable to and shall

12    pay Claimant the sum of $350,000 in compensatory damages." Thus, not

13    only did the NASD arbitrators award substantially less than the full amount

14    demanded for compensation for the excessive buy-in prices, they also did

15    not award the requested "$3,250,000 plus interest as a result of defendants

16    defrauding Claimant." [FAC at Ex. B. at p. 4 of 7.]

17    • The award of the NASD arbitrators was confirmed as a judgment of the Los

18    Angeles Superior Court. [FAC at Ex. D.]

19    Having had its fraud claims adjudicated and rejected by the NASD arbitrators, Fiero

20    Bros. is left with the proposition that the judgment of $350,000 on account of the excessive

21    buy-in prices is not dischargeable.[8]  The FAC asserts four different theories of non-

22    ─────────────

23    [7] The copy of the FAC served on Defendant does not contain sequentially numbered
      exhibit pages.  Accordingly, Defendant refers to the original numbering of the pages in
24    the exhibit.

25    [8] *Cf. Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, (1979), *superseded by statute on other
      grounds as stated in Rucker v. Shalala*, 894 F. Supp. 1209, 1215 (D. Ind. 1995),  In
      *Brown*, the Supreme Court held that a bankruptcy court could look beyond the state court
26    record to determine whether a consent decree judgment was based upon a fraud claim.  In
      the case at bar, the fraud claim was actually litigated and rejected.  Fiero Bros. sought
27    damages based upon two different injuries.  The first was the difference between the buy-
      in prices charged and the acquisition cost of the IBUY shares which Waldron bought-in to
28                                                                        (continued...)

1    dischargeability, pleaded in four different claims for relief, as follows: (1) the underlying

2    judgment is non-dischargeable under § 523(a)(2) because Defendant's market

3    manipulations and excessive buy-in prices were fraudulent within the meaning of that

4    subsection; (2) the underlying debt is non-dischargeable under § 523(a)(4)  because

5    Defendant owed Fiero Bros. a fiduciary duty and violated that fiduciary duty by charging

6    excessive buy-in prices; (3) the underlying debt is non-dischargeable under § 523(a)(6)

7    because the proceeds of the unlawful buy-ins constituted property of Fiero Bros. which was

8    converted by Waldron and Perle; and (4) the underlying debt is non-dischargeable because

9    it constitutes a judgment on a violation of federal securities law and therefore falls within

10   the scope of § 523(a)(19).

11        As set forth more fully below, §523(a)(19) is not applicable to this case, because it

12   was enacted as part of the Sarbanes-Oxley Act of 2002 and became effective after the

13   underlying bankruptcy case was closed.  The remaining claims are invalid because the FAC

14   does not allege any facts showing that Perle's actions were communicative, does not allege

15   any facts giving Perle a duty to disclose, does not allege any facts establishing a fiduciary

16   relationship and does not allege any facts showing conversion or malicious intent.

17   II.    ARGUMENT.

18        A.    The First Cause of Action Must Be Dismissed because Plaintiff Has Not

19              Stated, Nor Can He State, A Claim Within the Scope of § 523(a)(2)(A).

20        A determination of non-dischargeability under § 523(a)(2)(A)  is a question of

21   federal law. *Beneficial California, Inc. v. Brown (In re Brown)*, 217 B.R. 857, 860 (Bankr.

22   S.D. Cal. 1998). "In order to establish that a debt is nondischargeable under §523(a)(2)(A),

23   _____

24   (...continued)
         cover the failed short sale, a loss of approximately $600,000.  Compensation for this loss
25       resulted in the $350,000 award issued by the NASD arbitrators.  The second, was a multi-
         million dollar figure representing the overall losses on the short contracts issued by Fiero
26       Bros. resulting from the alleged market manipulations of Waldron and Perle.  Fiero Bros.
         sought $3,250,000 but was awarded nothing on account of that demand.  It is, thus, a fair
27       inference that the NASD arbitrators rejected the market manipulation claim and awarded
         damages only for the overpricing of the buy-in shares.  As such, Fiero Bros. is precluded
28       by res judicata from relitigating any claim other than the buy-in pricing claim.

