Leslie Schwaebe Akins (SBN 138678)
LESLIE SCHWAEBE AKINS, A LAW CORPORATION
7157 Argonauta Way
Carlsbad, CA 92009
Tel: 760-931-2920
Fax: 760-603-0547

Attorney for Plaintiff,
Alfonso Fiero

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO. LA 01-26497-BB |
| CERY BRADLEY PERLE, | [Chapter 7] |
| Debtor. | Adv. No.: ADV-06-01971-BB |
| | The Honorable S. Bluebond - 626 |
| ALFONSO FIERO, | [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFF ALFONSO FIERO, FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT |
| Plaintiff, | |
| vs. | |
| CERY BRADLEY PERLE, | |
| Defendant. | |
| | DATE: November 10, 2009 |
| | TIME:   2:00 p.m. |
| | CTRM: 1475 |
| | DATE FILED: September 13, 2006 |
| | DISCOVERY CUT OFF: July 31, 2009 |
| | TRIAL DATE: None set |

/ / /

/ / /

/ / /

/ / /

---

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1

1     After consideration of the papers in support of and in opposition to Plaintiff Alfonso

2 Fiero's Motion for Summary Judgment, or Alternatively, for Partial Summary Judgment,

3 and the oral argument of counsel, the Court determines that the following facts have been

4 established as uncontroverted facts:

5 **UNCONTROVERTED FACTS**

6 **UNCONTROVERTED FACTS**            **SUPPORTING EVIDENCE**

7 1. Defendant Cery B. Perle ("Perle") was     **Appendix Exhibit ("App.Ex.") 1**

8 the president and a one-third owner of     (Statement of Uncontroverted Facts and

9 Waldron & Co., Inc. ("Waldron"), through its     Conclusions of Law In Support of The

10 holding company Aubry/Perle Holdings, Inc.     Motion of Plaintiffs Corsair Capital

11 In 1997, Waldron was a registered     Partners, L.P. and Alternative

12 securities broker-dealer and a member of     Investments, L.P. For Summary Judgment

13 the NASD, which had its principal office in     Or, Alternatively, For Partial Summary

14 Irvine, California.     Judgment filed August 13, 2002, and

15     entered August 14, 2002 by the

16     Honorable Judge Sheri Bluebond in the

17     adversary proceeding entitled Corsair

18     Capital Partners, L.P. and  Alternative

19     Investments, L.P. v. Cery  Bradley Perle,

20     U.S. Bankruptcy Case  No. AD01-02219

21     (LA 01-26497-BB) ("Corsair Adversary

22     Proceeding"),  Finding No. 1;

23     **App. Ex. 2** (Findings of  Fact and

24     Conclusions of Law Re Plaintiff

25     Securities and Exchange Commission's

26     Motion for Summary Judgment Against

27     Cery B. Perle, filed May 3, 1999, in the

28     action entitled Securities and Exchange

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|

1  **UNCONTROVERTED FACTS**

2

3

4

5

6

7

8

**SUPPORTING EVIDENCE**

Commission v. Cery B. Perle United States District Court for The Central District of California, Southern Division, 98-824 LHM (Anx) subsequently Case No. CV 99-3299 DT (Ex for "SEC Action"), Finding Nos. 1,2,4, and 5.

9  2. Perle "micro managed" the personael
10 and operations of Waldron. Perle was very
11 involved as a manager, and no decisions
12 were made without his approval, including
13 who was hired and fired. No trades were
14 executed without Perle's knowledge and
15 approval. Until the time of his termination
16 in August 1998, Perle directly controlled all
17 operations at Waldron.

**App. Ex. 2**, Finding Nos. 2 and 5.

18

19 3.    Waldron's    holding    company,
20 Aubry/Perle Holdings, was owned by Perle,
21 Jon Aubry ("Aubry") and Ed Harris
22 ("Harris").    Additionally, William Long
23 ("Long") was a long time friend of Harris.

**App. Ex. 2**, Finding Nos. 2 and 5.

24

25 4.  Shopping.com  ("Shopping.com  or
26 "IBUY") was an Internet retailer based in
27 Corona del Mar, California. In or about
28 August  1997,  Waldron  planned

**App. Ex. 1,** Finding No. 2;
**App. Ex. 2,** Finding Nos. 6, 10-13.

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

Shopping.com's initial public offering ("IPO"). Perle performed due diligence for the IPO and participated in the road shows for the IPO to introduce Shopping.com to potential investors. Waldron took Shopping.com public on November 25, 1997.

5. During the IPO, Shopping.com raised $11.7 million on the sale of 1.3 million shares of common stock at a price of $9.00. After the IPO, 1.3 million Shopping.com shares traded publicly in the over-the-counter ("OTC") market. Prices for IBUY shares were quoted in the NASD's OTC Bulletin Board.

**App. Ex. 1,** Finding No. 3;
**App. Ex. 2,** Finding No. 14, 15.

6. Waldron acted as the primary market maker for Shopping.com, meaning that it posted bid and ask prices to the public and stood ready to buy or sell the stock at the posted prices.

**App. Ex. 1 ,** Finding No. 4.
**App. Ex. 2,** Finding No. 16.

7. From November 1997 through at least April 1998, Waldron controlled nearly all of the Shopping.com shares available for public trading.

**App. Ex. 1,** Finding No. 5;
**App. Ex. 2,** Finding Nos. 17-18.
**App. Ex. 23** (Supplemental Affidavit of John Fiero dated September 28 2009

1 | **UNCONTROVERTED FACTS**

**SUPPORTING EVIDENCE**

2 | ("J. Fiero Supp. Aff.") ¶¶ 49-53, Ex. 12.)

3 | 8.

4 | Between November 25, 1997 and March

**App. Ex. 2**, Finding Nos. 15-18.; **App.**

5 | 23,1998, Shopping.com's stock price

**Ex. 23** (J. Fiero Supp. Aff., ¶ 54, Ex. 11)

6 | increased 255%, from $9.00 to $32.13 per

7 | share, despite the company's dismal

8 | financial performance. Specifically, for the

9 | nine month period ended 10/31/97,

10 | Shopping.com generated revenues of

11 | $376,822 and losses of approximately

12 | $2.4 million. For the fiscal year ended

13 | 1/31/98, Shopping.com had revenues of

14 | $850,724, with losses of $5.52 million. For

15 | the period ended 4/1/98 (first quarter fiscal

16 | 1999), Shopping.com reported $917,836

17 | in revenues and a loss of $4.7 million.

18 | Shopping.com also had second quarter

19 | fiscal 1999 loss of approximately $7.7

20 | million.

21 |

22 | 9. As of December 19,1997, Waldron held

**App. Ex. 1,** Finding No. 6;

23 | 253,295 shares of Shopping.com stock in

**App. Ex. 2,** Finding Nos. 19-22.

24 | its inventory accounts, and its customers

25 | held 972,320 shares of the stock in their

26 | accounts. Thus, as of December 19, 1997,

27 | Waldron controlled 94.3% of the 1.3 million

28 | publicly tradable shares, and continued to

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|

1
2  hold over 90% of those shares from
3  December 19,1997 through April 3, 1998.
4

5  10. From early December 1997 through          **App. Ex, 2**, Finding Nos. 24, 25.
6  April 1998, Harris, a Waldron customer        **App. Ex. 19**; **App. Ex. 23** (J. Fiero Supp.
7  and owner, and Long, another customer         Aff., ¶¶ 49-56, EX.S. 11-15)
8  and long time friend of Harri, owned or
9  controlled approximately 485,131 to
10  620,431 shares of the 1.3 million publicly
11  traded shares of Shopping.com.
12

13  11. Waldron cleared its securities            **App. Ex. 1,** Finding No. 7.
14  transactions through Wedbush Morgan
15  Securities, Inc. ("Wedbush Morgan").
16  Edward Wedbush was the President of
17  Wedbush Morgan; Wendy A. Rea was a
18  Senior Vice President of Wedbush
19  Morgan; and Robert Paset (all collectively
20  "Wedbush Defendants") was the Head
21  Trader of Wedbush Morgan's buy-in desk
22

23  12. On March 24,1998, the SEC                 **App. Ex. 1,** Finding No. 8;
24  suspended trading in the securities of        **App. Ex. 2,** Finding No. 26.;
25  Shopping.com for ten days citing "recent      **App. Ex. 23** (J. Fiero Supp. Aff., ¶ 38,
26  market activity that may have been the        Exs. 7 and 8.)
27  result of manipulative conduct."
28

**UNCONTROVERTED FACTS**

**SUPPORTING EVIDENCE**

13. Perle testified before NASD Regulation,Inc. in its investigation of Shopping.com.

**App. Ex. 1,** Finding No. 9.

14. In 1998, Fiero Brothers, Inc. ("Fiero Bros.") was a registered broker-dealer and a member of the National Association of Securities Dealers, Inc. ("NASD") (now operating as Financial Industry Regulatory Association, Inc. ("FINRA"). Fiero Bros. was a market maker for numerous securities trading on NASDAQ system, including Shopping.com. As a market maker, Fiero Bros. assisted in maintaining an orderly, non-volatile market in the securities issue for which it made a market, and was obligated to purchase or sell securities in each issue, for its own account, including selling shares that it did not own, a practice known as taking a "short" position in a stock.

Affidavit of John Fiero dated December 18, 2008 ("J. Fiero Aff.")J. Fiero Aff., ¶¶ 3,4, 6.;
App. Ex. 23 (J. Fiero Supp. Aff. ¶¶ 1, 2-6.)

15. Fiero Bros. cleared its trades through King Financial Services, Inc., which was a member of the National Securities Clearing Corporation ("NSCC"). King, in turn, cleared its trades including the Fiero Bros.

