Leslie Schwaebe Akins (SBN 138678)
LESLIE SCHWAEBE AKINS, A LAW CORPORATION
7157 Argonauta Way
Carlsbad, CA 92009
Tel: 760-931-2920
Fax: 760-603-0547

Attorney for Plaintiff and Creditor
Alfonso Fiero

## UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CERY BRADLEY PERLE,<br><br>Debtor.<br>_____<br><br>ALFONSO FIERO,<br><br>Plaintiffs,<br><br>vs.<br><br>CERY BRADLEY PERLE,<br><br>Defendant.<br>_____ | CASE NO. LA 01-26497-BB<br><br>[Chapter 7]<br><br>Adv. No.: ADV-06-01971-BB<br><br>The Honorable S. Bluebond - 626<br><br>**AFFIDAVIT OF JOHN FIERO FILED IN SUPPORT OF PLAINTIFF ALFONSO FIERO' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: November 10, 2009<br>TIME: 2:00 p.m.<br>CTRM: 1475<br><br>DATE FILED: September 13, 2006<br>DISCOVERY CUT OFF: January 30, 2009<br>TRIAL DATE: None set |

John J. Fiero, being duly sworn, deposes and says:

    1.    I am a resident of the state of New Jersey, and am the former President and Director of Fiero Brothers, Inc. ("Fiero Bros."). I am also the uncle of Alfonso Fiero, the plaintiff and assignee of the Assignment of Judgment dated March 1, 2006 by Fiero Brothers, Inc. I have personal knowledge as to all facts set forth in my affidavit and could competently testify thereto if called upon to do so.

---

AFFIDAVIT OF JOHN J. FIERO

1

2.    Fiero Bros. is a judgment creditor of the debtor and defendant Cery B. Perle ("Perle"), which is reflected in the Judgment entered April 6, 1999 by the Los Angeles Superior Court in the case entitled *Fiero Brothers, Inc. v. Waldron & Co. and Cery Perle*, Los Angeles Superior Court Case No. BS055659 ("the Judgment"). The Judgment resulted from the Los Angeles Superior Court granting Fiero Brothers, Inc.'s Petition to Confirm Arbitration Award for $350,000 which award was rendered in the National Association of Securities Dealers ("NASD") arbitration proceeding entitled Fiero Brothers, Inc. v. Waldron & Co., Inc. and Cery Perle, NASD Case No. 98-00587 ("NASD Arbitration"). I was the President and Director of Fiero Bros. at the time the conduct occurred giving rise to Fiero Bros. NASD Action against Perle, his former broker-dealer Waldron & Co., Inc. ("Waldron"), Wedbush, Morgan, Securities, Inc. ("Wedbush"), and certain of their principals. I was also the corporate representative of Fiero Bros. that testified at the NASD Arbitration. I am knowledgeable of the trading activities that gave rise to Fiero Bros. claims against Perle and Waldron as alleged in the NASD Arbitration, as well as the same activities by Perle and Waldron against other market makers in the same time period, as discussed herein below.

3.    At the relevant times, Fiero Bros. was a registered securities broker-dealer located in New York City, New York, and was a member of the National Association of Securities Dealers, Inc. ("NASD"). Among the activities engaged in by Fiero Bros. during the time that it operated was that it acted as a market maker for numerous securities trading on the NASDAQ system. As a market maker, Fiero Bros. was responsible for maintaining an orderly, non-volatile market in the securities issue for which it made a market, and was obligated to purchase or sell specific amounts of securities in each issue, for its own account, as market conditions warranted.

4.    In order to accomplish this purpose, Fiero Bros. at times had to sell shares that it did not own, which in the securities industry is commonly referred to as taking a "short" position in a stock. The practice of shorting a stock is a lawful practice under the

1  laws of the United States.

2. 5. Fiero Bros. cleared its securities trades through King Financial Services, Inc. ("King") which was a member of the National Securities Clearing Corporation ("NSCC"). King, in turn, cleared its trades including the Fiero Bros. trades, through the NSCC, which is the major clearing house for securities transactions on the major stock exchanges in the United States.

6. At all times relevant to this matter, Fiero Bros. made a market in the shares of Shopping.com, ticker symbol "IBUY" (hereafter, "Shopping.com" or "IBUY"). Trades made by Fiero Bros in the shares of IBUY were cleared through NSCC and subject to NSCC's continuous net settlement process.

