Leslie Schwaebe Akins (Bar No. 138678)
LESLIE SCHWAEBE AKINS, A LAW CORPORATION
7157 Argonauta Way
Carlsbad, California 92009
(760) 931-2920 telephone
(760) 603-0547 facsimile

Attorney for Plaintiff
Alfonso Fiero

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re | CASE NO. LA 01-26497-BB |
| CERY BRADLEY PERLE, | [Chapter 7] |
| Debtor; | Adv. No. 06-01971-BB |
|  | The Honorable S. Bluebond- 626 |

**PLAINTIFF ALFONSO FIERO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CERY B. PERLE'S MOTION FOR SUMMARY JUDGMENT**

ALFONSO FIERO,

        Plaintiff,

v.

CERY B. PERLE, an individual,

        Defendant,

**DATE:  November 10, 2009
TIME:  2:00 p.m.
CTRM: 1475**

DATE FILED: September 13, 2006
DISCOVERY CUT OFF: July 31, 2009
TRIAL DATE: None set

/ / /

/ / /

/ / /

/ / /

/ / /

# **TABLE OF CONTENTS**

I.     INTRODUCTION  ................................................  2

II.    FACTUAL BACKGROUND  .......................................  2

III.   STANDARDS FOR DETERMINING SUMMARY JUDGMENT  .............  6

IV.    LEGAL ARGUMENT  ...........................................  6

A.     Plaintiff's Complaint is Timely Under Federal
       Rules of Bankruptcy Procedure 4007(c) ........................  6

B.     Perle's Duty to Provide Accurate Disclosure
       Regarding Creditors and his Liabilities ...........................  7

C.     Perle's Failure to List Fiero Bros.' Debt on his
       Bankruptcy Schedules and Creditors Matrix has Deprived
       Fiero Bros. and its Assignor of Basic Due Process Notice ...........  8

       (i)    Perle's Schedule E Disclosure to NASD/NASD Regulation
              Was Not Intended to Provide Notice to Fiero Brothers ..........  8

       (ii)   Perle' Schedule F Disclosure of Corsair MPR Law
              Practice is Not Sufficient Notice to Impute Martin
              Russo's Knowledge to Fiero Brothers ......................  10

              a.  Martin Russo Did Not Receive Formal Notice of
                  Perle's Bankruptcy ...................................  10

              b.  Martin Russo's Knowledge Regarding Perle's
                  Bankruptcy Should Not Be Imputed to Fiero Brothers
                  or its Assignee. ....................................  12

D.     Plaintiff's Complaint for Determination of Nondischargeability
       Is Not Barred By the Doctrine of Latches ........................  17

V. CONCLUSION ....................................................  20

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 6

4

5

*Anderson v. General American Life Insurance Co.,*
141 F.2d 898 (6th Cir.), cert. denied, 323 U.S. 798,
89 L. Ed. 637, 65 S. Ct. 554 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6

*Brinson v. Linda Rose Joint Venture*
53 F. 3d 1044, 1049 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

8

*Chanute Prod. Credit Ass'n v. Schicke*
(In re Schicke), 290 B.R. 792, 801 (B.A.P. 10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 16

9

*Council of Better Bus. Bureaus, Inc. v. Better Business Bureau,*
1999 U.S. Dist. LEXIS 6511 (N.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10

11

*Curtis, Collins & Holbrook Co. v. United States,*
262 U.S. 215, 67 L. Ed. 956, 43 S. Ct. 570 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12

*Ford Motor Credit Company v. Weaver,*
680 F.2d 451, 457 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

13

14

*In re Adams,*
734 F.2d 1094 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15

*In re Botello,*
86 Fed. Appx. 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16

17

*In re Dewalt,*
961 F.2d 848, 851 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18

*In re Fauchier,*
71 B.R. 212, 215 (9th Cir. BAP 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19

20

*In re Fulton,*
3 B.R. 600, 603-04 (Bankr. E.D. Mich. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21

*In re Glenwood Med. Group, Ltd.,*
211 B.R. 282, 285 (Bankr. N.D. Ill. 1997)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22

23

*In re Hicks,*
184 B.R. 954, 957 (C.D.CA 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

24

*In re O'Shaughnessy,*
252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25

26

*In re Linzer,*
264 B.R. at 243, 248-249 (Bankr. E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . 11-12, 14-16

27

*In re Price*
871 F. 2d 97-99 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 16

28

*In re Rickets,*
80 B.R. 495 (9th Cir., BAP 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Sedlacek,*
325 B.R. 202 (E.D. Tn 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

*Lewis v. United States,*
144 F.3d 1220, 1222 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Maldonado v. Ramirez,*
37 B.R. 219, 221 (D.V.I. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ponce v. Graceous Navigation, Inc.,*
126 Cal. App. 3d 823, 829 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stevedore Services of America v. Prudential Lines, Inc.,*
1986 AMC 2743, 2747 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wyatt Tech. Corp. v. Malvern Instruments Incorporated*
2009 U.S. Dist. Lexis 66097
Copy L. Rep. (CCH) P29, 787 (C.D.C.A. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL STATUTES**

11 U.S.C. §523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C. §523 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. §523 (a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

11 U.S.C. §523 (a)(2), (4), (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

11 U.S.C. §523 (a)(2), (4)5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11 U.S.C. §523 (a)(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. §523 (a)(19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 U.S.C. §523(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

11 U.S.C.A. §521 (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL RULES**

Fed Rules of Bk. Procedure Rule 4007(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 18

Fed Rules of Bk. Procedure Rule 1007(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed Rules of Bk. Procedure Local Rule 1007-2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed Rules of Bk. Procedure Local Rule 1009-1(a) . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Federal Rule of Civil Procedure 56c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 56e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Plaintiff Alfonso Fiero hereby opposes Defendant Cery Perle's Motion for Summary Judgment as Follows:

## I.

## INTRODUCTION

Perle seeks to obtain summary judgment on his third affirmative defense for statute of limitations, and fourth affirmative defense for laches, arguing that neither Plaintiff nor his assignor Fiero Bros., Inc. ("Fiero Bros.") filed the necessary non-dischargeability complaint within the statutory time frame, and that Plaintiff unreasonably delayed filing the dischargeability complaint after Fiero Bros. received notice of the bankruptcy. In order to obtain the requested relief, Defendant seeks to transfer the onus of notice and disclosure from himself to others, namely to Fiero Bros. and its former attorney Martin Russo, even though he did not consider Fiero Bros. a creditor and therefore not worthy of notice of the bankruptcy.

