# EXHIBIT 8

1 | H THOMAS FEHN - SBN 43341
GREGORY J. SHERWIN - SBN 069395
2 | ELIZABETH LOWERY - SBN 190393
FIELDS, FEHN & SHERWIN
3 | 11755 Wilshire Blvd.
15th Floor
4 | Los Angeles, CA 90025-1506
(310) 473-6338
5 |
Attorneys for Plaintiffs
6 | WALDRON & COMPANY, INC.
and CERY PERLE
7 |
8 |
9 |
10 |               SUPERIOR COURT OF THE STATE OF CALIFORNIA
11 |                   FOR THE COUNTY OF LOS ANGELES
12 |                                                B C188847
13 | WALDRON & CO., INC., a California  )    Case No.
corporation; and CERY PERLE, an    )
14 | individual,                        )    COMPLAINT FOR DEFAMATION
                                   )    AND TORTIOUS INTERFERENCE
15 |                    Plaintiffs,    )    WITH BUSINESS RELATIONS
                                   )
16 |           v.                      )
                                   )
17 | JASON STERN, an individual; TAMER  )
YOUSSEF, an individual; BAHARAM    )
18 | MIRHASHEMI, an individual; STEVEN  )
LORENZO, an individual; BRIGETT    )
19 | CURAMENG, an individual; and DOES  )
1 through 20, inclusive,           )
20 |                                    )
                    Defendants.       )
21 | _____)
22 |
23 |
24 |
25 |      Plaintiffs Waldron & Co., Inc., a California corporation,
26 | and Cery Perle, an individual ("Plaintiffs") hereby allege as
27 | follows:
28 | / / /
     / / /

ORIGINAL FILED

APR 0 6 1998

LOS ANGELES
SUPERIOR COURT

F 007579

EXHIBIT 8  PAGE 87

1.   Plaintiff Waldron & Co., Inc. ("Waldron") is, and was at all relevant times mentioned herein, a corporation duly organized under the laws of the State of California, having its principal place of business in Irvine, California.  Plaintiff Waldron is, and was at all relevant time mentioned herein, a retail brokerage firm registered as a member broker-dealer with the National Association of Securities Dealers, Inc. (the "NASD").

2.   Plaintiff Cery Perle ("Perle") is, and was at all relevant times mentioned herein, the President of Waldron and an individual residing in Irvine, California.  Perle is registered with the NASD as a person associated with Waldron, a member firm. Perle is a licensed principal of Waldron and, as such, is potentially subject to disciplinary action for wrongs committed by Waldron.

3.   Plaintiffs are informed and believe, and thereon allege that, Defendant Jason Stern ("Stern") is, and was at all relevant times mentioned herein, an individual residing in Los Angeles, California.

4.   Plaintiffs are informed and believe, and thereon allege that, Defendant Tamer Youssef ("Youssef") is, and was at all relevant times mentioned herein, an individual residing in Los Angeles, California.

/ / /

/ / /

2

F 007580

EXHIBIT 8 PAGE 88

5.    Plaintiffs are informed and believe, and thereon allege that, Defendant Baharam Mirhashemi ("Mirhashemi") is, and was at all relevant times mentioned herein, an individual residing in Los Angeles, California.

6.    Plaintiffs are informed and believe, and thereon allege that, Defendant Steven Lorenzo ("Lorenzo") is, and was at all relevant times mentioned herein, an individual residing in Los Angeles, California.

7.    Plaintiffs are informed and believe, and thereon allege that, Defendant Andrew Morgan ("Morgan") is, and was at all relevant times mentioned herein, an individual residing in Los Angeles, California.

8.    Plaintiffs are informed and believe, and thereon allege that, Defendant Brigett Curameng ("Curameng") is, and was at all relevant times mentioned herein, an individual residing in Los Angeles, California.

9.    Plaintiffs are ignorant of the true names and capacities of Defendants sued as Does 1 through 20, inclusive, and, therefore, sues these Defendants by those fictitious names. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained.

