# EXHIBIT 22

```
                                                                    1

 1

 2          UNITED STATES BANKRUPTCY COURT

 3          CENTRAL DISTRICT OF CALIFORNIA

 4

 5   _____

 6   ALFONSO FIERO, an individual, as        )
 7   Assignee of the Judgment issued April   )
 8   6, 1998 in favor of Judgment Creditor   )
 9   FIERO BROTHERS, INC., Assignor,         )
10   Pursuant to the Assignment dated        )   CASE NO. ADV06-01971-BB
11   March 1, 2006,                          )           LA 01-26497-BB
12                    Plaintiff,             )
13              -against-                    )
14   CERY B. PERLE, an indvidual,            )
15                    Defendant.             )
16   _____)

17

18         DEPOSITION OF JOHN J. FIERO

19            December 19, 2008

20               10:24 A.M.

21

22

23

24

25  Pages 1 - 154
```

EXHIBIT 22 PAGE 172

1   Fiero?

2       A.   Repeat your question.

3       Q.   Why did Fiero Brothers Inc.
4   assign the claim to Alfonso?

5       A.   Because I was winding up the firm
6   and pretty much closing it down, just
7   getting rid of whatever was left.

8       Q.   So in -- so around the time that
9   you made the assignment to Alfonso, you were
10  still winding down the firm?

11      A.   Correct.

12      Q.   Was the firm still doing any
13  business at the time you made the
14  assignment?

15      A.   No.

16      Q.   Did you assign any of the firm's
17  claims -- strike that.

18           Were there any other claims that
19  the firm had that you assigned to someone
20  else?

21      A.   I don't understand the question.

22      Q.   Well, other than this claim
23  against Mr. Perle, other than this judgment
24  against Mr. Perle, did Fiero Brothers Inc.
25  have any judgments against anyone else?

EXHIBIT 22 PAGE 173

1     Q.    And the claim was assigned

2  Alfonso in March, 2006; correct?

3     A.    Yes.

4     Q.    So let me rephrase the question.

5           Why didn't Fiero Brothers Inc.

6  bring the case on its own behalf prior to

7  March -- prior to the time it made the

8  assignment.

9     A.    Fiero Brothers was closing down.

10    Q.    Any other reasons?

11          MS. AKINS:  I didn't hear that?

12          MR. PALMER:  Fiero Brothers was

13    closing down he said.  My follow up,

14    was any other reasons.

15    A.    Nothing I can think of at this

16 time.

17    Q.    Are there any documents that

18 might help you to think of some other

19 reasons, in other words, you say there is

20 nothing you can think of at this time.  Is

21 there anything that might spur your memory

22 to be able to recall any other reasons?

23    A.    Possible.  I just can't --

24 possible.

25    Q.    I know it's possible.  But --

**EXHIBIT 22 PAGE 174**

1        also represented from what?  You laid

2        no foundation for that question.

3            Q.    Do you know whether or not Martin

4    Russo ever represented Corsair Capital?

5            A.    Presently I'm aware.

6            MS. AKINS:   I can't hear.

7            A.    Presently I am aware.

8            Q.    When did you first learn that he

9    represented Corsair Capital?

10           A.    Specifically, I don't know

11   specifically.

12           Q.    Can you give me -- what's your

13   best estimate of when you learned that?

14           A.    I don't have a date.

15           Q.    When's the last time -- strike

16   that.  Have you ever been represented by

17   Martin Russo?

18           A.    Yes.

19           Q.    When was the last time he

20   represented you?

21           A.    The last time we spoke was

22   probably in 2000-something sometime.

23           MS. AKINS:   I can't hear.

24           THE WITNESS:  The last time we

25       spoke was probably in 2000 some time.

