DARRELL PALMER (125147)
Law Offices of Darrell Palmer
603 N. Hwy 101, Suite A
Solana Beach, CA 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Defendant, CERY B. PERLE


# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CERY B. PERLE,<br><br>Debtor,<br>_____<br><br>ALFONSO FIERO, an individual, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor FIERO BROTHERS, INC., Assignor, pursuant to the Assignment dated March 1, 2006,<br><br>Plaintiff,<br><br>vs.<br><br>CERY B. PERLE<br><br>Defendant<br>_____ | Case No.: LA 01-26497-BB<br><br>ADV06-01971BB<br><br>**DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 10, 2009<br>Time: 2:00 p.m.<br>Place: Courtroom 1475<br>Judge: Hon. Sheri Bluebond |

1

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………… 6

STATEMENT OF FACTS ……………………………………………………..7

A.    FIERO BROTHERS' CLAIM AT THE NASD ARBITRATION ……………. 7

B.    HISTORY OF SHOPPING.COM …………………………………………… 7

C.    MECHANICS OF SHORT SELLING ……………………………………… 8

D.    FIERO BROTHERS' FRAUDULENT ACTIVITIES AND EXPULSION
       FROM THE NASD ……………………………………………………… 8

E.    FIERO BROTHERS ACTIVITY IN IBUY ……………………………… 12

F.    THE NASD ARBITRATION …………………………………………... 13

SUMMARY OF ARGUMENT ……………………………………………… 14

I.    DEFENDANT'S DEBT IS DISCHARGEABLE ……………………………… 16

A.    NASD AWARD WAS BASED ON UNJUST ENRICHMENT ……………… 16

B.    PLAINTIFF'S RECOVERY IS BARRED UNDER THE DOCTRINE OF
       UNCLEAN HANDS ……………………………………………………… 20

II.    DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT ASSIST
       PLAINTIFF …………………………………………………………… 21

A.    PLAINTIFF HAS NOT MET ITS BURDEN OF INTRODUCING A
       COMPLETE RECORD OF THE NASD ARBITRATION …………………… 22

B.    ANY AMBIGUITY REGARDING THE BASIS OF THE NASD AWARD
       SHOULD BE RESOLVED IN DEFENDANT'S FAVOR …………………... 24

C.    PRECLUSIVE EFFECT CANNOT BE GIVEN TO THE SEC AND THE
       CORSAIR ACTIONS …………………………………………………… 26

III.   PLAINTIFF CANNOT PREVAIL ON EITHER OF HIS CLAIMS ………….. 28

A.    **PLAINTIFF HAS NOT ESTABLISHED HIS CLAIM UNDER 11 USC
       SECTION 523(A)(6)** …………………………………………………... 28

B.    PLAINTIFF IS NOT ENTITLED TO STATE A CLAIM UNDER
       523(A) (19) ……………………………………………………………… 29

2

C.    FACTUALLY DISPUTES EXIST REGARDING PLAINTIFF'S CLAIM

       UNDER SECTION 523(A) (19) ………………………………………… 30

CONCLUSION ……………………………………………………………… 31

DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Adray* v. *Adray-Mart, Inc.*, 76 F.3d 984, 991 (9th Cir. 1995) ...........................................20

*Ashe* v. *Swenson*, 397 U.S. 436, 444, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970)...............23

*Claridge Apartments Co.* v. *Commissioner*, 323 U.S. 141, 164 (1944) ...........................29

*Clark* v. *Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir.1992) .....................21, 23

*Davis & Cox* v. *Summa Corp.*, 751 F.2d 1507 (9th Cir. 1985) .........................................24

*Dickson, Carlson & Campillo* v. *Pole* (2000) 83 Cal.App.4th 436, 446.........................20

*Greene* v. *United States*, 376 U.S. 149, 160 (1964) .........................................................29

*Grogan* v. *Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991) ...........26

*Guardado* v. *Bozovic*, (*In re Bozovic*), (Adv. No. 04 A 00160; Bankruptcy No. 03 B
   28675).............................................................................................................................22

*Harris* v. *Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) ......................................................23

*Hernandez* v. *City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) ...........................21

*Hopper* v. *Everett* (*In re Everett*), 364 B.R. 711 ...........................................................20

*In re Beaty*, 306 F.3d 914, 922 (9th Cir. 2002)..................................................................19

*In re Flaherty*, 335 B.R. 481, 489 (Bankr.D.Mass.2005)..................................................26

*In re Houck*, 199 B.R. 163, 165 (S.D. Ohio, 1996) ...........................................................20

*In re Tognetti*, 2007 Bankr. LEXIS 1281, 2007 WL 1080147, (Bankr.S.D.N.Y.2007) ...26

*In re Uwimana*, 274 F. 3d. 806, 812 (4th Cir. 2001) ........................................................19

*In re Whitcomb*, 303 B.R. 806, 810 (Bankr. N.D. IL 2004) ..............................................30

*Kelly* v. *Okoye* (*In re Kelly*), 182 B.R. 255 (9th Cir. BAP 1995).....................................27

*Lectrodryer* v. *Seoulbank*, (2000) 77 Cal.App.4th 723, 726 ...........................................19

*Miller* v. *United States*, 294 U.S. 435, 439 (1935) ..........................................................29

*People* v. *Taylor* (1974) 12 Cal.3d 686, 691 ....................................................................25

*Precision Instrument Mfg. Co* v. *Automotive Maintenance Machinery Co.*, 324 U.S. 806,
   814-815 (1945) ..............................................................................................................20

*Prime Equity Fund, L.P* v. *Lichtman* (In re Lichtman) 388 B.R. 396 ..............................30

4

*Sigma Dynamics, Inc.* v. *E. Piphany, Inc.*, No. C-04-569, 2004 U.S. Dist. LEXIS 24261
    (N.D.Cal. May 21, 2004)...................................................................................19

*Smith* v. *Gibbons* (In Re Gibbons), 289 B.R. 588, 593-94 (Bankr. S.D.N.Y. 2003) ........28

*Stanback* v. *Lambert* (In re Lambert), 233 Fed. Appx. 598 (9th Cir. 2007).....................23

*U.S.* v. *Russo*, 74 F.3d 1383, 1388 (2nd Cir. 1996) .............................................. 8

*United States* v. *Geophysical Corp.*, 732 F.2d 693, 697 (9th Cir. 1984) .........................21

*United States* v. *Lasky*, 600 F.2d 765, 769 (9th Cir.), cert. denied, 444 U.S. 979, 62 L. Ed.
    2d 405, 100 S. Ct. 480 (1979) ....................................................................21

*United States* v. *Magnolia Petroleum Co.*, 276 U.S. 160, 162-163 (1928)......................29

**Statutes**

11 U.S.C section 523(a)(6) ...............................................................14, 16, 26, 27

11 USC section 523(a)(6) ..........................................................................19

523(A) (19) ......................................................3, 14, 16, 19, 27, 28, 29, 30

**Other Authorities**

148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy) ............28

Sarbanes-Oxley Act of 2002 ......................................................................28

**Rules**

Local Rule 9013-2(b)(4) ....................................................................22, 23

**Regulations**

NASD rule 11810.................................................................................16

NASD rule 11810(c)(1)(C) ......................................................................16

NASD Rule 3370(b)(2)(B) ..................................................................9, 10

NASD Rules 2120 and 2110......................................................................11

