DARRELL PALMER (125147)
Law Offices of Darrell Palmer
603 N. Hwy 101, Suite A
Solana Beach, CA 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Defendant, CERY B. PERLE

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: LA 01-26497-BB |
| | ADV06-01971BB |
| CERY B. PERLE, | |
| Debtor, | **DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT** |
| _____ | Date: November 10, 2009 |
| ALFONSO FIERO, an individual, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor FIERO BROTHERS, INC., Assignor, pursuant to the Assignment dated March 1, 2006, | Time: 2:00 p.m. |
| | Place: Courtroom 1475 |
| | Judge: Hon. Sheri Bluebond |
| Plaintiff, | |
| vs. | |
| CERY B. PERLE | |
| Defendant | |

1

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE | DEFENDANT'S |
|---|---|---|
| 1. Defendant Cery B. Perle ("Perle") was the president and a one-third owner of Waldron & Co., Inc. ("Waldron"), through its holding company Aubry/Perle Holdings, Inc. In 1997, Waldron was a registered securities broker-dealer and a member of the NASD, which had its principal office in Irvine, California. | **Appendix Exhibit ("App.Ex.") 1** (Statement of Uncontroverted Facts and Conclusions of Law In Support of The Motion of Plaintiffs Corsair Capital Partners, L.P. and Alternative Investments, L.P. For Summary Judgment Or, Alternatively, For Partial Summary Judgment filed August 13, 2002, and entered August 14, 2002 by the Honorable Judge Sheri Bluebond in the adversary proceeding entitled <u>Corsair Capital Partners, L.P. and Alternative Investments, L.P. v. Cery Bradley Perle</u>, U.S. Bankruptcy Case No. AD01-02219 (LA 01-26497-BB) ("Corsair Adversary Proceeding"), Finding No. 1;<br>**App. Ex. 2** (Findings of Fact and Conclusions of | **RESPONSE**<br>Undisputed for the purpose of this motion. |

2

| | Law Re Plaintiff Securities and Exchange Commission's Motion for Summary Judgment Against Cery B. Perle, filed May 3, 1999, in the action entitled <u>Securities and Exchange Commission v. Cery B. Perle</u> United States District Court for The Central District of California, Southern Division, 98-824 LHM (Anx) subsequently Case No. CV 99-3299 DT (Ex for "SEC Action"), Finding Nos. 1,2,4, and 5. | |
| 2.    Perle "micro managed" the personael and operations of Waldron.    Perle was very involved as a manager, and no decisions were made without his approval, including who was hired and fired.    No trades were executed without Perle's knowledge and approval.    Until the time of his termination in August 1998, Perle directly | **App. Ex. 2**, Finding Nos. 2 and 5. | Disputed.    Findings 2, 5 do not contain the statements made here. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| controlled all operations at Waldron. | | |
| 3. Waldron's holding company, Aubry/Perle Holdings, was owned by Perle, Jon Aubry ("Aubry") and Ed Harris ("Harris"). Additionally, William Long ("Long") was a long time friend of Harris. | **App. Ex. 2**, Finding Nos. 2 and 5. | Disputed. Findings 2, 5 do not state the following: "Additionally, William Long ("Long") was a long time friend of Harris." |
| 4. Shopping.com ("Shopping.com or "IBUY") was an Internet retailer based in Corona del Mar, California. In or about August 1997, Waldron planned Shopping.com's initial public offering ("IPO"). Perle performed due diligence for the IPO and participated in the road shows for the IPO to introduce Shopping.com to potential investors. Waldron took | **App. Ex. 1,** Finding No. 2; **App. Ex. 2,** Finding Nos. 6, 10-13. | Undisputed for the purpose of this motion. |

4

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| Shopping.com public on November 25, 1997. | | |
| 5. During the IPO, Shopping.com raised $11.7 million on the sale of 1.3 million shares of common stock at a price of $9.00. After the IPO, 1.3 million Shopping.com shares traded publicly in the over-the-counter ("OTC") market. Prices for IBUY shares were quoted in the NASD's OTC Bulletin Board. | **App. Ex. 1,** Finding No. 3; **App. Ex. 2,** Finding No. 14, 15. | Undisputed for the purpose of this motion. |
| 6. Waldron acted as the primary market maker for Shopping.com, meaning that it posted bid and ask prices to the public and stood ready to buy or sell the stock at the posted prices. | **App. Ex. 1 ,** Finding No. 4. **App. Ex. 2,** Finding No. 16. | Undisputed for the purpose of this motion. |
| 7. From November 1997 through at least April 1998, Waldron controlled nearly all of | **App. Ex. 1,** Finding No. 5; **App. Ex. 2,** Finding Nos. 17-18. | Disputed. |

5

| | | |
|---|---|---|
| the Shopping.com shares available for public trading. | **App. Ex. 23** (Supplemental Affidavit of John Fiero dated September 28 2009 ("J. Fiero Supp. Aff.") ¶¶ 49-53, Ex. 12.) | |
| 8. Between November 25, 1997 and March 23,1998, Shopping.com's stock price increased 255%, from $9.00 to $32.13 per share, despite the company's dismal financial performance. Specifically, for the nine month period ended 10/31/97, Shopping.com generated revenues of $376,822 and losses of approximately $2.4 million. For the fiscal year ended 1/31/98, Shopping.com had revenues of $850,724, with losses of $5.52 million. For the period ended 4/1/98 (first quarter fiscal 1999), Shopping.com reported $917,836 in revenues and a loss of $4.7 million. Shopping.com also had second | **App. Ex. 2**, Finding Nos. 15-18.**; App. Ex. 23** (J. Fiero Supp. Aff., ¶ 54, Ex. 11) | Undisputed that such findings were made. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| quarter fiscal 1999 loss of approximately $7.7 million. | | |
| 9. As of December 19,1997, Waldron held 253,295 shares of Shopping.com stock in its inventory accounts, and its customers held 972,320 shares of the stock in their accounts. Thus, as of December 19, 1997, Waldron controlled 94.3% of the 1.3 million publicly tradable shares, and continued to hold over 90% of those shares from December 19,1997 through April 3, 1998. | **App. Ex. 1,** Finding No. 6; **App. Ex. 2,** Finding Nos. 19-22. | Undisputed that such findings were made. |
| 10. From early December 1997 through April 1998, Harris, a Waldron customer and owner, and Long, another customer and long time friend of Harri, owned or controlled approximately 485,131 to 620,431 shares of the 1.3 million publicly traded shares of | **App. Ex, 2**, Finding Nos. 24, 25. **App. Ex. 19**; **App. Ex. 23** (J. Fiero Supp. Aff., ¶¶ 49-56, EX.S. 11-15) | Undisputed that such findings were made. Defendant objection to the declaration of J. Fiero and supplemental declaration of J. Fiero. (See |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | evidentiary objections concurrently filed.) |
|---|---|---|
| 11. Waldron cleared its securities transactions through Wedbush Morgan Securities, Inc. ("Wedbush Morgan"). Edward Wedbush was the President of Wedbush Morgan; Wendy A. Rea was a Senior Vice President of Wedbush Morgan; and Robert Paset (all collectively "Wedbush Defendants") was the Head Trader of Wedbush Morgan's buy-in desk | **App. Ex. 1,** Finding No. 7. | Undisputed for the purpose of this motion. |
| 12. On March 24,1998, the SEC suspended trading in the securities of Shopping.com for ten days citing "recent market activity that may have been the result of manipulative conduct." | **App. Ex. 1,** Finding No. 8; **App. Ex. 2,** Finding No. 26.; **App. Ex. 23** (J. Fiero Supp. Aff., ¶ 38, Exs. 7 and 8.) | Undisputed for the purpose of this motion. |

