# EXHIBIT 5

## FIELDS, FEHN & SHERWIN
ATTORNEYS
11755 WILSHIRE BOULEVARD, 16TH FLOOR
LOS ANGELES, CALIFORNIA 90025
310/473-0338

ELIZABETH LOWERY

August 12, 1998

Panel Members
c/o NASD, Inc.

Re: <u>Fiero Brothers, Inc. v. Waldron & Co., Inc. et. al.</u>
NASD Case #98-00587
Our file no. 3112.019

Dear Panel Members:

Respondents Waldron & Co., Cery Perle and Ed Harris respectfully request that Fiero's two claims for relief be dismissed prior to hearing.

### THERE IS NO PRIVATE RIGHT OF ACTION FOR VIOLATION OF NASD RULES

Fiero's first cause of action alleges Respondents violated Rule 11810(c)(1)(C) of the NASD Uniform Practice Code. this claim is specious because there is no private right of action for such a violation. <u>Hoxworth v. Blinder, Robinson & Co.</u>, 980 F.2d. 912, 915 (3d Cir. 1992); <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 681 (9th Cir. 1980); <u>Newman v. Rothschild</u>, 651 F. Sup. 160, 162-63 (S.D.N.Y. 1986). Since there is no private right of action for violation of NASD Rule 11810, Fiero lacks the standing necessary to assert this claim and it must be dismissed.

In addition to the foregoing, Fiero chose not to take advantage of its obvious remedies - not to short IBUY or to arrange deliverability of the stock it shorted and thus avoid the noticed and "blind" buy-ins.[1] It is disingenuous at best for

---

[1] A "Buy-in" occurs when a member of the National Securities Clearing Corporation ("NSCC") who has purchased securities that were not delivered demands delivery. The NSCC then, according to its rules sends "buy-in notices" to the members with the short positions informing them of their deadline in which to make delivery. If delivery is not made, the member making the demand is entitled to the buyer's account with the purchase price and debit the short seller's account for the same amount. The buy-ins are "blind" because the purchaser, in this case Waldron, is not aware of the identity of the short seller for whom it is covering.

F 001618

August 12, 1998
Page 2

Fiero to assert a cause of action for violation of NASD Rule, for which it has no standing, in an attempt to seek reimbursement for a market risk it <u>knowingly</u> assumed. Fiero insisted on opening three short positions after it believed that the IBUY market was manipulated.[2] Even if there was a private right of action for violation of the NASD Rules, Fiero would be barred by unclean hands from seeking damages for any positions open after it believed the market was manipulated.

### FIERO'S 10b-5 CLAIM IS FATALLY DEFECTIVE

### BECAUSE IT IS NOT PLEAD WITH PARTICULARITY

The second cause of action is for alleged violations of 10b-5. Such a claim under Federal Securities laws requires that the alleged fraud be described with particularity - similarly the NASD Code states that the Statement of Claim must set forth all relevant facts. Fiero has not met these requirements. Fiero has described many every day, legal occurrences as though they are sinister. For example, in its Statement of Claim Fiero states that many of Waldron's customers held stock if IBUY in their accounts. This is not unusual, especially since Waldron was an underwriter for the IPO.

Fiero has alleged Waldron manipulated the IBUY market by:

1. Artificial market making;
2. Stock parking arrangements;
3. Guarantees against loss; and
4. Fraudulent purchasing (Statement of Claim, page 2, paragraph 10).

Fiero, however, has failed to identify a single customer who received a guarantee against loss or in whose account stock was parked. Waldron should not be forced to guess which of its many customers' account Fiero is alleging was involved. Fiero has also failed to plead sufficient facts to support an allegation that Waldron engage in "artificial" market making - the term alone is vague and ambiguous. It is not disputed that Waldron, along with many other firms, did actually make a market in IBUY. Moreover, not a single fact has been plead to substantiate the claim that Waldron engaged in "fraudulent purchasing."

---

[2] Fiero admitted in its discovery responses that it believed the IBUY market was manipulated in February, yet three of the four buy-ins which are at issue happened in March.

F 001619

2

August 12, 1998
Page 3

 Fiero's failure to plead its 10b-5 claim with particularity deprives respondents of the notice required by due process and forces them to shadowbox a defense. Such deficiencies also highlight the meritless nature of these claims.

### CONCLUSION

 For the reasons set forth above, Fiero's claims must be dismissed. As previously stated, Fiero is bringing this action for the improper purpose of obtaining respondents proprietary information - customers' identity, financial information contained in Waldron's focus reports, etc., which will arm Fiero with a market advantage. Such a drastic measure is necessary because the other tactics in Fiero's "bear raid" on Waldron have not been as successful as they were against Hanover Sterling and Adler Coleman.

          Very truly yours,

          FIELDS, FEHN & SHERWIN

          *Elizabeth Lowery /tk*

          ELIZABETH LOWERY

EL:tk

cc: Waldron & Company
   Mr. Cery Perle
   Mr. Ed Harris
   Martin Russo, Esq.
   Ms. Marie Eaton
   Key West Securities, Inc.

Dictated but not read

F 001620

3