# EXHIBIT 9

1

NATIONAL ASSOCIATION OF SECURITIES DEALERS
------------------------------------------x
In the Matter of:

   FIERO BROTHERS,

        Claimant,                    Case Number
                                     CV 99-4670 ER
   - against -

   WALDRON & COMPANY, WEDBUSH
   MORGAN SECURITIES, INC.,          **ORIGINAL**

        Respondents.
------------------------------------------x

                              September 2, 1999

   BEFORE:   CHAIRMAN ROBERT L. SCHOUWEILER,
             ESQ.


   APPEARANCES:  MARTIN RUSSO, ESQ.
                 Attorney for Claimant
                 60 East 42nd Street
                 Suite 843
                 New York, New York  10165

                 THOMAS FEHN, ESQ.
                 ELIZABETH LOWERY, ESQ.
                 Attorneys for Respondent Waldron
                   and Cary Perle

                 MARIE EATON, ESQ.
                 Attorney for Wedbush Morgan
                   Securities



ESQUIRE™
DEPOSITION SERVICES

216 East 45th Street, 8th Floor
New York, NY 10017-3304
212.687.8010 • 800.662.3287
Fax 212.557.5972

```
 2    Q    Thank you.
 3    A    Thank you.
 4              MALE VOICE:  I have one
 5    question.  At the time you put out
 6    your release did you have any
 7    customers in IBUY?
 8              MR. ELGINDY:  No sir.  No
 9    customers of wholesale, retail, or
10    any type whatsoever.
11              MALE VOICE:  Now I have a
12    question.  In the pleading and
13    cross claim naming you as a third
14    party respondent, it stated in that
15    pleading that you are a licensed
16    dealer operating out of Texas,
17    broker/dealer.  Respondents would
18    be Waldron.
19              And I guess maybe; no Waldron.
20    Believe it is a one man shop and
21    it's acted in collusion with and at
22    the specific instance and request
23    of the Claimant, Fiero Brothers.
24    Now, you're under oath today.
25    What's your reaction to the
```

1
2   allegation?
3       MR. ELGINDY:  It is absolutely
4   untrue.  Fiero Brothers; like I
5   said, I met the man one time in New
6   York in 1992.  We have no
7   agreement. We did no trades for
8   Fiero.  We did no trades on behalf
9   of Fiero.  And we didn't imitate or
10  have any kind of agreements with
11  respect to any transactions or buy
12  recommendations.
13      And to further my point Key
14  West Securities has put out a
15  number of press releases.  On
16  Ultrafem, on gyro technology, on
17  international precious metals.  And
18  Fiero Brothers, to the best of my
19  knowledge, never treated any of
20  them.
21      MALE VOICE:  And you know the
22  consequences of falsely
23  (interposing)
24      MR. ELGINDY:  Absolutely.
25      MALE VOICE:  Testifying.

MR. ELGINDY: Absolutely.

MALE VOICE: And your answer to my question is absolutely (interposing)

MR. ELGINDY: Absolutely denied.

MALE VOICE: Not.

MR. ELGINDY: Absolutely not. Absolutely denied, sir.

MALE VOICE: That's all. That's all I have.

MALE VOICE: Thank you.

MR. RUSSO: Is Mr. Elgindy released?  Or do you plan on trying to recall him?  You're released sir (inaudible)

MR. ELGINDY: Thank you very much.

MR. SCHOUWEILER: Sir, I'm Robert Schouweiler, Chair of the Arbitration Panel.  And before you're seated if you'd raise your right hand?  I need to administer your oath.  And that is that you

1
2  affirm or swear to tell the truth,
3  the whole truth and nothing but the
4  truth in the testimony that you're
5  about to give in this case.
6      MR. HILLSICK: I do.
7      MR. SCHOUWEILER: All right.
8  And we'll let Mr. Russo introduce
9  you to the rest of the
10 participating parties.
11     MR. RUSSO: (inaudible) the
12 panel using the schedule that I
13 handed you yesterday was in your
14 placement for Unit Sixty-Eight,
15 there's some errors in Sixty-Eight.
16 (inaudible) received them, Wedbush
17 (unintelligible) (papers rattling
18 in microphone) copies
19 (unintelligible).
20     MALE VOICE: Mr. Russo, I need
21 the gentleman's full name. I
22 believe that (interposing)
23     MR. RUSSO: Just give me one
24 moment, sir. I'll (inaudible).
25 DIRECT EXAMINATION

BY MR. RUSSO:

Q   Sir, would you please state your name for the record?

