# EXHIBIT 11

Nathan D. LaMoure
A Professional Corporation
1055 North Main Street, Suite 401
Santa Ana, California 92701

April 4, 1998

MSNBC
1 MSNBC Plaza
Secaucus, New Jersey 07094

and

Christopher Byron
MSNBC Contributor

Gentlemen:

This office represents Waldron & Co. and Cery Perle, mentioned in your articles published on the Internet entitled "Who Owns Shopping.com" dated 3/16/98, entitled "Shopping.com's Shares Get Pounded" dated 3/16/98, entitled "Shopping.com trading suspended" dated 3/24/98, entitled "On The Trail of Shopping.com Sales" dated 3/26/98, and entitled "No Berlin Wall Around Internet Stock" dated 3/31/9.   On their behalf we seek a retraction for the false light in which the articles portray Mr. Perle and Waldron & Co. and the false and defamatory matter of and concerning them in the articles.

Pursuant to California Civil Code Section 48a, we herewith demand a full and complete retraction of the defamatory articles, and that you publish your complete retraction pursuant thereto.   We further demand you immediately cease any republication of the defamatory matter.

The article entitled "Who owns Shopping.com" is, for example, false and defamatory as a whole, and it contains many false and defamatory particulars, including but not limited to the following statements in the article:

    1.    Wedbush Morgan Securities Inc. has not stopped clearing orders, as stated in the article at page 1.   The statement is false.

Phone:    [714] 835-1418                    Facsimile:  714] 558-0216
E-MAIL:   law_lamoure@email.msn.com

F 007405



2. No action has been taken by anyone that would "make it difficult, if not impossible, for Waldron to continue in business" as stated in the article at page 1. One exception may be the damage caused by the Byron/MSNBC articles themselves.

3. The statement on page 2 that there was a "mere $23,000" equity, now "worth $204 million" is false. A simple verification of the market and the IPO would reveal correct numbers.

4. The statement at page 2 that Waldron is doing "follow-up offerings to raise stay-in-business capital" is false. No such effort has been needed, contemplated or undertaken.

5. The statement at page 3 that price appreciation of the stock is caused by "an intensifying 'short squeeze' that has pushed the company into the middle of a wild and bloody Wall Street free-for-all" is a gross misrepresentation. There is no "short squeeze". There is no such "wild and bloody free-for-all." The article itself, which relies on uncorroborated statements from third party "short-sellers", attempts to fabricate an environment of a "short squeeze" when none exists.

6. On page 4 the article falsely states that Waldron has offices in Los Angeles when it does not. It also falsely states that the cited letters were sent to the NASD, when they were not to Waldron's knowledge. Further, it falsely states that the company "declared (it would have) 200 brokers by the end of 1998", when it was merely a rough forecast of growth. Next, the article falsely states that Waldron has "no more than 35 to 40" brokers. None of these statements are true.

7. The characterization of the employment history of Mr. Perle at page 4 and 5 is a gross distortion, casting Mr. Perle and the Waldron management in a false light.

8. The innuendo that the company represents itself as a member of the NYSE, based upon someone's statement concerning a sign on a building door, is a reckless disregard for the truth. The quoted statement is a falsehood.

9. The November IPO, mentioned on page 5, is a less material, but nevertheless reckless, misstatement of fact verifiable by any member of the public. Waldron agreed to sell 1.3 million shares, not 1.6 million shares.

10. The statements on page 6, relying on purported quotes from a Brigette Curameng, is another reckless disregard of the truth. There was no environment of "crises like fear" and no "panic" and no last minute "eve" cold-calls. The public and investors were well informed and qualified investor suitability agreements were had with Waldron's potential investors at least two weeks before the IPO date.

**Phone:** [714] 835-1418      **Facsimile:** 714] 558-0216
**E-MAIL:** law_lamoure@email.msn.com

F 007406



Further, there were no material time problems or investor problems with the California suitability requirements for investors. And, there is no truth to the statement that the shares were sold to buyers who did not want them.

    11. On page 7, the suggestion that Tamar Yousef had numerous clients at the time of the IPO date, who were not permitted to sell shares, is false. He had no such clients.

    12. The whole of the article, you should note, has been interpreted as defamatory by more than one person who replied on the Internet. This was clearly the intent of the publication.

The article entitled "Shopping.com shares get pounded" is as false as the title. When a stock rises in price from $9.00/share to "barely $21", how can one truthfully state that it drops 30% in value? The facts asserted in the article are as defamatory as the one above, and it includes:

    1. The "sinking ship" characterization is a fabrication. This is grossly unfair and a reckless disregard for the truth. Waldron is and remains confident of its future success and expects its shareholders to thereby benefit.

    2. The report of "glee" of short sellers on page 2 as a result of NASD action that did not happen (the falsely reported withdrawal of Wedbush Morgan as a clearing firm) is a reckless characterization of the state of affairs and is founded on falsities.   3.   The whole discussion on this page about "run-for-cover antics," and about Waldron's capital, and about "fears", and about Waldron exceeding its capital requirements, and about Waldron's financial health and viability, and about a Wedbush Morgan report to NASD is all a fabrication.

