DARRELL PALMER (125147)
Law Offices of Darrell Palmer
603 N. Hwy 101, Suite A
Solana Beach, CA 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorney for Defendant, CERY B. PERLE

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CERY B. PERLE,<br><br>      Debtor,<br>_____<br><br>ALFONSO FIERO, an individual, as Assignee of the Judgment issued April 6, 1999 in favor of Judgment Creditor FIERO BROTHERS, INC., Assignor, pursuant to the Assignment dated March 1, 2006,<br><br>      Plaintiff,<br><br>  vs.<br><br>CERY B. PERLE<br><br>      Defendant | Case No.: LA 01-26497-BB<br><br>ADV06-01971BB<br><br>**DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 10, 2009<br>Time: 2:00 p.m.<br>Place: Courtroom 1475<br>Judge: Hon. Sheri Bluebond |

1

---

| | **FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1. | Shopping.com was a California company which sold retail goods on the internet. | Declaration of Cery Bradley Perle, ¶4 |
| 2. | Its initial public offering occurred in November 1997 at $9. | Dec. of Cery Bradley Perle, ¶4 |
| 3. | Waldron acted as the underwriter of Shopping.com. | Dec. of Cery Bradley Perle, ¶4 |
| 4. | Shopping.com traded on the NASDAQ bulletin board market under the ticker IBUY. | Dec. of Cery Bradley Perle, ¶4 |
| 5. | After IBUY's initial public offering, Waldron acted as a market maker in the stock along with 12-20 other market makers. | Dec. of Cery Bradley Perle, ¶4 |
| 6. | The bulletin board market is similar to the ancient dealer market known as the over-the-counter market. The difference is that in the bulletin board market, dealers post their quotes and report their trades into an electronic medium known as the bulletin board. | Dec. of Cery Bradley Perle, ¶5 |
| 7. | In 1997-98, the number of rules governing the bulletin board market was less than the rules governing the NASDAQ market. Nonetheless, there were rules that governed short selling in the bulletin board market. All retail public customers and broker dealers, who were not market makers, were required when engaging in | Dec. of Cery Bradley Perle, ¶5 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

|  | | |
|---|---|---|
|  | naked short selling into the bulletin board market, to make an affirmative determination that the stock is borrowable in the event a demand for delivery is made. | |
| 8. | Since market makers were exempt from this requirement, it was possible for market makers to sell short stock that they could not borrow and did not own. | Dec. of Cery Bradley Perle, ¶5 |
| 9. | Fiero Brothers was a market maker in IBUY who misused its ability to sell naked shorts. Fiero Brothers had also previously engaged in similar manipulative short selling activities in other securities. | Dec. of Cery Bradley Perle, ¶14. |
| 10. | Fiero Brothers is a nationally reputed aggressive short seller who had gained notoriety for its short selling activities in connection with the 1995 failure of Hanover Sterling, an over the counter firm and its clearing firm, Alder Coleman. John Fiero was the president and sole owner of Fiero Brothers (There were no "brothers" in Fiero Brothers. John Fiero chose the name because he thought that it "had a nice ring.") | Exhibits 17, 18, 19 |
| 11. | John Fiero opened Fiero Brothers in 1991 with $250,000 in capital from his own savings and by 1995, Fiero Brothers' capital had increased to $8-9 million. | Exhibits 18 and 19 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Case 2:06-ap-01971-BB    Doc 107    Filed 10/28/09    Entered 10/28/09 14:16:47    Desc
Main Document    Page 4 of 17