1    a creditor must establish five elements by a preponderance of the evidence: (1)

2    misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge

3    of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4)

4    justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to

5    the creditor proximately caused by its reliance on the debtor's statement or conduct." *In re*

6    *Harmon*, 250 F.3d 1240, 1246 (9th Cir. 2001). Moreover, reliance cannot be based on the

7    status/reputation of an individual alone. *Morgenthow & Latham v. Bank of New York Co.,*

8    *Inc.*, 305 A.D. 2d 74, 81 (N.Y.A.D. 1 Dept. 2003). Pursuant to FRCP 9(B), made

9    applicable by FRBP 7009, fraud must be pled with particularity.

10           1.    <u>Plaintiff Has Not Pled, and Cannot Plead, Any Representation.</u>

11           The gist of Plaintiff's fraud claim is not any affirmative misrepresentation

12   communicated by words or conduct. Instead, the gist of the fraud claim is the allegedly

13   fraudulent ***concealment*** of the market manipulative activities which subsequently injured

14   Fiero Bros. [FAC ¶ 26]. In substance, Plaintiff complains that if it had known of Perle's

15   market manipulation, it would not have trusted Waldron to execute at fair buy-in prices

16   when it failed to deliver on its short-sale contracts. [FAC ¶¶ 53, 54; FAC at Ex. A at p.11.]

17   The activities that were concealed, however, were decidedly non-communicative. The

18   alleged underlying concealed actions were the parking of IBUY securities in Waldron

19   brokerage customer accounts, buying and selling IBUY shares from and to itself through

20   intermediaries so as to create an appearance of a high market price, refusing to execute sell

21   orders and encouraging Waldron brokerage customers to buy IBUY shares without regard

22   to the suitability of the investment. [FAC ¶¶ 17-16, 19-20.] None of these alleged

23   activities communicate facts which might have induced action or inaction by Fiero Bros.

24   They are purely transactional events. The pricing of the buy-in shares similarly were

25   transactional events, not communications of facts.

26           One might argue that Perle's and Waldron's alleged market manipulation and buy-

27   in pricing activities constituted express or implied statements by them of the fair market

28   value of the IBUY shares; that by offering, selling and buying shares at inflated prices, they

1    were making express and implied statements to the public markets about their views of the

2    value of the IBUY shares. It is, however, well established that a claim for non-

3    dischargeability under § 523(a)(2)(A) cannot be based on a representation of *value*, express

4    or implied. "A representation of value generally is merely a statement of opinion and, as

5    such, it 'does not support a fraud claim either under common law or under the Bankruptcy

6    Code.'" *Loomas v. Evans (In re Evans)*, 181 B.R. 508, 512 (Bankr. S.D.Cal. 1995) (in

7    determining claim was not non-dischargeable under § 523(a)(2)(A)).

8        In certain instances, the failure to disclose a fact *by one who has a duty to disclose* is

9    also non-dischargeable under Section 523(a)(2)(A). *In re Eashai*, 87 F.3d 1082, 1089 (9th

10   Cir. 1996). The FAC alleges that Fiero Bros. was injured because Perle and Waldron

11   concealed the fact that they allegedly were manipulating the market for IBUY shares and,

12   but for that concealment, Fiero Bros. would "not have entrusted" its IBUY shares or money

13   to Waldron. [FAC ¶¶ 26, 53.] Curiously, there is no positive allegation that Fiero Bros. in

14   fact entrusted any of its shares or property to Waldron. (*See* discussion *infra* at p. 7 lns. 13-

15   27.) Stated simply, there are no facts alleged in the FAC to support a conclusion that

16   Waldron or Perle had a duty of disclosure to Fiero Bros. The FAC does not allege, because

17   it is not true, that Fiero Bros. was a brokerage client of Waldron or Perle. The FAC does

18   not allege that the parties had any relationship of any nature, much less any relationship that

19   might give rise to a duty to disclose. The FAC does not allege that the parties had any

20   direct or indirect communications concerning the short contracts offered by Fiero Bros.

21   until after the short trades failed on their settlement dates. The parties to these trades were

22   anonymous participants in public securities market transactions. There was no duty to

23   disclose.

24            2.    Plaintiff Has Not Pled, and Cannot Plead, Reliance.