J. Fiero Aff., ¶¶5, 6;
App. Ex. 23 (J. Fiero Supp. Aff., ¶¶ 8, 9, 17, 41, Ex. 10 thereto.)

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|

1  | **UNCONTROVERTED FACTS**  | **SUPPORTING EVIDENCE**

2  trades, through the NSCC, which is the

3  major clearing house for securities

4  transactions on the major stock exchanges,

5  and includes trades effected through the

6  NSCC. Trades made for Fiero Bros. in

7  IBUY stock were cleared through NSCC

8  and subject to the continuous net

9  settlement process.

10

11  16. Fiero Brox. became a registered     Ex. 23 (J. Fiero Supp. Aff, ¶ 17.)

12  market maker of Shopping.com stock on

13  January 28, 1998.

14

15  Between February  12, 1998 and April     J. Fiero Aff., ¶ 13;

16  1998, Fiero Bros. bought and sold        **App. Ex. 23**, J. Fiero Supp. Aff. ¶¶17-39,

17  Shopping.com stock, and carried a net    1-5, 9-11

18  short position in Shopping.com stock.

19

20  17. Perle and Waldron knew that Fiero    **App. Ex.** 20, p. 59, ¶ 2-5;¶¶ 2-5.

21  Bros. was making a market in IBUY. Perle  App. Ex. 22, Exs. 2 and 3.

22  and Waldron was on the buy side of the   App. Ex. 25 and 26.

23  short sale trades made by Fiero Bros.

24  between February 12, 1998 and March 16,

25  1998.Perle knew that Fiero Bros. was a

26  short seller and was "shorting"

27  Shopping.com stock.

28

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | 18. Fiero Bros. was a victim of Perle's and | J.Fiero Aff., ¶¶8-13 |
| 3 | Waldron's fraudulent buy-ins of | |
| 4 | Shopping.com stock at artificially high | |
| 5 | prices, at the time they were engaging in | |
| 6 | artificial market making activities, illegal | |
| 7 | parking arrangements, improper | |
| 8 | guarantees against loss, and short | |
| 9 | squeeze activities, and suffered damages. | |
| 10 | | |
| 11 | 19. On February 17, 1998, Fiero Bros filed | J. Fiero Aff., ¶14. |
| 12 | its Demand for Arbitration against inter | |
| 13 | alia, before NASD Regulation, Inc., inter | |
| 14 | Arbitration No. 98-00587, in the matter of In | |
| 15 | the Matter of the Arbitration Among Fiero | |
| 16 | Brothers. Inc. vs. Waldron & Co., Cery | |
| 17 | Perle, Ed Harris, Wedbush Morgan | |
| 18 | Securities. Inc. and Ed Wedbush, alleging | |
| 19 | that Perle and Waldron engaged in | |
| 20 | fraudulent, artificial market-making activity, | |
| 21 | parking arrangements, guarantees against | |
| 22 | loss, and fraudulent purchasing or "buy-in" | |
| 23 | of Shopping.com stock on February 12, | |
| 24 | 1998. | |
| 25 | | |
| 26 | 20. On or about March 18, 1998, Fiero | **App. Ex. 1**, Finding No.10: |
| 27 | Bros., also a registered broker-dealer | **App. Ex. 3; App. Ex. 23**, ¶23; |
| 28 | located in New York, filed its Second | J. Fiero Aff., ¶¶ 3, 15, Ex. 1. |

**UNCONTROVERTED FACTS**                    **SUPPORTING EVIDENCE**

1

2   Amended Statement of Claim ("Fiero

3   SOC") in NASD Arbitration No. 98-00587.

4   The Fiero SOC expanded the dates and

5   number of fraudulent "buy-ins" to include

6   February 12, March 6, 11 and 16, 1998.

7   Specifically, Fiero Bros alleged that on

8   February 12, 1998, Waldron through

9   Wedbush, Morgan Securities, Inc.

10  ("Wedbush") executed a buy-in against

11  Fiero Bros. of 35,350 shares of

12  Shopping.com ("IBUY") stock, at 25 1/8

13  when the "market" price for IBUY stock at

14  the time was between 21 5/8 and 21-3/4.

15  Fiero Bros. alleged that on March 6, 1998,

16  Perle and Waldron through Wedbush

17  executed a buy-in against Fiero Bros. of

18  25,455 shares of IBUY stock at $29 per

19  share when the "market price for IBUY

20  stock was between 25 15/16 and 25

21  31/32; Fiero Bros. alleged that on March

22  11, 1998, Perle and Waldron through

23  Wedbush executed a buy-in against Fiero

24  Bros. of 36,428 shares of IBUY stock at

25  $36 per share when the "market price" for

26  IBUY stock was between 29 1/4 and 29

27  5/16; Fiero Bros. alleged that on March 16,

28  1998, Perle and Waldron through Wedbush

**UNCONTROVERTED FACTS**

executed a buy-in against Fiero Bros. of 38,050 shares of IBUY stock at $26.5 per share when the "market price" for IBUY stock was between 21 13/16 and 21 7/8.

21. The Fiero SOC further alleged that Waldron and Perle manipulated the price of the stock by (1) controlling the supply, purchasing large blocks of stock to reduce the amount of shares available for public trading, executing unauthorized trades and parking stock in customer and fictitious accounts, and restricting customers from selling Shopping.com stock in their accounts; and (2) creating artificial demand for the stock, by issuing a false and misleading press release, and while Waldron was acting as a market maker, raising the bid for the stock without economic justification, and (3) executing a short squeeze by fraudulently buying-in Shopping.com stock at above-market prices, which conduct violated NASD Uniform Practice Code Section 11810(c)(1)(C),17 C.F.R. Section 240.10b-5, and their fiduciary duties in the execution of a securities trade.

**SUPPORTING EVIDENCE**

**App. Ex. 1,** Finding No. 10;
**App. Ex. 3;** J. Fiero Aff., ¶16, Ex. 1.
App. Ex. 23, ¶

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

22. Perle and Waldron, represented by H.Thomas Fehn of Fields, Fehn & Sherwin in Los Angeles, California, filed a Statement of Answer and a Cross-Claim against Fiero Bros. and third-party Key West Securities, Inc., on April 16, 1998.

**App. Ex. 1,** Finding No. 11;
**App. Ex. 4.**

23.   Fiero Bros.' NASD action was arbitrated from September 1-4, 1998. Fiero Bros. presented more than 68 pre-numbered exhibits, totaling thousands of pages of documents.  Additionally, Fiero Bros. called numerous witnesses who testified at the arbitration hearing.

 **App. Ex. 1,** Finding No. 12;
**App. Ex. 4;** J. Fiero Aff., ¶ 17, Ex. 2;
**App. 23,** J. Fiero Supp. Aff.,¶¶ 40

24.   At the NASD Arbitration, Fiero Bros. presented evidence that it suffered damages as a result of Perle and Waldron's forced buy-ins at prices that greatly exceeded the market price for IBUY stock. The total amount of Fiero Bros.' damages, i.e., its out-of-pocket costs resulting from the above-market buy-ins identified in Fiero Bros.' Second Amended SOC (i.e., February 12, 1998, March 6, 1998, March 11, 1998, and March 16,

**App. Ex. 23**, J. Fiero Supp. Aff., ¶40-43, Exs. 9-11; and  ¶¶ 17-39 and Exs. 1-6.

| | |
|---|---|
| 1 | **UNCONTROVERTED FACTS** |
| 2 | 1998) was <u>$789,255</u>. This damage figure |
| 3 | was determined by calculating the |
| 4 | difference between the buy-in price and the |
| 5 | weighted average cost per share received |
| 6 | by Fiero Bros. in selling Shopping.com |
| 7 | stock. |

**SUPPORTING EVIDENCE**

1 **UNCONTROVERTED FACTS**

2 1998) was <u>$789,255</u>. This damage figure

3 was determined by calculating the

4 difference between the buy-in price and the

5 weighted average cost per share received

6 by Fiero Bros. in selling Shopping.com

7 stock.

8

9 25.    At the NASD Arbitration, Fiero

10 Bros. presented an alternative calculation

11 of its damages based on the excessive

12 buy-in prices charged compared to the

13 market price of IBUY stock on the buy-in

14 dates. Under this alternative methodology,

15 Fiero Bros.' out of pocket damages on the

16 four buy-ins identified in Fiero Bros.'

17 Second Amended SOC was <u>$463,581</u> (or

18 if include the 3/19 buy-in then $1,187,932)

19 when measured against the buy-in price as

20 compared to the market price at the time of

21 buy-ins.

22

23 26. Following hearings which took place

24 over September 1-4,1998, NASD

25 Regulation, Inc. issued an Award finding

26 Waldron, Perle and Ed Harris jointly and

27 severally liable to Fiero Bros. for

28 $350,000.00 in compensatory damages,

**App. Ex. 23**, J. Fiero Supp. Aff., ¶40, Ex. 9.

**App. Ex. 5; ¶** 18 to J. Fiero Aff., Ex. 3.

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

1  **UNCONTROVERTED FACTS**          **SUPPORTING EVIDENCE**

2  and \$50,000 against respondent

3  Wedbush, Morgan Securities, Inc.

4  ("Wedbush") in compensatory damages.

5

6  27. On February 10, 1999, Fiero Bros.          **App. Ex. 5; ¶19 to J. Fiero Aff.,**

7  Filed a Petition to Confirm the Arbitration     Ex. 3;

8  Award in the Los Angeles Superior Court,        Ex. 23 to J. Fiero Supp. Aff, ¶76..

9  Los Angeles Superior Court Case No

10  BS055659 ("the Petition"); Service of the

11  Petition was served on Thomas Fehn,

12  Esq., of Fields, Fehn & Sherwood, as

13  counsel for Perle and Waldron.

14

15  28. The Petition stated that on or about        **App. Ex. 5; ¶20 to J. Fiero Aff.,**

16  February 17, 1998, Fiero Bros. submitted        Ex. 3.; App. Ex. 23, ¶77 to J. Fiero Supp.

17  to arbitration before the NASD a                Aff.