7. In 1997, Waldron was a registered broker-dealer and NASD member. Waldron was the lead underwriter of IBUY shares when Shopping.com went public in late November 1997. Waldron was the primary market maker in IBUY shares. Wedbush, another registered broker-dealer and NASD member acted as the clearing agent for Waldron.

8. On information and belief, since the time of Shopping.com's initial public offering in November 1997, Waldron supported the price of IBUY shares through artificial market making activity, illegal "parking" arrangements, improper guarantees against loss and fraudulent buy-in activities. These facts were proven through the testimony of Waldron's officers and directors, the affidavits of former Waldron employees, and documents obtained by the SEC in the SEC Action it had filed against Perle and Waldron, all of which was used to support the SEC's motion for summary judgment against Waldron and Perle, and later used by Corsair Capital Partners, LP ("Corsair") and Alternative Investments, LP ("AI") in their District Court lawsuit and a subsequent adversary proceeding filed against Perle. Corsair's and AI's nondischargeability adversary proceeding filed as Central District Adversary Proceeding No. AD 01-02219, was heard by Bankruptcy Judge Sherry Bluebond ("Corsair Adversary Proceeding").

AFFIDAVIT OF JOHN J. FIERO
3

003

1  Following Corsair's motion for summary judgment, Judge Bluebond made findings of fact
2  and conclusions of law based on the same conduct by Perle which resulted in the NASD
3  Award and resulting Judgment in favor of the Fiero Bros. Judge Bluebond determined,
4  that Perle's conduct at issue in both the instant action and in the Cosair Adversary
5  Proceeding, resulted in the debt due Corsair/AI being nondischargeable under 11 U.S.C.
6  Section 523(a)(6). Fiero Bros. was a victim of Perle's market manipulation in exactly the
7  same manner as Corsair/AI. Fiero Bros. was a victim of Perle's buy-ins at artificially high
8  prices on the following dates as follows:

| DATE | NO. OF SHARES | MARKET PRICE | BUY-IN PRICE |
|---|---|---|---|
| 2/12/98 | 35,350 | 21 5/8-21 3/4 | 25 1/8 |
| 3/6/98 | 25,455 | 25 15/16-25 31/32 | 29 |
| 3/11/98 | 36,428 | 29 1/4-29 5/16 | 36 |
| 3/16/98 | 38,050 | 21 13/16-21 7/8 | 26 ½ |

14   9.   Based upon my experience in the securities industry, I am knowledgeable
15  and experienced in the operational aspects of securities purchase and settlement of
16  transactions, including the NASD's rules related thereto. By way of background, in a
17  short sale, a "buy-in" transaction occurs where a seller is unable to deliver to its buyer on
18  the settlement date or thereafter the shares of the stock it has sold. In that instance, the
19  buyer of the stock may, after making demand upon the seller, buy the shares from a third
20  party elsewhere in the market. If the shares are purchased at a price higher than the
21  price at which they were sold to the buyer by the seller, the difference is charged to the
22  seller's account. This procedure of purchasing the shares from a third party is referred
23  to as "buying in" for the seller's account because, in terms of mechanics, the original
24  buyer is causing the original seller to buy the shares from the third party and to resell
25  them to the buyer at the original contract price.
26  ///
27  ///
28

10. "Buying-in" is regulated by the rules of the NASD, which require the party who causes the buy-in to occur to justify the price of the shares "bought-in." Specifically, Rules 11810(c)(1(C) of the NASD Uniform Practice Code ("the Code") provides in pertinent part, as follows:

> [where a buy-in is executed] members must be prepared to defend the price at which the "buy-in" is executed relative tot he current market at the time of the "buy-in."

11. The NASD rules contemplate and require that shares bought-in for the account of the seller be purchased at the "best available market", and a seller who is subject to a buy-in transaction relies upon compliance with the rules by others in taking a short position." It was determined in the NASD Arbitration that Fiero Bros was damaged in the amount of $350,000 as a result of Perle's manipulation of the stock.

12. The buy-in referred to above in Paragraph 8 occurred during the time that it has already been determined in the SEC Action and by Judge Bluebond in the Corsair Adversary Proceeding that Perle ran a manipulative scheme to keep the price of Shopping.com stock artificially high and to control the public float, that is from mid-February 1998 through mid-March 1998. This finding is contained in Judge Bluebond's Findings of Fact and Conclusions of Law in the Corsair Adversary Proceeding entered August 14, 2002, finding of fact number 48 ("Judge Bluebond's Findings"). Judge Bluebond went on to find that Perle "conducted numerous illegal buy-ins above the already manipulated market price," (Judge Bluebond's Finding No. 48). The Fiero Bros' buy-ins described in Paragraph 8 above are some of the "numerous illegal buy-ins" she would have been referring to.