When the evidence is examined it becomes patently evident that the any delay in filing the non-dischargeability complaint regarding the Fiero Bros.' Judgment lies solely with the Defendant himself. Equally clear is that whatever notice received by Fiero Bros.' former attorney Martin Russo regarding Defendant's bankruptcy, and when received, is not imputed to Fiero Brothers. Since Fiero Bros. was not informed of Defendant's bankruptcy until it attempted to enforce the Judgment in early 2006, the non-dischargeability complaint is timely, and not barred by the statute of limitations or the doctrine of laches. For the reasons set forth herein, Plaintiff contends that, at the very least, a triable issue of material fact remains on these affirmative defenses, that mandates the denial of Defendants' Motion.

## II.

## FACTUAL BACKGROUND

In September 1998, Fiero Bros., Inc. received an arbitration award in the amount of $350,000 against Defendant, his former firm Waldron & Co., Inc., and Ed Harris, and an additional $50,000 against Wedbush Morgan Securities, Inc. ("Wedbush") in its NASD Arbitration, Case No. 98-00587 (the "NASD Arbitration")(Perle Exhibit 1). Fiero Bros. was

---

OPPOSITION POINTS AND AUTHORITIES RE: MSJ                    CASE NO. LA 01-26497-BB

1   represented in the NASD Arbitration by New York attorney, Martin Russo, Esq.; Perle and

2   Waldron were represented in the NASD Arbitration by H. Thomas Fehn and Elizabeth Lowry

3   of Fields, Fehn and Sherwin. (Perle Exhibit 1) Fiero Bros. also filed an action in the Los

4   Angeles Superior Court for fraud and injunctive relief in conjunction with the NASD

5   Arbitration.(Exhibit 7) In the State Court action, Fiero Bros. was represented by Mark

6   Shipow, Esq. Of Whitman, Breed, Abbott & Morgan, LLP, located in Los Angeles. (Exhibit 7,

7   J. Fiero Aff. ¶12.) Waldron was represented again by Fields, Fehn and Sherwin.(J.Fiero Aff.

8   ¶12.)

9          After Fiero Bros. obtained the NASD Arbitration Award in its favor, its relationship with

10   Mr. Russo terminated in all respects related to the NASD Arbitration involving Perle and

11   Waldron.(Affidavit of John Fiero, ¶3.)[1] Fiero Bros. then engaged California attorney Mark

12   Kessler, Esq. to confirm its NASD Arbitration award to Judgment.(J.Fiero Aff. ¶10.) In

13   February 1999, Fiero Bros., through its attorney Mark Kessler, Esq. filed and served upon

14   Perle's counsel H. Thomas Fehn a Petition to Confirm the Arbitration Award.(J. Fiero Aff.

15   ¶11.) This Petition was granted, and on April 6, 1999, Fiero Bros. filed its Judgment, and

16   served its Notice of Entry of Judgment on Perle's counsel H. Thomas Fehn. Thereafter, in

17   January 2000, Fiero Bros., through its new attorney Peter Lepiscopo, Esq., filed an Abstract

18   of Judgment, which was served both on Cery Perle and his attorney H. Thomas Fehn, at their

19   office located at 11755 Wilshire Blvd., 15th Floor, Los Angeles, CA 90025.

20          On May 25, 2001, Perle filed a Petition for Chapter 7 Bankruptcy, the required

21   Schedules, and a Verified Creditors Matrix. Perle also filed a Statement of Related Case

22   which indicated that this was not his first bankruptcy. (Exhibit 23.) This Statement disclosed

23   that Perle had previously filed a Chapter 7 Bankruptcy in August 1993. However, Fiero Bros.

24   was omitted from both the Schedules and the Creditors Matrix. Perle did however include in

25

26          [1] Perle and Waldron was represented by H. Thomas Fehn and Gregory Sherwin
27   in the multitude of litigation and NASD arbitration proceedings related to their market
     manipulation, forced buyins, and fraudulent actions concerning Shopping.com stock.
28   (See, Exhibits 8, 21).

1   Schedule F and the Creditors Matrix at least four other NASD claimants that had filed NASD

2   arbitrations and obtained NASD arbitration awards against him. (See, Exhibit 25, Perle

3   Exhibit 3.) Perle also included in Schedule F and the Creditors Matrix a number of attorneys

4   who represented investors who had filed lawsuits against Perle in State and Federal Courts.

5   (See, Exhibit 25.) As to each of these disclosures, Perle indicated that the debt was incurred

6   in 1999 or 2000 for "Waldron Accounts." Perle also disclosed that these claims were

7   "contingent" and the amounts were "unknown", even where the claimants or plaintiffs had

8   obtained judgments against Perle. (Exhibits 25.) Perle also identified "Corsair Capital

9   Partners, LP, MPR Law Practice, 60 East 42nd Street, #843, New York NY, 10165." At the

10  time Perle filed for bankruptcy, Perle already had a Default Judgment in the amount of

11  $685,825 entered against him by Senior United States District Judge Rafeedie in favor of

12  Corsair and AI in their District Court lawsuit which, asserted virtually the same claims as that

13  asserted by Fiero Bros. in the NASD Arbitration filed some three years earlier. (Perle Exhibit

14  12.)

15      Further, in Schedule E, Perle disclosed as a creditor the "NASD/NASD Regulation,"

16  indicating the debt was incurred for 1999 Arbitration, that it was a "contingent" debt, in an

17  "unknown" amount.(Perle Exhibit 2.) However, this disclosure made no reference to any

18  particular arbitration case, case number, or party to the arbitration. (Perle Exhibit 2.)

19  Schedule E also disclosed as a creditor the Securities and Exchange Commission ("SEC"),

20  with a claim no. 9-3391. Claim No. 9-3391 relates to the $110,000 fine issued against Perle

21  by the U.S. District Court in the SEC District Court action filed by the SEC in 1998 against

22  Perle and Waldron for securities fraud related to Shopping.com. However, that too was

23  identified as a "contingent" debt of "unknown" amount. (Exhibit 26.)

24      Additionally, on the Chapter 7 Petition prepared by Perle, he disclosed his liabilities

25  as less than $500,000. However, the amounts of the NASD Arbitration Awards, Judgments,

26  and fines exceed $4,000,000.(Exhibit 15, 17 and 25, Perle Exhibit 1)

27  / / /

28

1    By Defendants' own admission, he did not consider Fiero Bros. a creditor, and hence

2    did not include Fiero Bros. on any schedule or the Creditors Matrix. (Perel Decl., ¶6, Exhibit

3    24, Deposition of Cery Perle ("Perle Depo"), p.70, lns 6-8; p. 71, lns 5-21; 80, lns 8-11.)