10.   Plaintiffs are informed and believe, and thereon allege that, each of these fictitiously named defendants are responsible

3

F 007581

EXHIBIT 8 PAGE 89

1 | in some manner for the occurrences alleged in this Complaint and
2 | that Plaintiffs' damages as alleged in this Complaint were
3 | proximately caused by these fictitiously named defendants.
4 |
5 | ALLEGATIONS COMMON TO ALL
6 | CAUSES OF ACTION
7 |
8 | 11.   Defendant Stern was employed by Waldron as the branch
9 | manager of the Waldron Brentwood, California office until
10 | December 1997, when he was terminated for cause.  Plaintiffs are
11 | informed and believe, and thereon allege that, during
12 | approximately December 1997, Defendant Stern began employment
13 | with National Securities, Inc. ("National") as the branch manager
14 | of its Beverly Hills office with direct supervisory duties over
15 | stockbrokers.
16 |
17 | 12.   Defendant Youssef was employed by Waldron in its Irvine
18 | office as a stockbroker until November 1997, when he was
19 | terminated for cause.  Plaintiffs are informed and believe, and
20 | thereon allege that, during approximately January 1997, Defendant
21 | Youssef began employment with National as a stockbroker in its
22 | Beverly Hills office, under the direct supervision of Defendant
23 | Stern.
24 |
25 | 13.   Defendant Mirhashemi was employed by Waldron in its
26 | Irvine office as a stock broker until January 1998, when he was
27 | terminated for cause.  Plaintiffs are informed and believe, and
28 | thereon allege that, during approximately January 1998, Defendant

4

F 007582

EXHIBIT 8 PAGE 90

1  Mirhashemi began employment with National as a stockbroker in its

2  Beverly Hills office, under the direct supervision of Defendant

3  Stern.

4

5      14.   Defendant Lorenzo was employed by Waldron in its Irvine

6  office as a stock broker until November 1997, when he was

7  terminated for cause.  Plaintiffs are informed and believe, and

8  thereon allege that, during approximately December 1997,

9  Defendant Lorenzo began employment with National as a stockbroker

10  in its Beverly Hills office, under the direct supervision of

11  Defendant Stern.

12

13      15.   Defendant Morgan was employed by Waldron in its Irvine

14  office as a stock broker until February 1998, when he was

15  terminated for cause.  Plaintiffs are informed and believe, and

16  thereon allege that, during approximately February 1998,

17  Defendant Morgan began employment with National as a stockbroker

18  in its Beverly Hills office, under the direct supervision of

19  Defendant Stern.

20

21      16.   Defendant Curameng was employed by Waldron in its

22  Irvine office as a stockbroker until January 1998, when he was

23  terminated for cause.  Plaintiffs are informed and believe, and

24  thereon allege that, during approximately January 1998, Defendant

25  Curameng began employment with National as a stockbroker in its

26  Beverly Hills office, under the direct supervision of Defendant

27  Stern.

28  / / /

F 007583

5

EXHIBIT 8 PAGE 91

17.   Plaintiff Waldron was the underwriter for the initial public offering ("IPO") for the stock of Shopping.com ("IBUY"), an internet retailer.  IBUY went public on or about November 26, 1997.

18.   Plaintiffs are informed and believe, and thereon allege that, during approximately February and March 1998, Waldron, and more specifically the stock of IBUY, was targeted by many short-sellers including Fiero Brothers, Inc.  The Fiero Brothers, Inc. are notorious short-sellers who are currently under regulatory investigation in connection with the demise of Hanover Sterling and its clearing broker Adler Coleman.  In those proceedings it is alleged that the Fiero Brothers engaged in wrongdoing involving violation of the securities laws including efforts to defame and depress the stock of target companies.  Plaintiffs are informed and believe, and thereon allege that,  Defendant Stern has frequent communications with John Fiero, President of Fiero Brothers, Inc., and that the other Defendants have also been and continue to be in contact with John Fiero.

19.   Short-sellers sell stock that they do not own hoping that they can later acquire it at a lower price, and thus profit from the price differential.  Since its IPO, the price of IBUY increased.  This caused the short-sellers to realize losses. Many of the short-sellers continued to short the stock, and continued to realize losses, as the price of IBUY continued to rise.