EXHIBIT 22 PAGE 175

1   Q.   You haven't had any contact with
2   him since the year 2000, is that correct?
3   A.   Approximately, yes.
4   Q.   And what matter did he represent
5   you in during that year?
6   A.   I believe it was the -- he was
7   the -- one of the attorneys on the NASD case
8   vs. Fiero Brothers.
9   Q.   Has he ever represented you on
10  any other case?
11  A.   Possible.
12  Q.   Which case did he represent you
13  in other than the NASD arbitration?
14  A.   I don't recall specifically.
15  Q.   Have you ever filed -- strike
16  that?
17  A.   He represented me in the
18  Shopping.Com case.
19  Q.   Any other cases you can think of?
20  A.   Not at this time.
21  Q.   If you look at Exhibit 2, where
22  we were looking at it on the second amended
23  statement of claim filed in the NASD matter
24  -- well, take a look at page 9 of that
25  second amended claim which at the top begins

**EXHIBIT 22 PAGE 176**

1    didn't say he didn't.  He said he
2    didn't have a recollection.  Your
3    concluding not having a recollection
4    means that he didn't.  So I object to
5    the question as not being proper.
6         MR. PALMER:  Misstates his
7    testimony.
8         MR. KAPLAN:  That's correct.
9         Q.   Do you have any recollection of
10   any reasons that you may not have wanted to
11   try to collect the money from Mr. Perle say
12   within the year after obtaining the
13   judgment?
14        A.   Do you want me to guess?
15             MR. KAPLAN:  No, no guess.
16             MS. AKINS:  I can't hear.
17        A.   Then I can't -- I don't know.
18        Q.   Have you since learned of some
19   reasons that would have justified a decision
20   not to make collection efforts?
21             MR. KAPLAN:  Objection.
22   Speculation.
23             MS. AKINS:  Objection,
24   argumentative.
25             MR. PALMER:  Argumentative is

EXHIBIT 22 PAGE 177

1     probably better. Speculative I don't
2     know. You can answer the question.
3        A.   Well, with any other judgment you
4  have 20 years, so what's the rush.
5        Q.   It was just money in the bank for
6  you?
7        A.   What's the rush?
8        Q.   At the time did you have
9  judgments against any other persons that you
10 weren't collecting on?
11       MR. KAPLAN: You need to lay a
12       foundation.
13       MS. AKINS: I can't hear.
14       MR. KAPLAN: You need to lay a
15       foundation. Did you have any
16       judgments from any other party.
17       Q.   Did you have any judgements
18 against any other party at the same at the
19 same time in the year 2000?
20       A.   It's possible. I just don't
21 recall.
22       Q.   At any time before today, have
23 you ever learned that at some point Cery
24 Perle filed for bankruptcy protection.
25       A.   What is your question again,

EXHIBIT 22 PAGE 178

1  please.

2      Q.  At any time before today have you
3  ever learned that Cery Perle filed for
4  bankruptcy protection?

5      A.  Yes.

6      Q.  When did you first learn that he
7  had filed for bankruptcy protection?

8      A.  Probably some point in --
9  probably some point in 2005.

10         MR. PALMER:  We're going to mark
11      Fiero Brother Inc's Request for
12      Permission to Substitute Counsel of
13      Record in the Adler Coleman Clearing
14      Corp. bankruptcy proceeding.

15         (Document marked Defendant's
16      Exhibit 3, for identification, as of
17      this date.)

18      Q.  Mr. Fiero, if you would take a
19  look at this document, tell me if you've
20  ever seen it before?

21      A.  It looks familiar.

22      Q.  Look at page 2 and tell me if
23  that's your signature on Page 2?

24      A.  Yes, it is.

25      Q.  Take a minute to examine the

EXHIBIT 22 PAGE 179

1  document.

2          Do you recall Fiero Brothers

3  being involved in litigation -- involved in

4  litigation in the Adler Coleman bankruptcy

5  case?

6          A.   Yes.

7          Q.   And in that case you were

8  represented by Mr. Russo, correct?

9          A.   Yes.

10         Q.   And this document, Exhibit 3,

11 indicates that on June 13, 2000 is when

12 Mr. Russo substituted in to represent you;

13 correct?

14         A.   It appears that way.

15              MS. AKINS:  What was the

16         question?