*Nassau Securities Services*, 42 S.E.C. 445 (1964)..............................................8

Section 10(b) of the Securities Exchange Act ...................................................9

<u>Short Sales,</u> Exchange Act Rel. No. 42037, 1999 SEC LEXIS 2232 (Oct. 20, 1999)........8

DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Plaintiff Alfonso Fiero is the assignee of Defendant's original creditor Fiero Brothers, Inc. ("Fiero Brothers"). In his motion for summary judgment, Plaintiff attempts to characterize this as a case of securities fraud where Fiero Brothers was an innocent victim who was defrauded by Defendant. This picture is far from the truth. This case revolves around Fiero Brothers' naked short selling between February and March 1998 in shopping.com, an internet company where Defendant's firm Waldron Co. was the underwriter. Naked short selling occurs when a broker/dealer issues a contract to sell stock at a future date without owing or borrowing the stock. Fiero Brothers and its President John Fiero were known short sellers who engaged in manipulative short selling in ten different securities, driving down their prices, and leading to the collapse of the securities' underwriting and clearing firm. The NASD fined Fiero Brothers $1,000,000 for their manipulative conduct. Fiero Brothers' manipulative conduct was so pervasive that in response the SEC enacted new rules regarding short selling. Fiero Brothers engaged in the same manipulative short selling in shopping.com shares. These transactions were the subject of the NASD Arbitration between Fiero Brothers and Defendant.

At the NASD Arbitration, the panel considered Fiero Brothers' claims and Defendant's counter claims regarding Fiero Brothers' manipulative activities in shopping.com. The NASD panel awarded $350,000 to Fiero Brothers merely because it found that Defendant had been unjustly enriched. The NASD award was not based on fraud or on securities violations. Plaintiff's ability to recover here is limited by the scope of the NASD award. Where the NASD award was based on unjust enrichment, Plaintiff is not entitled to any relief here. Under the guise of collateral estoppel, Plaintiff hopes that this court will find fraud and securities violations. What Plaintiff attempts to achieve is not collateral estoppel but tantamount to reopening the NASD Arbitration, alleging new claims, bringing in new facts and evidence from other cases. Plaintiff cannot be given a second bite of the apple. Plaintiff bears the burden of establishing that the NASD

DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

Award was based on fraud and securities violation.  Plaintiff cannot meet this burden simply because the basis of the award is unjust enrichment which does not support any of Plaintiff's claims of nondischargeability.

### STATEMENT OF FACTS

**A.    Fiero Brothers' Claim at the NASD Arbitration**

Plaintiff's claim of non-dischargeability is based on an award ("NASD Award") received in 1998 by Plaintiff's assignor Fiero Brothers, Inc. ("Fiero Brothers") after an arbitration ("NASD Arbitration") held before the National Association of Securities Dealers ("NASD").  Defendant, his company Waldron & Co., Waldron's clearing firm Wedbush Morgan Securities, Inc. ("Wedbush") and others were named as defendants at the NASD Arbitration. The issues at the NASD Arbitration arose from Fiero Brothers' naked short selling in shopping.com.

**B.    History of shopping.com**

Shopping.com was a California company which sold retail goods on the internet. (Opp Fact No.1 [1]) Its initial public offering occurred in November 1997 at $9.  (Opp Fact No. 2) Waldron acted as the underwriter of Shopping.com.   (Opp Fact No. 3) Shopping.com traded on the NASDAQ bulletin board market under the ticker IBUY. (Opp Fact No. 4) After IBUY's initial public offering, Waldron acted as a market maker in the stock along with 12-20 other market makers.  (Opp Fact No. 5)

The bulletin board market is similar to the ancient dealer market known as the over-the-counter market.  The difference is that in the bulletin board market, dealers post their quotes and report their trades into an electronic medium known as the bulletin board.  (Opp Fact No. 6) In 1997-98, the number of rules governing the bulletin board market was less than the rules governing the NASDAQ market.  Nonetheless, there were rules that governed short selling in the bulletin board market.  All retail public customers and broker dealers, who were not market makers, were required when engaging in naked short selling into the bulletin board market, to make an affirmative determination that the

---

[1] "Opp Fact No" refers to Defendant's separate statement of facts in opposition to Plaintiff's motion for summary judgment.

stock is borrowable in the event a demand for delivery is made.  (Opp Fact No. 7) Since

market makers were exempt from this requirement, it was possible for market makers to

sell short stock that they could not borrow and did not own.  (Opp Fact No.8)  Fiero

Brothers was a market maker in IBUY who misused its ability to sell naked shorts.  Fiero

Brothers had also previously engaged in similar manipulative short selling activities in

other securities. (Opp Fact No. 9)

## C.    Mechanics of Short Selling

A short sale involves a seller agreeing to sell stock in the future at a certain price.

Generally, a short seller does not own the stock it short sells.  In order to deliver the

security, the short seller will borrow the security from a broker and pay a fee while it

borrows the stock.  Eventually, the short seller must "cover" the short sale by returning

an equivalent amount of stock to the lender.  *U.S.* v. *Russo*, 74 F.3d 1383, 1388 (2nd Cir.

1996); Short Sales, Exchange Act Rel. No. 42037, 1999 SEC LEXIS 2232 (Oct. 20,

1999).  At the same time a buy-in may occur.  If on the delivery date the seller has not

performed its part of a contract for the sale of a security, i.e, deliver the stock to the

buyer, then the buyer after giving due notice purchases the securities which were to be

delivered in the open market for the account of the seller. *Nassau Securities Services*, 42

S.E.C. 445 (1964).

## D.    Fiero Brothers' fraudulent activities and expulsion from the NASD

Fiero Brothers is a nationally reputed aggressive short seller who had gained

notoriety for its short selling activities in connection with the 1995 failure of Hanover

Sterling, an over the counter firm and its clearing firm, Alder Coleman.  John Fiero was

the president and sole owner of Fiero Brothers (There were no "brothers" in Fiero

Brothers.  John Fiero chose the name because he thought that it "had a nice ring.")  (Opp

Fact No. 10)  John Fiero opened Fiero Brothers in 1991 with $250,000 in capital from his

own savings and by 1995, Fiero Brothers' capital had increased to $8-9 million.  (Opp

Fact No. 11)

8

On February 6, 1998, the Department of Enforcement filed a complaint against Fiero Brothers and its President John Fiero alleging that during January and February 1995, Fiero Brothers and John Fiero had colluded with other defendants to carry out a "Bear raid" in order to manipulate the price of 10 securities ("Hanover Stock") underwritten by Hanover Sterling & Co., Inc. ("Hanover"). (Opp Fact No. 12)  In a bear raid, a manipulator uses short selling as a tool for manipulation. A short seller attempts to drive down the price of the security by artificially creating an imbalance of sell-side interest. (Opp Fact No. 13) The Department of Enforcement also alleged that in carrying out the bear raid, Fiero Brothers employed threats and coercion to extort large blocks of the Hanover Stock from Hanover for below market prices to cover their short positions. Fiero Brothers allegedly violated a number of securities rules and regulations including NASD Rule 3370(b)(2)(B), and Section 10(b) of the Securities Exchange Act, Rule 10b-5 of the Securities Exchange Act. (Opp Fact No. 14; Ex. 17)