(Shopping.com. — continued from previous cell at top)

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| 13. Perle testified before NASD Regulation,Inc. in its investigation of Shopping.com. | **App. Ex. 1,** Finding No. 9. | Undisputed for the purpose of this motion. |
| 14. In 1998, Fiero Brothers, Inc. ("Fiero Bros.") was a registered broker-dealer and a member of the National Association of Securities Dealers, Inc. ("NASD") (now operating as Financial Industry Regulatory Association, Inc. ("FINRA"). Fiero Bros. was a market maker for numerous securities trading on NASDAQ system, including Shopping.com.   As a market maker, Fiero Bros. assisted in maintaining an orderly, non-volatile market in the securities issue for which it made a market, and was obligated to purchase or sell securities in each issue, for its own account, including selling shares that it did not own, a practice known as | Affidavit of John Fiero dated December 18, 2008 ("J. Fiero Aff.")J. Fiero Aff., ¶¶ 3,4, 6.; App. Ex. 23 (J. Fiero Supp. Aff. ¶¶ 1, 2-6.) | Defendant objects to the declaration of J. Fiero, supplemental declaration of J. Fiero, and to Plaintiff's exhibits. (See concurrent filings.) Disputed that Fiero Brothers assisted in maintaining an orderly market. |

| | | |
|---|---|---|
| taking a "short" position in a stock. | | |
| 15. Fiero Bros. cleared its trades through King Financial Services, Inc., which was a member of the National Securities Clearing Corporation ("NSCC"). King, in turn, cleared its trades including the Fiero Bros. trades, through the NSCC, which is the major clearing house for securities transactions on the major stock exchanges, and includes trades effected through the NSCC. Trades made for Fiero Bros. in IBUY stock were cleared through NSCC and subject to the continuous net settlement process. | J. Fiero Aff., ¶¶5, 6; App. Ex. 23 (J. Fiero Supp. Aff., ¶¶ 8, 9, 17, 41, Ex. 10 thereto.) | Defendant objection to the declaration of J. Fiero and supplemental declaration of J. Fiero. (See evidentiary objections concurrently filed.) However, undisputed for purposes of this motion. |
| 16. Fiero Bros. became a registered market maker of Shopping.com stock on January | Ex. 23 (J. Fiero Supp. Aff, ¶ 17.) | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| 28, 1998. | | |
| Between February 12, 1998 and April 1998, Fiero Bros. bought and sold Shopping.com stock, and carried a net short position in Shopping.com stock. | J. Fiero Aff., ¶ 13; **App. Ex. 23**, J. Fiero Supp. Aff. ¶¶17-39, 1-5, 9-11 | Undisputed for purposes of this motion. |
| 17.   Perle and Waldron knew that Fiero Bros. was making a market in IBUY.   Perle and Waldron was on the buy side of the short sale trades made by Fiero Bros. between February 12, 1998 and March 16, 1998.Perle knew that Fiero Bros. was a short seller and was "shorting" Shopping.com stock. | **App. Ex.** 20, p. 59, ¶ 2-5;¶¶ 2-5. App. Ex. 22, Exs. 2 and 3. App. Ex. 25 and 26. | Disputed.  See Perl Decl. |
| 18.  Fiero Bros. was a victim of Perle's and Waldron's fraudulent buy-ins of Shopping.com stock at artificially high prices, at the time they were engaging in artificial market making | J.Fiero Aff., ¶¶8-13 | Disputed. See Defendant's objections to the declaration of J. Fiero; Declarations of Fehn and Perle. |

11

| | | |
|---|---|---|
| activities, illegal parking arrangements, improper guarantees against loss, and short squeeze activities, and suffered damages. | | |
| 19. On February 17, 1998, Fiero Bros filed its Demand for Arbitration against inter alia, before NASD Regulation, Inc., inter Arbitration No. 98-00587, in the matter of <u>In the Matter of the Arbitration Among Fiero Brothers. Inc. vs. Waldron & Co., Cery Perle, Ed Harris, Wedbush Morgan Securities. Inc. and Ed Wedbush</u>, alleging that Perle and Waldron engaged in fraudulent, artificial market-making activity, parking arrangements, guarantees against loss, and fraudulent purchasing or "buy-in" of Shopping.com stock on February 12, 1998. | J. Fiero Aff., ¶14. | Defendant'objections Defendant objects to the declaration J. Fiero. Undisputed that such allegations were made. |

12

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| 20. On or about March 18, 1998, Fiero Bros., also a registered broker-dealer located in New York, filed its Second Amended Statement of Claim ("Fiero SOC") in NASD Arbitration No. 98-00587. The Fiero SOC expanded the dates and number of fraudulent "buy-ins" to include February 12, March 6, 11 and 16, 1998. Specifically, Fiero Bros alleged that on February 12, 1998, Waldron through Wedbush, Morgan Securities, Inc. ("Wedbush") executed a buy-in against Fiero Bros. of 35,350 shares of Shopping.com ("IBUY") stock, at 25 1/8 when the "market" price for IBUY stock at the time was between 21 5/8 and 21-3/4. Fiero Bros. alleged that on March 6, 1998, Perle and Waldron through Wedbush executed a buy-in against Fiero Bros. of 25,455 shares of IBUY stock at $29 per share when the "market price for | **App. Ex. 1**, Finding No.10: **App. Ex. 3; App. Ex. 23**, ¶23; J. Fiero Aff., ¶¶ 3, 15, Ex. 1. | Undisputed that those were the allegations contained therein. |
|---|---|---|

13

IBUY stock was between 25 15/16 and 25 31/32; Fiero Bros. alleged that on March 11, 1998, Perle and Waldron through Wedbush executed a buy-in against Fiero Bros. of 36,428 shares of IBUY stock at $36 per share when the "market price" for IBUY stock was between 29 1/4 and 29 5/16; Fiero Bros. alleged that on March 16, 1998, Perle and Waldron through Wedbush executed a buy-in against Fiero Bros. of 38,050 shares of IBUY stock at $26.5 per share when the "market price" for IBUY stock was between 21 13/16 and 21 7/8.

| | | |
|---|---|---|
| 21. The Fiero SOC further alleged that Waldron and Perle manipulated the price of the stock by (1) controlling the supply, purchasing large blocks of stock to reduce the amount of shares available for public trading, executing unauthorized | **App. Ex. 1,** Finding No. 10; **App. Ex. 3;** J. Fiero Aff., ¶16, Ex. 1. App. Ex. 23, ¶ | Undisputed that those were the allegations contained therein. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| trades and parking stock in customer and fictitious accounts, and restricting customers from selling Shopping.com stock in their accounts; and (2) creating artificial demand for the stock, by issuing a false and misleading press release, and while Waldron was acting as a market maker, raising the bid for the stock without economic justification, and (3) executing a short squeeze by fraudulently buying-in Shopping.com stock at above-market prices, which conduct violated NASD Uniform Practice Code Section 11810(c)(1)(C),17 C.F.R. Section 240.10b-5, and their fiduciary duties in the execution of a securities trade. | | |
| 22. Perle and Waldron, represented by H.Thomas Fehn of Fields, Fehn & Sherwin in Los Angeles, California, filed a | **App. Ex. 1,** Finding No. 11; **App. Ex. 4.** | Undisputed. |