A   My name is Dean Hillsick (phonetic).

Q   And Mr. Hillsick, what is your employment?

A   I'm a certified public accountant.

Q   Okay. And what is your position with; are you with (unintelligible), sir?

A   Yes.

Q   What's the name of your company?

A   Snider, Elk and Wengrover Elk (phonetic).

Q   And what is your position within that (unintelligible)

A   I'm a partner and one of my responsibilities is broker/dealer accounting (inaudible)

Q   Okay. Mr. Hillsick, you are a CPA, is that right?

A   Yes, I am.

Q   I'm going to place in front of you Claimant's Sixty-Eight. Can you tell me

1
2  what that is, sir?
3      A   This is a schedule of trading
4  activity in IBUY by Fiero Brothers.
5      Q   Okay.  Sir, did you prepare this
6  schedule?
7      A   Yes, I did.
8      Q   Okay.  And let's go across the
9  columns and just discuss what each one is.
10 The first column it says date of
11 transaction.  Can you tell us what that is?
12     A   Yes, this is the date on which
13 particular trades took place.
14     Q   Okay.  So it's the trading date?
15     A   That's correct.
16     Q   Okay.  Not the settlement date?
17     A   No, it's the trade date.
18     Q   Okay.  The next column says shares.
19 What is that, sir?
20     A   This is the number of shares either
21 purchased or sold as part of the trade.
22     Q   Okay.  Those are in Fiero Brothers
23 proprietary account, is that right sir?
24     A   That's correct.
25     Q   Okay. The next column says actual

225

2  trading price, sir. What is that?

3  A   This is the price at which the
4  trade was executed.

5  Q   Okay. The following column says
6  debit slash credit. What does this column
7  represent, sir?

8  A   This is the amount obtained by
9  multiplying the shares bought or sold. And
10 the actual trading price.

11 Q   Okay. Next column says cumulative
12 share position. What does that column
13 represent, sir?

14 A   This is the inventory position of
15 IBUY at Fiero Brothers (inaudible)

16 Q   Okay. And then the next column
17 says cumulative costs balance. What does
18 that computation, sir?

19 A   That's essentially the (inaudible),
20 that's the amount that's obtained by
21 multiplying the cumulative share position by
22 the (pause); one second. This is the net
23 cash cost in the proprietary account. Of
24 Fiero Brothers.

25 Q   And the next one is weighted

1    average cost per share.  What does that

2    represent, sir?

3        A    This is the amount obtained by

4    dividing the cumulative cost balance by the

5    cumulative share position.

6        Q    Is that the average price of

7    Fiero's position, sir?

8        A    Yes, it is..

9        Q    Okay.  Now you have a bunch of

10   other columns but we don't see anything

11   appear until page five.  Okay?  And at the

12   bottom of page five on February 12th we have

13   a bunch of highlighted or rather bolded

14   numbers.  Now let's talk about the column

15   called, Actual Loss.  What does that column

16   represent?

17       A    This is the loss incurred by Fiero

18   Brothers on this particular transaction.

19       Q    Okay.  So this; the eighty-two

20   thousand that's in parentheses there, that

21   only represents the loss on the transaction?

22       A    Yes, that's correct.

23       Q    Okay, not cumulative loss?

24       A    No.  That's the loss on that
25   A    No.  That's the loss on that

1
2  particular transaction.
3      Q   Okay.  And the next column says;
4  actually, how do you compute actual loss,
5  sir?  What is the formula?
6      A   What we did was we took the actual
7  trading price; we took the weight average
8  cost per share and subtracted the actual
9  trading price.  Multiply that times the
10 number of shares in the transaction.
11     Q   Okay.
12     A   (inaudible)
13     Q   The next heading is, Market Price
14 Per Share.  And I see you have twenty-four
15 seventy-five on February 12th.  Can you tell
16 us what that column represents, sir?
17     A   That column represents the best or
18 the inside offer at the time of the
19 transaction.
20     Q   Okay.  The next column is, Damages
21 Using Market Price Per Share.  Can you tell
22 us what that column represents, sir?
23     A   That essentially represents the
24 component of the actual loss incurred by
25 Fiero Brothers as the result of buying at