The article entitled "Shopping.com trading suspended" republishes similar falsities. Suggestions of "stock manipulation" and implying that Waldron is a market-maker "short seller" is another gross and reckless distortion of the truth. Examples of more defamatory falsities include:

    1. On page 1, the statement that NASD is aware of irregularities and that the SEC has made a "strong slap" at the NASD is not true. NASD has taken no action, and there is no indication that the false letters of the referenced short selling brokers published in the articles has ever been given to the NASD.

    2. The author, again, republishes his mistakes on the price and equity situation of the company. By the reporting of Senator D'Amato's actions, if true, it recklessly gives credibility to this false

**Phone:** [714] 835-1418      **Facsimile:** 714] 558-0216
**E-MAIL:** law_lamoure@email.msn.com

F 007407



story.
    3.    The reporting of a "highly suspicious trade", coupled with the assertion that "numerous ex-employees have drafted complaints" about "illegal parking (of) shares" and about Waldron "attempting to support ... artificially high prices" are unsupported innuendoes of wrongdoing that are simply false.

The article entitled "On the trail of Shopping.com sales" is equally defamatory, including:
    1.    There are no present employees who did or would make the report of Waldron's purchases asserted by Mr. Byron.
    2.    It is not true, and there is no basis for asserting as truth, that the underwriter itself was the principal source of revenues for Shopping.com.
    3.    There is no truth to the report, based on two undisclosed "individual(s) claiming knowledge", that Shopping.com made purchases for the purposes of generating revenue growth for the IPO. Any purchases through Shopping.com were not material to the IPO offering or the value of the IPO offering, and they certainly were not "large volumes" so as to support this false statement.
    4.    The characterization of Shopping.com as "the focus of a viciously fought 'short squeeze' between Waldron and short sellers" is another gross and reckless distortion of reality. Waldron is not so engaged, and there is no "short-squeeze" as reported by Mr. Byron. To report price action on the market fairly, one must also look at comparable stock sales and companies of comparable marketability for explanations. The article does not, and it cites false "facts" and erroneous opinions.
    5.    The reckless disregard for truth in the article is revealed, as well, in the erroneous statement that Waldron has a "site in Newport, Calif."
    6.    The report by Mr. Byron that there are formal complaints and there is a formal investigation under way by the SEC for "stock-parking" and the other wrongs asserted is simply false. It would have been very easy to verify that fact and exclude it, as with other defamatory remarks, from the article.

The article entitled "No Berlin wall around Internet stock" is equally false. There is no evidence known to Waldron that there is a "trading surge" of its stock and that the things alleged to have happened at the Berlin Exchange did. There has been no reported trading on the Berlin Exchange. There have been no complaints by present or past employees. There have been no reports by any current employee to

**Phone:**    [714] 835-1418        **Facsimile:**  714] 558-0216
**E-MAIL:**  law_lamoure@email.msn.com

F 007408



MSNBC. And the whole diatribe is a fantasy of the author and publisher.

You are notified that my clients consider all of the articles, taken individually and as a series, to be libelous and an unreasonable invasion of privacy. Demand is further made that you publish your retraction so that it comes within the purview of Section 48(a) of the Civil Code and, in particular, the following provision of that code:

> "If a correction be demanded within said period and be not published or broadcast in substantially as conspicuous a manner in said newspaper or on said broadcasting station as were the statements claimed to be libelous, in a regular issue thereof published or broadcast within three weeks after such service, plaintiff ... may recover general, special and exemplary damages...."

The articles have the appearance of writings with a distorted perspective of a short-seller, using your publication and its reputation of credibility, to influence the market price of Shopping.com. If the publication and republication of the articles induce shareholders to divest, only the short sellers could benefit by minimizing their losses for a frivolous gamble. A retraction will stultify these unfair tactics and protect the shareholders of Shoppiong.com. We trust you will act accordingly.

Yours very truly,


Nathan D. La Moure

NDL/jh


**Phone:** [714] 835-1418          **Facsimile:** 714] 558-0216
**E-MAIL:** law_lamoure@email.msn.com

F 007409



APR 06 '98 10:02                                    ndlapc       PAGE.06

MSNBC. And the whole diatribe is a fantasy of the author and publisher.

You are notified that my clients consider all of the articles, taken individually and as a series, to be libelous and an unreasonable invasion of privacy. Demand is further made that you publish your retraction so that it comes within the purview of Section 48(a) of the Civil Code and, in particular, the following provision of that code:

> "If a correction be demanded within said period and be not published or broadcast in substantially as conspicuous a manner in said newspaper or on said broadcasting station as were the statements claimed to be libelous, in a regular issue thereof published or broadcast within three weeks after such service, plaintiff ... may recover general, special and exemplary damages...."

The articles have the appearance of writings with a distorted perspective of a short-seller, using your publication and its reputation of credibility, to influence the market price of Shopping.com. If the publication and republication of the articles induce shareholders to divest, only the short sellers could benefit by minimizing their losses for a frivolous gamble. A retraction will stultify these unfair tactics and protect the shareholders of Shoppiong.com. We trust you will act accordingly.

Yours very truly,

Nathan D. La Moure

NDL/jh

Phone:      [714] 835-1418           Facsimile:  714] 558-0216
E-MAIL:   law_lamoure@email.msn.com

F 007410