| | | |
|---|---|---|
| 12. | On February 6, 1998, the Department of Enforcement filed a complaint against Fiero Brothers and its President John Fiero alleging that during January and February 1995, Fiero Brothers and John Fiero had colluded with other defendants to carry out a "Bear raid" in order to manipulate the price of 10 securities ("Hanover Stock") underwritten by Hanover Sterling & Co., Inc. ("Hanover"). | Exhibit 17 |
| 13. | In a bear raid, a manipulator uses short selling as a tool for manipulation. A short seller attempts to drive down the price of the security by artificially creating an imbalance of sell-side interest. | Exhibit 18, pg. 3, FN 1 |
| 14. | The Department of Enforcement also alleged that in carrying out the bear raid, Fiero Brothers employed threats and coercion to extort large blocks of the Hanover Stock from Hanover for below market prices to cover their short positions. Fiero Brothers allegedly violated a number of securities rules and regulations including NASD Rule 3370(b)(2)(B), and Section 10(b) of the Securities Exchange Act, SEC Rule 10b-5. | Exhibit 17; Exhibit 19, pg. 3 |
| 15. | In response to the Department of Enforcement's allegations, Fiero Brothers alleged that "Hanover was controlled by a gang of outlaws | Exhibit 19, pg. 5 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | that used Hanover for their economic benefit to the detriment of its customers, the public, other broker-dealers." | |
| 16. | Fiero Brothers claimed that Hanover was itself engaged in a fraudulent scheme to manipulate the market for the Hanover securities with the intention of "pumping" the price of the Hanover securities to unjustifiable heights before "dumping" them on gullible purchasers. Fiero Brothers sought a dismissal of the charges against it based on these allegations. | Exhibit 19, pg. 5 |
| 17. | Fiero Brothers modus operandi in conducting the bear raid was as follows: The bear raids were conducted in two stages. In the first stage, on January 19, 1995, Fiero Brothers registered as a market maker in the Hanover Stocks. John Fiero registered as a market maker in the Hanover Stocks because he believed that the stocks were overpriced. | Exhibit 19, pgs. 9-10 |
| 18. | Between January 19, 1995 and January 26, 1995, Fiero Brothers established substantial short positions in seven Hanover Stocks. On January 19, 2005, Fiero Brothers started with a short position in only one Hanover Stock of 7000 securities valued at $8,000. By the end of the day on January 25, 1995, Fiero Brothers had aggregated short positions in seven Hanover | Exhibit 18 |

5

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | Stocks totaling 105,000 securities valued at approximately $1.2 million. During the same time, other defendants also established significant short positions in the Hanover Stocks which valued over $ 4.5 million. This was a "short squeeze." Because Hanover held substantial long positions in the Hanover Stock, Hanover's financial interest was to prevent a decline in the price of the Hanover securities. | |
| 19. | Hanover wanted to stop Fiero Brothers' short selling which would have driven down the prices of the Hanover Stocks and eventually driven Hanover out of business. Through intermediaries who negotiated the deal, Hanover reached an agreement with Fiero Brothers and agreed to sell Hanover Stocks at prices set by Fiero Brothers and which were well below the market price. | Exhibit 19, pg. 20 |
| 20. | Fiero Brothers covered its short position from the stock sold by Hanover and also sold some of the excess stock, making more than $550,000 in the transaction. On January 27, 2009, after just 8 days as a market maker in the Hanover Stocks, Fiero Brothers withdrew as market maker. | Exhibit 19, pg. 21 |
| 21. | In the second stage, Fiero Brothers again began short selling the Hanover Stocks. Between | Exhibit 19, pg. 22 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

|     |                                                                                                                                                                                                                                                                                                                         |                                    |
| --- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---------------------------------- |
|     | January 27 and February 3, 1995, Fiero Brothers again established significant short positions in the Hanover Stock.                                                                                                                                                                                                     |                                    |
| 22. | Before Fiero Brothers could engage in another "short squeeze," Hanover went out of business on February 24, 1995. On the same day, Fiero Brothers again registered as a market maker in the Hanover Stocks and continued its short sales of those securities.                                                           | Exhibit 19, pg. 22                 |
| 23. | On October 28, 2002, the NASD Hearing panel found that Fiero Brothers had violated NASD Rule 3370(b)(2)(B) which required short sellers to make an affirmative determination, while conducting naked short sales, whether a stock could be borrowed or otherwise provided for delivery by the settlement date.          | Exhibit 19, pg. 24                 |
| 24. | The NASD rejected Fiero Brothers' claim that as a market maker they were entitled to an exception to this affirmative duty. The NASD concluded that since Fiero Brothers was not a bona fide market maker it was not entitled to the exception and had an affirmative duty to determine whether a stock was available before it engaged in short selling. | Exhibit 19, pg. 24-27              |
| 25. | Fiero Brothers was well aware of the risk involved in short selling. John Fiero testified that "the penny stock market was very                                                                                                                                                                                         | Exhibit 19, pg. 31, Exhibit 18, pg. 5 |