25       Moreover, nor has Plaintiff pled reliance on any representations (since there were no

26   representations on which Fiero Bros. could have relied). Plaintiff, instead of pleading

27   reliance on any representations, pleads that Fiero Bros. "relied upon [Defendant and others]

28   being licensed securities broker-dealers and brokers." [FAC ¶ 52.] However, reliance upon

1    the status of an individual does not amount to reliance on a representation for purposes of

2    fraud. *See Morgenthow & Latham v. Bank of New York Co., Inc.*, 305 A.D. 2d at *id.*

3        Moreover, it can hardly be asserted that Fiero Bros. relied upon the values implied

4    by the trades which Waldron effected. Fiero Bros. had a "short position" in IBUY stock;

5    i.e., Fiero Bros. expected the price of IBUY stock to fall from the time it took its position.

6    [FAC ¶15.] Far from relying on the wisdom of the market participants who were "long" on

7    IBUY shares, Fiero Bros. was betting that the price in IBUY shares would fall, so as to reap

8    the benefit of its short sales to the detriment of those who were long in the stock. Thus, to

9    the extent Defendant's conduct can be construed as a representation of value, the FAC

10    negates any suggestion that Plaintiff reasonably relied upon those assertions. Fiero Bros.

11    was betting against Waldron, Perle and the public markets. They disbelieved the high

12    values indicated by the Waldron trades, not the reverse.

13        Finally, the element of proximate cause is not met. Plaintiff makes the curious

14    negative conditional allegation that "Had FIERO BROTHERS known or been informed of

15    [the alleged manipulations], then FIERO BROTHERS would not have entrusted its money

16    and IBUY shares to PERLE and his firm Waldron & Co." [FAC ¶ 53.] Significantly,

17    however, nowhere in the FAC does Plaintiff positively allege that Fiero Bros. actually

18    entrusted money or IBUY shares to Waldron because, as a factual matter, such an allegation

19    would be false. Fiero Bros. was not a customer of Waldron and never entrusted any money

20    or shares to Waldron. The Second Amended Statement of Claim attached to the FAC as

21    Exhibit A to and incorporated by reference into the FAC, sheds some light onto that curious

22    allegation. Paragraph 51 of that Second Amended Claim alleges, "In executing the buy-ins

23    Waldron and Wedbush were entrusted with purchasing stock on behalf of Fiero Bros."

24    [FAC Ex. A at ¶ 51.] In other words, Plaintiff alleges that it trusted—*i.e.* believed,

25    expected or hoped—that Waldron would not charge excessive prices on the shares it

26    bought-in to cover Fiero's failed, naked short sales. But neither it nor any other allegation

27    in the FAC or its exhibits states when or how such a belief caused it to act or fail to act to

28    its detriment.

1    Significantly, nowhere does the FAC allege that Fiero Bros. knew that Waldron was

2    the market participant that was accepting its short sale offers.  Nor does it allege that

3    Waldron or Perle knew that Fiero Bros. issued the short sale contracts Waldron was

4    purchasing.  Indeed, the FAC makes clear that there were other market makers in IBUY

5    shares [*e.g.*, FAC ¶ 23.], any one of whom could have executed or facilitated the short

6    trades offered by Fiero for their own respective accounts or those of their respective

7    customers.  Indeed, Plaintiff cannot allege it knew who was taking the long side of its short

8    contracts when they were issued, because those transactions, like all other public stock

9    market transactions, are handled anonymously through third party intermediaries and

10   clearing houses.   Indeed, once Fiero Bros. made public its offer to sell IBUY short, it had

11   no power to control who purchased the long side of the contract, much less information

12   about the identity of the parties who did so.  It was only after it failed to deliver that

13   Waldron learned it was Waldron and Perle who had the long side of its failed short

14   contracts, when Waldron executed the challenged buy-ins.

15       Moreover, the FAC does not state the dates on which Fiero Bros. issued its short

16   sale offers and how those dates tie in to the alleged market manipulations of Waldron and

17   Perle.  The FAC lacks a clear and definite statement of the timing of the short sales in

18   relation to the commencement and the concealment of the alleged market manipulations.

19   Without such a statement, the FAC cannot and does not allege causation within the

20   meaning of Section 523(a)(2)(A).

21       Therefore, even taking every allegation in the FAC as true, Plaintiff fails to establish

22   a claim that is nondischargeable under Section 523(a)(2)(A).  Accordingly, Plaintiff's first

23   cause of action fails to state a claim and must be dismissed pursuant to FRCP 12(b)(6) .

24       B.    The Second Cause of Action Must Be Dismissed Because Plaintiff Has Not

25             Stated, Nor Can He State, a Claim Within the Scope of § 523(a)(4).

26       The meaning of "fiduciary capacity" for purposes of § 523(a)(4) is a question of

27   federal law, which consistently has limited the term to "express or technical relationships."