18  controversy against respondents Cery

19  Perle and others that arose in connection

20  with the sale of securities, as set forth in

21  the Second Amended Statement of

22  Claim, Case No. 98-00587.

23

24  29. The Petition reflected that on              **App. Ex. 6; ¶ 21 to J. Fiero Aff.,**

25  September 17, 1998, the arbitrators             Ex. 4; App. Ex. 23, J. Fiero Supp. Aff., ¶¶

26  made their award determining all issues        78.

27  submitted to them, and awarded Fiero

28  Bros. the sum of \$350,000 in

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

1
2   compensatory damages against

3   Waldron, Perle and Ed Harris, and the

4   sum of $50,000 against Wedbush

5   (Exhibit C thereto). Fiero Bros. was

6   represented in the Petition by its

7   California counsel, The Law Offices of

8   Mark Steven Kessler.

9

10   30. On March 17, 1999 Fiero Bros.'        **App. Ex. 7**; ¶21 to J. Fiero Aff.,

11   Petition to Confirm Arbitration Award     Ex.4.; **App. Ex. 23**, J. Fiero Aff., ¶ 79.

12   came on for hearing. The Minutes and

13   the Ruling on Petition to Confirm

14   Arbitration Award reflect that the Court

15   received no opposition to the Petition to

16   Confirm the Arbitration Award. The

17   Ruling issued by the Court GRANTED

18   Fiero Bros.' Petition, and confirmed the

19   arbitration  award in the sum of $350,000

20   against Waldron and Perle, and in the

21   sum of $50,000 against Wedbush

22   Securities, Inc. The Ruling also stated that

23   Fiero Bros.' Petition is supported by the

24   documents submitted by Fiero Bros.,

25   including the Second Amended

26   Statement of Claim and the Arbitration

27   Award issued by the NASD panel.

28

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

1  **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE**

2  31. On April 6, 1999, the Los Angeles | **App. Ex. 1,** Finding No. 12;

3  Superior Court issued its Order | **App. Ex. 8;** ¶22 to J. Fiero Aff.,

4  Confirming Fiero Bros.' Arbitration | Ex. 5; **App. Ex. 23**, J. Fiero Supp. Aff., ¶

5  Award. | 81,

6

7  32. On April 6, 1999 the Los Angeles | **App. Ex. 9;** ¶24 to J. Fiero Aff.,

8  Superior Court, in Case No. BS5055659 | Ex. 6; App. Ex. 23, J. Fiero Supp.¶81.

9  entered Judgment in favor of Fiero Bros.,

10  Inc. against Cery B. Perle, Waldron &

11  Co., Inc., in the amount of $350,000 in

12  compensatory damages.

13

14  33. On April 20, 1999, Fiero Bros. filed | **App. Ex. 10;** ¶25 to J. Fiero Aff.,

15  and served its Notice of Entry of | Ex.7; App. **Ex. 23,** J. Fiero Supp., ¶ 82..

16  Judgment in the Los Angeles Superior

17  Court on all parties, including Perle and

18  Waldron through their attorney Thomas

19  Fehn, Esq.

20

21  34. On January 4, 2000, the Abstract of | **App. Ex. 10.** ; **App. Ex. 23**, J. Fiero

22  Judgment was filed by Fiero Bros. in the | Supp. Aff., ¶83.

23  Los Angeles Superior Court, Case No.

24  BS055659, against Waldron and Perle

25  as judgment debtors.

26

27  35. On January 4, 2000,Fiero Bros. filed | **App. Ex. 1,** Finding No. 13; App. Ex. 23,

28  its Abstract of judgment with the Los | J. Fiero Supp. Aff., ¶ 83, referecing Ex. 8

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
| 2 | Angeles Superior Court, which the Clerk | to prior Fiero Aff. |
| 3 | of the Los Angeles Superior Court issued | |
| 4 | the Abstract of Judgment in the amount of | |
| 5 | $350,215 against judgment debtors | |
| 6 | Waldron and Perle. | |
| 7 | | |
| 8 | 36. The SEC began investigating activity | **App. Ex. 1**, Finding No. 14; |
| 9 | in Shopping.com by 1998, and took | **App. Ex. 17.** |
| 10 | testimony from various people, including | |
| 11 | Perle, in the course of that investigation. | |
| 12 | Perle was represented during the | |
| 13 | investigation by Gregory J. Sherwin and | |
| 14 | Tom Fehn of Fields, Fehn & Sherwin. | |
| 15 | | |
| 16 | 37. On September 23,1998, the SEC | **App. Ex. 1,** Finding Nos. 14, 15; |
| 17 | filed a Complaint for Violations of the | **App. Ex. 17.** |
| 18 | Federal Securities Laws against Perle | |
| 19 | and Waldron ("SEC Action"). | |
| 20 | | |
| 21 | 38. The SEC Action alleged that between | **App. Ex. 1,** Finding No. 15. |
| 22 | November 25,1997 and March 23,1998, | **App. Ex. 17.** |
| 23 | Waldron and Perle artificially raised the | |
| 24 | price of Shopping.com stock 255%, from | |
| 25 | its IPO price of $9.00 per share, to a high | |
| 26 | of $32.13 per share, resulting in over $4.1 | |
| 27 | million in ill-gotten gains to Waldron. | |
| 28 | | |

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 39. The SEC further alleged in the SEC Action that Waldron and Perle manipulated the price of the stock by (1) controlling the supply, purchasing large blocks of stock to reduce the amount of shares available for public trading, executing unauthorized trades and parking stock in customer and fictitious accounts, and restricting customers from selling Shopping.com stock in their accounts; and (2) creating artificial demand for the stock, by issuing a false and misleading press release, and while Waldron was acting as a market maker, raising the bid for the stock  without economic justification. | **App. Ex. 1,** Finding No. 16; **App. Ex. 13.** |
| 40. The District Court in the SEC Action granted the SEC's motion on January 11,1999. | **App. Ex. 1,** Finding No. 23, **App. Ex. 15.** |
| 41. A final judgment was entered in the SEC Action ordering Perle to pay a civil penalty of \$110,000 and enjoining him from future violations of the securities laws was entered on February 11,1999. | **App. Ex. 1,** Finding No. 24. **App. Ex. 13.** |

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

1  

2   42. On May 3, 1999, the District Court in   **App. Ex. 1,** Finding No. 25;

3   the SEC Action by Judge Dickran   **App. Ex. 2,** pp. 25:8-28:14.

4   Tevrizian issued detailed Findings of fact

5   and conclusions of law regarding Perle's

6   and Waldron's activities with respect to

7   the stock of Shopping.com. The District

8   Court, Judge Tevrizian concluded that

9   Perle violated the Antifraud provisions of

10   the securities laws, including Section

11   17(a) of the Securities Act of 1933, 15

12   U.S.C. §77q(a), Section 10(b) of the

13   Securities Exchange Act of 1934 (the

14   "1934 Act"), 15 U.S.C. §78j(b), and Rule

15   l0b-5,17 C.F.R. §240.10b-5, Section

16   20(a) of the 1934 Act, 15 U.S.C. §78t(a),

17   Section 15(c)(1) of the 1934 Act, 15

18   U.S.C. §78o(c)(1), and Rule 15cl-2, 17

19   C.F.R. §240.15cl-2. This Finding of Fact

20   was adopted by Judge Bluebond in the

21   Corsair Adversary Proceeding.

22  

23   43. The District Court, in the SEC Action   **App. Ex. 1,** Finding No. 26;

24   Judge Dickran presiding, found that Perle   **App. Ex. 2,** Finding Nos. 8-9.

25   directly controlled all of Waldron's

26   operations, and micromanaged its

27   personnel and operations. No decisions

28   were made without his approval, including

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | who  was hired and who was fired. No | |
| 3 | trades were executed without Perle's | |
| 4 | knowledge and approval. These Findings | |
| 5 | of Fact were adopted by Judge Bluebond | |
| 6 | in the Corsair Adversary Proceeding. | |
| 7 | | |
| 8 | 44. The District Court, in the SEC Action | **App. Ex. 1,** Finding No. 27; |
| 9 | Judge Tevrizian presiding, found that by | **App. Ex. 2,** Finding Nos. 27-28. |
| 10 | August 1997, before the IPO, Waldron | |
| 11 | was planning to manipulate the supply of | |
| 12 | Shopping.com stock. These Findings of | |
| 13 | Fact were adopted by Judge Bluebond in | |
| 14 | the Corsair Adversary Proceeding. | |
| 15 | | |
| 16 | 45. The District Court, in the SEC Action | **App. Ex. 1,** Finding No. 28; |
| 17 | Judge Tevrizian presiding, found that | **App. Ex. 2,** Finding Nos. 30-31. |
| 18 | Perle and Waldron acted to control the | |
| 19 | supply of Shopping.com stock by | |
| 20 | reducing the "float." Waldron was the lead | |
| 21 | underwriter in the firm commitment | |
| 22 | underwriting of Shopping.com's 1.3 | |
| 23 | million share IPO, and when the IPO | |
| 24 | closed on December 5, 1997, all but | |
| 25 | approximately 260,000 of the 1.3 million | |
| 26 | shares sold were held in Waldron's | |
| 27 | inventory and retail accounts. These | |
| 28 | Findings of Fact were  adopted by Judge | |

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| 1 | |

Bluebond in the Corsair Adversary

Proceeding.

46. The District Court, in the SEC Action **App. Ex. 1,** Finding No. 29;
Judge Tevrizian presiding, found that **App. Ex. 2,** Finding No. 32.
between November 25, 1997 and
January 14,1998, Waldron was a net
purchaser of 251,232 shares of
Shopping.com stock from other broker-
dealers. This Finding of Fact was
adopted by Judge Bluebond in the
Corsair Adversary Proceeding.

47. The District Court, in the SEC Action **App. Ex. 1,** Finding No. 30;
Judge Tevrizian presiding, found that **App. Ex. 2,** Finding No. 33.
such large purchases just after an IPO
suggest an effort to reduce the floating
supply of a security and so render its
price sensitive to demand.  This Finding
of Fact was adopted by Judge Bluebond
in the Corsair Adversary Proceeding.