13. Between February 12, 1998 and March 16, 1998, Fiero Bros. had a sizeable short position in Shopping.com stock. Further, at the time Fiero Bros. established its short position in IBUY stock, it reasonably relied upon and contemplated that, in the process of a buy-in of IBUY stock, the other party or parties to the transaction would comply with

---

AFFIDAVIT OF JOHN J. FIERO

5

the NASD rules concerning the buying-in of stock, as well as all other applicable rules, laws and regulations. Nevertheless, Fiero Bros. became a victim of fraudulent buy-in activity of IBUY stock by Perle through Waldron. During this time frame, Perle coordinated buys of IBUY stock among "friendly" market makers in order to drive up the price of IBUY stock. Once the price of IBUY stock was artificially high, Perle executed the buy-ins of IBUY stock above the artificial price he created. This is why Fiero Bros. was awarded $350,000 in the NASD Arbitration and was the stated reason Judge Bluebond determined that the Corsair/AI debt was nondischargeable in the Corsair Adversary Proceeding. As the evidence proved in the SEC Action against Perle and Waldron, and as it again proved in the Corsair Adversary Proceeding, Perle engaged in the same fraudulent "buy-in" misconduct of IBUY stock for other market makers of IBUY stock, including Fiero Bros. The manipulative scheme described in Judge Bluebond's Findings and the Court in the SEC action is the exact same scheme that damaged the Fiero Bros., just as it did Corsair and AI. During the relevant time period, Fiero Bros was acting in exactly the same manner and capacity as was Corsair and AI as was damaged by Perle in exactly the same way that caused Judge Bluebond to find the Corsair/AI claim to be nondischargeable.

14. Based on the defendants' misconduct, on February 17, 1998, Fiero Bros. filed its Statement of Claim before NASD Regulation, Inc. ("NASD"), in Arbitration No. 98-00587, <u>In the Matter of the Arbitration Among Fiero Brothers, Inc. vs. Waldron & Co., Cery Perle, Ed Harris, Wedbush Morgan Securities, Inc. and Ed Wedbush</u>, alleging that defendants engaged in fraudulent, artificial market-making activity, parking arrangements, guarantees against loss, and fraudulent purchasing or "buy-in" of Shopping.comstock on February 12, 1998.

15. On or about March 18, 1998, Fiero Bros. filed its Second Amended Statement of Claim ("Fiero SOC") in the NASD Arbitration. The Fiero SOC expanded the dates and number of fraudulent "buy-ins" to include February 12, March 6, 11 and 16,

---
AFFIDAVIT OF JOHN J. FIERO
6

1998. Attached hereto as Exhibit "1" and incorporated herein is a true and correct of the Fiero SOC.

16. The Fiero SOC further alleged that Perle and Waldron with others manipulated the price of the stock by (1) controlling the supply, purchasing large blocks of stock to reduce the amount of shares available for public trading, executing unauthorized trades and parking stock in customer and fictitious accounts, and restricting customers from selling Shopping.com stock in their accounts; (2) creating artificial demand for the stock, by issuing a false and misleading press release, and while Waldron was acting as a market maker, raising the bid for the stock without economic justification, and (3) executing a short squeeze by fraudulently buying-ins Shopping.com stock at above-market prices. Exhibit "1" hereto.

17. Following hearings which took place over September 1-4, 1998, NASD Regulation, Inc. in Case No. 98-00587 issued an Award finding Waldron, Perle and Ed Harris jointly and severally liable to Fiero Bros. for $350,000.00 in compensatory damages, and $50,000 against respondent Wedbush, Morgan Securities, Inc. ("Wedbush") in compensatory damages. Attached hereto as Exhibit "2" and incorporated herein is a true and correct copy of the Award in the NASD Arbitration.

18. On February 10, 1999, Fiero Bros. filed a Petition to Confirm the Arbitration Award in the Los Angeles Superior Court, Los Angeles Superior Court Case No BS055659 ("the Petition"). Attached hereto as Exhibit "3" and incorporated herein is a true and correct copy of the Petition.