4    Further, Perle did not disclose his bankruptcy to Fiero Bros. or later to Plaintiff. (Ex. 24, p.

5    80:25-81:16.) Perle did not notify Fiero Bros. in care of MPR. (Exhibit 24, p. 83:1-3.)

6    Sometime after Perle's bankruptcy was filed, Mr. Russo was approached by Jeff Scott,

7    Esq., his co-counsel in the District Court lawsuit entitled *Corsair Capital Partners, LP*

8    *("Corsair") and Alternative Investments, LP ("AI") v. Cery Perle*, U.S.D.C. case number CV-

9    99-469 AHS(ANx) (the "Corsair Action"), which resulted in a default judgment against Perle,

10    and Judgment in the amount of $685,825 against Perle. (Perle Exhibit 12.) Mr. Scott asked

11    Mr. Russo to participate in the adversary proceeding against Perle in Perle's bankruptcy

12    case. This is how Mr. Russo learned about the Perle bankruptcy. (Exhibit 14, p.52:19-53:19.)

13    Mr. Russo did not receive any notice from Perle or the Bankruptcy Court. (Exhibit 14, id.) As

14    it turned out, Mr. Russo had moved his law practice from the address listed by Perle on his

15    Schedule F and on his Creditors Matrix some six months before. (Exhibit 14, p. 55:8-22.) It

16    is unknown when Mr. Russo received notice from Mr. Scott of the Perle bankruptcy.

17    On August 8, 2001, Jeff Scott, Esq. filed with the court a Request for Special Notice

18    as attorney for Corsair and AI. (Exhibit 21.) Additionally, on August 28, 1998, Jeff Scott, Esq.

19    executed an adversary proceeding complaint on behalf of Corsair and AI and filed it with the

20    court. (Perle Ex. 12.) On November 2, 1998, Martin Russo filed the Application to Admit Non-

21    Resident Attorney to Appear in Particular Action, which this court granted on November 5,

22    1998. (Exhibits 20 and 27.)

23    In late 2005, as Fiero Bros. was ending its business affairs, and without knowing that

24    Perle had filed for Bankruptcy in 2001 or received a discharge, it initiated actions to collect

25    on its Judgment. In January 2006, Fiero Bros. attempted to levy its Defendant's assets to

26    satisfy its Judgment. In February 2006, Fiero Bros. was informed that Defendant had filed

27    bankruptcy in 2001. No further action was taken against Perle regarding the Judgment.

28

1       Since Fiero Bros. was dissolving, it assigned the Judgment to Plaintiff in March 2006.

2   Thereafter, in September 2006, Plaintiff moved to reopen Defendant's bankruptcy in order for

3   Plaintiff to file a complaint for non-dischargeability of the assigned Judgment, which was

4   granted. Plaintiff then filed his complaint.

5

### III.

### STANDARDS FOR DETERMINING SUMMARY JUDGMENT.

7       Summary judgment is only appropriate where "the pleadings, the discovery and

8   disclosure materials on file, and any affidavits show that there is no genuine issue as to any

9   material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P.

10   56(c). *Wyatt Tech. Corp. v. Malvern Instruments Incorporated*, 2009 U.S. Dist. LEXIS

11   66097; Copy. L. Rep. (CCH) P29,787 (C.D.CA. 2009). A genuine issue exists if "the

12   evidence is such that a reasonable jury could return a verdict for the nonmoving party"; and

13   material facts are those "that might affect the outcome of the suit under the governing law."

14   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

15   (1986). A party opposing summary judgment must come forward with specific facts,

16   supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(e);

17   *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Summary

18   judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is

19   such that a reasonable jury could return a verdict for the nonmoving party. *Anderson, supra*,

20   477 U.S. at 249. In making this determination, all reasonable inferences from the evidence

21   must be drawn in favor of the nonmoving party. *Anderson, supra*, 477 U.S. at 255.

22

### IV.

### LEGAL ARGUMENT

24  A.   PLAINTIFF'S COMPLAINT IS TIMELY UNDER FEDERAL RULES OF BANKRUPTCY

25   PROCEDURE 4007(c).

26       Rule 4007(c) of the Federal Rules of Bankruptcy Procedure states that "[E]xcept as

27   provided in subdivision (d),a complaint to determine the dischargeability of a debt under

28

---

OPPOSITION POINTS AND AUTHORITIES RE: MSJ         CASE NO. LA 01-26497-BB

1 §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors

2 under § 341(a)." F.R.Bank.P. 4007(c). However, by the terms of 11 U.S.C. Section

3 523(a)(3)(B) this statutory time limitation applies only to claims brought under Section

4 523(a)(2), (4), or (6).[2] It does not apply to complaint for dischargeability of a debt under

5 §523(a)(19). See, *In re Price* 871 F.2d 97, 98-99 (9th Cir. 1989) ("for a debt of a type

6 specified in Title 11 of the United States Code, Section 523(a)(2), (4), or (6), to be

7 discharged, . . ."); see also, *In re Sedlacek*, 325 B.R. 202 (E.D. Tn 2005)("of the debts set

8 forth in § 523(a), only those arising under subsections (2), (4), (6), and (15) require the party

9 seeking a determination of dischargeability to file a complaint within the prescribed sixty days

10 from the date that the meeting of creditors was first set.")  Therefore, at the very least,

11 Plaintiff's claim under 11 U.S.C. § 523(a)(19) is not barred by Rule 4007(c).

12      Moreover, Plaintiff asserts that his two remaining claims in his adversary complaint are

13 not barred by Rule 4007(c) or the doctrine of laches because Plaintiff's assignor did not

14 receive notice of Perle's bankruptcy until late 2005.

15 B.    PERLE'S DUTY TO PROVIDE ACCURATE DISCLOSURE REGARDING

16 CREDITORS AND HIS LIABILITIES.

17      All debtors are required to file a list of creditors and their addresses and a schedule

18 of liabilities. 11 U.S.C.A. § 521(1); Fed. R. Bankr. P. 1007(a); Local B.R. 1007-2(d) ("It shall

19 be the responsibility of the debtor or such other person as the court may order to ensure that

20 the Master Mailing List, Equity Holders' Mailing List, and the electronic file containing the

21 Master Mailing List and Equity Holder's Mailing List are complete and correct.")  This

22

23      [2]  11 USC § 523(a)(3)(B) states that a discharge under section 727 does not discharge an
24 individual debtor from any debt--
         ***
25      (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the
      debtor, of the creditor to whom such debt is owed, in time to permit--
26
         (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely
27      filing of a proof of claim and timely request for a determination of dischargeability of such
         debt under one of such paragraphs, unless such creditor had notice or actual knowledge of
28      the case in time for such timely filing and request.