/ / /

F 007584

6

EXHIBIT 8 PAGE 92

20.   Plaintiffs are informed and believe, and thereon allege that, certain short-sellers led by Fiero Brothers, Inc. began an aggressive campaign to disseminate negative and false information about IBUY and Plaintiffs in order to cause the stock price to decline so they could realize profits on their short positions. Plaintiffs are informed and believe, and thereon allege that, as part of this scheme, Defendant Stern, upon his termination for cause by Waldron, encouraged and/or directed Defendants Youssef, Mirhashemi, Lorenzo, Morgan and Curameng to create false letters and disseminate them to the public.  These letters falsely accused Plaintiffs of wrongdoing in their business.

21.   Plaintiffs are informed and believe, and thereon allege that, Defendants conspired with John Fiero, president of Fiero Brothers, Inc., which is a brokerage firm responsible for a large amount of the IBUY shorts.  On or about March 12, 1998 John Fiero wrote a letter to U.S. Senator D' Amato on the stationary of Fiero Brothers, Inc. accusing Plaintiff Waldron of wrongdoing and enclosing the defamatory letters which are attached to this Complaint as Exhibits "A" through "E" and incorporated herein by these references.  In addition, John Fiero's letter states he ". . . spoke with many former registered representatives of Waldron.  A number of them faxed to me handwritten letters stating that when they were at Waldron & Co. that their customers had many problems . . . .  Enclosed for your review are . . . the letter [sic] I received from former brokers."  On March 13, 1998, Senator D'Amato requested the U.S. Securities and Exchange / / /

7

1  Commission (the "SEC") to investigate the allegations made by
2  John Fiero.

3

4      22.   In addition, the defamatory letters created by
5  Defendants can be easily accessed on the internet.   Their
6  contents have been referred to in numerous news reports and have
7  been attached to Complaints against Plaintiffs filed in various
8  courts and arbitration fora.

9

10     23.   Plaintiffs are informed and believe, and thereon allege
11 that, as a direct and proximate result of the actions of John
12 Fiero, in concert with the Defendants, the trading of the IBUY
13 stock was halted by the SEC on March 25, 1998.   Plaintiffs have
14 also been the subject of regulatory investigations regarding the
15 trading of IBUY.   Plaintiffs have cooperated fully with the
16 investigations and have incurred and continue to incur enormous
17 attorney fees and other costs responding to the demands of the
18 SEC and the NASD.   In addition, enormous amounts of employee time
19 has been expended by Waldron, responding to the untrue
20 allegations made by Defendants and their other co-conspirators.

21

22     24.   Plaintiffs are informed and believe, and thereon allege
23 that, from and after January 1998, Defendants and other persons
24 knowingly and wilfully conspired and agreed among themselves, and
25 with John Fiero, to defame Plaintiffs and destroy their business.
26 Defendants agreed to act in concert for their mutual benefits and
27 to Plaintiffs' detriment.   The object of the conspiracy was to
28 defame Plaintiffs and interfere with their business relations as

8

F 007586

EXHIBIT 8 PAGE 94

1 | alleged herein. Defendants joined the conspiracy in order to
2 | revenge their dismissal for cause by Waldron and to deflect
3 | attention from their own wrongdoing which resulted in their
4 | dismissal for cause.
5 |
6 |     25. Each of the acts undertaken by Defendants as alleged
7 | herein was in furtherance of the conspiracy.
8 |
9 |     26. Based on the foregoing, each Defendant member of the
10 | conspiracy is liable in full to Plaintiffs for the losses
11 | suffered by Plaintiffs as alleged herein.
12 |
13 |                           FIRST CAUSE OF ACTION
14 |                  (For Defamation By All Plaintiffs
15 |                     Against All Defendants)
16 |
17 |     27. Plaintiffs incorporate herein by reference paragraphs 1
18 | through 26 of this Complaint as if the same were set forth at
19 | this point.
20 |
21 |     28. On or about March 5, 1998, Defendant Youssef authored
22 | and Defendants published the letter which is attached hereto as
23 | Exhibit "A" and incorporated herein by this reference. The
24 | letter is addressed to the NASD. Plaintiffs are informed and
25 | believe, and thereon allege that, Defendant Youssef never had the
26 | intent to direct the letter to the NASD, and instead only
27 | addressed it as such to unjustly garner credibility and further
28 | / / /

F 007587

EXHIBIT 8 PAGE 95

1  misrepresent the true purpose of the letter, which was to harm

2  Plaintiffs and misrepresent the true facts.

3

4      29.    Plaintiffs are informed and believe, and thereon allege

5  that, Defendants created this letter for John Fiero and other

6  short sellers to aid in their efforts to cause the price of IBUY

7  to decline so that the short sellers would stop losing money on

8  their short positions in IBUY and would destroy the Plaintiffs'

9  business.