17              MR. PALMER:  I asked him if this

18         was the document effectuating

19         Mr. Russo taking over his

20         representation in this case.

21              Next I'm going to mark another

22         pleading in the same case, in the

23         Adler Coleman Clearing Corp. case, and

24         this document is titled "Notice of

25         Motion" and I'll ask you to take a

EXHIBIT 22 PAGE 180

1   that time?

2          MR. KAPLAN: That time being the

3      date on the Exhibit 4.

4      Q.   No, when you signed the

5   settlement agreement?

6      A.   I remember doing it with

7   Mr. Kaplan.

8      Q.   My question is, do you have any

9   reason to believe that you weren't being

10  represented by Mr. Russo at that time?

11     A.   No.

12     Q.   Was Mr. Russo ever registered

13  with New York State as Fiero Brothers' agent

14  for service of process?

15     A.   Not that I know of.

16     Q.   When was the last time you talked

17  with Mr. Russo?

18          MS. AKINS: Was there an answer

19      to the last question?

20          MR. PALMER: Yes. "Not that I

21      know of," he says.

22     Q.   The next question is, when is the

23  next time you talked to Martin Russo?

24     A.   I think you asked me that

25  already.

EXHIBIT 22 PAGE 181

1   imposition of costs, $10,809?

2       A.   No, not that I'm aware of, no.

3       Q.   Is your understanding of what the

4   status of the million dollar fine is today?

5       A.   I understand that it was vacated

6   in state court.

7       Q.   And when you say vacated, your

8   talking about the state court judgment that

9   the NASD eventually got against you?

10      A.   Correct.

11      Q.   And you appealed that, right?

12      A.   That was in the State Appellate

13  Court, yes.

14      Q.   And did any of the state

15  proceedings affect the disciplinary action

16  that NASD took against you in terms of

17  expelling Fiero Brothers from NASD

18  membership?

19      A.   I didn't understand the

20  question.

21      Q.   Is Fiero Brothers still subject

22  to this order that they be expelled from

23  NASD?

24      A.   I believe they are expelled, yes.

25      Q.   And the same is true for you?

EXHIBIT 22 PAGE 182

1   Exhibit 7 before?

2           MR. KAPLAN:  No, you did not.

3       Q.   Have you seen it before,
4   Mr. Fiero?

5       A.   I don't believe I have.

6           MR. KAPLAN:  You don't have the
7   Court of Appeals decision?

8           MR. PALMER:  I do but what do I
9   need it for here?

10          (Discussion off the record.)

11          MS. AKINS:  I didn't hear that?

12          MR. PALMER:  We're bantering.

13          MR. KAPLAN:  We're not bantering,
14   It is a matter of judicial notice.

15          MR. PALMER:  We're having a
16   friendly interlude, interaction.

17          (Discussion off the record.)

18      Q.   Mr. Fiero, did you ever file any
19  other NASD arbitration proceeding against
20  any other market makers for alleged buy-in
21  manipulations?

22      A.   Many, many.

23      Q.   Many?

24      A.   Many.

25      Q.   And who else did you file

EXHIBIT 22 PAGE 183

1    arbitration proceedings against?

2         A.   Many firms throughout the years,
3    if not necessarily NASD, but all different
4    courts.

5         Q.   And can you give me the names
6    of any that you filed against?

7         A.   I can't recall as of now.

8         Q.   Did Martin Russo represent you in
9    any of those proceedings, any of the other
10   ones?

11        A.   On some.

12        Q.   Can you give me an estimate of
13   how many he represented you in the?

14        A.   No, I can't.

15        Q.   More or less than 10?

16        A.   Less than 10.

17             MS. AKINS:  What?

18             THE WITNESS:  Less than 10.

19             MR. PALMER:  Why don't you guys
20        give me like 10 minutes to do a
21        review.

22             (A recess was taken.)

23             MR. KAPLAN:  Back on the record.

24        Q.   Earlier you mentioned, described
25   the occurrence of what you call a fail,

EXHIBIT 22 PAGE 184