In response to the Department of Enforcement's allegations, Fiero Brothers alleged that "Hanover was controlled by a gang of outlaws that used Hanover for their economic benefit to the detriment of its customers, the public, other broker-dealers." (Opp Fact No. 15)  Fiero Brothers claimed that Hanover was itself engaged in a fraudulent scheme to manipulate the market for the Hanover securities with the intention of "pumping" the price of the Hanover securities to unjustifiable heights before "dumping" them on gullible purchasers. Fiero Brothers sought a dismissal of the charges against it based on these allegations. (Opp Fact No. 16)

Fiero Brothers modus operandi in conducting the bear raid was as follows: The bear raids were conducted in two stages. In the first stage, on January 19, 1995, Fiero Brothers registered as a market maker in the Hanover Stocks. John Fiero registered as a market maker in the Hanover Stocks because he believed that the stocks were overpriced. (Dec decision, pg. 8-9, fn 12.) (Opp Fact No. 17) Between January 19, 1995 and January 26, 1995, Fiero Brothers established substantial short positions in seven Hanover Stocks. On January 19, 2005, Fiero Brothers started with a short position in only one Hanover

9

Stock of 7000 securities valued at $8,000.  By the end of the day on January 25, 1995,
Fiero Brothers had aggregated short positions in seven Hanover Stocks totaling 105,000
securities valued at approximately $1.2 million.  During the same time, other defendants
also established significant short positions in the Hanover Stocks which valued over $ 4.5
million.  This was a "short squeeze."  Because Hanover held substantial long positions in
the Hanover Stock, Hanover's financial interest was to prevent a decline in the price of
the Hanover securities. (Opp Fact No. 18)  Hanover wanted to stop Fiero Brothers' short
selling which would have driven down the prices of the Hanover Stocks and eventually
driven Hanover out of business.  Through intermediaries who negotiated the deal,
Hanover reached an agreement with Fiero Brothers and agreed to sell Hanover Stocks at
prices set by Fiero Brothers and which were well below the market price. (Opp Fact No.
19)  Fiero Brothers covered its short position from the stock sold by Hanover and also
sold some of the excess stock, making more than $550,000 in the transaction.  On
January 27, 2009, after just 8 days as a market maker in the Hanover Stocks, Fiero
Brothers withdrew as market maker. (Opp Fact No. 20)  In the second stage, Fiero
Brothers again began short selling the Hanover Stocks.   Between January 27 and
February 3, 1995, Fiero Brothers again established significant short positions in the
Hanover Stock.  (Opp Fact No. 21)  But, before Fiero Brothers could engage in another
"short squeeze," Hanover went out of business on February 24, 1995.  On the same day,
Fiero Brothers again registered as a market maker in the Hanover Stocks and continued
its short sales of those securities. (Opp Fact No. 22)  Based on these facts, on October 28,
2002, the NASD Hearing panel found that Fiero Brothers had violated NASD Rule
3370(b)(2)(B) which required short sellers to make an affirmative determination, while
conducting naked short sales, whether a stock could be borrowed or otherwise provided
for delivery by the settlement date.  (Opp Fact No. 23)  The NASD rejected Fiero
Brothers' claim that as a market maker they were entitled to an exception to this
affirmative duty.  The NASD concluded that since Fiero Brothers was not a bona fide
market maker it was not entitled to the exception and had an affirmative duty to

determine whether a stock was available before it engaged in short selling.  (Opp Fact No. 24)  Fiero Brothers was well aware of the risk involved in short selling.  John Fiero testified that "the penny stock market was very treacherous" but the "short side has more rewards at the end of the day."  Fiero Brothers did not engage in any determination of whether the stock was available, John Fiero viewed, "buy-ins as an ordinary course of business" that are "pretty much a bookkeeping function."  (Opp Fact No. 25)  The NASD held that Fiero Brothers were engaged in speculation, not bona fide market making transactions, and were not entitled to the market maker exception. (Opp Fact No. 26)

The NASD also found that Fiero Brothers had engaged in extortion through the use of threats and coercion to purchase Hanover Stocks from Hanover at discounted prices. (Opp Fact No. 27)  The NASD panel rejected John Fiero's testimony concluding that "most of his [John Fiero] self-serving direct testimony appeared carefully rehearsed.  His newly refreshed recollection was strangely selective, and in response to cross-examination and to questions from the Hearing Panel, he appeared deliberately evasive, particularly with regard to his relationship and communications with…and other participants in the alleged bear raid." (Opp Fact No. 28)  The NASD relied on telephone call records introduced by the Department of Enforcement to conclude that there was a preexisting arrangement between Fiero Brothers and the other defendants to engage in extortion. (Opp Fact No. 29)  The NASD also concluded that Fiero Brothers had employed the short selling tactics to manipulate the market in violation of Rule 10b-5 of the Exchange Act and NASD Rules 2120 and 2110.  (Opp Fact No. 30) The NASD concluded, "Fiero Brothers along with other participants in the bear raid, concluded that the Hanover Stocks were vulnerable because Hanover had fraudulently manipulated their prices to unjustifiable levels, and applied short selling pressure in order to extract, through threats and coercion, a portion of the excessive market value of the Hanover Stocks.  And in the second stage, the Fiero Respondents and the other short sellers increased their naked short selling pressure, leading to Hanover's failure, in an effort to obtain even more of Hanover's gains from the fraudulent manipulation of the Hanover

11

Stocks.  Rather than "arbitrage," these short selling activities can best be described as "blackmail."  And like other forms of blackmail, they were unlawful regardless whether Hanover was engaged in a fraudulent market manipulation of its own."  (Opp Fact No. 31)

Fiero Brothers and its President John Fiero were fined $1 million and expelled from the NASD.  (Opp Fact No. 32)

Fiero Brothers engaged in similar fraudulent activities to drive down the price of shopping.com stock.  (Opp Fact No. 41)

**E.    Fiero Brothers activity in IBUY.**

Fiero Brothers registered as a marker maker in Shopping.com and began to naked short sell IBUY.  Waldron purchased many of the shares thorough Wedbush, Morgan, Securities, Inc. ("Wedbush"), Waldron's clearing house, but Waldron never knew the identity of the (short) seller.  (Opp Fact No. 31, 34)  As the purchaser of IBUY shares with a future delivery date, Waldron had a right to demand delivery of the securities it purchased.  (Opp Fact No. 34) The demand for delivery was contained in a notice sent by the DTC/Wedbush.  (Opp Fact No. 34) Waldron clears through Wedbush.  When the seller (Fiero Brothers) failed to deliver, Wedbush acting on behalf of Waldron had to poll the marketplace and to find and buy shares for the account of Fiero Brothers who was the short seller.  All of the buy-in transactions were conducted through Wedbush.  Defendant (Perle) was never dealing direct with the seller (Fiero Brothers) on the buy-in transaction. (Opp Fact No. 34)

Generally, when a clearing house buys on the account of a short seller who fails to deliver, the clearing house will poll each and every one of the published market makers to see if any can sell shares with guaranteed delivery.  If there was a failed to deliver, Wedbush polled the published market makers for IBUY shares.  Wedbush would purchase the IBUY shares from the market makers who could guarantee delivery.  (Opp Fact No. 35)  If other market makers could not guarantee delivery, then Waldron caused the IBUY shares to be bought in for the account of the uncovered short seller from either

12

its own inventory or from Waldron's customers who were willing to sell. Since there were no other sellers and no established guaranteed market price, Waldron had to set the price. Therefore, Waldron set the price above the last available open market price. (Opp Fact No. 35) Waldron executed buy-ins against Fiero Brothers account on February 12, 1998; March 6, 1998; March 11, 1998 and March 16, 1998. After the first buy-in on February 12, 1998, on March 3, 1998, Fiero Brothers had filed an ex parte application in the Los Angeles Superior Court seeking an injunction to prevent Wedbush and Waldron from executing a buy-in on Fiero Brothers' short position. The court denied Fiero Brothers' request. (Opp Fact No. 38)

There were no regulations governing the setting of prices on a buy-in transaction. (Opp Fact No. 36) For instance, NASD *does not* require that the buy-in be conducted at the last reported price. NASD also *does not* require that the buy-in be conducted at any particular range above the last reported price. When the buy-in prices set by Waldron started to become the subject of NASDR inquiry, Waldron contacted NASD personnel to confirm whether there were any NASD provisions governing the buy-in prices. (Opp Fact No. 36) Waldron was told that there were none. (Ex. 2.)