15

| | | |
|---|---|---|
| Statement of Answer and a Cross-Claim against Fiero Bros. and third-party Key West Securities, Inc., on April 16, 1998. | | |
| 23.   Fiero Bros.' NASD action was arbitrated from September 1-4, 1998.   Fiero Bros. presented more than 68 pre-numbered exhibits, totaling thousands of pages of documents.   Additionally, Fiero Bros. called numerous witnesses who testified at the arbitration hearing. | **App. Ex. 1,** Finding No. 12; **App. Ex. 4;** J. Fiero Aff., ¶ 17, Ex. 2; **App. 23**, J. Fiero Supp. Aff.,¶¶ 40 | Undisputed. |
| 24.   At the NASD Arbitration, Fiero Bros. presented evidence that it suffered damages as a result of Perle and Waldron's forced buy-ins at prices that greatly exceeded the market price for IBUY stock. The total amount of Fiero Bros.' damages, i.e., its out-of-pocket costs resulting from the | **App. Ex. 23**, J. Fiero Supp. Aff., ¶40-43, Exs. 9-11; and ¶¶ 17-39 and Exs. 1-6. | Disputed.  See Decl of Fehn and Perl. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| above-market buy-ins identified in Fiero Bros.' Second Amended SOC (i.e., February 12, 1998, March 6, 1998, March 11, 1998, and March 16, 1998) was $789,255. This damage figure was determined by calculating the difference between the buy-in price and the weighted average cost per share received by Fiero Bros. in selling Shopping.com stock. | | |
| 25.   At the NASD Arbitration, Fiero Bros. presented an alternative calculation of its damages based on the excessive buy-in prices charged compared to the market price of IBUY stock on the buy-in dates. Under this alternative methodology, Fiero Bros.' out of pocket damages on the four buy-ins identified in Fiero Bros.' Second Amended SOC was $463,581 (or if include the 3/19 buy-in then $1,187,932) when | **App. Ex. 23**, J. Fiero Supp. Aff., ¶40, Ex. 9. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| measured against the buy-in price as compared to the market price at the time of buy-ins. | | |
| 26. Following hearings which took place over September 1-4,1998, NASD Regulation, Inc. issued an Award finding Waldron, Perle and Ed Harris jointly and severally liable to Fiero Bros. for $350,000.00 in compensatory damages, and $50,000 against respondent Wedbush, Morgan Securities, Inc. ("Wedbush") in compensatory damages. | **App. Ex. 5;** ¶ 18 to J. Fiero Aff., Ex. 3. | Undisputed. |
| 27. On February 10, 1999, Fiero Bros. Filed a Petition to Confirm the Arbitration Award in the Los Angeles Superior Court, Los Angeles Superior Court Case No BS055659 ("the Petition"); Service of the Petition was served on Thomas Fehn, Esq., of Fields, Fehn & Sherwood, as counsel for Perle and Waldron. | **App. Ex. 5;** ¶19 to J. Fiero Aff., Ex. 3; Ex. 23 to J. Fiero Supp. Aff, ¶76.. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| 28. The Petition stated that on or about February 17, 1998, Fiero Bros. submitted to arbitration before the NASD a controversy against respondents Cery Perle and others that arose in connection with the sale of securities, as set forth in the Second Amended Statement of Claim, Case No. 98-00587 | **App. Ex. 5;** ¶20 to J. Fiero Ex. 3.; App. Ex. 23, ¶77 to J. Fiero Supp. Aff. ff. | Undisputed. |
| 29. The Petition reflected that on September 17, 1998, the arbitrators made their award determining all issues submitted to them, and awarded Fiero Bros. the sum of $350,000 in compensatory damages against Waldron, Perle and Ed Harris, and the sum of $50,000 against Wedbush (Exhibit C thereto). Fiero Bros. was represented in the Petition by its California counsel,  The Law Offices of | **App. Ex. 6;** ¶ 21 to J. Fiero Aff., Ex. 4; App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 78. | Disputed in part. The findings do not state that the award determined all issues submitted to them. However, undisputed as to the amount of the award. |

19

| | | |
|---|---|---|
| Mark Steven Kessler. | | |
| 30. On March 17, 1999 Fiero Bros.' Petition to Confirm Arbitration Award came on for hearing.  The Minutes and the Ruling on Petition to Confirm Arbitration Award reflect that the Court received no opposition to the Petition to Confirm the Arbitration Award.  The Ruling issued by the Court GRANTED Fiero Bros.' Petition, and confirmed the arbitration award in the sum of $350,000 against Waldron and Perle, and in the sum of $50,000 against Wedbush Securities, Inc. The Ruling also stated that Fiero Bros.' Petition is supported by the documents submitted by Fiero Bros., including the Second Amended Statement of Claim and the Arbitration Award issued by the NASD panel. | **App. Ex. 7**; ¶21 to J. Fiero Aff., Ex.4.; **App. Ex. 23**, J. Fiero Aff., ¶ 79. | Disputed in part. The Order further states that "the court has received no opposition to this petition" thereby creating an *inference* that the motion was meritorious. |
| 31. On April 6, 1999, the Los | **App. Ex. 1,** Finding No. 12; | Undisputed for |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| Angeles Superior Court issued its Order Confirming Fiero Bros.' Arbitration Award. | **App. Ex. 8;** ¶22 to J. Fiero Aff., Ex. 5; **App. Ex. 23**, J. Fiero Supp. Aff., ¶ 81. | purposes of this motion. |
| 32. On April 6, 1999 the Los Angeles Superior Court, in Case No. BS5055659 entered Judgment in favor of Fiero Bros., Inc. against Cery B. Perle, Waldron & Co., Inc., in the amount of $350,000 in compensatory damages. | **App. Ex. 9;** ¶24 to J. Fiero Aff., Ex. 6; App. Ex. 23, J. Fiero Supp.¶81. | Undisputed. |
| 33. On April 20, 1999, Fiero Bros. filed and served its Notice of Entry of Judgment in the Los Angeles Superior Court on all parties, including Perle and Waldron through their attorney Thomas Fehn, Esq. | **App. Ex. 10;** ¶25 to J. Fiero Aff., Ex.7; App. **Ex. 23,** J. Fiero Supp., ¶ 82.. | Disputed. See Decl. of Perle. |
| 34. On January 4, 2000, the Abstract of Judgment was filed by Fiero Bros. in the Los Angeles Superior Court, Case No. BS055659, against Waldron | **App. Ex. 10.** ; **App. Ex. 23**, J. Fiero Supp. Aff., ¶83. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| and Perle as judgment debtors. | | |
| 35. On January 4, 2000, Fiero Bros. filed its Abstract of judgment with the Los Angeles Superior Court, which the Clerk of the Los Angeles Superior Court issued the Abstract of Judgment in the amount of $350,215 against judgment debtors Waldron and Perle. | **App. Ex. 1,** Finding No. 13; App. Ex. 23, J. Fiero Supp. Aff., ¶ 83, referecing Ex. 8 to prior Fiero Aff. | Undisputed. |
| 36. The SEC began investigating activity in Shopping.com by 1998, and took testimony from various people, including Perle, in the course of that investigation. Perle was represented during the investigation by Gregory J. Sherwin and Tom Fehn of Fields, Fehn & Sherwin. | **App. Ex. 1**, Finding No. 14; **App. Ex. 17.** | Undisputed. |
| 37. On September 23, 1998, the SEC filed a Complaint for Violations of the Federal Securities Laws against Perle | **App. Ex. 1,** Finding Nos. 14, 15; **App. Ex. 17.** | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

and Waldron ("SEC Action").