1  the actual trading price rather than the
2  market price per share.
3     Q   Okay. Can you give us the
4  calculation or the formula that you used to
5  come to that (inaudible)
6     A   Certainly. We subtracted the
7  actual trading price from the market price
8  per share. Multiplied that times the number
9  of shares in the transaction.
10    Q   Okay. The next column; there's
11 three columns under a heading, Intrinsic
12 Share Values. And you have damages using
13 five dollars a share. Damages using ten
14 dollars a share. And damages using fifteen
15 dollars a share. Can you tell us what these
16 columns represent, sir?
17    A   Yes. Well intrinsic share values
18 might be, for example, a price that
19 (unintelligible) might compute using certain
20 performance measurements. (unintelligible)
21 growth rates (pause); times (unintelligible)
22 (interposing)
23    Q   Now you did it for five, ten and
24 fifteen dollars per share. You're not

1
2  purporting to give an intrinsic value to the
3  shares of IBUY are you?
4      A    No, I'm not.
5      Q    Okay.  You're just giving the panel
6  different levels of damages should they find
7  five, ten or fifteen, is that right?
8      A    That's correct.
9      Q    Okay.  So these are by way of
10 example.  And you're not trying to compute
11 any price or place any price on IBUY?
12     A    Correct.  It's a guideline.
13     Q    Okay.  Now how did you calculate
14 damages per share using five dollars?
15     A    Essentially we took the actual
16 trading price, we subtracted the intrinsic
17 share value.  Multiplied that by the number
18 of shares in the transaction.
19     Q    Okay.  Now I refer you, sir, to the
20 last page.  Page eighteen.  It has a column;
21 I'm sorry, row labeled Grand Total?
22     A    Yes.
23     Q    Is that the cumulative loss that
24 you calculated for these three buy-ins?
25     A    It is the cumulative loss for the

1    five transactions that are involved on the
2    schedule, yes.
3        Q    You didn't attempt at all, sir, to
4    calculate Fiero's cumulative loss overall on
5    its trading in IBUY, did you?
6        A    No, I didn't.
7        Q    This is just with respect to the
8    losses on the buy-ins?
9        A    That is correct.
10       Q    Okay.  So just one final question,
11   but just to be clear.  Each transaction on a
12   day to day; or each bolded line, except for
13   the last one which is the grand total,
14   represents the loss for that one day?
15       A    That's correct.
16       Q    And then the grand total at the end
17   represents the cumulative loss?
18       A    For that one transaction.
19       Q    I'm sorry, for that one
20   transaction.
21       A    That's correct.
22       Q    And then at the end it's the
23   cumulative loss?
24       A    That is correct.

| | | |
|---|---|---|
| 2 | Q | Okay. |
| 3 | | MR. RUSSO:  I pass the witness. |
| 4 | | MALE VOICE:  Ms. Eaton or Mr. |
| 5 | | Fehn, whoever (pause) |
| 6 | | MR. FEHN:  I have no questions. |
| 7 | | MR. RUSSO:  Thank you, Mr. |
| 8 | | Hillsick, you're (interposing) |
| 9 | | MALE VOICE:  Nothing Ms. Eaton? |
| 10 | | MS. EATON:  No sir. |
| 11 | | MALE VOICE:  How about |
| 12 | | (unintelligible) |
| 13 | | MALE VOICE:  I have no |
| 14 | | questions. |
| 15 | | (WHISPERED CONVERSATIONS) |
| 16 | | (Undeclared off the record.) |
| 17 | | MR. SCHOUWEILER:  I |
| 18 | | housekeeping ques; we're on the |
| 19 | | record.  Would you like to have the |
| 20 | | accountant's document, which you |
| 21 | | have just used for the purposes of |
| 22 | | the testimony of your last witness, |
| 23 | | marked at this time as a separate |
| 24 | | exhibit?  Or is it part of an |
| 25 | | exhibit that we've already marked? |

14

```
 1
 2      Would it be part of Sixty-Eight?
 3           MR. RUSSO:  It would be part;
 4      it would replace Sixty-Eight, sir,
 5      and I'll replace it in the binder
 6      before we leave.
 7           MALE VOICE:  All right.
 8           (CROSS TALKING)
 9           MR. SCHOUWEILER:  Now, I don't
10      know what this gentleman's name is
11      (interposing)
12           MR. RUSSO:  Michael Vanbchanos.
13           MR. SCHOUWEILER:  Ah, Mr.
14      Michael.  I need to administer an
15      oath, you're about to testify.  And
16      I need the record to reflect that
17      your testimony will be truthful.
18      That you affirm that it will be.
19      And nothing other than the truth.
20      Is that your understanding and are
21      you prepared to so testify?
22           MR. VANBCHANOS:  That's
23      correct.
24           MALE VOICE:  Thank you.
25  DIRECT EXAMINATION
```