7

| | | |
|---|---|---|
| | treacherous" but the "short side has more rewards at the end of the day." Fiero Brothers did not engage in any determination of whether the stock was available, John Fiero viewed, "buy-ins as an ordinary course of business" that are "pretty much a bookkeeping function." | |
| 26. | The NASD held that Fiero Brothers were engaged in speculation, not bona fide market making transactions, and were not entitled to the market maker exception. | Exhibit 19, pg. 27 |
| 27. | The NASD also found that Fiero Brothers had engaged in extortion through the use of threats and coercion to purchase Hanover Stocks from Hanover at discounted prices. | Exhibit 19, pg. 37-39, 42 |
| 28. | The NASD panel rejected John Fiero's testimony concluding that "most of his [John Fiero] self-serving direct testimony appeared carefully rehearsed. His newly refreshed recollection was strangely selective, and in response to cross-examination and to questions from the Hearing Panel, he appeared deliberately evasive, particularly with regard to his relationship and communications with…and other participants in the alleged bear raid." | Exhibit 19, pg. 35-36 |
| 29. | The NASD relied on telephone call records introduced by the Department of Enforcement to conclude that there was a preexisting | Exhibit 19, pg. 40-41 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | arrangement between Fiero Brothers and the other defendants to engage in extortion. | |
| 30. | The NASD also concluded that Fiero Brothers had employed the short selling tactics to manipulate the market in violation of section 10b-5 of the Exchange Act and NASD Rules 2120 and 2110. | Exhibit 19, pg. 42 |
| 31. | The NASD concluded, "Fiero Brothers along with other participants in the bear raid, concluded that the Hanover Stocks were vulnerable because Hanover had fraudulently manipulated their prices to unjustifiable levels, and applied short selling pressure in order to extract, through threats and coercion, a portion of the excessive market value of the Hanover Stocks.  And in the second stage, the Fiero Respondents and the other short sellers increased their naked short selling pressure, leading to Hanover's failure, in an effort to obtain even more of Hanover's gains from the fraudulent manipulation of the Hanover Stocks. Rather than "arbitrage," these short selling activities can best be described as "blackmail." And like other forms of blackmail, they were unlawful regardless whether Hanover was engaged in a fraudulent market manipulation of its own." | Exhibit 19, pg. 44-45 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 32. | Fiero Brothers and its President John Fiero were fined $1 million and expelled from the NASD. | Exhibit 19, pg. 46-47 |
| 33. | Fiero Brothers registered as a marker maker in Shopping.com and began to naked short sell IBUY. Waldron purchased many of the shares sold by Fiero Brothers. Wedbush, Morgan, Securities, Inc. ("Wedbush") was Waldron's clearing house. | Declaration of Cery Bradley Perle, ¶6 |
| 34. | As the purchaser of IBUY shares with a future delivery date, Waldron had a right to demand delivery of the securities it purchased. Waldron exercised that right to demand delivery. The demand for delivery was contained in a notice sent by the DTC/Wedbush. Waldron clears through Wedbush. When the seller (later identified as Fiero Brothers) failed to deliver, Wedbush acting on behalf of Waldron had to go to the marketplace and buy the share for the account of the short selling broker. All of the buy-in transactions were conducted through Wedbush. Defendant was not personally dealing with Fiero Brothers on the buy-in transaction. Defendant was not aware of the identity of the short seller. | Declaration of Cery Bradley Perle, ¶7 |
| 35. | When a clearing house buys on the account of a short seller who fails to deliver, the clearing house will poll each and every one of the | Declaration of Cery Bradley Perle, ¶8 |