28   *In re Evans*, 161 B.R. at 477.  The debt alleged to be non-dischargeable must arise from a

1    breach of trust obligations imposed by law and separate and distinct from any contract. *See*

2    *id.* Moreover, "the requisite trust relationship must exist prior to and without reference to

3    the act of wrongdoing. [Citation omitted.] This requirement eliminates constructive,

4    resulting or implied trusts." *Id.* "The broad, general definition of fiduciary – a relationship

5    involving confidence, trust and good faith – is inapplicable in the dischargeability context.

6    *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986). The law is clear that the scope of

7    what constitutes a fiduciary relationship is narrow for the purposes of determining whether

8    a claim is non-dischargeable under § 523(a)(4). *See, e.g., Cantress v. Cal-Micro, Inc., et al.*

9    *(In re Cantrell)*, 269 B.R. 413 (9th Cir. BAP 2001) (holding that not even the fiduciary

10   duties owed by a corporate officer meet the strict standard for "fiduciary" required by

11   § 523(a)(4)).

12          In the Ninth Circuit it has been established that the underwriter of a security is not

13   presumed to owe a fiduciary duty to the purchaser of that security. In *Shawmut Bank, N.A.*

14   *v. Kreiss Associates, et al.*, the court explained that while *stockbrokers* may owe fiduciary

15   duties to their clients, *underwriters* in an arms length transaction do not. 33 F.3d 1477,

16   1489 (9th Cir. 1994) (underwriter of bond held not to owe fiduciary duties to purchaser of

17   that security).

18          Plaintiff has not alleged and cannot allege the existence of a fiduciary relationship,

19   let alone any relationship whatsoever, between Defendant and Fiero Bros. According to

20   Plaintiff's allegations in the FAC and Fiero Bros.' allegations in the Statement of Claim,

21   both Defendant and Fiero Bros. were broker-dealers operating at arm's length as buyers and

22   sellers in the market for IBUY securities at all times relevant to the alleged fraud. [FAC ¶¶

23   8-10.] They did not owe each other either express or technical fiduciary duties. Although

24   Defendant also served as the underwriter for IBUY stock, the law does not construe a

25   fiduciary relationship between the underwriter and purchaser of a security. There are no

26   factual allegations from which this Court could conclude that the requisite express fiduciary

27   relationship between Defendant and Fiero Bros. Therefore, Plaintiff's second cause of

28

1  action under § 523(a)(4) must be dismissed for failure to state a claim under FRCP

2  12(b)(6).

3    C.    <u>The Third Cause of Action Must Be Dismissed because Plaintiff Has Not</u>

4        <u>Identified, Nor Can He Identify, Willful or Malicious Activity To Meet the</u>

5        <u>Elements of § 523(a)(6).</u>

6        Plaintiff alleges that Defendant willfully and maliciously converted the

7  excess proceeds of the buy-in transactions. [FAC ¶66.]  In order to prevail on this claim,

8  Plaintiff first must establish that a conversion has occurred *and* must establish that the

9  conversion was willful and malicious.  In the 9th Circuit, a failure to prove conversion

10 where conversion is alleged is fatal to the argument that willful and malicious injury was

11 caused. "[A] conversion is not per se a willful and malicious injury to the property of

12 another." *Comcast of Los Angeles, Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282, 295

13 (Bankr. C.D.Cal. 2006).

14       This Court must look to state law to determine whether the alleged actions

15 constitute conversion. *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999).

16 California state law defines conversion as "any act of dominion wrongfully asserted over

17 another's personal property in denial of or inconsistent with his rights therein." *Id.*  The

18 elements are (1) the creditor's ownership or right to possession of the property at the time

19 of conversion; (2) the debtor's conversion by a wrongful act or disposition of property

20 rights; and (3) damages. *In re Sandoval*, 341 B.R. at *id.*

21       The buy-in transaction complained of involved (a) the purchase at an excessive

22 price by Waldron of the shares which Fiero failed to deliver and (b) the charging of and

23 payment by Fiero Bros. of the excessive price.[9]  For purposes of this motion Perle accepts

24 the allegation that the amounts charged were excessive, but charging an excessive price is

25 not "conversion" of the funds paid in satisfaction of the overcharged amount. The buy-in

26 proceeds were funds which Waldron obtained through third party intermediaries who

27 _____

[9] *See* fns. 4, 5 *supra.*

28

1    forwarded the buy-in price information to Fiero Bros. for payment using the market's

2    ordinary settlement and clearing functions.  This is hardly an exercise of dominion over the

3    property of Fiero Bros.    The FAC simply does not allege facts constituting conversion.