48. The District Court, in the SEC Action **App. Ex. 1,** Finding Nos. 31;
Judge Tevrizian presiding, found that **App. Ex. 2,** Finding Nos. 34-37, 40.
from late November 1997 to at least late
March 1998, Perle requested and
received from Shopping.com's president

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | a confidential report from Depository | |
| 3 | Trust Company ("DTC"), which generated | |
| 4 | the report upon the request of the issuer | |
| 5 | of a security (not a broker-dealer or | |
| 6 | market maker such as Perle and | |
| 7 | Waldron) to allow the issuer to track | |
| 8 | activity in its stock. The report tracked | |
| 9 | which brokerage firms held | |
| 10 | Shopping.com stock in the market. These | |
| 11 | Findings of Fact were adopted by Judge | |
| 12 | Bluebond in the Corsair Adversary | |
| 13 | Proceeding. | |
| 14 | | |
| 15 | 49. The District Court, in the SEC Action | **App. Ex. 1,** Finding Nos. 32; |
| 16 | Judge Tevrizian presiding, found that | **App. Ex. 2,** Finding Nos. 38, 39. |
| 17 | Perle personally monitored the | |
| 18 | information in the DTC report and used it | |
| 19 | to discover which brokerage firms held | |
| 20 | Shopping.com stock in the market. These | |
| 21 | Findings of Fact were adopted by Judge | |
| 22 | Bluebond in the Corsair Adversary | |
| 23 | Proceeding. | |
| 24 | | |
| 25 | 50. The District Court, in the SEC Action | **App. Ex. 1,** Finding No. 33; |
| 26 | Judge Tevrizian  presiding, found that | **App. Ex. 2,** Finding Nos. 50-57, |
| 27 | Perle and Waldron also acted to control | 59, 61, 63-76. |
| 28 | the supply of Shopping.com stock by | |

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|

1
2 conducting unauthorized trades and
3 parking Shopping.com stock in customer
4 accounts. Shopping.com shares were
5 sold into Waldron customers' accounts
6 without authorization or consent, in some
7 cases resulting in cash deficits in those
8 accounts. Shares of Shopping.com and
9 other securities were also sold from
10 customer accounts without authorization.
11 In many instances Perle delayed
12 responding to or ignored customers'
13 requests to reverse the unauthorized
14 transactions, and they were reversed only
15 after repeated requests. These Findings
16 of Fact were adopted by Judge Bluebond
17 in the Corsair Adversary Proceeding.

18

19 51. The District Court, in the SEC Action **App. Ex. 1,** Finding No. 34;
20 Judge Tevrizian presiding, found that **App. Ex. 2,** Finding Nos. 77-82.
21 Perle and Waldron also acted to control
22 the supply of Shopping.com stock by
23 parking Shopping.com stock in fictitious
24 accounts. On February 10 and 11, 1998,
25 Waldron purchased 132,520 shares of
26 Shopping.com into its inventory,
27 increasing its position from 87,157 to
28 219,677 shares, and resulting in its

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

clearing broker, Wedbush Morgan,
issuing a margin call for over $2.3 million,
which required Waldron to raise funds
immediately or risk liquidating part of its
Shopping.com inventory position.
Waldron's sales of 75,000 Shopping.com
shares for $l,882,910 between February
9 and 12, from its inventory account to
twelve fictitious customer accounts, which
had no funds or assets to pay for the
purchases, helped Waldron resolve its
margin call with Wedbush Morgan. On
February 17,1998, Waldron repurchased
the 75,000 shares into its inventory.
These Findings of Fact were adopted by
Judge Bluebond in the Corsair Adversary
Proceeding.

52. The District Court, in the SEC Action   **App. Ex. 1,** Finding No. 35;
Judge Tevrizian presiding, found that   **App. Ex. 2,** Finding Nos. 83-143.
Perle and Waldron also acted to control
the supply of Shopping.com stock by
restricting customers' sales of
Shopping.com stock. Perle told Waldron
registered representatives who tried to
process their clients' instructions to sell
Shopping.com stock that they should "find

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|

1  **UNCONTROVERTED FACTS**                **SUPPORTING EVIDENCE**

2  a home" for it, i.e., sell it to another

3  Waldron client, or risk losing their jobs,

4  and required all Waldron registered

5  representatives to sign a "Penalty Bid"

6  whereby if a representative sold

7  Shopping.com stock for a client within 90

8  days of the purchase, he would lose his

9  commissions for both transactions. When

10  customers tried to sell the stock within 90

11  days of the purchase, Waldron

12  employees would not return their calls,

13  take the sell orders or follow customer

14  instructions, tried to talk the customers

15  out of selling the stock, ridiculed their

16  decision to sell, and tried to convince

17  them to buy more of the stock. Customers

18  had to make repeated requests, and/or

19  demand that their accounts be closed,

20  before their sell orders were finally

21  processed. These Findings of Fact were

22  adopted by Judge Bluebond in the

23  Corsair Adversary Proceeding.

24

25  53. The District Court, in the SEC Action    **App. Ex. 1,** Finding No. 36;

26  Judge Tevrizian presiding, found that in     **App. Ex. 2,** Finding Nos. 144-157.

27  early March 1998, Perle and Waldron

28  also created an artificial demand for

1 | **UNCONTROVERTED FACTS**          **SUPPORTING EVIDENCE**

2 | Shopping.com stock by directing

3 | Waldron's public relations firm to issue a

4 | false and misleading press release,

5 | which was a buy recommendation for

6 | Shopping.com stock, to try to counter

7 | another firm's negative report about

8 | Shopping.com. Perle provided the public

9 | relations firm with the research report,

10 | reviewed and approved the press

11 | release, and caused it to be published.

12 | The press release tracked the growth of

13 | Shopping.com's revenues from $56,000

14 | to $425,000 over the last three quarters

15 | of Shopping.com's fiscal 1998, and

16 | projected total revenues of $800,000 for

17 | the fiscal year, but failed to disclose that

18 | Waldron was Shopping.com's biggest

19 | customer in its 1998 fiscal year, with

20 | purchases accounting for 42% of the

21 | company's revenues. Perle decided on

22 | behalf of Waldron to purchase computer

23 | equipment and office supplies from

24 | Shopping.com, and directed others at

25 | Waldron to do so.  These Findings of

26 | Fact were adopted by Judge Bluebond in

27 | the Corsair Adversary Proceeding.

28 |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 54. The District Court, in the SEC Action | **App. Ex. 1,** Finding No. 37; |
| Judge Tevrizian presiding, found that | **App. Ex. 2,** Finding Nos. 158-165. |

1
2  54. The District Court, in the SEC Action
3  Judge Tevrizian presiding, found that
4  Perle and Waldron also created an
5  artificial demand for Shopping.com stock
6  by raising the bid without economic
7  justification. Between November 25,1997
8  and January 14,1998, the price of
9  Shopping.com stock rose 46.5%. from
10 $8.88 to $13.00 per share, with Waldron
11 as the driving force behind the increase.
12 While ten other broker-dealers quoted
13 Shopping.com stock in the market during
14 that time, Waldron maintained the high
15 bid price 95.5% of the time during trading
16 hours, advanced the high bid 51 of the 59
17 times (86.4%) it was raised, and
18 increased its bid 55 times, with 51 of the
19 increases (92.7%) being advances to a
20 new high bid price. During that period,
21 Waldron held no less than 100,000
22 shares of Shopping.com stock in its
23 inventory, and frequently held over
24 200,000 shares. It is not economically
25 rational for a market maker to raise the
26 bid for a security when it holds a
27 substantial amount of the stock in its
28 inventory. Internal retail demand for a

| 1 | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |

1    **UNCONTROVERTED FACTS**       **SUPPORTING EVIDENCE**

2    stock is generally filled from a broker-

3    dealer's inventory before an effort is

4    made to purchase (bid for) the stock on

5    the market. These Findings of Fact were

6    adopted by Judge Bluebond in the

7    Corsair Adversary Proceeding.

8

9    55. The District Court, in the SEC Action       **App. Ex. 1,** Finding No. 38;

10    Judge Tevrizian presiding, found that       **App. Ex. 2,** Finding No. 166.

11    beginning in late January 1998, short

12    sellers, traders who sell stock they do not

13    own to take advantage of an anticipated

14    price drop, were very active in trading of

15    Shopping.com stock. This Finding of

16    Fact was adopted by Judge Bluebond in

17    the Corsair Adversary Proceeding.

18

19    56. A short sale is a securities industry       **App. Ex. 1,** Finding No. 39;

20    procedure whereby a person "sells       **App. Ex. 23**, J. Fiero Supp. Aff., ¶ 7.