19. The Petition stated that on or about February 17, 1998, Fiero Brothers submitted to arbitration before the NASD a controversy against respondents Cery Perle and others that arose in connection with the sale of securities, as set forth in the Second Amended Statement of Claim, Case No. 98-00587. (Exhibit "3" hereto, ¶ 2.)

///

///

20. The Petition reflected that on September 17, 1998, the arbitrators in the NASD Arbitration made their Award in favor of Fiero Bros., determining all issues submitted to them, and awarded Fiero Bros. the sum of $350,000 in compensatory damages against Waldron, Perle and Ed Harris, and the sum of $50,000 against Wedbush (Exhibit "3" hereto, ¶6). Fiero Bros. was represented in the Petition, by its California counsel, The Law Offices of Mark Steven Kessler.

21. On March 17, 1999, Fiero Bros.' Petition came on for hearing. Attached hereto as Exhibit "4" is a true and correct copy of the Minutes of the March 17, 1999 8:30 am hearing on the Petition, with accompanying Ruling on Petition to Confirm Arbitration Award as to Respondents Waldron & Co., Inc., Cery Perle, Wedbush Morgan Securities, Inc., Ed Wedbush, and Key West Securities, Inc., and to Vacate Award as to Respondent Ed Wedbush. The Ruling indicates that the Court received no opposition to the Petition. (Exhibit "4".)

22. On April 6, 1999, the Los Angeles Superior Court, in Case No. BS 055659 issued its Order Confirming Fiero Bros.'s Arbitration Award. Attached hereto as Exhibit "5" and incorporated herein is a true and correct copy of the Court's April 6, 1998 Order.

23. On April 6, 1999 the Los Angeles Superior Court, in Case No. BS5055659 also entered Judgment in favor of Fiero Bros. against Perle and Waldron, in the amount of $350,000 in compensatory damages. Attached hereto as Exhibit "6" and incorporated herein is a true and correct copy of the April 6, 1999 Judgment entered in favor of Fiero Bros.

24. On April 20, 1999, Fiero Bros. filed and served its Notice of Entry of Judgment in the Los Angeles Superior Court in case no. BS055659 on all parties. Attached hereto as Exhibit "7" and incorporated herein is a true and correct copy of the April 20, 1999 Notice of Entry of Judgment.

///

///

---

AFFIDAVIT OF JOHN J. FIERO

25. On January 4, 2000, the Abstract of Judgment was filed in the Los Angeles Superior Court, Case No. BS 055659 by Fiero Bros. through its attorney Peter D. Lepiscopo, Esq. of Law Offices of Peter D. Lepiscopo. Attached hereto as Exhibit "8" and incorporated herein is a true and correct copy of the January 4, 2000 Abstract of Judgment in Los Angeles Superior Court Case No. BS 055659.

26. On March 1, 2006 Fiero Bros. assigned the Judgment to Alfonso Fiero for good and valuable consideration. Attached hereto as Exhibit "9" and incorporated herein is a true and correct copy of the March 1, 2006 Assignment.

_____
John J. Fiero,

Sworn to me a Notary Public, this 18 day of December, 2008

_____
Notary Public

BRIAN D. GRAIFMAN
NOTARY PUBLIC, State of New York
No. 02GR4967055
Qualified in Westchester County
Commission Expires 05/21/2002

AFFIDAVIT OF JOHN J. FIERO
9

Cery Bradley Perle, Debtor

Alfonso Fiero, v. Cery B. Perle
Case Number LA 01-26497-BB
Adv. No. 06-01971 BB

## PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       )
COUNTY OF SAN DIEGO    )

    I am employed in the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is P.O. Box 131253, Carlsbad, California 92013.

    On **September 30, 2009**, I served **AFFIDAVIT OF JOHN FIERO FILED IN SUPPORT OF PLAINTIFF ALFONSO FIERO'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT WITH EXHIBITS 1-9** on the interested parties in said action, by delivering it as follows:

__X__   Service will be accomplished through an NEF for parties and counsel who are registered CM/ECF users.

**Electronic Mail Notice List**

**The following is the list of parties who are currently on the list to receive e-mail notices for this case.**

Darrell Palmer:   darrell.palmer@cox.net

United States Trustee (LA):
ustpregion16.la.ecf@usdoj.gov

Leslie S Akins:   lsa@stockmarketlaw.com

Pamela Labruyere:   pamela@sgsslaw.com


I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **September 30, 2009**, at Carlsbad, California.

                                                               Megaen Ericson

## PROOF OF SERVICE