OPPOSITION POINTS AND AUTHORITIES RE: MSJ                    CASE NO. LA 01-26497-BB

7

1   obligation to list all creditors' names and addresses is part of the debtor's duty of full

2   disclosure that is the quid pro quo for the fresh start provided by the discharge. *In re Hicks,*

3   184 B.R. 954, 957 (C.D.CA 1995); see also *In re Adams,* 734 F.2d 1094 (5th Cir. 1984)

4   (omission of creditor from mailing matrix is just as impermissible as omission from formal

5   schedules).

6        "The purpose of requiring a debtor to list creditors with their proper mailing addresses

7   is to afford those creditors basic due process notice." *In re O'Shaughnessy,* 252 B.R. 722,

8   729 (Bankr. N.D. III. 2000) (quoting *In re Glenwood Med. Group, Ltd.,* 211 B.R. 282, 285

9   (Bankr. N.D. III. 1997)).  Due process of law mandates notice be given to a creditor whose

10  property rights are being affected so that he may have his day in court. *In re Fauchier,* 71 B.R.

11  212, 215 (9th Cir. BAP 1987).  The burden is on the debtors to use reasonable diligence in

12  completing their schedules and lists. *Id at 215.*

13  C.    PERLE'S FAILURE TO LIST FIERO BROS.' DEBT ON HIS BANKRUPTCY

14  SCHEDULES AND CREDITORS MATRIX HAS DEPRIVED FIERO BROS. AND ITS

15  ASSIGNOR OF BASIC DUE PROCESS NOTICE.

16        (i)    PERLE'S SCHEDULE E DISCLOSURE TO NASD/ NASD REGULATION

17               WAS NOT INTENDED TO PROVIDE NOTICE TO FIERO BROTHERS.

18        Perle's Motion states that he believed the debt arising from the Fiero Bros.' NASD

19  Arbitration was owed to NASD/ NASD which is why he stated on Schedule E an "NASD/

20  NASD Regulation" claim based on a "1999 Arbitration" in an "unknown" amount. (Perle Decl.,

21  ¶ 6.) By Perle's own admission, this disclosure was not intended to provide notice that Fiero

22  Bros. was a creditor or that any debt arising from the NASD Arbitration was owed to Fiero

23  Bros.

24        Further, Perle's justification of his disclosure to NASD is contradicted by the evidence.

25  First, Perle admitted at his April 2008 deposition that he considered the NASD disclosure to

26  be just a "catch all" for any outstanding NASD arbitrations that he did not list in Schedule F.

27  (Exhibit 24, p. 80:12-19.)

28

1    Second, Perle's NASD disclosure is wholly deficient as it omits any reference to
2    arbitration case numbers, parties to the arbitration, or arbitration award amount- all of which
3    would be known to Perle at the time he prepared the bankruptcy schedules.[3] Moreover, at the
4    time Perle prepared Schedule E, two additional NASD/ NASD Disciplinary actions were filed
5    against him; one which resulted in his expulsion and another which was pending at the time
6    he filed his Chapter 7 Petition, which resulted in a $30,000 fine in June 2001. (See, Exhibits
7    18 and 19.)  Neither one of these NASD matters is disclosed on Schedule E.

8    Further, Perle's "belief" that NASD was the creditor is contradicted by his own
9    Schedule F, wherein Perle identifies as creditors the claimants who filed NASD arbitrations
10    in 1998 and 1999 and obtained NASD arbitration awards against Perle prior to filing
11    bankrupty. These include: 1) Cynthia and Timothy Green (Oswald & Yap are counsel), where
12    Perle reported 1999 claim from "Waldron Account", when debt was the result of a 1999
13    arbitration that resulted in arbitration award against Perle for $65,000 (See, Exhibit 17), and
14    2) Mansoor Ghaneeian (Borchard & Nichol, APC are counsel) where Perle reported 1999
15    claim from "Waldron Account", when debt of unknown amount was the result of NASD
16    arbitration for case filed in 1998. (See, Exhibit 16.)[4]

17    The foregoing examination of the evidence establishes that Perle's disclosure of the
18    debt owed to NASD/NASD Regulation on a 1999 arbitration, resulting in unknown amount can
19    not be construed as sufficient disclosure of the debt resulting from Fiero Bros.' NASD
20    Arbitration or notice that Fiero Bros. is a creditor with a claim against Perle in the bankruptcy.
21    Simply, to Perle, Fiero Bros. was not a creditor nor entitled to notice of his bankruptcy.
22    / / /
23    / / /
24

25    [3] Note the two largest NASD arbitration awards (Fiero Bros. for $350,000 against Perle, and
      Pierce/ Fisk (NASD Arbitration No. No. 98-03798) in the amount of $4,267,459 were both issued prior to
26    Perle's bankruptcy, but both omitted from Schedules E and F and from the Creditor Matrix. (See, Perle
      Exhibits 1 and 3; Plaintiff Exhibits 17and 25.)

27    [4] Perle also omitted from Schedule F the Default Judgement amount entered against him in the
28    Corsair District Court action in the amount of $685,825 on May 26,2000.  (Perle Exhibit 12.)  Instead, Perle
      disclosed the debt as "contingent" and the amount "unknown." (Exhibit 25.)

1  (ii)  <u>PERLE' SCHEDULE F DISCLOSURE OF CORSAIR MPR LAW PRACTICE IS</u>

2  <u>NOT SUFFICIENT NOTICE TO IMPUTE MARTIN RUSSO'S KNOWLEDGE TO</u>

3  <u>FIERO BROTHERS.</u>

4  It is undisputed that Defendant did not list Fiero Bros. on Schedule E or F or on the

5  Creditors Matrix (Ex. 25, ) nor inform Fiero Brothers directly (Ex. 24, p.70:6-8, p.71:5-21, and

6  80:8-11), nor include any direct debt owed to Fiero Bros. (Perle testified the debt evidenced

7  by the NASD Award was owed to NASD.)  Nevertheless, with all these omissions and

8  misbeliefs that the NASD is the true creditor, Perle nevertheless asserts that Fiero Bros. had

9  notice because he listed "Corsair Capital Partner MPR Law Practice 60 East 42nd St., #843,

10  New York NY 10165" on the Creditor Matrix.  Plaintiff disagrees.

11  a.  <u>MARTIN RUSSO DID NOT RECEIVE FORMAL NOTICE OF PERLE'S</u>

12  <u>BANKRUPTCY.</u>

13  Perle asserts that because he included MPR on the Creditor Matrix and on Schedule

14  F for Corsair Capital Partner, that he received notice of the notice of 341(a) meeting of

15  creditors sent by the court for June 29, 2001. (Perle Exhibit 4.)[5]  First, there is no evidence

16  before the court regarding the alleged service by mail, as Perle has merely provided the court

17  with a partial docket showing the date that the notice was purportedly mailed.  That is

18  insufficient in and of itself.  Moreover, the timely and proper service of notice of a bankruptcy

19  raises a rebuttable presumption that a creditor received the notice. *In re Botello*, 86 Fed.