10

11      30.    The following statements are false as they apply to

12  Plaintiffs:

13

14          A.    "...my (Defendant Youssef's) decision to leave

15               Waldron & Co., Inc. was based on unethical

16               business practices that took place there."

17          B.    "a firm (Plaintiff Waldron) that breaks the law

18               and implements unfair and unethical business

19               practices."

20          C.    "I had numerous clients who were not permitted

21               to liquidate their positions in IBUY when they

22               placed sell orders to be executed."

23          D.    "... Cery Perle's reckless behavior in my opinion

24               is extremely inappropriate and unprofessional in

25               the workplace."

26

27      31.    This letter is libelous on its face.  It clearly

28  exposes Plaintiffs to hatred, contempt, ridicule and obloquy

F 007588

10

EXHIBIT 8 PAGE 96

1  because it accuses Plaintiffs of illegal, unethical, reckless and

2  unprofessional behavior.  To the extent that any of the

3  statements are expressed as opinions, they are based upon express

4  false statements of fact.

5

6      32.  This letter was and is readily accessible on the

7  internet, its contents referred to in numerous news sources, and

8  it has been attached to Complaints filed against Plaintiffs in

9  various courts and arbitration fora.

10

11      33.  As a proximate result of the above-described

12  publication, Plaintiffs have suffered loss of business, goodwill

13  reputation, shame, mortification and all to their general damages

14  in an amount to be proven at trial which amount is no less than

15  Ten Million Dollars ($10,000,000.00).

16

17      34.  As a further proximate result of the above-described

18  publications, Plaintiffs have suffered and continue to suffer

19  special damages to in an amount to be proven at trial.

20

21      35.  The above-described publication was published by

22  Defendants with malice and oppression in that it was done with

23  the express intent to destroy Plaintiffs' business, and thus

24  Plaintiffs are entitled to an award of punitive damages.

25  / / /

26  / / /

27  / / /

28  / / /

F 007589

11

EXHIBIT 8  PAGE 97

## SECOND CAUSE OF ACTION

### (By All Plaintiffs For Defamation
### Against All Defendants)

36.  Plaintiffs incorporate herein by reference paragraphs 1 through 26 of this Complaint as if the same were set forth at this point.

37.  On or about March 5, 1998, Defendant Mirhashemi authored and Defendants published the letter which is attached hereto as Exhibit "B" and incorporated herein by this reference. The letter is addressed to the NASD, one of the agencies which regulates brokerage firms.  Plaintiffs are informed and believe, and thereon allege that, Defendant Mirhashemi never had the intent to direct the letter to the NASD, and instead only addressed it as such to unjustly garner credibility and further misrepresent the true purpose of the letter, which was to harm Plaintiffs.

38.  The following statements are false as they apply to Plaintiffs:

      A.    "Please be advised that my decision to leave Waldron & Co., Inc. was due to the fact that on several occasions the Branch Manager Keevan Gllespie verbally threatened to fire me if I did not agree to purchase shares in Shopping.com (IBUY)."

12

F 007590

EXHIBIT 8 PAGE 98

B.    "Unfortunately I did not feel it was in the best
       interest of my clients so I had to leave before
       I was terminated."

39.    This letter is libelous on its face.  It clearly
exposes Plaintiffs to hatred, contempt, ridicule and obloquy
because it accuses Plaintiffs of attempting to force Defendant
Mirhashemi to engage in illegal behavior of selling clients IBUY
stock when it is not suitable for them, which is a direct
violation of securities laws and regulations.

40.    This letter was and is readily accessible on the
internet, and its contents referred to in numerous news sources,
and it has been attached to Complaints filed against Plaintiffs
in various courts and arbitration fora.