F.    **The NASD Arbitration**

At the NASD Arbitration, Fiero Brothers sought damages for the four alleged excessive buy-ins. Fiero Brothers also claimed that Defendant engaged in artificial market making, stock parking arrangements, guarantee against loss, and fraudulent purchasing (Statement of claims, p. 2, para 10). Defendant filed a counter-claim against Defendant alleging that Fiero Brothers had engaged in corrupt market practices, market manipulation, and tortuously interference with business relations.

The NASD Arbitration was conducted September 1 – 4, 1998. At the NASD Arbitration, Fiero Brothers introduced documentary evidence and witness testimony to allegedly prove its claim of unjust enrichment and market manipulation. Although Fiero Brothers alleged that Defendant engaged in stock parking arrangement, at the arbitration,

DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

it did not identify even one customer in whose account such activities had taken place. (Opp Fact No. 43, 52)

During the NASD Arbitration, Defendant introduced evidence of Fiero Brothers' fraudulent activity in Shopping.com.  Defendant's expert testified that between February and March 1998, Fiero Brothers had been responsible for manipulating the market in shopping.com (Ex. 8, 9).  Defendant also introduced evidence of the defamatory statements published by Fiero Brothers.  (Ex. 11, 12.)  (Opp Fact No. 44, 45, 46, 55, 56)

Regarding its damages, Fiero Brothers introduced testimony from its accountant who informed the panel of the mathematical methodology used to determine Fiero Brothers damages.  (Opp Fact No. 57, 46)

After considering all of the evidence and testimony, the NASD panel granted Fiero Brothers $350,000 in damages.  The NASD denied Fiero Brother's request for punitive damages. (Opp Fact No. 47)

## SUMMARY OF ARGUMENT

Plaintiff seeks a determination that the underlying debt, the NASD award is nondischaregable under:  (i) 11 U.S.C section 523(a)(6) for a willful and malicious injury by Defendant to the Fiero Brothers;  and (ii) 11 U.S.C section 523(a) (19) for Defendant's alleged violation of a Federal or State securities law or for common law fraud.  In his motion for summary judgment, Plaintiff relies solely on the doctrine of collateral estoppel to convince this court to enter judgment in his favor.  However, Plaintiff's attempt fails due to a multitude of reasons.

At the outset, even before considering the applicability of collateral estoppel, the court must determine whether Plaintiff is entitled to any relief under section 523(a)(6) or 523(a) (19) where the NASD award was entered on Fiero Brothers' first cause of action for unjust enrichment and was not based on "willful and malicious" conduct, fraud, or for violation of securities law.  The NASD panel awarded Fiero Brothers $350,000 award because it found that Defendant had been unjustly enriched at Fiero Brothers' expense. Plaintiff cannot rely on findings of fraud in other cases where Fiero Brothers' allegations

14

of fraud and breach of securities laws where these claims were rejected in the NASD Arbitration. If this court was to now provide Fiero Brothers relief on the grounds of fraud or breach of a securities law then it will be making findings that are contradictory to the decision already rendered by the NASD. At a minimum, the lack of findings of fact creates a dispute regarding material facts such that Plaintiff's motion for summary judgment must be denied.

Additionally, this court will find that the doctrine of collateral estoppel does not assist Plaintiff. This court cannot give preclusive effect to the NASD award because it does not contain any factual findings. To overcome this hurdle, Plaintiff relies on factual findings from other cases that were decided against Defendant. Like putting together a jigsaw puzzle, Plaintiff takes some factual findings from the Corsair Adversary action and others from the SEC action to present what he believes is a completed puzzle. However, Plaintiff's puzzle picture which is held together solely by the doctrine of collateral estoppel has huge gaping holes. The doctrine does not apply here because: (a) the issues litigated in the NASD Arbitration are different from the issues in the SEC and the Corsair action; (b) there are no factual findings in the SEC and the Corsair Adversary action that hold that Defendant was willful and malicious *in causing injury to Fiero Brothers*. Neither the SEC nor the Corsair action relate to the claims alleged by Fiero Brothers in the NASD Arbitration. In the absence of evidence to support Plaintiff's claims, this court cannot grant his motion for summary judgment.

# I.

## DEFENDANT'S DEBT IS DISCHARGEABLE

### A.    NASD AWARD WAS BASED ON UNJUST ENRICHMENT

The NASD award was based solely on Fiero Brothers' first cause of action in the NASD Arbitration for unjust enrichment and is therefore dischargeable. The NASD panel rejected Fiero Brothers' second cause of action for breach of securities law and the third cause of action for breach of fiduciary duty. Since Plaintiff's adversary proceeding

is based on the NASD award, Plaintiff's relief is limited by the scope of the NASD Award.  An award for unjust enrichment will not support a claim under section 523(a)(6) or 523(a) (19).  Therefore, Plaintiff's motion for summary judgment should be denied.

Fiero Brothers' first cause of action in the NASD Arbitration states a claim for unjust enrichment against Defendant.  Plaintiff erroneously appears to believe that the first cause of action states a claim for violation of NASD rule 11810(c)(1)(C).  The first cause of action refers to NASD rule 11810, but states the grounds for Fiero Brothers' claim of unjust enrichment as follows: "Respondents cannot justify the mark-ups they made on the IBUY shares.  As a result of the buy-ins, Fiero Brothers has been damaged in excess of $510,000 plus interest.  As a result of the buy-ins, Respondents have been unjustly enriched in excess of $510,000."  (Plt.'s Ex. 3, Second Amended Statement of Claim, para. 38-40.)  Fiero Brother's counsel Mr. Russo also confirmed that the first cause of action states a claim for unjust enrichment.  (Ex. 6) Defendant filed a motion to dismiss Fiero Brothers' first cause of action stating that there was no private right of action regarding the cited NASD Rule. (Ex. 4, 5) In response, on August 26, 1998, Fiero Brothers submitted a letter brief in which Mr. Russo stated, "Fiero's first claim is <u>not </u>an attempt to create a private right of action based on the NASD buy-in rules.  Fiero first claim states a cause of action for unjust enrichment." (Opp Ex. 6)  This is the claim that forms the basis of the NASD Award.  (Opp Fact. No. 51)

The NASD panel awarded Fiero Brothers $350,000 to compensate it for the buy-ins.  This is evident from the face of the award.  While summarizing Fiero Brothers' claim the NASD panel stated the amount of damages claimed by Fiero Brothers for each of its causes of action:  for the first cause of action, the NASD stated "$510,000.00 in ***compensatory damages*** plus interest as a result of the buy-ins,"  for the second cause of action " $3,250,000.00 plus interest as a result of defendants defrauding claimant," and on the third cause of action "$510,000 plus interest as a result of excessive markups, as well as costs, and attorney's fees for bringing the suit."  (Ptf.'s Ex.4, NASD Award.)

DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

After considering Plaintiff's evidence and Defendant's defenses and counter claims, the NASD ruled partly in favor of Fiero Brothers and stated: "Respondents Waldron & Co. are jointly and severally liable to and shall pay the claimant the sum of $350,000 in **compensatory damages**."  (Ptf.'s Ex.4, NASD Award) (emphasis added).  Evidently, the NASD panel entered its award on a finding of unjust enrichment because it intended to award Fiero Brothers "compensatory damages."  If the NASD had accepted Fiero Brothers claim that the market price of Shopping.com was manipulated, it would have awarded Fiero Brothers' entire claim of $510,000.  Instead, the NASD only awarded Fiero Brothers $350,000.

The NASD panel found that Defendant's conduct was not fraudulent as it rejected Fiero Brothers' claim for punitive damages.  The NASD also did not award any damages for fraud, i.e, the "$3,250,000.00 plus interest as a result of defendants defrauding claimant."  At the NASD Arbitration, Fiero Brothers introduced testimony from Dean Hillsick, an accountant in support of its claim of damages.  During closing argument, Fiero Brothers' attorney Mr. Russo also explained the methodology used to calculate Fiero Brothers' damages.  Mr. Russo also referred to the document created by Fiero Brothers' accountant (Exhibit 14) regarding the methodology used to calculate Fiero Brothers' damages.  Mr. Russo asked the panel to award Fiero Brothers damages for the excessive buy-ins calculated as the difference between the buy-in price and the market price which Mr. Russo stated was $778,000.  For the "manipulation claim," Fiero Brothers sought between $2.5 to $5 million in damages.  At the conclusion of the NASD proceeding, the NASD only awarded $350,000 for the buy-ins and did not award anything on the alleged manipulation claim.

The conclusion that the NASD was based on unjust enrichment is in keeping with the facts and evidence introduced by Fiero Brothers and Defendant at the arbitration.  At the NASD Arbitration, in support of its fraud claim, Fiero Brothers alleged that Defendant engaged in artificial market making, stock parking arrangements, guarantee against loss, and fraudulent purchasing (Statement of claims, p. 2, para 10).  However, at

17

the NASD Arbitration, Fiero Brothers did not introduce any evidence relating to market manipulation or fraud by Defendant. (Opp Fact. No. 43, 52)  Fiero Brothers also did not indentify any customer accounts where Defendant had allegedly parked stock.   The evidence introduced by Fiero Brothers related to the buy-ins.  On these buy-in transactions, Defendant did not violate any securities laws by charging a price higher than the market price.  There are no NASD rules or other securities laws that govern the price that may be set for a buy-in.  (Opp Fact. No. 36)  Defendant's attorney confirmed the same with NASD personnel.  In fact, at the NASD Arbitration, Fiero Brothers' and Defendant's experts also testified that Defendant had not violated any securities regulations by setting the buy-ins prices.  (Opp Fact. No. 54)  The experts testified that at a maximum, a reasonableness standard should be used to set buy-in prices.  Additionally, when the buy-in occurred, Defendant was not aware of the identity of the short seller.  Therefore, no fraudulent intent can be imputed from Defendant's decision to charge a buy-in price above the prevailing market price.

Also, at the NASD Arbitration, Defendant presented evidence in support of his defenses and counter-claims against Fiero Brothers.   Defendant's witness Robert W. Lowry an expert in the field of securities regulations provided his expert testimony.  Mr. Lowry testified that in his opinion between February 1998 and March 1998, the price increase in the shares of shopping.com was caused by Fiero Brothers' manipulation of the market.  Fiero Brothers had in the past used similar manipulative short selling in the Adler Coleman action and had brought down the underwriting firm Hanover Sterling & Co., Inc. (Opp Fact No. 12-31).  Defendant also introduced evidence of the disciplinary action instituted by the SEC against Fiero Brothers for its manipulative short selling in the securities underwritten by Hanover.  (Opp Fact No. 56)

Defendant's evidence also established that despite being bought in at what Fiero Brothers considered an excessive price, it did not cease to short sell IBUY shares.  Fiero Brothers' President and sole owner John Fiero was a seasoned securities industry professional.  (Opp Fact. No. 10)  John Fiero was well aware of the risks involved in

18

short selling shares.  (Opp Fact No. 25)  Fiero Brothers had an option to stop short selling and thereby limit its loss.  But, Fiero Brothers chose to take the risk associated with short selling and continued to short selling IBUY shares.

Defendant also introduced evidence of how the stock price of all internet shopping companies was high during that time.  (Opp Fact No. 56) Defendant also introduced evidence of Fiero Brothers' defamatory conduct and the false statement issued by the Fiero Brothers which were intended to drive down the price of shopping.com.  (Opp Fact No. 56) Similar to the Hanover case involving Fiero Brothers fraudulent conduct, Defendant introduced Fiero Brothers' phone records to show its collusion with others regarding shares of IBUY.   (Opp Fact No. 56) Based on all of the evidence introduced by Defendant in his defense and in support of his counter-claim, the NASD panel only found that the buy-ins unjustly enriched Defendant.  The NASD did not find fraud.

Because the NASD based its award on findings of unjust enrichment, Plaintiff cannot state a claim under section 11 USC section 523(a)(6) for willful and malicious conduct or under section 523(a) (19) for violation of securities law.  Under California law, fraud, malicious or willful conduct is not required to find unjust enrichment.  *Sigma Dynamics, Inc.* v. *E. Piphany, Inc.*, No. C-04-569, 2004 U.S. Dist. LEXIS 24261 (N.D.Cal. May 21, 2004); see also *Lectrodryer* v. *Seoulbank*, (2000) 77 Cal.App.4th 723, 726.  Therefore, Plaintiff's claim under section 523(a)(6) and 523(a) (19) that the NASD Award is non-dischargeable is baseless.

## B.  PLAINTIFF'S RECOVERY IS BARRED UNDER THE DOCTRINE OF UNCLEAN HANDS

"A bankruptcy court is a court of equity and should invoke equitable principles and doctrines." See *In re Beaty*, 306 F.3d 914, 922 (9th Cir. 2002).  The doctrine of unclean hands is one such equitable doctrine.  In particular, a plaintiff with "unclean hands" is "not entitled to relief from a court of equity in the form of an order denying the dischargeability of debt."  *In re Uwimana*, 274 F. 3d. 806, 812 (4th Cir. 2001); see also *Precision Instrument Mfg. Co* v. *Automotive Maintenance Machinery Co.*, 324 U.S. 806,

19

814-815 (1945); *Adray* v. *Adray-Mart, Inc.*, 76 F.3d 984, 991 (9th Cir. 1995).  Unclean hands provides a complete defense to the plaintiff's action.  *Dickson, Carlson & Campillo* v. *Pole* (2000) 83 Cal.App.4th 436, 446.  The "unclean hands" defense applies only to conduct immediately related to the cause in controversy. See *In re Houck*, 199 B.R. 163, 165 (S.D. Ohio, 1996).  For instance, in *Hopper* v. *Everett* (*In re Everett*), 364 B.R. 711, the United States Bankruptcy Court for Arizona considered the application of the defense of unclean hands to a complaint seeking nondischargeability of a debt.  The court held that the doctrine applied and barred plaintiff's recovery.  The debt was declared dischargeable.