| | | |
|---|---|---|
| 38. The SEC Action alleged that between November 25,1997 and March 23,1998, Waldron and Perle artificially raised the price of Shopping.com stock 255%, from its IPO price of $9.00 per share, to a high of $32.13 per share, resulting in over $4.1 million in ill-gotten gains to Waldron. | **App. Ex. 1,** Finding No. 15. **App. Ex. 17.** | Undisputed. |
| 39. The SEC further alleged in the SEC Action that Waldron and Perle manipulated the price of the stock by (1) controlling the supply, purchasing large blocks of stock to reduce the amount of shares available for public trading, executing unauthorized trades and parking stock in customer and fictitious accounts, and restricting customers from selling Shopping.com stock in their | **App. Ex. 1,** Finding No. 16; **App. Ex. 13.** | Undisputed that those were the allegations contained therein. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| accounts; and (2) creating artificial demand for the stock, by issuing a false and misleading press release, and while Waldron was acting as a market maker, raising the bid for the stock without economic justification. | | |
| 40. The District Court in the SEC Action granted the SEC's motion on January 11,1999. | **App. Ex. 1,** Finding No. 23, **App. Ex. 15**. | Undisputed. |
| 41. A final judgment was entered in the SEC Action ordering Perle to pay a civil penalty of $110,000 and enjoining him from future violations of the securities laws was entered on February 11,1999. | **App. Ex. 1,** Finding No. 24. **App. Ex. 13.** | Undisputed. |
| 42. On May 3, 1999, the District Court in the SEC Action by Judge Dickran Tevrizian issued detailed Findings of fact and conclusions of law regarding Perle's and Waldron's activities | **App. Ex. 1,** Finding No. 25; **App. Ex. 2,** pp. 25:8-28:14. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| with respect to the stock of Shopping.com. The District Court, Judge Tevrizian concluded that Perle violated the Antifraud provisions of the securities laws, including Section 17(a) of the Securities Act of 1933, 15 U.S.C. §77q(a), Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §78j(b), and Rule l0b-5,17 C.F.R. §240.10b-5, Section 20(a) of the 1934 Act, 15 U.S.C. §78t(a), Section 15(c)(1) of the 1934 Act, 15 U.S.C. §78o(c)(1), and Rule 15cl-2, 17 C.F.R. §240.15cl-2. This Finding of Fact was adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 43. The District Court, in the SEC Action Judge Dickran presiding, found that Perle directly controlled all of | **App. Ex. 1,** Finding No. 26; **App. Ex. 2,** Finding Nos. 8-9. | Undisputed. |

25

| | | |
|---|---|---|
| Waldron's operations, and micromanaged its personnel and operations. No decisions were made without his approval, including who was hired and who was fired. No trades were executed without Perle's knowledge and approval. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 44. The District Court, in the SEC Action Judge Tevrizian presiding, found that by August 1997, before the IPO, Waldron was planning to manipulate the supply of Shopping.com stock. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | **App. Ex. 1,** Finding No. 27; **App. Ex. 2,** Finding Nos. 27-28. | Undisputed. |
| 45. The District Court, in the SEC Action Judge Tevrizian presiding, found that Perle and Waldron acted to control the | **App. Ex. 1,** Finding No. 28; **App. Ex. 2,** Finding Nos. 30-31. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

supply of Shopping.com stock by reducing the "float." Waldron was the lead underwriter in the firm commitment underwriting of Shopping.com's 1.3 million share IPO, and when the IPO closed on December 5, 1997, all but approximately 260,000 of the 1.3 million shares sold were held in Waldron's inventory and retail accounts. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding.

46. The District Court, in the SEC Action Judge Tevrizian presiding, found that between November 25, 1997 and January 14,1998, Waldron was a net purchaser of 251,232 shares of Shopping.com stock from other broker-dealers. This Finding of Fact was adopted by Judge Bluebond in the Corsair Adversary Proceeding.

**App. Ex. 1,** Finding No. 29; **App. Ex. 2,** Finding No. 32.

Undisputed.

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| 47. The District Court, in the SEC Action Judge Tevrizian presiding, found that such large purchases just after an IPO suggest an effort to reduce the floating supply of a security and so render its price sensitive to demand.  This Finding of Fact was adopted by Judge Bluebond in the Corsair Adversary Proceeding. | **App. Ex. 1,** Finding No. 30; **App. Ex. 2,** Finding No. 33. | Undisputed. |
| 48. The District Court, in the SEC Action Judge Tevrizian presiding, found that from late November 1997 to at least late March 1998, Perle requested and received from Shopping.com's president a confidential report from Depository Trust Company ("DTC"), which generated the report upon the request of the issuer of a security (not a broker-dealer or market maker such as Perle and Waldron) to allow the issuer to track activity | **App. Ex. 1,** Finding Nos. 31; **App. Ex. 2,** Finding Nos. 34-37, 40. | Undisputed. |

28

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| in its stock. The report tracked which brokerage firms held Shopping.com stock in the market. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 49. The District Court, in the SEC Action Judge Tevrizian presiding, found that Perle personally monitored the information in the DTC report and used it to discover which brokerage firms held Shopping.com stock in the market. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | **App. Ex. 1,** Finding Nos. 32; **App. Ex. 2,** Finding Nos. 38, 39. | Undisputed. |
| 50. The District Court, in the SEC Action Judge Tevrizian presiding, found that Perle and Waldron also acted to control the supply of Shopping.com stock by conducting | **App. Ex. 1,** Finding No. 33; **App. Ex. 2,** Finding Nos. 50-57, 59, 61, 63-76. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

unauthorized trades and parking Shopping.com stock in customer accounts. Shopping.com shares were sold into Waldron customers' accounts without authorization or consent, in some cases resulting in cash deficits in those accounts. Shares of Shopping.com and other securities were also sold from customer accounts without authorization. In many instances Perle delayed responding to or ignored customers' requests to reverse the unauthorized transactions, and they were reversed only after repeated requests. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding.

| | | |
|---|---|---|
| 51. The District Court, in the SEC Action Judge Tevrizian presiding, found that Perle and Waldron also acted to control the supply of Shopping.com | **App. Ex. 1,** Finding No. 34; **App. Ex. 2,** Finding Nos. 77-82. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

stock by parking Shopping.com stock in fictitious accounts. On February 10 and 11, 1998, Waldron purchased 132,520 shares of Shopping.com into its inventory, increasing its position from 87,157 to 219,677 shares, and resulting in its clearing broker, Wedbush Morgan, issuing a margin call for over $2.3 million, which required Waldron to raise funds immediately or risk liquidating part of its Shopping.com inventory position. Waldron's sales of 75,000 Shopping.com shares for $l,882,910 between February 9 and 12, from its inventory account to twelve fictitious customer accounts, which had no funds or assets to pay for the purchases, helped Waldron resolve its margin call with Wedbush Morgan. On February 17,1998, Waldron repurchased the 75,000 shares into its inventory. These

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 52. The District Court, in the SEC Action Judge Tevrizian presiding, found that Perle and Waldron also acted to control the supply of Shopping.com stock by restricting customers' sales of Shopping.com stock. Perle told Waldron registered representatives who tried to process their clients' instructions to sell Shopping.com stock that they should "find a home" for it, i.e., sell it to another Waldron client, or risk losing their jobs, and required all Waldron registered representatives to sign a "Penalty Bid" whereby if a representative sold Shopping.com stock for a client within 90 days of the purchase, he would lose his commissions for both transactions. When customers tried to sell the stock | **App. Ex. 1,** Finding No. 35; **App. Ex. 2,** Finding Nos. 83-143. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

within 90 days of the purchase, Waldron employees would not return their calls, take the sell orders or follow customer instructions, tried to talk the customers out of selling the stock, ridiculed their decision to sell, and tried to convince them to buy more of the stock. Customers had to make repeated requests, and/or demand that their accounts be closed, before their sell orders were finally processed. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding.