10

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | published market makers to see if any can sell shares with guaranteed delivery. If there was a failed to deliver, Wedbush polled the published market makers for IBUY shares. Wedbush would purchase the IBUY shares from the market makers who could guarantee delivery. If other market makers could not guarantee delivery, then Waldron caused the IBUY shares to be bought in for the account of the uncovered short seller from either its own inventory or from Waldron's customers who were willing to sell. Since there were no other sellers and no established guaranteed market price, Waldron had to set the price. Therefore, Waldron set the price above the last available open market price. | |
| 36. | There were no regulations governing the setting of prices on a buy-in transaction. For instance, NASD *does not* require that the buy-in be conducted at the last reported price. NASD also *does not* require that the buy-in be conducted at any particular range above the last reported price. When the buy-in prices set by Waldron started to become the subject of NASDR inquiry, Waldron contacted NASD personnel to confirm whether there were any NASD provisions governing the buy-in prices. Waldron was told that there were none. | Declaration of Cery Bradley Perle, ¶9; Exhibit 2; Declaration of Thomas Fehn, ¶7; Exhibit 9 |

11

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Case 2:06-ap-01971-BB    Doc 107    Filed 10/28/09    Entered 10/28/09 14:16:47    Desc
Main Document    Page 12 of 17

| | | |
|---|---|---|
| 37. | At the NASD Arbitration, Fiero Brothers claimed that four buy-in transactions executed on February 12, 1998; March 6, 1998; March 11, 1998 and March 16, 1998 were excessive. | Declaration of Cery Bradley Perle, ¶10 |
| 38. | On March 3, 1998, Fiero Brothers had filed an ex parte application in the Los Angeles Superior Court seeking an injunction to prevent Wedbush and Waldron from executing a buy-in on Fiero Brothers' short position. The court denied Fiero Brothers' request. | Declaration of Cery Bradley Perle, ¶11; Declaration of Thomas Fehn, ¶5 |
| 39. | At the NASD Arbitration, Fiero Brothers sought damages for these alleged excessive buy-ins. Fiero Brothers also claimed that Defendant engaged in artificial market making, stock parking arrangements, guarantee against loss, and fraudulent purchasing. | Declaration of Cery Bradley Perle, ¶12; Declaration of Thomas Fehn, ¶4; Plaintiff's Ex. 3, Second Amended Statement of Claim; Plaintiff's Ex.4, NASD Award. |
| 40. | At the NASD Arbitration, Defendant filed an answer and a counter-claim against Fiero Brothers. In the counter claim, Defendant alleged claims against the Fiero Brothers for defamation and tortuous interference with business relations. Defendant alleged that Fiero Brothers had engaged in manipulative short selling in IBUY. Defendant also alleged that Fiero Brothers had published defamatory | Declaration of Cery Bradley Perle, ¶ 13; Exhibit 1; Declaration of Thomas Fehn, ¶¶5, 7 |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | statement with the intention of driving down the price of IBUY. | |
| 41. | Fiero Brothers' naked short selling in IBUY was similar to Fiero Brothers' conduct in the Hanover securities. | Declaration of Cery Bradley Perle, ¶ 14 |
| 42. | Although Fiero Brothers was bought in at what it believed was excessively high prices, it continued to sell short. | Declaration of Cery Bradley Perle, ¶15 |
| 43. | The NASD Arbitration was conducted between September 1 – 4, 1998.  At the NASD Arbitration, Fiero Brothers introduced documentary evidence and witness testimony to allegedly prove its claim of unjust enrichment and market manipulation.  Although Fiero Brothers alleged that Defendant engaged in stock parking arrangement, it did not identify even one customer in whose account such activities had taken place. | Declaration of Cery Bradley Perle, ¶16 |
| 44. | During the NASD Arbitration, Defendant introduced evidence of Fiero Brothers' fraudulent activity in Shopping.com.  Defendant's expert testified that between February and March 1998, Fiero Brothers had been responsible for manipulating the market in | Declaration of Cery Bradley Perle, ¶17; |

13

| | | |
|---|---|---|
| | shopping.com | |
| 45. | Defendant also introduced evidence of the defamatory statements published by Fiero Brothers. | Declaration of Cery Bradley Perle, ¶17 |
| 46. | Regarding its damages, Fiero Brothers introduced testimony from its accountant who informed the panel of the mathematical methodology used to determine Fiero Brothers damages. | Declaration of Thomas Fehn, ¶17; Exhibits 13, 14, 15. |
| 47. | After considering all of the evidence and testimony, the NASD panel granted Fiero Brothers $350,000 in damages. The NASD denied Fiero Brother's request for punitive damages. | Declaration of Cery Bradley Perle, ¶18; Plaintiff's Ex. 4, NASD Award; Declaration of Thomas Fehn, ¶19. |
| 48. | While summarizing Fiero Brothers' claim the NASD noted the amount of damages claimed by Fiero Brothers for each of its causes of action: for the first cause of action, the NASD noted "$510,000.00 in compensatory damages plus interest as a result of the buy-ins," for the second cause of action " $3,250,000.00 plus interest as a result of defendants defrauding claimant," and on the third cause of action "$510,000 plus interest as a result of excessive markups, as well as costs, and attorney's fees for bringing the suit." | Plaintiff's Ex.4, NASD Award |
| 49. | After considering Plaintiff's evidence and | Plaintiff's Ex.4, NASD |