4              1.    Plaintiff Cannot Establish Willful and Malicious Conduct.

5              Even if the allegations were sufficient to establish conversion, Plaintiff cannot

6    establish that the conduct was both willful and malicious as required by § 523(a)(6).  For

7    conduct to be willful, the debtor must intend the consequences of his action, not just the

8    action itself. *In re Sandoval*, 341 B.R. at *id.*  "An injury is willful when it is shown either

9    that the debtor had a subjective motive to inflict the injury or that the debtor believed that

10   injury was substantially certain to result from his conduct." *Id.*  "It is not sufficient that,

11   viewed objectively, there was a substantial certainty that the debtor's conduct would cause

12   harm." *Merchants Bank of California v. Oh (In re Oh)*, 278 B.R. 844, 860 (Bankr. C.D.Cal.

13   2002).  Moreover, mere recklessness or negligence are not sufficient to establish willful

14   conduct. *Id.*

15             For conduct to be "malicious," the debtor need intentionally perform a wrongful act

16   which necessarily causes injury and is done without cause or excuse.  *Id.*  Plaintiff states no

17   facts alleging willful or malicious conduct by Defendant. Fiero Bros. suffered the losses

18   alleged in the FAC solely because it issued "naked" short sale contracts; that is, that it

19   issued short sale offers without owning or concurrently borrowing shares for delivery on

20   the settlement date.   When Fiero Bros. issued naked shorts, it put itself in a position where

21   the purchaser of the short sale contracts could buy-in to cover the failure to deliver.  The

22   FAC does not allege, however, that Perle or Waldron had any idea that the short sale offers

23   it accepted were naked shorts.  It was only on the settlement date when their unknown short

24   seller couldn't deliver IBUY shares that they learned that the short seller had issued naked

25   short contracts. The facts alleged in the FAC simply do not establish malice.

26             Plaintiff cannot state a claim under § 523(a)(6) and therefore the cause of action

27   must be dismissed.

28

1   D. The Fourth Cause of Action Must Be Dismissed because Plaintiff Cannot

2     State a Claim under § 523(a)(19).

3     1. Defendant's Chapter 7 Bankruptcy.

4    On May 25, 2001 (the "Petition Date"), Mr. Perle filed a voluntary petition for

5 bankruptcy under Chapter 7 of the Bankruptcy Code. [RJN, Ex. A, p. 1.] The proceeding

6 was a no-asset case. [*Id.* at 1.] Defendant represented himself *pro se* in the proceedings.

7 [*Id.* at p. 1.] As of March 11, 2002, this Court ordered all pre-petition debts, including the

8 judgment on which the FAC is premised, discharged pursuant to 11 U.S.C. 727. [*Id.* at Ex.

9 A, p. 5.] On March 28, 2002, this Court issued the "Order Closing Case." [*Id.* at Ex. B,

10 p. 5.] On July 30, 2002, § 523(a)(19) of the Bankruptcy Code became effective as to all

11 existing bankruptcies.

12    Section 523(a)(19) was not a remedy available to Fiero Bros. and therefore is not

13 available to Plaintiff. Section 523(a)(19) was enacted as part of the Sarbanes-Oxley Act of

14 2002 and was effective as of July 30, 2002. The legislative history of the statute indicates

15 that the provision was to be applied to "existing bankruptcies." *Smith v. Gibbons (In re*

16 *Gibbons)*, 289 B.R. 588, 593-94 (Bankr. S.D.N.Y. 2003).

17    In *In re Gibbons*, the debtor commenced his bankruptcy proceeding on July 11,

18 2001 and received a general discharge as to his debts on October 5, 2001. *See id.* at 590.

19 At the time § 523(a)(19) became effective, the creditor had an adversary proceeding

20 pending in the bankruptcy (in fact, the debtor's motion to dismiss the creditor's complaint

21 seeking non-dischargeability under sections 523(a)(2)(A), (a)(4), and (a)(6) had been

22 denied a mere 6 days earlier). *See id.* at 589. After § 523(a)(19) became effective, the

23 creditor sought summary judgment in the adversary proceeding on various grounds

24 including § 523(a)(19). The debtor argued that § 523(a)(19) did not apply to the pending

25 adversary proceeding because the conduct subject to § 523(a)(19) occurred prior to the

26 statute's effective date. The *Gibbons* court ruled that there was an indication by Congress

27 that § 523(a)(19) should apply to existing cases and therefore permitted the creditor's claim.

28 Because there was a pending adversary proceeding, the court ruled that § 523(a)(19)

1    applied to that adversary proceeding, regardless of whether the conduct to which the statute

2    was applied pre-dated the statute's effective date. *See id.* at 594-95.

3         In stark contrast to *In re Gibbons*, here Defendant's bankruptcy proceedings were

4    *closed* as of March 28, 2002, *over four months prior* to § 523(a)(19)'s effective date. No

5    court has construed § 523(a)(19) to apply retroactively to all (or even any) bankruptcies

6    which were closed before its effective date. Indeed, the congressional record establishes

7    that § 523(a)(19) was meant to apply to *existing* bankruptcies, not *closed* bankruptcies.

8    Plaintiff therefore cannot state a claim under § 523(a)(19) and the cause of action must be

9    dismissed.

10    III.    UNDERLINE{CONCLUSION.}

11         The defects in Plaintiff's FAC cannot be cured by re-pleading as no set of facts can

12    establish the legal claims laid out by Plaintiff. Based on the foregoing, Defendant

13    respectfully requests the FAC be dismissed in its entirety and that Plaintiff not be granted

14    leave to re-plead.

15    Dated: January 31, 2007.

16
               PILLSBURY WINTHROP SHAW PITTMAN LLP

17                   KENNETH N. RUSSAK
               DAVID L. STANTON

18                   AVISHA A. PATEL
               725 South Figueroa Street, Suite 2800

19                   Los Angeles, CA 90017-5406

20

21                   By _____

22                       Kenneth N. Russak
                 Attorneys for Defendant

23                     CERY B. PERLE

24

25

26

27

28

1    Docket No. LA 01-26497-BB

2    ADV06-01971BB

3    <u>PROOF OF SERVICE BY MAIL</u>

4    I, Judy Iott, the undersigned, hereby declare as follows:

5

6        1.    I am over the age of 18 years and am not a party to the within cause.  I am

7    employed by Pillsbury Winthrop Shaw Pittman LLP in the City of Los Angeles, California.

8        2.    My business address is 725 South Figueroa Street, Suite 2800, Los Angeles,

9    CA  90017-5406.

10

11       3.    I am familiar with Pillsbury Winthrop Shaw Pittman LLP's practice for

12   collection and processing of correspondence for mailing with the United States Postal

13   Service; in the ordinary course of business, correspondence placed in interoffice mail is

14   deposited with the United States Postal Service with first class postage thereon fully

15   prepaid on the same day it is placed for collection and mailing.

16       4.    On January 31, 2007, at 725 South Figueroa Street, Suite 2800, Los Angeles,

17   California, I served a true copy of the attached document titled exactly:  <u>NOTICE OF</u>

18   <u>MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR</u>

19   <u>FAILURE TO STATE ANY CLAIM; MEMORANDUM OF POINTS AND</u>

20   <u>AUTHORITIES IN SUPPORT THEREOF</u> by placing it in an addressed, sealed envelope

21   clearly labeled to identify the person being served at the address shown below and placed in

22   interoffice mail for collection and deposit in the United States Postal Service on that date

23   following ordinary business practices:

24   Trustee
     Linda J. Chu
25   515 South Flower Street, Suite 440
     Los Angeles, CA 90071
26

27

28   600220872v1                          PROOF OF SERVICE BY MAIL

                                                          Case No. LA 01-26497-BB
                                                          Adv. No. 06-10971

1  Leslie Schwaebe Akins
   Dennis R. Villavicencio
2  Akins & Villavicencio, LLP
   P.O. Box 131253
3  Carlsbad, CA 92013

4

5      I declare under penalty of perjury under the laws of the State of California that the

6  foregoing is true and correct.  Executed this 31st day of January 31, 2007, at Los Angeles,

7  California.

8

9

10  _____
                    Judy Iott

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  600220872v1                    PROOF OF SERVICE BY MAIL

                                                    Case No. LA 01-26497-BB
                                                    Adv. No. 06-10971