21    something [he does not] own." That is, a

22    person may consider that a stock is

23    overvalued in the market, and its market

24    price is higher than its actual worth, and

25    based on the expectation that the market

26    will be corrected and the price will drop to

27    reflect the true value of the stock, he may

28    offer to sell shares which he does not then

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| own, with the expectation that by the time he must deliver them, he will be able to buy them in the market at a price lower than that at which he has offered to sell. The short seller's gain is the difference between the higher price at which he sold, and the lower price at which he purchased the stock. | |
| 57. A "buy-in" is a securities industry procedure by which a buyer, in situations where a seller fails to deliver securities that have been sold to that buyer (called a "fail" in the securities industry), is permitted to go into the market to buy the security, and charge the failing party with the purchase cost. | **App. Ex. 1,** Finding No. 40; App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 14-16. |
| 58. The District Court, in the SEC Action Judge Tevrizia presiding, found that because it controlled over 90% of the publicly tradable shares, Waldron was able to execute a "short squeeze," by which Waldron created a shortage of stock in the market and made it difficult for short sellers to find stock to deliver on their short sales. Due to Waldron's control | **App. Ex. 1,** Finding No. 41; **App. Ex. 2,** Finding Nos. 167-173; **App. Ex. 19** (Declaration of Thomas Martinson, dated December 15, 1998, ¶ 9-10, Ex.7 pp. 189-191, Ex. 9 pp. 198-200, and Ex. 10 p.203) |

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | | |
| 2 | of supply and the fact that it was on the | |
| 3 | buy side of most of the short sales, | |
| 4 | Waldron was able to use its own inventory | |
| 5 | to "buy-in" short sellers who could not | |
| 6 | deliver the shares they sold, and often | |
| 7 | charged them prices far in excess (by up | |
| 8 | to 50%) of the closing price of the stock | |
| 9 | on the day of the buy-ins. Between | |
| 10 | November 25, 1997 and March 23,1998, | |
| 11 | Waldron made over $4.1 million in profits | |
| 12 | as a result of the manipulative activity in | |
| 13 | Shopping.com stock. These Findings of | |
| 14 | Fact were adopted by  Judge Bluebond | |
| 15 | in the Corsair Adversary Proceeding. | |
| 16 | | |
| 17 | 59. The illegal conduct described in | **App. Ex 21**; **App. Ex. 23**, J. Fiero Supp. |
| 18 | paragraph 58, above, is exactly what | Aff., ¶40-43, Exs. 9-11; and  ¶¶ 17-39 |
| 19 | happened to the short-sellers of IBUY | and Exs. 1-6. |
| 20 | stock, i.e., Corsair Capital Partners, L.P., | |
| 21 | and to Fiero Bros., | |
| 22 | | |
| 23 | 60.  The illegal conduct descibed in | **App. Ex. 21; App. Ex. 23**, J. Fiero Supp. |
| 24 | paragraph 58 above, is what caused the | Aff., ¶40-43, Exs. 9-11; and  ¶¶ 17-39 |
| 25 | short-sellers' damages, i.e.,  Corsair | and Exs. 1-6. |
| 26 | Capital Partners, L.P., and Fiero Bros. | |
| 27 | suffering damages in excess of | |
| 28 | $350,000. | |

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | 60. Based on all of the foregoing, the | **App. Ex. 1, Fn. 42.** |
| 4 | District Court in the SEC Action | |
| 5 | concluded that, inter alia, Perle, by | |
| 6 | engaging in the conduct described | |
| 7 | above, directly or indirectly, in connection | |
| 8 | with the purchase or sale of securities, by | |
| 9 | the use of the means or instrumentalities | |
| 10 | of interstate commerce, or of the mails, or | |
| 11 | of any facility of a national securities | |
| 12 | exchange, with scienter: (a) employed | |
| 13 | devices, schemes or artifices to defraud; | |
| 14 | (b) made untrue statements of material | |
| 15 | fact or omitted to state material facts | |
| 16 | necessary in order to make the | |
| 17 | statements made, in the light of the | |
| 18 | circumstances under which they were | |
| 19 | made, not misleading; and (c) engaged in | |
| 20 | acts, practices or courses of business | |
| 21 | which operated or would operate as a | |
| 22 | fraud or deceit upon other persons, in | |
| 23 | violation of Section 10(b) of the 1934 Act, | |
| 24 | 15 U.S.C. §78j(b), and Rule l0b-5 | |
| 25 | thereunder, 17 C.F.R. §240.10b-5. | |
| 26 | Perle's fraudulent activities also made | |
| 27 | him liable as a controlling person of | |
| 28 | Waldron, in violation of Section 15(c)(1) | |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| of the 1934 Act, 15 U.S.C. §78o(c)(1), | |
| and Rule 15cl-2 thereunder, 17 C.F.R. | |
| §240.15cl-2. These Conclusions were | |
| adopted by Judge Bluebond in the | |
| Corsair Adversary Proceeding. | |
| | |
| 61. In ordering injunctive relief, the District | **App. Ex. 1,** Fn. 43. |
| Court in the SEC Action noted that: (a) | |
| Perle's past violations permitted an | |
| inference that he would commit future | |
| violations; (b) his violations were not | |
| isolated but continued over a period of | |
| months; (c) Perle acted with a high | |
| degree of scienter in conducting the | |
| manipulation scheme; (d) his violations of | |
| the federal securities laws were | |
| egregious; (e) Perle failed to provide any | |
| assurances against future violations of | |
| the federal securities laws or recognize | |
| the wrongful nature of his conduct. | |
| Additionally, since Perle's conduct | |
| involved (1) fraud, deceit, manipulation, or | |
| deliberate or reckless disregard of a | |
| regulatory requirement, and (2) directly or | |
| indirectly resulted in substantial losses or | |
| created the risk of substantial losses to | |
| other persons, warranting a $110,000 | |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| penalty. These Conclusions were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | |
| 62. On March 10, 1999 Perle filed a Motion to Vacate the Judgment, entered in the SEC Action, which was opposed by the SEC, and untimely papers in opposition to the SEC's summary judgment motion. | **App. Ex. 1**, Fn. 44. |
| 63. Perle's Motion to Vacate was denied on May 3,1999. | **App. Ex. 1**, Fn 45. |
| 64. Perle did not appeal from either the Judgment or the denial of his Motion to Vacate in the SEC Action. | **App. Ex. 1**, Finding No. 46. |
| | ; |
| 65. Corsair and Al were short sellers of Shopping.com stock who were caught in Perle's short squeeze. From February 20, 1998 through March 12,1998, Corsair and Al sold short approximately 32,800 shares of Shopping.com at an average price of approximately $24 per share. | **App. Ex. 1,** **App. Ex. 2,** Conclusion Nos. 3,4. |
| 66. Like Corsair and Al, Fiero Bros. was | **App. Ex. 23**, J. Fiero Supp. Aff., ¶¶ 17- |

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
| 2 | a short seller of IBUY who was caught in | 37, Exs. 1-12 |
| 3 | Perle's short squeeze. The fraudulent | |
| 4 | buy-ins of Shopping.com stock for Fiero | |
| 5 | Bros. occurred on February 12, 1998, | |
| 6 | March 6, 1998, March 11, 1998, and | |
| 7 | March 16, 1998. | |
| 8 | | |
| 9 | | |
| 10 | 67. Fiero Bros. was had no knowledge of | **App. Ex. 23**, J. Fiero Supp. Aff., ¶44. |
| 11 | Perle and Waldron's fraudulent scheme | |
| 12 | to manipulate the market for IBUY stock, | |
| 13 | or to execute a short squeeze, when | |
| 14 | Fiero Bros. sold IBUY short in the marjket. | |
| 15 | | |
| 16 | 64. In the course of their manipulative | **App. Ex. 1**, FN. 48; **App. Ex. 23**, J. |
| 17 | scheme to keep the price of | Fiero Supp. Aff., ¶¶ 17-37, Exs. 1-12 |
| 18 | Shopping.com stock artificially high and | |
| 19 | to control the public float, from mid- | |
| 20 | February 1998 through mid-March 1998, | |
| 21 | Perle, Waldron, and the Wedbush | |
| 22 | Defendants jointly conducted numerous | |
| 23 | illegal buy-ins above the already | |
| 24 | manipulated market price. Despite the | |
| 25 | fact that Waldron had  insufficient capital | |
| 26 | with which to purchase additional shares, | |
| 27 | such that Wedbush Morgan had no | |
| 28 | obligation to (and did not) honor | |

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | Waldron's trades, Waldron's purchases of | |
| 3 | additional shares in the days leading up | |
| 4 | to March 13, 1998 exposed Wedbush | |
| 5 | Morgan to a potential loss of over | |
| 6 | $2,000,000. Edward Wedbush discussed | |
| 7 | Waldron's net capital dilemma with Cery | |
| 8 | Perle, and determined that: (a) Wedbush | |
| 9 | Morgan temporarily would cease to clear | |
| 10 | for Waldron; and (b) Wedbush Morgan | |
| 11 | would conduct series of additional illegal, | |
| 12 | above-market buy-ins for Waldron, to fight | |
| 13 | the short sellers and reduce Wedbush | |
| 14 | Morgan's exposure to loss. | |
| 15 | | |
| 16 | 65. Pursuant to this plan, from March 16, | **App. Ex. 1,** Finding No. 49; |
| 17 | 1998 through May 27, 1998, Waldron, | **App. Ex. 2,** Conclusion Nos. 5-6; |
| 18 | Perle and the Wedbush Defendants | **App. Ex. 21,** |
| 19 | illegally bought-in Corsair's and Al's | |
| 20 | Shopping.com shares at prices up to | |
| 21 | $13.25 more than the weighted average | |
| 22 | market price of Shopping.com on the | |
| 23 | date(s) of sale. | |
| 24 | | |
| 25 | 66.  Pursuant to this plan, from February | **App. Ex 23**, J Fiero Supp. Aff., ¶¶17-43, |
| 26 | 12, 1998 through March 19, 1998, | Ex.s. 1-6, 9-13. |
| 27 | Walderon, Perle and the Wedbush | |
| 28 | Defendants illegally bought in Fiero Bros.' | |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

1  **UNCONTROVERTED FACTS**          **SUPPORTING EVIDENCE**

2  IBUY shares at prices up to $14.00 more

3  thatn the market price of Shopping.com

4  stock on the date(s) of the sale, while

5  Waldron controlled over 90% of the

6  outstanding stock in IBUY.

7

8  67. Because Perle and Waldron          **App. Ex. 23**, J. Fiero Supp. Aff., ¶¶ 49-

9  controlled the supply of IBUY stock,      55

10  directly or through friendly accounts, it    Exs. 11-15

11  could and did force the buy-ins of IBUY

12  stock against the short sellers, at prices

13  controlled by Waldron and Perle.

14

15  68.Because Perle and Waldron          **App. Ex. 23**, J. Fiero Supp. Aff., ¶¶ 56-

16  controlled more than 90% of the        59, Exs. 16-18.

17  outstanding shares of IBUY stock, short-

18  sellers, such as Corsair and Fiero Bros.

19  could not cover their shorts, causing the

20  "fail to delivers," and leading to the buy-

21  ins by Waldron and Wedbush.

22

23

24  69. Corsair and Al sued Perle, Waldron,    **App. Ex. 1,** Finding No. 50.;

25  and the Wedbush Defendants in District    **App. Ex. 18**, p.199-216.

26  Court for violations of Section 10(b) and

27  Rule 10b-5. and Section 20(a) of the

28  1934 Act, and for violations of state

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | | |
| 2 | securities laws and Business & | |
| 3 | Professions Code section 17200, | |
| 4 | resulting from Perle's scheme to profit | |
| 5 | from manipulation of the market price for | |
| 6 | Shopping.com stock (the "Corsair District | |
| 7 | Court action"). | |
| 8 | | |
| 9 | 70. A default judgment for $685,825.00 | **App. Ex. 1**, Finding 59. |
| 10 | was entered against Perle for Corsair | |
| 11 | and Al on May 26, 2000 in the Corsair | |
| 12 | District Court action. | |
| 13 | | |
| 14 | 71. Perle did not appeal, and his time to | |
| 15 | do so expired in the Corsair District Court | **App . Ex. 1**, Finding 60. |
| 16 | action. | |
| 17 | | |
| 18 | 72. The default judgment against Perle in | |
| 19 | the Corsair District Court Action was | **App. Ex. 1**, Finding 61. |
| 20 | based on Judge Rafeedie's findings that | |
| 21 | Perle had violated the antifraud | |
| 22 | provisions of the federal securities laws, | |
| 23 | particularly Section 10(b) of the 1934 Act | |
| 24 | and Rule l0b-5 thereunder. | |
| 25 | | |
| 26 | 73. The Clerk in the Corsair District Court | **App. Ex. 1,** Finding 62. |
| 27 | Action had previously entered Waldron's | |
| 28 | default on March 2,2000, due to | |

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | Waldron's failure to respond to the | |
| 3 | complaint or otherwise defend against | |
| 4 | the Corsair District Court action. | |
| 5 | | |
| 6 | 74. On or about May 25,2001, Perle filed | **App. Ex. 1,** Finding 63. |
| 7 | a voluntary Chapter 7 petition in the | |
| 8 | Central District of California. Among the | |
| 9 | debts for which Perle sought to discharge | |
| 10 | was the judgment obtained by Corsair | |
| 11 | and Al against him in the Corsair District | |
| 12 | Court Action. | |
| 13 | | |
| 14 | 75. On August 28, 2001, Corsair filed an | **App. Ex. 1,** Finding No. 64. |
| 15 | adversary complaint (the "Corsair | |
| 16 | Adversary Complaint") objecting to the | |
| 17 | dischargeability of this debt, on the | |
| 18 | grounds that Perle's conduct giving rise to | |
| 19 | the debt was fraudulent, willful and | |
| 20 | malicious, larcenous and a breach of | |
| 21 | fiduciary duty, such that its discharge | |
| 22 | should be denied under 11 U.S.C. §523 | |
| 23 | ("Section 523"). | |
| 24 | | |
| 25 | 76. Judge Bluebond determined that the | **App. Ex. 1,** Conclusion No. 1. |
| 26 | Court had jurisdiction over the Corsair | |
| 27 | Adversary Proceeding pursuant to 28 | |
| 28 | U.S.C. §1334. | |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 77. In the Corsair Adversary Proceeding Judge Bluebond took judicial notice of the documents from the proceedings entitled Securities and Exchange Commission v. Waldron & Co., Inc. and Cery B. Perle, United States District Court for the Central District of California, Southern Division, Case No. SACV 98-824 LHM (Anx) subsequently Case No. CB 99-3299 DT (Ex.); Corsair Capital Partners, L.P. and Alternative Investments, L.P. v. Wedbush Morgan Securities, Inc., Waldron & Co., Inc., Cery Perle, Edward Wedbush, Wendy A. Rea and Robert Paset, United States District Court for the Central District of California, Case No. SA CV 99-469 AHS (Anx), subsequently Case No. 99-4670-ER (BQRx); and In the Matter of the Arbitration Among Fiero Brothers, Inc. vs. Waldron & Co., Cery Perle, Ed Harris, Wedbush Morgan Securities, Inc. and Ed Wedbush, NASD Regulation, Inc. Arbitration No. 98-00587 as requested and submitted by the Corsair Plaintiffs in support of their motion for summary judgment in the | **App. Ex. 1,** Conclusion No. 2. |

| | |
|---|---|
| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |

1  **UNCONTROVERTED FACTS**                    **SUPPORTING EVIDENCE**

2  Corsair Adversary Proceeding.

3

4  78.  In the Corsair Adversary Proceeding       **App. Ex. 1,** Conclusion No. 3.

5  Judge Bluebond ruled that the doctrine of

6  collateral estoppel, or issue preclusion

7  applies in nondischargeability

8  proceedings such as Corsair Plaintiffs'

9  Adversary Proceedings.

10

11  79.  In the Corsair Adversary Proceeding,      **App. Ex. 1,** Conclusion No. 4.

12  Judge Bluebond ruled that federal

13  principles of  collateral estoppel applied

14  to prior judgements that are rendered by

15  a federal court, such as the judgment

16  against Perle in the SEC Enforcement

17  action and, the default judgment against

18  Perle in the Corsair District Court action.

19

20  80.  Based on the Uncontroverted Facts        **App. Ex. 1,** Conclusion No. 6.

21  before it, this Court in the Corsair

22  Adversary Proceeding, Judge Bluebond

23  presiding, found that the default judgment

24  against Perle in Corsair's District Court

25  action established the willful, intentional

26  nature of Perle's conduct,  as well as the

27  fact that it violated Section 10(b)  and

28  Rule l0b-5, California state securities

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
| --- | --- |

laws.

**A**

81. Judge Bluebond also concluded that **pp. Ex. 1,** Conclusion 7.
the default judgment against Perle in the
Corsair District Court Action established
as true each of the allegations of their
complaint in that action, and the fact of
Perle's liability on each of Corsair'
claims.

82. Judge Bluebond also concluded that **App. Ex. 1,** Conclusion No. 6.
the judgments against Perle in the SEC
Action established that Perle's conduct
was intentional and fraudulent, as well as
the fact that it violated Section 10(b) and
Rule 10b-5, and other federal securities
laws.

83. Judge Bluebond also concluded that **App. Ex. 1,** Conclusion No. 13.
the judgments against Perle in the
Corsair District Court Action and in the
SEC Action, and the findings of fact and
conclusions of law entered on the SEC's
summary judgment motion in the SEC
Action, establish that Perle's conduct was
"willful" within the meaning of 11 U.S.C.
§523(a)(6).

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

1

2

3   84.  Judge Bluebond also concluded that     **App. Ex. 1,** Conclusion No. 14.

4   the judgments against Perle in the

5   Corsair District Court Action and in the

6   SEC Action, and the findings of fact and

7   conclusions of law entered on the SEC's

8   summary judgment motion in the SEC

9   Action, establish that Perle's conduct was

10   "malicious" within the meaning of 11

11   U.S.C. §523(a)(6).

12

13   85.  Judge Bluebond further ruled that the     **App. Ex. 1,** Conclusion No. 15.

14   judgments against Perle in the Corsair

15   District Court Action, and in the SEC

16   Action, and the  findings of fact and

17   conclusions of law entered  on the SEC's

18   summary judgment motion in the SEC

19   Action and on  Corsair's Summary

20   Judgment Motion in the Corsair

21   Adversary Proceeding, establish  that

22   Perle's inflicted a "willful and malicious

23   injury"  upon the Corsair Plaintiffs and/or

24   their property,  within the meaning of 11

25   U.S.C. §523(a)(6).

26

27   86. Judge Bluebond also determined that     **App. Ex. 1,** Conclusion No. 16.

28   the issues which the Corsair Plaintiffs

---

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

1 **UNCONTROVERTED FACTS**

2 sought to avoid relitigating in the Corsair

3 Adversary Proceeding with regard to

4 §523(a)(6) were actually  litigated against

5 Perle in the Corsair District Court Action,

6 and the SEC Action.

7

8 87.  Judge Bluebond also determined    **App. Ex. 1,** Conclusion No. 17.

9 that the issues which the Corsair Plaintiffs

10 sought to avoid relitigating in the Corsair

11 Adversary Proceeding  with regard to

12 §523(a)(6) were necessarily decided

13 against Perle in the Corsair District Court

14 Action, and the SEC Action.

15

16 88. Judge Bluebond further concluded    **App. Ex. 1,** Conclusion No. 18.

17 that the default judgment entered against

18 Perle and in favor of Corsair Plaintiffs in

19 the action entitled <u>Corsair Capital</u>

20 <u>Partners. L.P. and Alternative</u>

21 <u>Investments. L.P. v. Wedbush Morgan</u>

22 <u>Securities. Inc., Waldron & Co.. Inc., Cery</u>

23 <u>Perle, Edward Wedbush, Wendy A. Rea</u>

24 <u>and Robert Paset</u>, United States District

25 Court for the Central District of California,

26 Case No. SA CV 99- 469 AHS (Anx),

27 subsequently Case No. 99-4670-ER

28 (BQRx), is entitled to collateral estoppel

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|

2 effect.

3

4 89. Judge Bluebond further concluded **App. Ex. 19,** Conclusion No. 19.

5 that the judgment entered against Perle

6 and in favor of the SEC in the SEC Action

7 entitled (Securities and Exchange

8 Commission v. Waldron & Co., Inc. and

9 Cery B. Perle, United States District

10 Court for the Central District of California,

11 Southern Division, Case No. SACV 98-

12 824 LHM (ANx), subsequently Case No.

13 CV 99-3299 DT (Ex)), is entitled to

14 collateral estoppel effect.

15

16 90. Judge Bluebond further concluded **App. Ex. 1,** Conclusion No. 23.

17 that the judgments against Perle in the

18 Corsair District Court Action  and in the

19 SEC Action, and the findings of fact and

20 conclusions of law entered on the SEC's

21 summary judgment motion in the SEC

22 Action establish that Perle's inflicted a

23 "willful and malicious injury" upon the

24 Corsair Plaintiffs and/or its property,

25 within the meaning of 11 U.S.C.

26 §523(a)(6), and that the Corsair Plaintiffs'

27 judgment in the Corsair District Court

28 Action is therefore excepted from

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
| 2 | discharge in bankruptcy pursuant to 11 | |
| 3 | U.S.C. §523(a)(6), and that the Corsair | |
| 4 | Plaintiffs are entitled to summary | |
| 5 | judgment in their favor as to this claim in | |
| 6 | the Corsair Adversary Proceeding. | |
| 7 | | |
| 8 | 91. Judge Bluebond then determined that | **App. Ex. 1,** Conclusion No. 24. |
| 9 | Judgment was to be entered in Corsair | |
| 10 | Capital, L.P.'s and Alternative Investment, | |
| 11 | L.P.'s favor against Perle in the Corsair | |
| 12 | Adversary Proceeding. | |
| 13 | | |
| 14 | | |
| 15 | 92. On September 5, 2002, the Court in | **App. Ex. 2,** Findings Nos. 166-170, |
| 16 | the Corsair Adversary Proceeding | Ex. 19 ¶¶ 9-10, Ex. 7; Ex. 20 |
| 17 | entered final summary judgment in favor | **App. Ex. 3** ¶ 21 |
| 18 | of the Corsair Plaintiffs, stating that on | |
| 19 | May 14, 2002 the Corsair Plaintiffs filed | |
| 20 | and served their motion for summary | |
| 21 | judgment or, alternatively, partial | |
| 22 | summary judgment against Defendant | |
| 23 | Cery Bradley Perle pursuant to Federal | |
| 24 | Rule of Civil Procedure 56, applicable to | |
| 25 | bankruptcy through Bankruptcy Rule | |
| 26 | 7056, and that on June 18, 2002, the | |
| 27 | Court requested that the Corsair Plaintiffs | |
| 28 | provide certain supplemental information | |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

1

2  and briefing, and permitted Perle to file

3  an opposition to the supplemental

4  information and briefing, and the Corsair

5  Plaintiffs to file a reply to the opposition,

6  and that this Court, having considered the

7  Corsair Plaintiffs' Statement of

8  Uncontroverted Facts and Conclusions of

9  Law, Opening Memorandum of Points

10  and Authorities, Appendix of Evidence,

11  Request for Judicial Notice, and all other

12  evidence, memoranda and arguments

13  presented in favor of and in opposition to

14  the Corsair Plaintiffs' motion, and having

15  made  its separate findings of fact and

16  conclusions of law entered August 14,

17  2002, the Court ordered, adjudged and

18  decreed that the Corsair Plaintiffs' motion

19  for summary judgment is granted

20  pursuant to 11 U.S.C. §523(a)(6), and

21  that the judgment against Perle in the

22  action entitled <u>Corsair Capital Partners,</u>

23  <u>L.P. and Alternative Investments, L.P. v.</u>

24  <u>Wedbush Morgan Securities, Inc.,</u>

25  <u>Waldron & Co., Inc., Cery Perle, Edward</u>

26  <u>Wedbush, Wendy A. Rea and Robert</u>

27  <u>Paset, United States District Court for the</u>

28  <u>Central District of California</u>, Case No.

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | CV 99-4670-ER (BQRx), in the amount of | |
| 3 | $685,825 is and shall not be discharged | |
| 4 | in bankruptcy. | |
| 5 | 93.  On April 29, 2003,  the Bankruptcy | **App. Ex. 15** |
| 6 | Appellate Panel of the Ninth Circuit, | |
| 7 | issued a Order of Dismissal of Perle's | |
| 8 | appeal of Judge Bluebond's Judgment in | |
| 9 | the Corsair Adversary roceeding for lack | |
| 10 | of prosecution. | |
| 11 | | |
| 12 | 94.  On July 11, 2003, the Corsair | **App. Ex. 16** |
| 13 | Adversary Proceeding was closed. | |
| 14 | | |
| 15 | 95.  Fiero Bros. suffered from the same | **App. Ex. 23,** J. Fiero Supp. Aff., ¶¶ 64- |
| 16 | misconduct and fraud as did Corsair | 71, Exs. 19-26. |
| 17 | Capital Partners, which fraud and | |
| 18 | misconduct was the subject of the SEC | |
| 19 | action against Perle and Waldron. | |
| 20 | | |
| 21 | 95. On March 1, 2006, Fiero Bros. | **App. Ex. 11** (Ex. E to FAC), |
| 22 | assigned, transferred and set over to | Affidavit of Alfonso Fiero dated |
| 23 | Alfonso Fiero all rights, title and interest in | December 18, 2008, ¶2, Ex. 1; |
| 24 | the judgment awarded to Fiero Bros. in | J. Fiero Aff., ¶26, Ex. 9. |
| 25 | the case of Fiero Brothers, Inc. v. Cery | |
| 26 | Perle, the judgment being entered on | |
| 27 | April 6, 1999 in the Superior Court of | |
| 28 | California, Los Angeles County. | |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 96. On October 10, 2006, Plaintiff filed his Complaint for Non-dischargeability with the United States Bankruptcy Court, Central District of California, seeking a determination that the judgment debt evidenced by the Judgment entered in favor Fiero Bros. in the Los Angeles Superior Court action was not discharged against Cery Perle in or by the Perle Bankruptcy. | Affidavit of Leslie Schwaebe Akins, Esq. dated September 30, 2009 ("Akins Aff."), ¶ 23. |
| 97. Many of the documents used by Corsair Capital Partners, L.P. to obtain summary judgment against Perle in the Corsair Adversary Proceeding are for the same transactions, i.e., forced buy-ins that Waldron and Perle effected against Fiero Bros., and the documents used to prove both cases are the same. | Akins Aff., ¶ 22; **App. Ex. 21.** |
| 97. Defendant Perle moved to dismiss Plaintiff's action. Plaintiff was granted leave to amend, and on January 8, 2007 filed his First Amended Complaint. | Akins Aff., ¶ 24. |
| 98. Defendant again moved to dismiss | Akins Aff., ¶¶25, 26. |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1 | | |
| 2 | Plaintiff's First Amended Complaint on | |
| 3 | January 31, 2007.  This motion was | |
| 4 | granted in part and denied as to Plaintiff's | |
| 5 | Third Cause of Action for Determination | |
| 6 | of Dischargeability of Claim for wilful | |
| 7 | misconduct under Section 11 U.S.C. | |
| 8 | Section 523(a)(6), and Plaintiff's Fourth | |
| 9 | Cause of Action for Determination of | |
| 10 | Dischargeability of Claim under 11 | |
| 11 | U.S.C. Section 523(a)(19). | |
| 12 | | |
| 13 | 99. Perle and Waldron's fraudulent buy-in | J. Fiero Aff., ¶8, 13; |
| 14 | activities and market manipulation with | **App. Ex. 1,** Findings Nos. 27-41, and 47- |
| 15 | respect to Shopping.com were ongoing, | 49, 170;  **App. Ex. 2** Finding Nos. 166- |
| 16 | and encompassed the time period during | 173; **App. Ex. 3.** |
| 17 | which fraudulent buy-ins of Shopping.com | |
| 18 | stock were effected against Fiero Bros. | |
| 19 | | |
| 20 | 100. In total between November 25, 1997 | **App. Ex. 2,** Finding No. 166-173 |
| 21 | and March 23, 1998 Waldron realized | **App. Ex. 1,** Finding No. 41 |
| 22 | more than $4.1 million in profits from its | |
| 23 | activity in Shopping.com stock. | |
| 24 | | |
| 25 | 101. The buy-ins effectuated against | App. Ex. 23, ¶¶ 17-37, Exs 1-6 |
| 26 | Fiero Bros. on February 12, 1998, March | |
| 27 | 6, 1998, March 11, 1998, March 16, 1998 | |
| 28 | and March 19, 1998 were above the | |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|

1  **UNCONTROVERTED FACTS**          **SUPPORTING EVIDENCE**

2  market price for IBUY stock.

3

4  102. Fiero Bros. suffered damages in     **App. Ex. 23**, ¶¶ 39-43, Exs. 9-11

5  excess of $350,000 as a result of

6  Waldron and Perle's buy-in of IBUY stock

7  against Fiero Bros.

8

9  103. Waldron and Perle knew that Fiero     **App. Ex. 22.**, Exs. 2 and 3.

10  Bros. was short IBUY stock when it

11  executed the short sales.

12

13  104. Fiero Bros. had no knowledge of     App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 44-

14  Waldron and Perle's fraudulent scheme     48, Ex. 12.

15  when it shorted IBUY stock, and later

16  learned and tried to stop the buy-ins at

17  above market prices.

18

19  105. Due to Perle's Control of the market     App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 49-

20  for IBUY stock on the open market, Fiero     59, Exs. 11-18.

21  Bros could not cover its short sales and

22  were bought in by Perle and Waldron at

23  grossly inflated prices.

24

25  106. Fiero Bros. claims against Perle     App. Ex. 23, J. Fiero Aff., ¶¶ 39,  63

26  were fully litigated and necessarily

27  decided in the NASD Arbitration.

28

1

## CONCLUSIONS OF LAW

2    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1334.

3    2.    The Court takes judicial notice of the documents from the proceedings entitled
4  Securities and Exchange Commission v. Waldron & Co., Inc. and Cery B. Perle, United States
5  District Court for the Central District of California, Southern Division, Case No. SACV 98-824
6  LHM (ANx), subsequently Case No. CV 99-3299 DT (Ex); Corsair Capital Partners. L.P. and
7  Alternative Investments, L.P. v. Wedbush Morgan Securities. Inc., Waldron & Co., Inc., Cery
8  Perle, Edward Wedbush, Wendy A. Rea and Robert Paset, United States District Court for
9  the Central District of California, Case No. SA CV 99-469 AHS (ANx), subsequently Case No.
10 99-4670-ER (BQRx); In the Matter of the Arbitration Among Fiero Brothers. Inc. vs. Waldron
11 & Co., Cery Perle, Ed Harris, Wedbush Morgan Securities. Inc. and Ed Wedbush, NASD
12 Regulation Inc. Arbitration No. 98-00587, Corsair Capital Partners, L.P. and Alternative
13 Investments, L.P. v. Cery Bradley Perle, United States Bankruptcy Court for the Central District
14 of California- Los Angeles Division, Adversary No. AD01-02219 (Case No. LA 01-26497
15 BB), and Fiero Brothers, Inc. vs. Waldron & Co., Inc., Cery Perle, Ed Harris, Wedbush Morgan
16 Securities. Inc., Ed Wedbush. and Key West Securities. Inc., Los Angeles Superior Court
17 Case No. BS055659, as requested by Plaintiffs and submitted by them in support of their
18 motion for summary judgment.

19    3.    The doctrine of collateral estoppel, or issue preclusion, applies in
20 nondischargeability proceedings such as Plaintiff's adversary proceeding. Grogan v. Garner,
21 498 U.S. 279, 284-285 n. 11 (1991).

22    4.    "Federal principles of collateral estoppel apply to prior judgments that are
23 rendered by a federal court," such as the judgments against Perle in the SEC's enforcement
24 action, the default judgment against Perle in Corsair Capital, L.P. and Alternative Investments,
25 L.P.'s District Court action, the judgment in Corsair Capital, L.P. and Alternative Investments,
26 L.P.'s Adversary Proceeding in the Bankruptcy Court, and the judgment in Fiero Brothers, Inc.
27 against Cery B. Perle in the Los Angeles Superior Court Case No. BS055659. In re
28 Antonakis, 207 B.R. 201, 204 (E.D. Cal. 1997); McCart v. Jordana [In re Jordana), 232 B.R.

469, 475-476 (10th Cir. 1999), aff'd, 216 F.3d 1087 (10th Cir. 2000).

5.    The NASD Arbitration Award rendered in favor of Fiero Brothers, Inc. against Perle established as true each of the allegations of the Second Amended Statement of Claim filed in the NASD Arbitration action in case no. 98-00587, which arbitration award was confirmed by the Los Angeles Superior Court, Case No. BS055659, and the fact of Perle's liability on each of Fiero Brothers, Inc.'s claims asserted therein.

6.    The judgement against Perle in Fiero Brothers, Inc.'s Los Angeles Superior Court action, Case No. BS 055659, which confirmed the Arbitration Award rendered against Perle in Fiero Brothers NASD Arbitration action, case no. 98-00587, establish that Perle inflicted a "willful, intentional nature of Perle's conduct, as well as the fact that Perle's conduct violated Section 10(b) and Rule l0b-5, California state securities laws.

7.    The issues which Plaintiff seeks to avoid relitigating in this action with regard to §523(a)(6) were actually litigated against Perle in Corsair's District Court action, in Corsair's Adversary action in bankruptcy, in the SEC enforcement action, and in Fiero Brothers NASD arbitration proceeding, which arbitration award was confirmed into judgment by the Los Angeles Superior Court case no. BS 055659.

8.    The issues which Plaintiffs seek to avoid relitigating in this action with regard to §523(a)(6) were necessarily decided against Perle in Corsair's District Court action, Corsair's Adversary action in bankruptcy, in the SEC enforcement action, and in the Fiero Brothers NASD arbitration, which Statement of Decision was confirmed into judgment by the Los Angeles Superior Court case no. BS 055659.

9.    The issues which Plaintiff seeks to avoid relitigating in this action with regard to §523(19) were actually litigated against Perle in Corsair's District Court action, in Corsair's Adversary action in bankruptcy, in the SEC enforcement action, and in the Fiero Brothers NASD arbitration, which Statement of Decision and Award was confirmed into judgment by the Los Angeles Superior Court case no. BS 055659.

10.    The issues which Plaintiff seeks to avoid relitigating in this action with regard to §523(19) were actually decided against Perle in Corsair's District Court action, in Corsair's

1  Adversary action in bankruptcy, in the SEC enforcement action, and in the Fiero Brothers
2  NASD arbitration, which Statement of Decision and Award was confirmed into judgment by
3  the Los Angeles Superior Court case no. BS 055659.

4      11.    The default judgment entered against Perle and in favor of Plaintiffs in the
5  action entitled Corsair Capital Partners. L.P. and Alternative Investments. L.P. v. Wedbush
6  Morgan Securities. Inc., Waldron & Co.. Inc., Cery Perle, Edward Wedbush, Wendy A. Rea
7  and Robert Paset, United States District Court for the Central District of California, Case No.
8  SA CV 99- 469 AHS (ANx), subsequently Case No. 99-4670-ER (BQRx), is entitled to
9  collateral estoppel effect.

10     12.    The judgment entered against Perle and in favor of the SEC in the action
11 entitled Securities and Exchange Commission v. Waldron & Co., Inc. and Cery B. Perle,
12 United States District Court for the Central District of California, Southern Division, Case No.
13 SACV 98-824 LHM (ANx), subsequently Case No. CV 99-3299 DT (Ex), is entitled to
14 collateral estoppel effect.

15     13.    The judgment entered against Perle and in favor of the Corsair Capital Partners,
16 L.P. and Alternative Investments, L.P., in the Adversary action entitled Corsair Capital
17 Partners, L.P. and Alternative Investments, L.P v. Cery Bradley Perle., United States
18 Bankruptcy Court for the Central District of California- Los Angeles Division, Case No. AD01-
19 02219 (Case No. LA01-26497 BB), is entitled to collateral estoppel effect.

20     14.    The judgment entered against Perle and in favor of Fiero Brothers, Inc. in the
21 action entitled Fiero Brothers, Inc. v. Waldron & Co., Inc. Cery Perle, Ed Harris, Wedbush
22 Morgan Securities, Inc., Ed Wedbush, and Key West Securities, Los Angeles Superior Court
23 Case No. BS055659, is entitled to collateral estoppel effect.

24     15.    The judgments against Perle in Fiero Brothers, Inc.'s Los Angeles Superior
25 Court action, in Corsair's District Court action, in Corsair's Adversary action in bankruptcy,
26 and in the SEC enforcement action, and the findings of fact and conclusions of law entered
27 on the SEC's summary judgment motion and in Corsair's summary judgment motion, establish
28 that Perle's inflicted a "willful and malicious injury" upon Fiero Brothers and/or its property,

1  within the meaning of 11 U.S.C. §523(a)(6), and that Fiero Brothers judgment against him is

2  therefore excepted from discharge in bankruptcy pursuant to 11 U.S.C. §523(a)(6), and that

3  Plaintiff is entitled to summary judgment in his favor as to this claim.

4    16.    The judgments against Perle in Fiero Brothers, Inc.'s Los Angeles Superior

5  Court action (Case No. BS055659), in Corsair's District Court action and in the SEC

6  enforcement action, and the findings of fact and conclusions of law entered on the SEC's

7  summary judgment motion, and on Corsair's summary judgment motion in the Corsair

8  Adversary complaint filed in the Perle bankruptcy action before this Court, establish that Perle

9  incurred the judgment debt to Fiero Brothers, Inc. that was and is for (i) the violation of at least

10  one Federal securities law (as that term is defined in section 3(a)(47) of the Securities

11  Exchange Act of 1934 [15 USCS § 78c(a)(47)]), or rules or regulations promulgated under

12  such Federal or State securities laws; or (ii) common law fraud, deceit, or manipulation in

13  connection with the purchase or sale of any security; and (B) resulted, prior to the date on

14  which the petition for bankruptcy was filed by Perle, from (i) a judgment entered in any State

15  judicial proceeding within the meaning of 11 U.S.C. §523(a)(19), and that Fiero Brothers,

16  Inc.'s judgment against Perle is therefore excepted from discharge in bankruptcy pursuant to

17  11 U.S.C. §523(a)(19).

18    17.    Plaintiff is the assignee of the Judgment entered in favor of Fiero Brothers, Inc.

19  against Cery B. Perle and Waldron & Co., Inc. pursuant to the assignment dated March 1,

20  2006.

21    18.    Plaintiff, as the assignee of Fiero Brothers, Inc., is entitled to summary judgment

22  in this adversary proceeding.

23    19.    Judgment shall be entered in Plaintiff's favor consistent herewith.

24

25  DATED: _____, 2009

26

27                                        HONORABLE SHERI BLUEBOND

28

1

*Presented By:*

2

LESLIE SCHWAEBE AKINS, A.L.C.

3

4    By:

Leslie Schwaebe Akins

5    Attorneys for Plaintiff,
Alfonso Fiero

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re: Cery Bradley Perle, Debtor

Alfonso Fiero, v. Cery B. Perle
Case Number LA 01-26497-BB
Adv. No. 06-01971 BB

## PROOF OF SERVICE

STATE OF CALIFORNIA )
                    )
COUNTY OF SAN DIEGO )

I am employed in the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is P.O. Box 131253, Carlsbad, California 92013.

On **September 30, 2009**, I served **[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFF ALFONSO FIERO, FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT** on the interested parties in said action, by delivering it as follows:

 X  Service will be accomplished through an NEF for parties and counsel who are registered CM/ECF users.

**Electronic Mail Notice List**

**The following is the list of parties who are
currently on the list to receive e-mail notices
for this case.**

Darrell Palmer:   darrell.palmer@cox.net

United States Trustee (LA):
ustpregion16.la.ecf@usdoj.gov

Leslie S Akins:   lsa@stockmarketlaw.com

Pamela Labruyere:   pamela@sgsslaw.com

I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **September 30, 2009**, at Carlsbad, California.

Megaen Ericson

## PROOF OF SERVICE