20  Appx. 330; *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998).  This presumption

21  can be rebutted, however, by presenting evidence that the addressee did not receive the

22  notice.

23  At Mr. Russo's December 2008 deposition, he testified to the following facts:

24  1.  Mr. Russo did not receive notice from the court of Perle's bankruptcy.

25  2.  Mr. Russo testified he learned of Perle's bankruptcy from Jeff Scott, Esq. of

26  Greenberg Traurig's Los Angeles office, his former co-counsel in the Corsair

27

28  [5]  Defendant's evidence of service is the Court Docket in the Perle bankruptcy matter. (Perle Exhibit 4.)  Defendant does not include a copy of the Certificate of Mail.

1          and Al District Court lawsuit against Perle. Specifically, Mr. Scott informed him

2          of the bankruptcy and requested his assistance in representing Corsair and Al

3          in an adversary proceeding against Perle. (Ex. 14, Russo Depo. P.52:19-

4          53:19.)

5    3.    Mr. Russo had moved his office from 60 East 42nd Street, #843, New York NY

6          10165 in December 2000 to Peekskill, N Y (Exhibit 14, Russo Depo. p. 55:8-

7          22) and

8    4.    The Notice of Discharge served in March 2002 shows service on MPR's

9          Peekskill, NY address. (Exhibit 29.)

10   Clearly, the foregoing evidence is sufficient to rebut the presumption that Mr. Russo received

11   the Court' notice from the court of Perle's bankruptcy or the Notice of 341(a) Meeting.

12   Defendant's citation to *In re Rickets*, 80 B.R. 495 (9th Cir., BAP 1987) is distinguishable.  In

13   that case, the debtor directly told the creditor's attorney that he was filing bankruptcy. In this

14   case, Perle merely included MPR Law Practice on Schedule F and the Creditor Matrix for

15   another creditor, Corsair; there were no direct communications with Mr. Russo.

16        What is not clear is when Mr. Russo received informal notice of Perle's bankruptcy, and

17   whether he had time to file a complaint to determine dischargeability or request an extension.

18   He does not recall when he had his conversation with Mr. Scott referenced above. However,

19   we do know that on August 8, 2001, Jeff Scott, Esq. filed a Request for Special Notice as

20   attorney for Corsair and Al. (Exhibit 28.) Further, the evidence is that it was Mr. Scott and not

21   Mr. Russo that signed the Corsair adversary complaint and filed the same on August 28,

22   2001. We also know that Mr. Russo did not appear in the Corsair/ Al adversary proceeding

23   until November 2, 2001 when he filed the Application for Non-Resident Attorney to Appear in

24   Particular Action with the court, which was approved three days later on November 5, 2001.

25   (See, Exhibits 20 and 27.)

26        In *In re Dewalt*, 961 F.2d 848, 851 (9th Cir. 1992) the court held that in the great

27   majority of cases, 30 days advance knowledge of the case is both necessary and sufficient

28   to satisfy section 523(a)(3)(B).  See also, *In re Linzer*, 264 B.R. 243 (Bankr. E.D.N.Y.

OPPOSITION POINTS AND AUTHORITIES RE: MSJ                          CASE NO. LA 01-26497-BB

1  2001)(held, notice of a pending bankruptcy case nine days before the expiration of the

2  deadline to file nondischargeability complaints is inadequate.) There is no evidence that Mr.

3  Russo received notice of Perle's bankruptcy at least 30 days prior to August 28, 2001.

4      Given Mr. Russo's testimony that he received no formal notice, and only heard about

5  Perle's bankruptcy and the disclosure of Corsair and AI as creditors from Mr. Scott, then Mr.

6  Russo, not having the bankruptcy schedules or creditor matrix, would not know whether Fiero

7  Bros. was disclosed in the bankruptcy materials. Further, since his involvement in the Fiero

8  Bros. NASD Arbitration ended in 1998, he was not retained to nor involved in enforcing or

9  collecting on the debt against Perle, and Fiero Bros. retained other California attorneys to file

10  a state court proceeding to confirm the NASD Arbitration Award , obtain a Judgment and

11  collect on that Judgment, there was nothing to put Mr. Russo on notice that Fiero Bros. was

12  an undisclosed creditor missing from the Perle bankruptcy. Perle could have settled the debt

13  with Fiero Bros. pre-bankruptcy.[6] This is particularly true given Perle's own admission that he

14  believed the NASD was the creditor, and the debt was due to the NASD. (Perle Decl. ¶ 6.)

15      At the very least, a triable issue of material fact exists as to when Mr. Russo received

16  notice of Perle's bankruptcy, what he received and whether he could file either the discharge

17  complaint or extension.

18      b.    MARTIN RUSSO'S KNOWLEDGE REGARDING PERLE'S BANKRUPTCY

19            SHOULD NOT BE IMPUTED TO FIERO BROTHERS OR ITS ASSIGNEE.

20      Contrary to Perle's contention, Fiero Bros. did not was not informed of Perle's

21  bankruptcy until it attempted to collect on its judgment. Fiero Bros. was not informed when

22  notice was received by Mr. Russo.

23      Perle cites In re Price, 871 F.2d 97 (9th Cir. 1989), and In re Linzer, 264 B.R.243

24  (Bankr. E.D.N.Y. 2001) for the proposition that notice provided to a creditor's attorney is

25  sufficient to impute knowledge of the bankruptcy to the creditor. However, both cases are mis-

26  cited and omit pertinent language critical to the court's determination. In In re Price, 871 F.2d

27

28      [6] Although Mr. Russo was Fiero Bros.' attorney on a few lingering matters in 2001, Mr. John Fiero
        had not spoken to him since 2000. (Ex. 22, J. Fiero Depo., p. 78:16-79:8.)

OPPOSITION POINTS AND AUTHORITIES RE: MSJ                    CASE NO. LA 01-26497-BB

1  97,98 (9th Cir. 1989) is factually distinguishable and not persuasive.  In that case,

2  Plaintiff/creditor sued Defendant/Debtor in state court in regard to a contract dispute, alleging,

3  among other things, fraud.  Before the suit was resolved, Defendant  filed a petition for

4  Chapter 7 bankruptcy relief. Plaintiff was not listed on Debtor's schedule of creditors and thus

5  was not notified by the bankruptcy court of the bar date for the filing of dischargeability

6  complaints pursuant to section 523(c). There is no evidence of when Plaintiff was personally

7  notified of the bankruptcy proceeding. After the bankruptcy was filed, Plaintiff's counsel in the

8  state court suit against Defendant received notice from Defendant's counsel that a bankruptcy

9  petition had been filed and that the state court suit would be subject to the automatic stay. No

10  deadlines were noted and Plaintiff's counsel assumed that further notices would be

11  forthcoming. Plaintiffs' counsel took no action and, the deadline for the filing of dischargeability

12  complaints passed. One month later, Plaintiff filed a Motion for Leave to File Late Complaint

13  to Determine Dischargeability of Debt, claiming excusable neglect.  The bankruptcy court

14  granted the motion, but on appeal the decision was reversed, holding that notice to Plaintiff's

15  counsel constituted notice to Plaintiff, and that it was sufficient to apprize him of the pendency

16  of the dischargeability deadline date. On appeal to the Ninth Circuit, this decision was

17  affirmed:

18      Counsel for the appellant in the present appeal was given actual notice of the
bankruptcy proceedings in time to file a complaint, or at least to file a timely motion for

19      an extension of time. At that time he was pursuing the same claim in state court that the
appellant now seeks to have declared nondischargeable. We hold that **under these**

20      **circumstances** notice to counsel constituted notice to the appellant. See *Maldonado*
*v. Ramirez*, 37 B.R. 219, 221 (D.V.I. 1984) (notice to a creditor's attorney of a

21      bankruptcy filing is usually sufficient **if the attorney received knowledge of it while**
**representing his client in enforcing a claim against the bankrupt)** (citing 3 Collier

22      on Bankruptcy para. 523.15(5)(c) (15th ed. 1983)), rev'd on other grounds, 757 F.2d
48, 51 (3d Cir. 1985) (agreeing with premise, but finding the evidence insufficient to

23      indicate that counsel was enforcing the claim for the client when notice was received);
*In re Fulton*, 3 B.R. 600, 603-04 (Bankr. E.D. Mich. 1980) (attorney who represents

24      client in action affected by bankruptcy proceeding is impliedly authorized to receive
notice on client's behalf regarding the action).

25

26  *In re Price*, supra, at 99.

27      In the instant case, Mr. Russo was not counsel for Fiero Brothers "pursuing the same

28  claim in state court." Mr. Russo had no connection with Fiero Bros.' NASD arbitration since

---

OPPOSITION POINTS AND AUTHORITIES RE: MSJ        CASE NO. LA 01-26497-BB

1  1998. (J. Fiero Aff., ¶3, 18.) Fiero Bros. had retained other California attorneys to file a state

2  court proceeding to confirm the NASD Arbitration and obtain Judgment. (Exhibits 6, 9-12;

3  J.Fiero Aff. ¶¶10-12, 14-17.) Both the Petition to Confirm the Arbitration Award, the resulting

4  Judgment and Notice of Entry of Judgment were served on Perle through his counsel. (See,

5  Exhibits 6, 9-11.) The following year, Fiero Bros.' attorney, Peter Lepiscopo, Esq. filed and

6  served the Abstract of Judgment with the Los Angeles Superior Court, and served the same

7  on Perle and his counsel. (Exhibit 12.) The foregoing factual distinctions make Perle's

8  reliance upon In re Price unpersuasive and without basis.

9       Perle's reliance upon In re Linzer, 264 B.R. 243, supra, is equally misplaced and

10  inapplicable as it is distinguishable from the present action. In that case, the Court was faced

11  with the situation where the creditor sought an order granting them leave to file a (late)

12  nondischargeability complaint under 11 U.S.C. § 523(a)(2) and (4) where they actually

13  received from their non-bankruptcy attorney prosecuting their NASD Arbitration case against

14  the defendant turned debtor received actual notice of the defendant/ debtor's bankruptcy. In

15  that case the debtor, while a defendant in the midst of a rather large NASD arbitration alleging

16  fraud and conversion, filed a petition in bankruptcy, that set the deadline to file a complaint

17  objecting to the debtor's discharge or to determine the nondischargeability of certain

18  categories of debt was September 8, 2000. The Shins, Claimants in the NASD arbitration

19  proceeding, and several other unsecured creditors were omitted from the debtor's matrix of

20  creditors and Schedule F, and, therefore, the Shins did not receive the Notice. Nine days

21  before the expiration of the deadline, the debtor amended the creditor's matrix and Schedule

22  F to add creditors, including the Shins "c/o NASD Dispute Resolution Inc. The Certificate of

23  Mailing indicating that the amended schedule and 1009-1(a) Affirmation were served on

24  August 29, 2000, on all creditors, including the Shins in care of NASD.

25       On October 25, 2000, the Shins filed a motion for an order granting them leave to file

26  a (late) nondischargeability complaint under 11 U.S.C. § 523(a)(2) and (4) 5. This motion was

27  drafted by their non-bankruptcy counsel, i.e., their attorney in the NASD Arbitration

28  proceeding. In their motion the Shins admitted on September 6, 2000, their NASD counsel,

OPPOSITION POINTS AND AUTHORITIES RE: MSJ                     CASE NO. LA 01-26497-BB

14

1  a non-bankruptcy attorney, received a courtesy copy of a letter dated August 30, 2000 (letter),

2  from the debtor's bankruptcy counsel informing the NASD that the debtor had filed a chapter

3  7 petition ninety days earlier, and the amended Schedule F adding the Shins as creditors and

4  the 1009-1(a) Affirmation.

5  Under these facts the Court in Linzer determined that receipt by the creditors' securities

6  litigation counsel of a courtesy copy of the letter, sent by the debtor's counsel to NASD with

7  a copy of the debtor's 1009-1(a) Affirmation, constituted notice of the bankruptcy case that,

8  under the circumstances, could be imputed to the creditors. In so holding the court stated:

9  The general rule in agency law is that adequate notice to or actual knowledge acquired

10  by an agent is imputed to the principal. This rule also applies to the relation of attorney

11  and client. *6A NY Jur. 2d Attorneys at Law § 101 (1997).* Notice or knowledge is

12  imputed when the agent is acting within the scope of his authority and the knowledge

13  pertains to matters within the scope of the agent's authority. *Ford Motor Credit*

14  *Company v. Weaver,* 680 F.2d 451 (6th Cir. 1982) *citing Curtis, Collins & Holbrook*

15  *Co. v. United States,* 262 U.S. 215, 67 L. Ed. 956, 43 S. Ct. 570; *Anderson v.*

16  *General American Life Insurance Co.,* 141 F.2d 898 (6th Cir.), *cert. denied,* 323 U.S.

17  798, 89 L. Ed. 637, 65 S. Ct. 554 (1944). This general rule for imputing an agent's

18  notice or knowledge applies to bankruptcy cases. *Ford, supra.* Knowledge by an agent

19  of a creditor of the pendency of a bankruptcy case will be imputed to the creditor if his

20  agent was employed to collect the debt or was in charge of its collection.

21  *In re Linzer, supra,* at 248. (Emphasis added.)

22  The instant action again is distinguished on the facts. First, Martin Russo was not Fiero

23  Bros.' agent employed to collect the debt nor was in charge of its collection. Second, unlike

24  *In re Linzer,* there was no amended Schedule F that included either Fiero Bros. or its NASD

25  Arbitration or resulting Judgement.[7]  Third, Mr. Russo never was informed that Fiero Bros.

26  was still owed money by Perle on the NASD Award; the absence of the Fiero Bros. NASD

27

28  [7]  Perle amended Schedule F in July 2001 to include the Doheny School and Prudential Securities.

1  Award from the Schedule F could be due to many things, including compromise and
2  settlement, or payment of the Judgment amount. Mr. Russo had not been involved with the
3  NASD Arbitration Award for almost three years.

4      As stated in *In re Linzer*, "The implicit assumption is that when a non-bankruptcy
5  counsel is actively engaged in prosecuting a creditor's claim against the debtor before a
6  non-bankruptcy tribunal, including an NASD arbitration proceeding, that is a sufficient nexus
7  to the bankruptcy case to justify imputing authorized agency." *In re Linzer*, 264 B.R. at 249.

8      Other courts that have looked at this issue have come to the same conclusion. See,
9  *In re Sedlacek*, supra, 325 B.R. 202 ("Knowledge by an agent of a creditor of the pendency
10  of a bankruptcy case will be imputed to the creditor if his agent was employed to collect the
11  debt or was in charge of its collection." (Citing, *In re Linzer, supra*.)) *Chanute Prod. Credit
12  Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 801 (B.A.P. 10th Cir. 2003) ("Generally, a
13  debtor may schedule a creditor in care of the creditor's attorney for the purpose of providing
14  notice of the case, provided that the attorney is the creditor's agent in matters related to the
15  bankruptcy case."), *Ford Motor Credit Co. v. Weaver*, 680 F.2d at 457 ("In most of the cases
16  where an agent's knowledge of bankruptcy proceedings is imputed to a creditor, the agent is
17  an attorney who has been authorized either to collect the balance due on a defaulted debt or
18  to represent the creditor in bankruptcy proceedings.").

19      There is a common rationale to both *In re Price* and *In re Linzer*, and that is notice to
20  the attorney can be imputed to the creditor where the attorney is actively engaged in
21  prosecuting the creditor's claim against the debtor before a non-bankruptcy tribunal. That is
22  not the circumstances that face this court in the instant proceeding.

23      Perle spends four pages reciting to this court a number of matters where Mr. Russo
24  represented Fiero Bros., some ongoing during the Perle bankruptcy. Yet, not one of these
25  representations concerns Mr. Russo representing Fiero Bros. in matter connected to the
26  NASD Arbitration. That is because Mr. Russo's representation of Fiero Bros. with respect
27  to the NASD Arbitration terminated in 1998. Further, although Perle includes two Biennial
28  Statements for Fiero Bros., both Mr. Russo and Mr. John Fiero denied that Mr. Russo was

1  engaged to act as agent for service of process for Fiero Bros. (See, Ex. 14, Russo Depo.,

2  32:21-35:2, p. 39:4-7; Ex. 22, J. Fiero Depo., p. 123:12-15.) Further, Perle's attempt to argue

3  these connections in order to impute Mr. Russo's knowledge to Fiero Bros. is ironic, given

4  that Perle did not intend include Fiero Bros. in his bankruptcy schedules or creditor matrix,

5  having decided that the creditor to whom the NASD Award was due was NASD/ NASD

6  Regulation itself. (See, Perle Decl., ¶ 6; Perle Exhibit 3.)

7         Mr. Russo was not Fiero Bros.' authorized agent to pursue enforcement or collection

8  of the debt against Perle. Had Perle included Fiero Bros. c/o Mark Kessler, Esq or Fiero

9  Bros. c/o Peter Lepiscopo, Esq., either of which were authorized to pursue confirming the

10 NASD Award to Judgment, obtaining the Judgment, and / or enforcing the Judgment, which

11 knowledge Perle had by service of the numerous pleadings on either himself and/ or his

12 attorney for the NASD Arbitration, H. Thomas Fehn, Esq., then his argument regarding

13 imputed knowledge would be supported by law. However, that is not the case. Therefore,

14 under the legal authority presented. Notice received by Mr. Russo regarding the Perle

15 bankruptcy is not imputed to Fiero Bros.

16 D.    PLAINTIFF'S COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY

17 IS NOT BARRED BY THE DOCTRINE OF LATCHES.

18        The venerable doctrine of laches operates upon a showing of unreasonable delay by

19 the party seeking to assert a claim and a showing that the other party was prejudiced by the

20 delay. *Council of Better Bus. Bureaus, Inc. v. Better Business Bureau*, 1999 U.S. Dist.

21 LEXIS 6511 (N.D.N.Y. 1999). "When the pleading discloses that the analogous state statute

22 of limitation has run, the plaintiff bears the burden of pleading facts which, if proven, would

23 negate laches or toll the statute." *Ponce v. Graceous Navigation, Inc.*, 126 Cal. App. 3d 823,

24 829 (1981). In order to excuse delay, a plaintiff must show exceptional circumstances

25 prevented earlier action. *Id* at 829. Above all, the delay which will defeat the plaintiff's action

26 depends upon the particular equitable circumstances of the case. *Stevedore Services of*

27 *America v. Prudential Lines, Inc.*, 1986 AMC 2743, 2747 (1986).

28 / / /

OPPOSITION POINTS AND AUTHORITIES RE: MSJ        CASE NO. LA 01-26497-BB

1    Plaintiff contends that, for the reasons and evidence discussed above, their was no

2    unreasonable delay in filing the adversary proceeding and complaint to determine non-

3    dischargeability of his claims under Section 523. First, the evidence supports Plaintiff's

4    assertion that neither he nor his assignor had notice of Perle's bankruptcy until Fiero Bros.'

5    attempted to collect on the Judgment resulting from the arbitration award. Within a few

6    months, Plaintiff filed his motion to reopen the Perle bankruptcy so that he could file his non-

7    dischargeability complaint, which he did a few months later. Hence, Plaintiff has timely

8    pursued his avenues of recourse once notice of the bankruptcy occurred.

9    Second the statute of limitations, i.e., the 60 day period set forth in Rule 4007(c) does

10   not limit Plaintiff's right to file the non-dischargeability complaint has Fiero Bros.' claim was

11   not properly scheduled or listed by Perle, and Fiero Bros. only had notice or actual knowledge

12   of Perle's bankruptcy after it began levying on the Judgment.

13   Plaintiffs have established facts that demonstrate, under the law, Martin Russo's

14   knowledge of Perle's bankruptcy, whenever obtained, is not imputed to Fiero Brothers. Martin

15   Russo was not Fiero Bros.' authorized agent charged with collecting on the debt arising from

16   the NASD Arbitration. (J. Fiero Aff., ¶ 3.) Fiero Bros.' had retained other attorneys for that

17   purpose. (J.Fiero Aff., ¶¶ 10, 12, 14-17, Exhibits 6, 7, 9-12.) Further, Mr. Russo's involvement

18   with the NASD Arbitration ended in 1998- two and one half years before Perle filed his

19   bankruptcy petition. (J. Fiero Aff., ¶ 3, 18.) Additionally, Mr. Fiero had not spoken to Mr.

20   Russo since 2000 (Exhibit 22, J. Fiero Depo., p. 78:16-79:8.), and therefore there were no

21   communications between them regarding the NASD Award against Perle, or the resulting

22   Judgment.

23   Perle did not include Fiero Bros. in the bankruptcy petition, schedules or creditor matrix

24   because he did not consider Fiero Bros. a creditor, and did not believe any money related to

25   the NASD Award was owed to Fiero Bros. (Perle Decl., ¶ 6.) That being so, it is incredible

26   that Perle is attempting to argue that Mr. Russo should have known there was a debt owed to

27   Fiero Bros. and that he should have informed Fiero Bros. of the bankruptcy.

28   / / /

1    The exceptional circumstances that prevented earlier filing was Perle's failure to

2  properly disclose his creditors and liabilities in his bankruptcy petition and schedules as

3  required. Had Perle accurately disclosed Fiero Bros. as a creditor, care of Mr. Russo or the

4  NASD, and identify the debt, including the consideration and amount, then Mr. Russo would

5  have been on notice that Fiero Bros.' may need to take action. Yet, Fiero Bros.' name does

6  not appear, nor does any description of the debt appear on any schedule so as to indicate that

7  the debt is for or from the Fiero Bros. NASD Arbitration. Perle, and no one else prevented

8  earlier action.

9    Perle's action also greatly prejudiced Fiero Bros. by depriving Fiero Bros. of its

10  constitutional right of due process and potentially the loss of a valuable property right. As to

11  the other NASD claimants who filed NASD Arbitration against Perle and received arbitration

12  awards, by including them in Schedule F, they were provided with the opportunity to file

13  adversary proceedings and complaints to determine dischargeability. (See, Exhibits 30.)

14  Perle's less than perfect disclosure of these creditors provided the minimal information to put

15  them on notice of the bankruptcy. This is not the case regarding Fiero Bros.

16    Perle's citation to Mr. John Fiero's testimony is misleading, as he omits to include Mr.

17  Fiero's testimony that he did not learn of Perle's bankruptcy until 2005 or 2006. (Exhibit 22,

18  J.Fiero Depo., p.116:2-9.) Mr. Fiero's testimony, cited by Perle, relates to his explanation as

19  to why he did not attempt to collect on the Judgment against Perle any earlier than 2005/

20  2006. Mr. Fiero testified that Judgments were good for 20 years so there was no rush (Exhibit

21  22, p. 114:18-115:8), and Fiero Bros. was winding down its business (Exhibit 22, p.44:37.)

22  Perle's representation as to Mr Fiero's testimony is taken out of context and misleading.

23    Finally, Perle can not claim he was damaged by the late filing of a nondischargeability

24  complaint, which he caused. Had Perle properly disclosed Fiero Bros. on Schedule F (or

25  even correctly on Schedule E), and in the creditor matrix, then Fiero Bros. could have timely

26  filed a non-dischargeability complaint or an extension. Perle would have to defend the action,

27  just as he is doing in the instant proceeding. Perle has not argued prejudice to himself for the

28  simple fact that it is lacking in the instant action.

## V.

## CONCLUSION

For the reasons set forth in this opposition, it is clear that summary judgment as to Perle's third Affirmative Defense for Statute of Limitations, and Fourth Affirmative Defense for Latches should not be granted as there remains, at the very minimum, a triable issue of material fact as to each defense. Moreover, if any action should be taken on these defenses, is that summary judgment as to each is warranted against Perle, and in favor of Plaintiff. Therefore, Perle's Motion for Summary Judgment must be denied.

October 20, 2009                        Respectfully submitted,

                                        LESLIE SCHWAEBE AKINS, A.L.C.

                              By: _____
                                        Leslie Schwaebe Akins, Esq.
                                        Attorney for Plaintiff
                                        Alfonso Fiero

OPPOSITION POINTS AND AUTHORITIES RE: MSJ                    CASE NO. LA 01-26497-BB

In re: Cery Bradley Perle, Debtor

Alfonso Fiero, v. Cery B. Perle
Case Number LA 01-26497-BB
Adv. No. 06-01971 BB

## PROOF OF SERVICE OF
## ELECTRONIC SERVICE

STATE OF CALIFORNIA       )
                          )
COUNTY OF SAN DIEGO       )

    I am employed in the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is P.O. Box 131253, Carlsbad, California 92013.

    On **October 20, 2009**, I served **PLAINTIFF ALFONSO FIERO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CERY B. PERLE'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in said action, by delivering it as follows:

    **X**  Service will be accomplished through an NEF for parties and counsel who are registered CM/ECF users.

| **Electronic Mail Notice List** | Darrell Palmer:  darrell.palmer@cox.net |
|---|---|
| **The following is the list of parties who are currently on the list to receive e-mail notices for this case.** | United States Trustee (LA): ustpregion16.la.ecf@usdoj.gov |
| | Leslie S Akins:  lsa@stockmarketlaw.com |
| | Pamela Labruyere:  pamela@sgsslaw.com |

I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **October 20, 2009**, at Carlsbad, California.

_____
Ashley Hall

## PROOF OF SERVICE