41.    As a proximate result of the above-described
publication, Plaintiffs have suffered loss of business, goodwill
reputation, shame, mortification and all to their general damages
in an amount to be proven at trial which amount is no less than
Ten Million Dollars ($10,000,000.00).

42.    As a further proximate result of the above-described
publications, Plaintiffs have suffered and continue to suffer
special damages to in an amount to be proven at trial.

43.    The above-described publication was published by
Defendants with malice and oppression in that it was done with

F 007591

13

EXHIBIT 8 PAGE 99

1    the express intent to destroy Plaintiffs' business, and thus

2    Plaintiffs are entitled to an award of punitive damages.

3

4    ### THIRD CAUSE OF ACTION

5    (For Defamation By All Plaintiffs

6    Against All Defendants)

7

8    44.    Plaintiffs incorporate herein by reference paragraphs 1

9    through 26 of this Complaint as it the same were set forth at

10    this point.

11

12    45.    On or about March 5, 1998, Defendant Lorenzo authored

13    and Defendants published the letter which is attached hereto as

14    Exhibit C.

15

16    46.    The following statements are false as they apply to

17    Plaintiffs:

18

19    A.    "The reason for my departure from Waldron &

20    Company (Irvine) is due to the unprofessionalism

21    of Cery Perle."

22    B.    "We were led to believe that our job was in

23    jeopardy if we did not solicit shopping.com to our

24    clients as well as our prospects."

25

26    47.    This letter is libelous on its face.    It clearly

27    exposes Plaintiffs to hatred, contempt, ridicule and obloquy

28    because it accuses Plaintiffs Perle of unprofessional behavior

F 007592

14

EXHIBIT 8 PAGE 100

1  and it accuses Plaintiffs Perle and Waldron of violations of
2  securities laws and regulations by forcing brokers to solicit
3  purchases of IBUY.

4

5  48.  This letter was and is readily accessible on the
6  internet, its contents referred to in numerous news sources, and
7  it has been attached to Complaints filed against Plaintiffs in
8  various courts.

9

10  49.  As a proximate result of the above-described
11  publication, Plaintiffs have suffered loss of business, goodwill
12  reputation, shame, mortification and all to their general damages
13  in an amount to be proven at trial which amount is no less than
14  Ten Million Dollars ($10,000,000.00).

15

16  50.  As a further proximate result of the above-described
17  publications, Plaintiffs have suffered and continue to suffer
18  special damages to in an amount to be proven at trial.

19

20  51.  The above-described publication was published by
21  Defendants with malice and oppression in that it was done with
22  the express intent to destroy Plaintiffs' business, and thus
23  Plaintiffs are entitled to an award of punitive damages.

24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

F 007593

15

EXHIBIT 8  PAGE 101

## FOURTH CAUSE OF ACTION

### (For Defamation By All Plaintiffs
### Against All Defendants)

52.  Plaintiffs incorporate herein by reference paragraphs 1 through 26 of this Complaint as it the same were set forth at this point.

53.  On or about March 5, 1998, Defendant Morgan authored and Defendants published the letter which is attached hereto as Exhibit "D."

54.  The following statements are false as they apply to Plaintiff Waldron:

> A.    "Please be aware that I Andrew Morgan left Waldron
> & Co. because I wouldn't conform to buying IBUY
> and Simu for some other of my own reasons.

55.  This letter is libelous on its face.  It clearly exposes Plaintiffs to hatred, contempt, ridicule and obloquy because it accuses Plaintiffs of violations of securities laws and regulations by forcing brokers to solicit purchases of IBUY and SIMU.

56.  This letter was and is readily accessible on the internet, its contents referred to in numerous news sources, and / / /

F 007594

EXHIBIT 8 PAGE 102

1   it has been attached to Complaints filed against Plaintiffs in

2   various courts and arbitration fora.

3

4       57.   As a proximate result of the above-described

5   publication, Plaintiffs have suffered loss of business, goodwill

6   reputation, shame, mortification and all to their general damages

7   in an amount to be proven at trial which amount is no less than

8   Ten Million Dollars ($10,000,000.00).

9

10      58.   As a further proximate result of the above-described

11  publications, Plaintiffs have suffered and continue to suffer

12  special damages to in an amount to be proven at trial.

13

14      59.   The above-described publication was published by

15  Defendants with malice and oppression in that it was done with

16  the express intent to destroy Plaintiffs' business, and thus

17  Plaintiffs are entitled to an award of punitive damages.

18

19                    FIFTH CAUSE OF ACTION

20              (For Defamation Against All Defendants)

21

22      60.   Plaintiffs incorporate herein by reference paragraphs 1

23  through 26 of this Complaint as it the same were set forth at

24  this point.

25

26      61.   On or about March 5, 1998, Defendant Curameng published

27  the letter which is attached hereto as Exhibit "E."

28  / / /

                                        F 007595

                    17

EXHIBIT 8 PAGE 103

62.   The following statements are false as they apply to Plaintiffs:

A.   "In light of my reasons why my relationship ended with Waldron & Co. Inc. my clients had the awful experience of being denied execution for Waldron's Shopping.com stock."

B.   "My clients were told their account executive were not in to handle the trade and that their call would be returned."

C.   "Even when my clients called in to Waldron to solicit the sell they were told they would be called back."

D.   "My clients did not receive their phone call until after the market was closed and it was too late to do anything."

E.   "My clients were harassed by account executive after selling their position to update them on how awful their decision was."

F.   "They (her clients) were made fun of because they sold @ market prices of $.18 and $.20 and the stock continued to rise."

63.   This letter is libelous on its face.  It clearly exposes Plaintiffs to hatred, contempt, ridicule and obloquy because it accuses Plaintiffs of illegal and unprofessional behavior, in addition to abusive and harassing sales practices.

/ / /

/ / /

F 007596

18

EXHIBIT 8 PAGE 104

64.   This letter was and is readily accessible on the internet, its contents referred to in numerous news sources, and it has been attached to Complaints filed against Plaintiffs in various courts.

65.   As a proximate result of the above-described publication, Plaintiffs have suffered loss of business, goodwill reputation, shame, mortification and all to their general damages in an amount to be proven at trial which amount is no less than Ten Million Dollars ($10,000,000.00).

66.   As a further proximate result of the above-described publications, Plaintiffs have suffered and continue to suffer special damages to in an amount to be proven at trial.

67.   The above-described publication was published by Defendants with malice and oppression in that it was done with the express intent to destroy Plaintiffs' business, and thus Plaintiffs are entitled to an award of punitive damages.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

F 007597

19

EXHIBIT 8  PAGE 105

## SIXTH OF ACTION

(By All Plaintiffs For Tortious
Interference with Business
Relations Against All Defendants)

68.   Plaintiffs incorporate herein by reference paragraphs 1 through 67 of this Complaint as it the same were set forth at this point.

69.   Plaintiffs are engaged in the retail brokerage business.   Defendants are well aware that brokers are fiduciaries, and that integrity and a good reputation are essential to the success of a retail brokerage firm.

70.   During approximately February of 1998, with full knowledge and intent to destroy or otherwise injure and interfere with Plaintiffs' business, Defendants, and each of them, caused the above-mentioned defamatory letters to be disseminated to third parties and the general public.  Said letters represent that Plaintiffs engaged in unprofessional, unethical and illegal behavior.  All such representations were, and are, false and, have caused Plaintiffs' customers to cancel trades, transfer accounts, and upon information and belief have discouraged new prospects from doing business with Plaintiffs.

71.   Plaintiffs are informed and believe, and thereon allege, that Defendants created and disseminated said defamatory / / /

F 007598

20

EXHIBIT 8 PAGE 106

1  letters for the sole purpose of interfering with Plaintiffs
2  actual and prospective business relations.

3

4      72.   Defendants have done the acts herein alleged with the
5  intent of injuring Plaintiffs' business, reputation and goodwill
6  and in so doing has acted maliciously and oppressively toward
7  Plaintiffs.

8

9      73.   As a proximate result of Defendants' conduct, as herein
10  alleged, Plaintiffs have suffered irreparable injury to their
11  business, reputation and goodwill in that defendants'
12  misrepresentations reflect adversely on Plaintiffs.

13

14      74.   Plaintiffs are informed and believe, and thereon allege
15  that, as a proximate result of Defendants' conduct, Plaintiffs
16  have been compelled to spend time and money to refute the
17  Defendants' misrepresentations as alleged herein in efforts to
18  repair their reputation, all to Plaintiffs damage in an amount to
19  be proven at trial.  Plaintiffs have incurred various costs in
20  defending and repairing their reputation, including but not
21  limited to attorneys fees, .advertisements and public relations.
22  In addition, Defendants' misrepresentations have contributed to
23  the initiation of at least two regulatory investigations which
24  have consumed significant resources of Plaintiffs.  As a result
25  of the consumption of time and money that Plaintiffs have been
26  required to devote to responding to Defendants' allegations,
27  Plaintiffs have been unable to spend time on proposed business
28  / / /

F 007599

21

EXHIBIT 8  PAGE 107

1  transactions that would have come to fruition but for Defendants'
2  wrongful conduct.

3

4      75.   Plaintiffs are informed and believe, and thereon allege
5  that, as a proximate result of Defendants conduct and
6  misrepresentations, several customers have breached their
7  contractual trading agreements with Plaintiff Waldron.  In
8  addition, several customers have ceased maintaining brokerage
9  accounts at Plaintiff Waldron.  In addition, Plaintiff Waldron
10 has been subject to raids from other firms seeking to recruit
11 Waldron's brokers.  As a direct result of the foregoing,
12 Plaintiffs have been damaged an the amount to be proven at trial
13 but which amount Plaintiffs believe to be at least Ten Million
14 Dollars ($10,000,000.00).

15

16                          PRAYER FOR RELIEF FOR

17                          ALL CAUSES OF ACTION

18

19      WHEREFORE, Plaintiffs pray that judgment be entered jointly
20 and severally against the Defendants as follows:

21

22      1.   For General damages in an amount of at least ten
23 million dollars ($10,000,000);

24      2.   For Special damages in an amount to be determined at
25 trial;

26      3.   For prejudgment interest;

27      4.   Punitive damages in an amount to be determined at
28 trial.

F 007600

EXHIBIT 8 PAGE 108

1    5.   For such other and further relief as the Court deems

2  just and proper.

3

4

5                                    FIELDS, FEHN & SHERWIN
                                     H THOMAS FEHN
6                                    GREGORY J. SHERWIN
                                     ELIZABETH LOWERY
7

8
   DATED: April 6, 1998          By _____
9                                    ELIZABETH LOWERY
                                     Attorneys for Defendants
10                                   WALDRON & CO., INC. and CERY
                                     PERLE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                               F 007601

                             23

EXHIBIT 8  PAGE 109

1   H Thomas Fehn - SBN 43341
    Gregory J. Sherwin - 69395
2   FIELDS, FEHN & SHERWIN
    11755 Wilshire Blvd., 15th Fl.
3   Los Angeles, CA 90025-1506
    Telephone: (310) 473-6338
4   Facsimile:  (310) 473-8508

5   Attorneys for Defendant
    CERY BRADLEY PERLE

6

7

8

9              UNITED STATES BANKRUPTCY COURT

10      FOR THE CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

11

12

13   In Re:                              )  Case No. LA 01-26497-BB
                                         )
14   CERY BRADLEY PERLE,                 )  [Chapter 7]
                                         )
15                          Debtor.      )  Adv. No. AD01-02219
     _____)
16   CORSAIR CAPITAL PARTNERS, L.P.      )  DEFENDANT CERY PERLE'S OBJECTIONS
     and ALTERNATIVE INVESTMENTS,        )  TO PLAINTIFFS' EVIDENCE IN SUPPORT
17   L.P.,                               )  OF THEIR MOTION FOR SUMMARY
                                         )  JUDGMENT
18                          Plaintiffs,  )
                                         )  Date:   August 13, 2002
19                 v.                    )  Time:   2:30 p.m.
                                         )  Place:  Courtroom 1475
20   CERY BRADLEY PERLE,                 )
                                         )
21                                       )
                            Defendant.   )
22   _____)

23

24

25          Defendant Cery Perle presents the following objections to the evidence offered by

26   Plaintiffs in support of their motion for summary judgment.

27   ///

28   ///

EXHIBIT 8 PAGE 110