Similarly, here Plaintiff's claim must be barred by the application of the doctrine of unclean hands.  Defendant has established that during the NASD Arbitration that Fiero Brothers had engaged in market manipulation in IBUY.  Fiero Brothers' manipulative conduct in IBUY was similar to the manipulative short selling Fiero Brothers engaged in the Hanover stock.  The NASD already declared Fiero Brothers' manipulative short selling to be a violation of securities laws.  (Ex. 18, 19) Fiero Brothers unclean hands directly relates to the relief sought here as all of these transactions relate to IBUY.  As Fiero Brothers' assignee, Fiero Brothers' unclean hands is imputed Plaintiff.  Therefore, Plaintiff's claims here are barred.

## II.

## DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT ASSIST PLAINTIFF

Generally, in the context of an adversary proceeding in bankruptcy seeking to render a claim nondischargeable, the doctrine of collateral estoppel is applied to determine if the judgment which is the basis of the underlying debt precludes litigation of some of the issues in the adversary proceeding.  Here, the underlying debt is the NASD Award.  Plaintiff does not argue that the NASD Award should be given collateral estoppel effect, potentially because the NASD Award does not contain any factual findings.  Instead, Plaintiff argues that the factual findings in two other cases that did not involve the Fiero Brothers and did not relate to the injuries caused to the Fiero Brothers

20

should be given collateral estoppel effect.  As argued below, Plaintiff's argument fails for a number of reasons and the doctrine of collateral estoppel does not apply.  Additionally, even if the court was to give preclusive effect to the SEC and Corsair Action, there are unresolved issues of material facts necessitating the denial of Plaintiff's motion for summary judgment.

## A.    PLAINTIFF HAS NOT MET ITS BURDEN OF INTRODUCING A COMPLETE RECORD OF THE NASD ARBITRATION

Plaintiff bears the burden of introducing a record of the NASD Arbitration to support its claim of collateral estoppel.  Plaintiff does not meet its burden.

"Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate."  *United States* v. *Geophysical Corp.*, 732 F.2d 693, 697 (9th Cir. 1984).  It is well established that the party asserting the estoppel bears the burden of pleading and proving what issues were decided in his favor in the previous action. *Hernandez* v. *City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980).  Court have found that arbitration decisions can have collateral effect, if after making "an examination of the...issue for which preclusion is sought is the only rational one the fact finder could have found, then that issue is considered foreclosed." *Clark* v. *Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir.1992).  Plaintiff's burden to introduce a record of the NASD Arbitration is particularly high where the NASD Award does not contain any findings of fact.  It has been held that "if a court does not make specific findings, the party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Hernandez* v. *City of Los Angeles*, 624 F.2d 935 at 937; *United States* v. *Lasky*, 600 F.2d 765, 769 (9th Cir.), cert. denied, 444 U.S. 979, 62 L. Ed. 2d 405, 100 S. Ct. 480 (1979).  In short, here, due to the absence of findings of fact in the NASD Award, Plaintiff should have introduced a record of the NASD Arbitration which will reveal the controlling facts, pinpoint the legal issues, and potentially support the application of the doctrine of collateral estoppel.

21

For instance in *Guardado* v. *Bozovic*, (*In re Bozovic*), (Adv. No. 04 A 00160; Bankruptcy No. 03 B 28675)[2] the United States District Court Northern District of Illinois considered a Rule 12(c) motion for judgment on the pleadings.  The burden in such a motion is similar to that of a summary judgment motion where relief may be granted only if the moving party establishes that there are no material issues of fact.  The court held that, "the court must deny the Plaintiff's motion because not all of the required elements are present to apply the doctrine of collateral estoppel to the judgment….In particular, the Court is unable to determine whether the issue of fraud was actually litigated and decided in the state court proceeding.  No transcript of the arbitration proceeding was furnished to the Court.  Apparently, the arbitrator did not make any specific factual findings or legal conclusions in support of the award.  The absence of factual findings or an explanation of the arbitrator's rationale render the factual and legal basis of the award unknown and uncertain….It is impossible at this stage to determine which factual allegations were actually proven, litigated, and found essential to the judgment.  Thus it is entirely possible that the arbitrator's award was entered solely on the breach of contract cause of action, which does not require any showing of fraud by the debtor."  The court concluded that "absent an adequate showing of what evidence was submitted in the prior proceeding and an absence of detailed findings of fact and conclusions of law from that proceeding, the doctrine of collateral estoppel is not properly applied here."

Similarly, here the court must consider whether a sufficient record has been provided for it to determine the basis of the NASD Award.  Plaintiff has not introduced any evidence to support its claim that the NASD found Defendant's fraudulent or a violation of any securities law.  Under the circumstance, this court must refuse to apply collateral estoppel and deny Plaintiff's motion for summary judgment.

---

[2] This unpublished case of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division is being cited pursuant to this court's Local Rule 9013-2(b)(4).

DEFENDANT CERY B. PERLE'S POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

**B.      ANY AMBIGUITY REGARDING THE BASIS OF THE NASD AWARD
SHOULD BE RESOLVED IN DEFENDANT'S FAVOR**

If this court considers the limited record of the NASD Arbitration introduced by Plaintiff to determine whether preclusive effect can be given to the NASD Award, it will find that there are unresolved issues of material fact because of which Plaintiff's motion must be denied.

This court can examine the limited record introduced by Plaintiff and the evidence presented by Defendant and make necessary inferences regarding the judgment but any ambiguity must be resolved in Defendant's favor.  It has been held that, "while necessary inferences from the judgment, pleadings and evidence will be given preclusive effect.  But, if there is doubt, however, collateral estoppel will not be applied."  *Harris* v. *Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980).  To provide collateral effect to the NASD Award, this Court must examine the NASD record and reach a conclusion that the issue for which preclusion is sought is the ***only*** rational one the factfinder could have found.  See *Clark* v. *Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir.1992).  Therefore, if the NASD Award could have been rationally grounded upon an issue other than that which Plaintiff seeks to foreclose from consideration, then collateral estoppel does not preclude re-litigation of the asserted issue. See *Ashe* v. *Swenson*, 397 U.S. 436, 444, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970).  Courts have repeatedly used this standard to deny preclusive effect to arbitration and other decisions.

For instance in *Stanback* v. *Lambert* (In re Lambert), 233 Fed. Appx. 598 (9th Cir. 2007) [3], the court of appeals considered whether preclusive effect could be given to a state arbitration award in a nondischargeability proceeding.  The Court held, "although the issue of fraud was apparently litigated during the arbitration, it is unclear from this record that the arbitrator 'necessarily decided' that all the elements of common law fraud were satisfied.  The party asserting collateral estoppel carries the burden of proving a

---

[3]  This unpublished case of the United States Court for Appeals for the 9th Circuit is being cited pursuant to this court's Local Rule 9013-2(b)(4).

23

record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.  We have a 'reasonable doubt' as to what was actually decided by the prior judgment, and therefore refuse to apply preclusive effect in this case."  Id at 599 (internal citations omitted).

Also in *Davis & Cox* v. *Summa Corp.*, 751 F.2d 1507 (9th Cir. 1985), Defendant sought to apply the doctrine of collateral estoppel to prevent the re-litigation of the issue of whether he committed legal malpractice.  The district court had applied collateral estoppel finding that another court which had denied a motion to vacate a default judgment in another action had necessarily determined that Defendant did not engage in malpractice.  The Court of Appeals rejected this argument and held that the court in the other action could have concluded that Defendant had committed malpractice, but could have found that there was no "reason justifying relief."  The court refused to speculate as to the basis of the decision to deny the motion to vacate and therefore refused to apply collateral estoppel.

Here, Plaintiff claims that the NASD found in favor of the Fiero Brother's on its claim of fraud and securities violation based on the alleged manipulation of IBUY shares.  However, Plaintiff has not introduced any evidence of the testimony provided at the NASD Arbitration or the documentary evidence that was allegedly introduced in support of his claim that Defendant manipulated the market in IBUY.  To the contrary, Defendant has introduced evidence that the NASD Award was not based on findings of fraud rather the NASD only found that Defendant had been unjustly enriched by the buy-ins.  This court cannot be asked to speculate on the basis of the NASD Award.  Therefore, if there is an ambiguity regarding the basis of the NASD Award, this court must deny Plaintiff's motion for summary judgment.

C.   **PRECLUSIVE EFFECT CANNOT BE GIVEN TO THE SEC AND THE CORSAIR ACTIONS.**

Plaintiff requests that this court give preclusive effect to the factual findings of the bankruptcy court in *Corsair Capital Partners, L.P.* v. *Perle* ("Corsair Adversary Action")

24

and the finding of the United States District Court in *SEC* v. *Waldron & Co. et al.* ("SEC Action").  However, collateral estoppel based on fact findings in the Corsair Adversary and the SEC Actions cannot be applied here.

Collateral estoppel will bar re-litigation of an issue decided at a previous proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be re-litigated; if (2) the previous [proceeding] resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]."  *People* v. *Taylor* (1974) 12 Cal.3d 686, 691.  There is no similarity of issues between the NASD Arbitration and the SEC and Corsair Adversary Actions and therefore, the doctrine of collateral estoppel cannot be applied.

The issues litigated in the NASD Arbitration are different from the issues in the SEC and the Corsair Adversary action.  Neither the SEC nor the Corsair Adversary action relate to the injuries alleged suffered by Fiero Brothers in the NASD Arbitration.  The Corsair Adversary Action related to injuries suffered by the plaintiffs there.  That action did not involve Fiero Brother's short selling losses.  There are no factual findings in either the SEC or the Corsair Adversary Action that finds that the injury suffered by Corsair is the same as the injury caused to Fiero Brothers.  Other than John Fiero's self-serving declarations there is no evidence that the injury suffered by the Fiero Brothers is similar to the injury caused to Corsair.  This is an essential requirement for the application of collateral estoppel.  There are material issues of disputed facts such that the motion for summary judgment must be denied.

Additionally, even if this Court was to accept a number of the factual findings in the SEC and Corsair action, it will not be able to find in Plaintiff's favor under the motion for summary judgment.  Plaintiff is required to establish all the elements of both of his claims in this adversary proceeding, which he hopes to achieve using the doctrine of collateral estoppel.  Plaintiff cannot establish all of the elements of his claim and therefore his motion for summary judgment must be denied.  The key missing element is

25

that there are no factual findings in the SEC or the Corsair Adversary action that hold that Defendant was willful and malicious *in causing injury to Fiero Brothers*.  That Defendant's conduct caused injury to Fiero Brothers is an important element of his claim. Plaintiff makes a fruitless attempt to satisfy this element by introducing the self-serving statement of John Fiero.  In the absence of evidence, Plaintiff's motion must be denied.

Further, the findings of fraud in the SEC and the Corsair Adversary action cannot be applied here because the NASD panel denied Fiero Brothers' fraud claims.  The NASD panel did not award Fiero Brothers any punitive damages as it did not find that Defendant engaged in any manipulation of the market.  Under these circumstances, by using collateral estoppel this court runs the risk that it will make a finding that is inconsistent with the legal and factual conclusions reached by the NASD panel.  Instead of promoting consistency in results, the application of collateral estoppel with result in an unfair result.  Therefore, this court must not apply the doctrine of collateral estoppel and must deny Plaintiff's motion for summary judgment.

### III.

### PLAINTIFF CANNOT PREVAIL ON EITHER OF HIS CLAIMS

**A.     PLAINTIFF HAS NOT ESTABLISHED HIS CLAIM UNDER 11 USC SECTION 523(A)(6).**

To receive relief under section 523(a)(6), "Plaintiffs must prove each and every element of their case by a preponderance of the evidence." *In re Tognetti*, 2007 Bankr. LEXIS 1281, 2007 WL 1080147, (Bankr.S.D.N.Y.2007) (quoting *In re Flaherty*, 335 B.R. 481, 489 (Bankr.D.Mass.2005) (citing *Grogan* v. *Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991))).  A claim under section 523(a)(6) requires a showing that the debt was: (1) for willful and malicious injury; and (2) by the debtor to another entity or to the property of another entity.  Plaintiff cannot establish his entitlement to

relief under this section because he cannot establish that injury to Fiero Brothers was caused by Defendant's willful and malicious conduct.

For instance, in *Kelly* v. *Okoye* (*In re Kelly*), 182 B.R. 255 (9th Cir. BAP 1995), the Court had to determine, while deciding the question of collateral estoppel, whether the issues resolved in plaintiff's state court action against Defendant were identical to the question of whether Defendant inflicted willful and malicious injury within the meaning of section 523(a)(6). The 9th circuit court concluded that there were no acts by the debtor which were found by the state court *to necessarily produce harm to Okoye*. For instance, the intentional act of allowing Abbot to use his [Kelly's] name and California bar number is neither related to intentional deception nor *was it necessarily productive of harm to Okoye*." (italics added). Here, Plaintiff's evidence is also similarly lacking.

Even through the use of collateral estoppel, Plaintiff cannot show that the injury caused to Fiero Brothers was the result of Defendant's "willful and malicious" action. The findings in the Corsair Adversary action relate only to the injuries sustained by those plaintiffs. There is no finding that Defendant's conduct towards Fiero Brothers was fraudulent or malicious. In fact, Fiero Brothers claims of fraud were rejected in the NASD Arbitration. The only evidence that Plaintiff introduces to establish this element, are the declarations of John Fiero. However, these declarations are self-serving and conclusory. (See Defendant's objections to these declarations.) In the past, a NASD panel rejected John Feiro's testimony stating, that "most of his [John Fiero] self-serving direct testimony appeared carefully rehearsed. His newly refreshed recollection was strangely selective, and in response to cross-examination and to questions from the Hearing Panel, he appeared deliberately evasive, particularly with regard to his relationship and communications with…and other participants in the alleged bear raid." Under the circumstances, at a minimum, there are factual issues that remain such that this motion for summary judgment must be denied.

**B.    PLAINTIFF IS NOT ENTITLED TO STATE A CLAIM UNDER 523(A) (19)**

Section 523(a) (19) is not a remedy available to Plaintiff.  If the court grants Plaintiff relief under this section it will be applying the section retroactively which is not favored.  This section only applies to bankruptcies that were pending as of July 31, 2002. Here, as of July 31, 2002, Defendant's bankruptcy was already closed, making relief under this section unavailable to Plaintiff.

Section 523(a) (19)  is part of the Sarbanes-Oxley Act of 2002 and was effective as of July 30, 2002.  Case law interpreting this section has reviewed the legislative history of this Act and concluded that it was to be applied only to bankruptcies that existed as of July 30, 2002.  For instance, in *Smith* v. *Gibbons* (In Re Gibbons), 289 B.R. 588, 593-94 (Bankr. S.D.N.Y. 2003), the debtor commenced his bankruptcy proceeding on July 11, 2001 and received a general discharge of his debts on October 5, 2001.  After section 523(a) (19) became effective, the debtor sought summary judgment on this section.  The debtor argued that the section did not apply because the conduct subject to the section had occurred before the effective date of the statute.  The court rejected this argument and found that Congress intended the section to apply to existing bankruptcies: "This provision [§ 523(a) (19)] is meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible. To the maximum extent possible, **this provision should be applied to existing bankruptcies**. The provision applies to all judgments and settlements arising from state and federal securities laws violations entered in the future regardless of when the case was filed." *Smith* v. *Gibbons*, at 593 citing 148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy) (emphasis added).

Here, Defendant's bankruptcy closed on March 28, 2002.  As of the effective date of section 523(a) (19), there was no proceeding pending in bankruptcy, such that if Plaintiff had timely filed this action he would not have been entitled to the requested relief.  This court also opined similarly when it considered Defendant's motion to dismiss Plaintiff's first amended complaint.  The court found that, "The applicable cases, including <u>Gibbons</u>, stand for the proposition that Congress intended section 523(a) (19)

28

to be applicable to pending cases and that, at least where the conduct in question was already unlawful at the time of a new statute's enactment and the statute does not reflect a Congressional intent to the contrary, a bankruptcy court should apply the law in effect at the time a discharge application is adjudicated to assess whether to grant or deny a debtor's discharge." (See February 27, 2007 order)  However, this court based its opinion on the understanding that, "the only reason the adversary proceeding was not pending at the time section 523(a) (19) was enacted was because the debtor failed to give the plaintiff notice of his bankruptcy filing."  As argued in detail in Defendant's motion for summary judgment and as summarized below, Plaintiff's assignor Fiero Brothers was provided with timely notice of Defendant's bankruptcy when notice of the bankruptcy was sent to Fiero Brother's attorney.  Here, the first date set for the first meeting of creditors was June 29, 2001.  Therefore, August 28, 2001 was Plaintiff's deadline to file an adversary complaint.  However, Plaintiff did not file this action until October 2006, more than 5 years after the deadline.  Plaintiff also did not seek any extension of the deadline to file its complaint.  If the court grants Plaintiff relief under this section it will be rewarding Plaintiff for its tardiness.  The court will be permitting Plaintiff to take advantage of its 5 year delay in filing this action.

Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.  E.g. *Greene* v. *United States*, 376 U.S. 149, 160 (1964); *Claridge Apartments Co.* v. *Commissioner*, 323 U.S. 141, 164 (1944); *Miller* v. *United States*, 294 U.S. 435, 439 (1935); *United States* v. *Magnolia Petroleum Co.*, 276 U.S. 160, 162-163 (1928).  Congress did not intend for section 523(a) (19) to apply retroactively.  Therefore, this court must deny Plaintiff any relief under section 523(a) (19).


**C.    FACTUALLY DISPUTES EXIST REGARDING PLAINTIFF'S CLAIM
        UNDER SECTION 523(A) (19)**

29

In the event, this court is inclined to consider Plaintiff's claim under section 523(a) (19), Defendant submits that no relief may be granted in Plaintiff's motion for summary judgment because there are triable issues of material fact regarding this claim.

Section 523(a) (19) makes a debt non-dischargeable if two conditions are met: (1) the debt is for the violation of certain federal securities laws, state securities laws or regulations under the federal or state securities laws or is for common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and (2) the debt results from a judgment, order, consent order or decree in a federal or state judicial or administrative proceeding or any settlement agreement entered by the debtor or any court or administrative order for the payment of damages, a fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor. *In re Whitcomb*, 303 B.R. 806, 810 (Bankr. N.D. IL 2004)

Here, Plaintiff cannot establish the requirements of section 523(a) (19).  Plaintiff must establish that the debt owed to him results from Defendant's violation of securities laws or for common law fraud.  Plaintiff must prove each of the elements of his claim.  For instance, in *Prime Equity Fund, L.P* v. *Lichtman* (In re Lichtman) 388 B.R. 396, the court denied the creditor's request for relief under section 523(a) (19).  In a pending Florida State Court action, the creditor alleged claims for common law fraud and negligent misrepresentation regarding securities transactions.  These claims formed the basis of creditor's claims under section 523(a) (19).  After considering all the facts and the evidence, the court held that the creditor could not prove all of the elements of his claim.  The court opined that although the creditor had suffered loss, none of the damages could be attributed to the debtor's bad act, misrepresentation or omission.  Therefore, the court denied relief under section 523(a) (19) and held that the debt was dischargeable.

Here, Plaintiff relies on collateral estoppel and the factual findings in the SEC action as the basis of his claim that Defendant engaged in securities violations.  However, there are no factual findings in either the SEC or the Corsair action that hold that the damage that was caused by Defendant to Fiero Brother was the result of a securities

30

violation.  In fact, as argued above, this claim was rejected by the NASD.  Under the circumstances, the court must deny Plaintiff relief under this section.  At a minimum, the lack of factual findings in the NASD Arbitration creates a dispute regarding material facts such that the motion for summary judgment must be denied.

## CONCLUSION

Fiero Brothers was aware that NASD Arbitrations that do not contain factual findings are rarely given preclusive effect.  In a brief submitted by Fiero Brothers, it argued that arbitration rulings typically do not present grounds for collateral estoppel.  (Exhibit 3)  Despite this knowledge, Fiero Brothers failed to request findings of fact from the NASD panel.  Fiero Brothers again failed to request factual findings when it sought to have the NASD award confirmed as an order of the Los Angeles Superior court.  Now, Plaintiff, Fiero Brothers' assignee is seeking to overcome the limitations presented by the lack of factual findings by relying on other cases decided against Defendant.  As argued above, this ploy fails as the factual findings do not cover the dispute between Fiero Brothers and Defendant.  In fact, the NASD Arbitration is the only action in which Defendant presented counter-claims against the plaintiff, Fiero Brothers.  Defendant introduced evidence of Fiero Brothers' fraudulent conduct in the shares of IBUY, which was the same manipulative short selling that Fiero Brothers engaged in the Hanover Shares, which led to its expulsion from the NASD.  Although the NASD did not find in Defendant's favor on its counter-claims in the NASD, it is not clear what effect Defendant's defense had on the NASD panel's decision.  This, among others, leaves unresolved material issues of fact, such that Plaintiff's motion for summary judgment must be denied in its entirety.

Dated: October 27, 2009                            ____/S/ Darrell Palmer_____
                                                   Darrell Palmer, Attorney for Defendant

31