53. The District Court, in the SEC Action Judge Tevrizian presiding, found that in early March 1998, Perle and Waldron also created an artificial demand for Shopping.com stock by directing Waldron's public relations firm to issue a false and misleading press release,

**App. Ex. 1,** Finding No. 36; **App. Ex. 2,** Finding Nos. 144-157.

Undisputed.

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

which was a buy recommendation for Shopping.com stock, to try to counter another firm's negative report about Shopping.com. Perle provided the public relations firm with the research report, reviewed and approved the press release, and caused it to be published. The press release tracked the growth of Shopping.com's revenues from $56,000 to $425,000 over the last three quarters of Shopping.com's fiscal 1998, and projected total revenues of $800,000 for the fiscal year, but failed to disclose that Waldron was Shopping.com's biggest customer in its 1998 fiscal year, with purchases accounting for 42% of the company's revenues. Perle decided on behalf of Waldron to purchase computer equipment and office supplies from Shopping.com, and directed others at Waldron

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| to do so.   These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 54.  The District Court, in the SEC Action Judge Tevrizian presiding, found that Perle and Waldron also created an artificial demand for Shopping.com stock by raising the bid without economic justification. Between November 25,1997 and January 14,1998, the price of Shopping.com stock rose 46.5%. from $8.88 to $13.00 per share, with Waldron as the driving force behind the increase. While ten other broker-dealers quoted Shopping.com stock in the market during that time, Waldron maintained the high bid price 95.5% of the time during trading hours, advanced the high bid 51 of the 59 times (86.4%) it was raised, and | **App. Ex. 1,** Finding No. 37; **App. Ex. 2,** Finding Nos. 158-165. | Undisputed. |

| | | |
|---|---|---|
| increased its bid 55 times, with 51 of the increases (92.7%) being advances to a new high bid price. During that period, Waldron held no less than 100,000 shares of Shopping.com stock in its inventory, and frequently held over 200,000 shares. It is not economically rational for a market maker to raise the bid for a security when it holds a substantial amount of the stock in its inventory. Internal retail demand for a stock is generally filled from a broker-dealer's inventory before an effort is made to purchase (bid for) the stock on the market. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 55. The District Court, in the SEC Action Judge Tevrizian presiding, found that beginning in late January 1998, short | **App. Ex. 1,** Finding No. 38; **App. Ex. 2,** Finding No. 166. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

sellers, traders who sell stock they do not own to take advantage of an anticipated price drop, were very active in trading of Shopping.com stock. This Finding of Fact was adopted by Judge Bluebond in the Corsair Adversary Proceeding.

56. A short sale is a securities industry procedure whereby a person "sells something [he does not] own." That is, a person may consider that a stock is overvalued in the market, and its market price is higher than its actual worth, and based on the expectation that the market will be corrected and the price will drop to reflect the true value of the stock, he may offer to sell shares which he does not then own, with the expectation that by the time he must deliver them, he will be able to buy them in the market

**App. Ex. 1,** Finding No. 39; **App. Ex. 23**, J. Fiero Supp. Aff., ¶ 7.

Undisputed.

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| at a price lower than that at which he has offered to sell. The short seller's gain is the difference between the higher price at which he sold, and the lower price at which he purchased the stock. | | |
| 57. A "buy-in" is a securities industry procedure by which a buyer, in situations where a seller fails to deliver securities that have been sold to that buyer (called a "fail" in the securities industry), is permitted to go into the market to buy the security, and charge the failing party with the purchase cost. | **App. Ex. 1,** Finding No. 40; App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 14-16. | Undisputed. |
| 58. The District Court, in the SEC Action Judge Tevrizia presiding, found that because it controlled over 90% of the publicly tradable shares, Waldron was able to execute a "short squeeze," by which Waldron created a shortage of | **App. Ex. 1,** Finding No. 41; **App. Ex. 2,** Finding Nos. 167-173; **App. Ex. 19** (Declaration of Thomas Martinson, dated December 15, 1998, ¶ 9-10, Ex.7 pp. 189-191, Ex. 9 pp. 198-200, and Ex. 10 p.203) | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

stock in the market and made it difficult for short sellers to find stock to deliver on their short sales. Due to Waldron's control of supply and the fact that it was on the buy side of most of the short sales, Waldron was able to use its own inventory to "buy-in" short sellers who could not deliver the shares they sold, and often charged them prices far in excess (by up to 50%) of the closing price of the stock on the day of the buy-ins. Between November 25, 1997 and March 23,1998, Waldron made over $4.1 million in profits as a result of the manipulative activity in Shopping.com stock. These Findings of Fact were adopted by Judge Bluebond in the Corsair Adversary Proceeding.

| | | |
|---|---|---|
| 59. The illegal conduct described in paragraph 58, above, is exactly what happened to the short-sellers of | **App. Ex 21**; **App. Ex. 23**, J. Fiero Supp. Aff., ¶40-43, Exs. 9-11; and  ¶¶ 17-39 and Exs. 1-6. | Disputed. Defendant objects to the declaration of J. Fiero and Fiero |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| IBUY stock, i.e., Corsair Capital Partners, L.P., and to Fiero Bros., | | Supp Aff. (See concurrent filing); See Decl. of Perle; Decl. of Fehn; and Points and Authorities. |
| 60.  The illegal conduct described in paragraph 58 above, is what caused the short-sellers' damages, i.e., Corsair Capital Partners, L.P., and Fiero Bros. suffering damages in excess of $350,000. | **App. Ex. 21; App. Ex. 23**, J. Fiero Supp. Aff., ¶40-43, Exs. 9-11; and ¶¶ 17-39 and Exs. 1-6. | Disputed. Defendant objects to the declaration of J. Fiero and Fiero Supp Aff. (See concurrent filing); See Decl. of Perle; Decl. of Fehn; and Points and Authorities. |
| 60.  Based on all of the foregoing, the District Court in the SEC Action concluded that, inter alia, Perle, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of a | **App. Ex. 1, Fn. 42.** | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

national securities exchange, with scienter: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons, in violation of Section 10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule l0b-5 thereunder, 17 C.F.R. §240.10b-5. Perle's fraudulent activities also made him liable as a controlling person of Waldron, in violation of Section 15(c)(1) of the 1934 Act, 15 U.S.C. §78o(c)(1), and Rule 15cl-2 thereunder, 17 C.F.R. §240.15cl-2. These Conclusions were adopted by Judge

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| Bluebond in the Corsair Adversary Proceeding. | | |
| 61. In ordering injunctive relief, the District Court in the SEC Action noted that: (a) Perle's past violations permitted an inference that he would commit future violations; (b) his violations were not isolated but continued over a period of months; (c) Perle acted with a high degree of scienter in conducting the manipulation scheme; (d) his violations of the federal securities laws were egregious; (e) Perle failed to provide any assurances against future violations of the federal securities laws or recognize the wrongful nature of his conduct. Additionally, since Perle's conduct involved (1) fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (2) directly or indirectly resulted | **App. Ex. 1,** Fn. 43. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| in substantial losses or created the risk of substantial losses to other persons, warranting a $110,000 penalty. These Conclusions were adopted by Judge Bluebond in the Corsair Adversary Proceeding. | | |
| 62. On March 10, 1999 Perle filed a Motion to Vacate the Judgment, entered in the SEC Action, which was opposed by the SEC, and untimely papers in opposition to the SEC's summary judgment motion. | **App. Ex. 1**, Fn. 44. | Undisputed. |
| 63. Perle's Motion to Vacate was denied on May 3,1999 | **App. Ex. 1**, Fn 45. | Undisputed. |
| 64. Perle did not appeal from either the Judgment or the denial of his Motion to Vacate in the SEC Action. | **App. Ex. 1**, Finding No. 46. | Undisputed. |
| 65. Corsair and AI were short sellers of Shopping.com stock | **App. Ex. 1,** **App. Ex. 2,** Conclusion Nos. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| who were caught in Perle's short squeeze. From February 20, 1998 through March 12,1998, Corsair and AI sold short approximately 32,800 shares of Shopping.com at an average price of approximately $24 per share. | 3,4. | |
| 66. Like Corsair and AI, Fiero Bros. was a short seller of IBUY who was caught in Perle's short squeeze.  The fraudulent buy-ins of Shopping.com stock for Fiero Bros. occurred on February 12, 1998, March 6, 1998, March 11, 1998, and March 16, 1998. | **App. Ex. 23**, J. Fiero Supp. Aff., ¶¶ 17-37, Exs. 1-12 | Disputed.  See Defendant's objections to the declarations of J. Fiero.  See decl of Fehn and Perle; Defendant's points and authorities. |
| 67. Fiero Bros. was had no knowledge of Perle and Waldron's fraudulent scheme to manipulate the market for IBUY stock, or to execute a short | **App. Ex. 23**, J. Fiero Supp. Aff., ¶44. | Conclusory. Disputed.  See Defendant's objections to the declarations of |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| squeeze, when Fiero Bros. sold IBUY short in the marjket. | | J.Fiero; Defendant's evidence in opposition; Decl. of Perle. |
| 68. In the course of their manipulative scheme to keep the price of Shopping.com stock artificially high and to control the public float, from mid-February 1998 through mid-March 1998, Perle, Waldron, and the Wedbush Defendants jointly conducted numerous illegal buy-ins above the already manipulated market price. Despite the fact that Waldron had insufficient capital with which to purchase additional shares, such that Wedbush Morgan had no obligation to | **App. Ex. 1**, FN. 48; **App. Ex. 23**, J. Fiero Supp. Aff., ¶¶ 17-37, Exs. 1-12 | Conclusory. Disputed. See Defendant's objections to the declarations of J.Fiero; Defendant's evidence in opposition; Decl. of Perle. |

45

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

(and did not) honor Waldron's trades, Waldron's purchases of additional shares in the days leading up to March 13, 1998 exposed Wedbush Morgan to a potential loss of over $2,000,000. Edward Wedbush discussed Waldron's net capital dilemma with Cery Perle, and determined that: (a) Wedbush Morgan temporarily would cease to clear for Waldron; and (b) Wedbush Morgan would conduct series of additional illegal, above-market buy-ins for Waldron, to fight the short sellers and reduce Wedbush Morgan's exposure to loss.

68. Pursuant to this plan, from March 16, 1998 through May 27, 1998, Waldron, Perle and the Wedbush Defendants illegally bought-in Corsair's and AI's Shopping.com shares at prices up to $13.25 more than the weighted average market price

**App. Ex. 1,** Finding No. 49;
**App. Ex. 2,** Conclusion Nos. 5-6;
**App. Ex. 21,**

Undisputed.

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| of Shopping.com on the date(s) of sale. | | |
| 69. Pursuant to this plan, from February 12, 1998 through March 19, 1998, Walderon, Perle and the Wedbush Defendants illegally bought in Fiero Bros.' IBUY shares at prices up to $14.00 more than the market price of Shopping.com stock on the date(s) of the sale, while Waldron controlled over 90% of the outstanding stock in IBUY. | **App. Ex 23**, J Fiero Supp. Aff., ¶¶17-43, Ex.s. 1-6, 9-13. | Conclusory. Disputed. See Defendant's objections to the declarations of J.Fiero; Defendant's evidence in opposition; Decl. of Perle. |
| 70. Because Perle and Waldron controlled the supply of IBUY stock, directly or through friendly accounts, it could and did force the buy-ins of IBUY stock against the short sellers, at prices controlled by Waldron and Perle. | **App. Ex. 23**, J. Fiero Supp. Aff., ¶¶ 49-55 Exs. 11-15 | Conclusory. Disputed. See Defendant's objections to the declarations of J.Fiero; Defendant's evidence in opposition; Decl. of Perle. |
| 71.Because Perle and Waldron | **App. Ex. 23,** J. Fiero Supp. | Conclusory. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| controlled more than 90% of the outstanding shares of IBUY stock, short-sellers, such as Corsair and Fiero Bros. could not cover their shorts, causing the "fail to delivers," and leading to the buy-ins by Waldron and Wedbush. | Aff., ¶¶ 56-59, Exs. 16-18. | Disputed. See Defendant's objections to the declarations of J.Fiero; Defendant's evidence in opposition; Decl. of Perle. |
| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** | |
| 72. Corsair and AI sued Perle, Waldron, and the Wedbush Defendants in District Court for violations of Section 10(b) and Rule 10b-5. and Section 20(a) of the 1934 Act, and for violations of state securities laws and Business & Professions Code section 17200, resulting from Perle's scheme to profit from manipulation of the market price for Shopping.com stock (the "Corsair District Court action"). | **App. Ex. 1,** Finding No. 50.; **App. Ex. 18**, p.199-216. | Undisputed that a complaint was filed. Otherwise, disputed. |
| 73. A default judgment for $685,825.00 was entered | **App. Ex. 1**, Finding 59. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| against Perle for Corsair and AI on May 26, 2000 in the Corsair District Court action. | | |
| 74. Perle did not appeal, and his time to do so expired in the Corsair District Court action. | **App . Ex. 1**, Finding 60. | Undisputed, |
| 75. The default judgment against Perle in the Corsair District Court Action was based on Judge Rafeedie's findings that Perle had violated the antifraud provisions of the federal securities laws, particularly Section 10(b) of the 1934 Act and Rule l0b-5 thereunder. | **App. Ex. 1**, Finding 61. | Undisputed. |
| 76. The Clerk in the Corsair District Court Action had previously entered Waldron's default on March 2,2000, due to Waldron's failure to respond to the complaint or otherwise defend against the Corsair District Court action. | **App. Ex. 1,** Finding 62. | Undisputed. |

49

| | | |
|---|---|---|
| 77. On or about May 25,2001, Perle filed a voluntary Chapter 7 petition in the Central District of California. Among the debts for which Perle sought to discharge was the judgment obtained by Corsair and AI against him in the Corsair District Court Action. | **App. Ex. 1,** Finding 63. | Undisputed. |
| 78. On August 28, 2001, Corsair filed an adversary complaint (the "Corsair Adversary Complaint") objecting to the dischargeability of this debt, on the grounds that Perle's conduct giving rise to the debt was fraudulent, willful and malicious, larcenous and a breach of fiduciary duty, such that its discharge should be denied under 11 U.S.C. §523 ("Section 523"). | **App. Ex. 1,** Finding No. 64. | Undisputed that a complaint was filed. Otherwise, disputed. |
| 79. Judge Bluebond determined that the Court had jurisdiction over the Corsair Adversary Proceeding pursuant to 28 | **App. Ex. 1,** Conclusion No. 1. | Undisputed. |

50

U.S.C. §1334.

77. In the Corsair Adversary Proceeding Judge Bluebond took judicial notice of the documents from the proceedings entitled <u>Securities and Exchange Commission v. Waldron & Co., Inc. and Cery B. Perle</u>, United States District Court for the Central District of California, Southern Division, Case No. SACV 98-824 LHM (Anx) subsequently Case No. CB 99-3299 DT (Ex.); <u>Corsair Capital Partners, L.P. and Alternative Investments, L.P. v. Wedbush Morgan Securities, Inc., Waldron & Co., Inc., Cery Perle, Edward Wedbush, Wendy A. Rea and Robert Paset</u>, United States District Court for the Central District of California, Case No. SA CV 99-469 AHS (Anx), subsequently Case No. 99-4670- ER (BQRx); and <u>In the Matter of the Arbitration Among</u>

**App. Ex. 1,** Conclusion No. 2.

Undisputed.

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| <u>Fiero Brothers, Inc. vs. Waldron & Co., Cery Perle, Ed Harris, Wedbush Morgan Securities, Inc. and Ed Wedbush</u>, NASD Regulation, Inc. Arbitration No. 98-00587 as requested and submitted by the Corsair Plaintiffs in support of their motion for summary judgment in the Corsair Adversary Proceeding. | | |
| 78.   In the Corsair Adversary Proceeding   Judge   Bluebond ruled   that   the   doctrine   of collateral   estoppel,   or   issue preclusion   applies   in nondischargeability proceedings   such   as   Corsair Plaintiffs'   Adversary Proceedings. | **App. Ex. 1,** Conclusion No. 3. | Undisputed. |
| 79. In the Corsair Adversary Proceeding,   Judge   Bluebond ruled   that   federal   principles   of collateral   estoppel   applied   to prior   judgements   that   are | **App. Ex. 1,** Conclusion No. 4. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

rendered by a federal court, such as the judgment against Perle in the SEC Enforcement action and, the default judgment against Perle in the Corsair District Court action.

| | | |
|---|---|---|
| 80. Based on the Uncontroverted Facts before it, this Court in the Corsair Adversary Proceeding, Judge Bluebond presiding, found that the default judgment against Perle in Corsair's District Court action established the willful, intentional nature of Perle's conduct, as well as the fact that it violated Section 10(b) and Rule l0b-5, California state securities laws. | **App. Ex. 1,** Conclusion No. 6. | Undisputed. |
| 81. Judge Bluebond also concluded that the default judgment against Perle in the Corsair District Court Action established as true each of the allegations of their complaint in | **App. Ex. 1,** Conclusion 7. | Undisputed. |

53

| | | |
|---|---|---|
| that action, and the fact of Perle's liability on each of Corsair' claims. | | |
| 82.    Judge Bluebond also concluded that the judgments against Perle in the SEC Action established that Perle's conduct was intentional and fraudulent, as well as the fact that it violated Section 10(b) and Rule 10b-5, and other federal securities laws. | **App. Ex. 1,** Conclusion No. 6**.** | Undisputed. |
| 83.    Judge Bluebond also concluded that the judgments against Perle in the Corsair District Court Action and in the SEC Action, and the findings of fact and conclusions of law entered on the SEC's summary judgment motion in the SEC Action, establish that Perle's conduct was "willful" within the meaning of 11 U.S.C. §523(a)(6). | **App. Ex. 1,** Conclusion No. 13. | Undisputed. Also duplicative of Fact 80. |

54

| | | |
|---|---|---|
| 84.    Judge Bluebond also concluded that the judgments against Perle in the Corsair District Court Action and in the SEC Action, and the findings of fact and conclusions of law entered on the SEC's summary judgment motion in the SEC Action, establish that Perle's conduct was "malicious" within the meaning of 11 U.S.C. §523(a)(6). | **App. Ex. 1,** Conclusion No. 14. | Undisputed. |
| 85.    Judge Bluebond further ruled that the judgments against Perle in the Corsair District Court Action, and in the SEC Action, and the findings of fact and conclusions of law entered on the SEC's summary judgment motion in the SEC Action and on Corsair's Summary Judgment Motion in the Corsair Adversary Proceeding, establish that Perle's inflicted a "willful and | **App. Ex. 1,** Conclusion No. 15. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| malicious injury" upon the Corsair Plaintiffs and/or their property, within the meaning of 11 U.S.C. §523(a)(6). | | |
| 86. Judge Bluebond also determined that the issues which the Corsair Plaintiffs sought to avoid relitigating in the Corsair Adversary Proceeding with regard to §523(a)(6) were actually litigated against Perle in the Corsair District Court Action, and the SEC Action. | **App. Ex. 1,** Conclusion No. 16. | Undisputed. |
| 87. Judge Bluebond also determined that the issues which the Corsair Plaintiffs sought to avoid relitigating in the Corsair Adversary Proceeding with regard to §523(a)(6) were necessarily decided against Perle in the Corsair District Court Action, and the SEC Action. | **App. Ex. 1,** Conclusion No. 17. | Undisputed. |
| 88. Judge Bluebond further | **App. Ex. 1,** Conclusion No. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| concluded that the default judgment entered against Perle and in favor of Corsair Plaintiffs in the action entitled <u>Corsair Capital Partners. L.P. and Alternative Investments. L.P. v. Wedbush Morgan Securities. Inc., Waldron & Co.. Inc., Cery Perle, Edward Wedbush, Wendy A. Rea and Robert Paset</u>, United States District Court for the Central District of California, Case No. SA CV 99- 469 AHS (Anx), subsequently Case No. 99-4670-ER (BQRx), is entitled to collateral estoppel effect. | 18. | |
| 89.    Judge Bluebond further concluded that the judgment entered against Perle and in favor of the SEC in the SEC Action entitled (<u>Securities and Exchange Commission v. Waldron & Co., Inc. and Cery B. Perle</u>, United States District Court for the Central District of California, Southern Division, | **App. Ex. 19,** Conclusion No. 19. | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| Case No. SACV 98-824 LHM (ANx), subsequently Case No. CV 99-3299 DT (Ex)), is entitled to collateral estoppel effect. | | |
| 90. Judge Bluebond further concluded that the judgments against Perle in the Corsair District Court Action and in the SEC Action, and the findings of fact and conclusions of law entered on the SEC's summary judgment motion in the SEC Action establish that Perle's inflicted a "willful and malicious injury" upon the Corsair Plaintiffs and/or its property, within the meaning of 11 U.S.C. §523(a)(6), and that the Corsair Plaintiffs' judgment in the Corsair District Court Action is therefore excepted from discharge in bankruptcy pursuant to 11 U.S.C. §523(a)(6), and that the Corsair Plaintiffs are entitled to | **App. Ex. 1,** Conclusion No. 23. | Undisputed. |

58

| | | |
|---|---|---|
| summary judgment in their favor as to this claim in the Corsair Adversary Proceeding. | | |
| 91. Judge Bluebond then determined that Judgment was to be entered in Corsair Capital, L.P.'s and Alternative Investment, L.P.'s favor against Perle in the Corsair Adversary Proceeding. | **App. Ex. 1,** Conclusion No. 24. | Undisputed. |
| 92. On September 5, 2002, the Court in the Corsair Adversary Proceeding entered final summary judgment in favor of the Corsair Plaintiffs, stating that on May 14, 2002 the Corsair Plaintiffs filed and served their motion for summary judgment or, alternatively, partial summary judgment against Defendant Cery Bradley Perle pursuant to Federal Rule of Civil Procedure 56, applicable to bankruptcy through Bankruptcy Rule 7056, | **App. Ex. 2,** Findings Nos. 166-170, Ex. 19 ¶¶ 9-10, Ex. 7; Ex. 20 **App. Ex. 3 ¶** 21 | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

and that on June 18, 2002, the Court requested that the Corsair Plaintiffs provide certain supplemental information and briefing, and permitted Perle to file an opposition to the supplemental information and briefing, and the Corsair Plaintiffs to file a reply to the opposition, and that this Court, having considered the Corsair Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law, Opening Memorandum of Points and Authorities, Appendix of Evidence, Request for Judicial Notice, and all other evidence, memoranda and arguments presented in favor of and in opposition to the Corsair Plaintiffs' motion, and having made its separate findings of fact and conclusions of law entered August 14, 2002, the Court ordered, adjudged and decreed that the Corsair

60

Plaintiffs' motion for summary judgment is granted pursuant to 11 U.S.C. §523(a)(6), and that the judgment against Perle in the action entitled <u>Corsair Capital Partners, L.P. and Alternative Investments, L.P. v. Wedbush Morgan Securities, Inc., Waldron & Co., Inc., Cery Perle, Edward Wedbush, Wendy A. Rea and Robert Paset, United States District Court for the Central District of California</u>, Case No. CV 99-4670-ER (BQRx), in the amount of $685,825 is and shall not be discharged in bankruptcy.

| | | |
|---|---|---|
| 93.   On April 29, 2003, the Bankruptcy Appellate Panel of the Ninth Circuit, issued a Order of Dismissal of Perle's appeal of Judge Bluebond's Judgment in the Corsair Adversary roceeding for lack of prosecution. | **App. Ex. 15** | Undisputed. |
| 94.   On July 11, 2003, the | **App. Ex. 16** | Undisputed. |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| Corsair Adversary Proceeding was closed. | | |
| 95.   Fiero Bros. suffered from the same misconduct and fraud as did Corsair Capital Partners, which fraud and misconduct was the subject of the SEC action against Perle and Waldron. | **App. Ex. 23,** J. Fiero Supp. Aff., ¶¶ 64-71, Exs. 19-26. | Objection: This is a conclusion and not a statement of fact. See objections to the declaration of J. Fiero. Disputed. See Decl. of Perle and Fehn. |
| 95. On March 1, 2006, Fiero Bros. assigned, transferred and set over to Alfonso Fiero all rights, title and interest in the judgment awarded to Fiero Bros. in the case of <u>Fiero Brothers, Inc. v. Cery Perle</u>, the judgment being entered on April 6, 1999 in the Superior Court of California, Los Angeles County. | **App. Ex. 11** (Ex. E to FAC), Affidavit of Alfonso Fiero dated December 18, 2008, ¶2, Ex. 1; J. Fiero Aff., ¶26, Ex. 9. | Undisputed |
| 96. On October 10, 2006, Plaintiff filed his Complaint for Non-dischargeability   with   the | Affidavit of Leslie Schwaebe Akins, Esq. dated September 30, 2009 ("Akins | Undisputed. |

62

| | | |
|---|---|---|
| United States Bankruptcy Court, Central District of California, seeking a determination that the judgment debt evidenced by the Judgment entered in favor Fiero Bros. in the Los Angeles Superior Court action was not discharged against Cery Perle in or by the Perle Bankruptcy. | Aff."), ¶ 23. | |
| 97. Many of the documents used by Corsair Capital Partners, L.P. to obtain summary judgment against Perle in the Corsair Adversary Proceeding are for the same transactions, i.e., forced buy-ins that Waldron and Perle effected against Fiero Bros., and the documents used to prove both cases are the same. | Akins Aff., ¶ 22; **App. Ex. 21.** | Objection: conclusory. Disputed. Plaintiff has not introduced any of the exhibits used in the Corsair Action. Plaintiff states "the forced buy-ins that Waldron and Perle effected against Fiero Bros" without any evidentiary basis for the same. This statement is conclusory. |

63

| | | |
|---|---|---|
| 97. Defendant Perle moved to dismiss Plaintiff's action. Plaintiff was granted leave to amend, and on January 8, 2007 filed his First Amended Complaint. | Akins Aff., ¶ 24. | Undisputed. |
| 98. Defendant again moved to dismiss Plaintiff's First Amended Complaint on January 31, 2007. This motion was granted in part and denied as to Plaintiff's Third Cause of Action for Determination of Dischargeability of Claim for wilful misconduct under Section 11 U.S.C. Section 523(a)(6), and Plaintiff's Fourth Cause of Action for Determination of Dischargeability of Claim under 11 U.S.C. Section 523(a)(19). | Akins Aff., ¶¶25, 26. | Undisputed. |
| 99. Perle and Waldron's fraudulent buy-in activities and market manipulation with respect to Shopping.com were ongoing, and encompassed the | J. Fiero Aff., ¶8, 13; **App. Ex. 1,** Findings Nos. 27-41, and 47-49, 170; **App. Ex. 2** Finding Nos. 166-173; **App. Ex. 3.** | Objection: conclusory; See Defendant's objections to the declarations of J. |

64

| | | |
|---|---|---|
| time period during which fraudulent buy-ins of Shopping.com stock were effected against Fiero Bros. | | Fiero; Defendant's exhibits; There was no finding of fraud in the buy-ins of Fiero Brother's shorts; See Decl. of Perle. |
| 100. In total between November 25, 1997 and March 23, 1998 Waldron realized more than $4.1 million in profits from its activity in Shopping.com stock. | **App. Ex. 2,** Finding No. 166-173 **App. Ex. 1,** Finding No. 41 | Undisputed. |
| 101. The buy-ins effectuated against Fiero Bros. on February 12, 1998, March 6, 1998, March 11, 1998, March 16, 1998 and March 19, 1998 were above the market price for IBUY stock. | App. Ex. 23, ¶¶ 17-37, Exs 1-6 | Undisputed. |
| 102. Fiero Bros. suffered damages in excess of $350,000 as a result of Waldron and Perle's buy-in of IBUY stock against Fiero Bros. | **App. Ex. 23**, ¶¶ 39-43, Exs. 9-11 | Disputed. Undisputed that Fiero Bros. claimed more than $350,000 as damages on its claim of unjust enrichment. |

65

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

| | | |
|---|---|---|
| 103. Waldron and Perle knew that Fiero Bros. was short IBUY stock when it executed the short sales. | **App. Ex. 22.**, Exs. 2 and 3. | Disputed. See Perle Decl. |
| 104. Fiero Bros. had no knowledge of Waldron and Perle's fraudulent scheme when it shorted IBUY stock, and later learned and tried to stop the buy-ins at above market prices. | App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 44-48, Ex. 12. | Conclusory; See objections to the decls of J.Fiero. Disputed. |
| 105. Due to Perle's Control of the market for IBUY stock on the open market, Fiero Bros could not cover its short sales and were bought in by Perle and Waldron at grossly inflated prices. | App. Ex. 23, J. Fiero Supp. Aff., ¶¶ 49-59, Exs. 11-18. | Conclusory; See objections to the decls of J.Fiero. Disputed. |
| 106. Fiero Bros. claims against Perle were fully litigated and necessarily decided in the NASD Arbitration. | App. Ex. 23, J. Fiero Aff., ¶¶ 39, 63 | Calls for a legal conclusion. Undisputed that the NASD Award stated that all issues submitted to it were |

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT

decided.

Dated: October 27, 2009

_____/s/ Darrell Palmer_____
Darrell Palmer, Attorney for Defendant

DEFENDANT CERY B. PERLE'S RESPONSE TO ALFONSO FIERO'S SEPARATE STATEMENT