14

| | | |
|---|---|---|
| | Defendant's defenses and counter claims, the NASD ruled partly in favor of Fiero Brothers and stated: "Respondents Waldron & Co. are jointly and severally liable to and shall pay the claimant the sum of $350,000 in compensatory damages." | Award; Declaration of Thomas Fehn, ¶19. |
| 50. | The NASD only awarded a portion of the "compensatory damages," which were sought under Fiero Brothers' first cause of action "$510,000.00 in compensatory damages plus interest as a result of the buy-ins." The NASD did not award any damages for any alleged fraud, i.e, the "$3,250,000.00 plus interest as a result of defendants defrauding claimant." | Plaintiff's Ex. 3, Second Amended Statement of Claim; Plaintiff's Ex.4, NASD Award |
| 51. | Fiero Brothers' first cause of action at the NASD Arbitration was for unjust enrichment. | Declaration of Thomas Fehn, ¶¶10,11; Exhibit 6. |
| 52. | At the NASD Arbitration, Fiero Brothers did not introduce any evidence relating to market manipulation or fraud by Defendant. | Declaration of Thomas Fehn, ¶12 |
| 53. | This was a dispute between two securities industry professionals. | Declaration of Thomas Fehn, ¶13 |
| 54. | At the NASD Arbitration, Fiero Brothers' and Defendant's experts testified that Defendant had not violated any securities regulations by setting the buy-ins prices. The experts testified that at a maximum, a reasonableness standard should be | Declaration of Thomas Fehn, ¶13; Exhibit 9 |

15

| | | |
|---|---|---|
| | used to set buy-in prices. | |
| 55. | At the NASD Arbitration, Defendant's witness Robert W. Lowry an expert in the field of securities regulations provided his expert testimony. Mr. Lowry testified that in his opinion between February 1998 and March 1998, the price increase in the shares of shopping.com was caused by Fiero Brothers' manipulation of the market. | Declaration of Thomas Fehn, ¶¶14, 15; Exhibits 8, 9. |
| 56. | During the NASD Arbitration, Defendant introduced evidence in its defense and in support of his counter-claim. Defendant introduced evidence of how the stock prices of all internet shopping companies were high during that time. Defendant also introduced evidence of Fiero Brothers' market manipulations in Shopping.com through naked short selling. The disciplinary action instituted by the SEC against Fiero Brothers for its manipulative short selling in the securities underwritten by Hanover was also introduced. Defendant also introduced evidence of Fiero Brothers' defamatory conduct and the false statement issued by the Fiero Brothers which were intended to drive down the price of shopping.com. Defendant introduced Fiero Brothers' phone records to show its collusion | Declaration of Thomas Fehn, ¶16; Exhibits 10, 11, 12, 16, 17. |

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | with others. | |
| 57. | During closing argument, Fiero Brothers' attorney Mr. Russo also explained the methodology used to calculate Fiero Brothers' damages. Mr. Russo also referred to the document created by Fiero Brothers' accountant (Exhibit 14) regarding the methodology used to calculate Fiero Brothers' damages. | Declaration of Thomas Fehn, ¶18; Exhibits 14, 15. |
| 58. | Fiero Brothers did not request any factual findings. Also, Fiero Brothers did not request any clarifications of the award. | Declaration of Thomas Fehn, ¶21. |

Dated: October 27, 2009          ____/S/ Darrell Palmer_____
                                 Darrell Palmer, Attorney for Defendant

DEFENDANT CERY B. PERLE'S SEPARATE STATEMENT OF DISPUTED FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT