Leslie Schwaebe Akins (Bar No. 138678)
LESLIE SCHWAEBE AKINS, A LAW CORPORATION
7157 Argonauta Way
Carlsbad, California 92009
(760) 931-2920 telephone
(760) 603-0547 facsimile

Attorney for Plaintiff
Alfonso Fiero

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

CERY BRADLEY PERLE,

   Debtor,

_____

ALFONSO FIERO,

                  Plaintiff,
      v.

CERY B. PERLE, an individual,

                  Defendant,

CASE NO. LA 01-26497-BB

[Chapter 7]

Adv. No. 06-01971-BB

The Honorable S. Bluebond- 626

**PLAINTIFF ALFONSO FIERO'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT CERY PERLE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**

DATE: December 17, 2009
TIME:  2:00 p.m.
CTRM: 1475

DATE FILED: September 13, 2006
DISCOVERY CUT OFF: July 31, 2009
TRIAL DATE: None set

REPLY MEMO.POINTS AND AUTHORITIES RE: MSJ                                 CASE NO. LA 01-26497-BB

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................. 1

    A. Summary of Argument ...................................... 1

II. ARGUMENT ...................................................... 2

    A. NO TRIABLE ISSUE OF MATERIAL FACT EXISTS THAT PLAINTIFF'S JUDGMENT IS NON DISCHARGEABLE UNDER 523(A)(19). ..................................... 2

    B. 523(A)(19) APPLIES RETROACTIVELY TO PLAINTIFF'S JUDGMENT AGAINST PERLE ................................... 7

    C. PERLE'S INDEFENSIBLE, FRAUDULENT BUY-INS OF SHOPPING.COM STOCK CONSTITUTES A WILLFUL AND MALICIOUS INJURY TO PROPERTY AND HENCE CREATED A NON-DISCHARGEABLE DEBT UNDER 11 U.S.C. § 523 (A)(6). ................................. 8

    D. THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL APPLY TO THE INSTANT PROCEEDING, AND BAR THE RE-LITIGATION OF THE UNDERLYING SECURITIES ARBITRATION AND PERLE'S COUNTER-CLAIMS AGAINST FIERO BROTHERS ................. 10

    E. PLAINTIFF HAS ACTED IN GOOD FAITH AND DOES NOT HAVE UNCLEAN HANDS. ................................. 11

III. CONCLUSION ................................................... 13

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Carolin Corp. v. Miller,*
(4th Cir. 1989) 886 F.2d 693, 698 .......................................... 11

*Hodges v. Buzzeo (In re Buzzeo),*
(W.D. Pa. 2007) 365 B.R. 578 .............................................. 7

*Hopper v. Everett (In re Everett),*
(B.C. Az. 2007) 364 B.R. 711 .............................................. 11

*In re Bauer,*
(1947) 1947 SEC LEXIS 217, 26 S.E.C. 770 ................................. 9

*In re Hallahan,*
78 B.R. 547 770 ........................................................... 9

*In re Himber,*
(C.D.Ca. 2002) 296 B.R. 217 .............................................. 9

*In re Iaquinta,*
(Bkrtcy. N.D. Ill. 1989) 98 Bankr.919 ..................................... 10

*In re Jones,*
(N.D. Oh. 2007) 369 B.R. 340 ............................................. 10

*In re McClung,*
(D Idaho 2004) 304 BR 419, 425 .......................................... 10

*In re Southeastern Securities Corp.,*
(1949)1949 SEC LEXIS 135, 29 S.E.C. 609 (1949) ........................ 9

*In re Thiara,*
(9th Cir. B.A.P. Cal.) 285 B.R. 420, 2002 WL 31599495 ................... 9

*In re Uwimana,*
(4th Cir. 2001) 274 F.3d 806 ............................................. 11

*In re Zumwalt,*
(D.C. Or. 1985), 53 B.R. 277 ............................................. 8

*Keystone Driller Co. v. General Excavator Co.,*
(1933) 290 U.S. 240 ..................................................... 12

*Mauriber v. Shearson/American Express,*
(S.D.N.Y. 1983) 567 F. Supp. 1231 ....................................... 7

*MCI Worldcom Network Servs. v. Graphnet, Inc.,*
(3rd Cir. N.J. 2006) 2005 U.S. Dist. LEXIS 40835, ....................... 3, 4

*Mollasgo v. Tills (In re Tills),*
(2009) 2009 Bankr. LEXIS 3598 .......................................... 4

*Newman v. Rothschild,*
 (S.D.N.Y. 1986), 651 F. Supp. 160 .................................................. 7

*Peterman v. Whitcomb (In re Whitcomb),*
 (Bankr. N.D. Ill. 2004), 303 B.R. 806, 810 .......................................... 4

*SEC v. Zandford,*
 (2002) 535 U.S. 813 ................................................................ 9

*Smith v. Gibbons (In re Gibbons),*
 (S.D.N.Y. 2003) 289 B.R. 588 ..................................................... 4, 7

*United States v. Naftalin,*
 (1979) 441 U.S. 768 ............................................................... 5, 6

*Wetzler v. Cantor,*
 (D. Md. 1996) 202 B.R. 573 ....................................................... 12

**FEDERAL STATUTES**

11 U.S.C. §523(a)(6) ............................................................ 8, 9, 10

11 U.S.C. §523(a)(19) ........................................................ 4, 5, 6, 10

15 U.S.C. §10(b) .................................................................... 10,

15 U.S.C. §17(a) ..................................................................... 5

15 U.S.C. §20(a) .................................................................... 11

15 U.S.C. §77a ....................................................................... 5

15 U.S.C. §77q(a)(1) ................................................................. 5

15 U.S.C. § 77(b) .................................................................... 6

15 U.S.C. §78a ..................................................................... 26

15 U.S.C. §78j(b) ................................................................ 11, 16

**FEDERAL REGULATIONS**

17 C.F.R. § 240.10b-5 ......................................................... 5, 8, 10

**REGULATORY RULES**

NASD Rule 11810(c)(1)(C) .................................................. 4, 7, 8

**MISCELLANEOUS AUTHORITIES**

Collier on Bankruptcy ¶523.01 (15th Ed. Rev. 2007) ............................ 3

3Collier on Bankruptcy ¶523.16 at 523-117 (15th ed. 1988) .................... 10

## I. INTRODUCTION

### A. Summary of Argument

Defendant Cery Perle ("Perle") attempts to defeat Plaintiff Alfonso Fiero's ("Plaintiff") Motion for Summary Judgment, by creating triable issues of fact which, in reality do not exist. Defendant argues, without success, that collateral estoppel can not assist Plaintiff in this proceeding. By doing so, Perle hopes the court will ignore three prior judgments entered against Perle on the same acts, transactions, and issues that are before this court in the instant proceeding, including one judgment issued by this very court against Perle based on the same conduct and same transactions as are at issue in this case. Moreover, rather than create triable issues of fact, Perle's purported "evidence" in reality establishes without dispute much of what Plaintiff has stated in his moving papers: that he has a valid judgment, arising from a securities fraud dispute that resulted in injury to Fiero Brothers, for which compensatory damages were awarded in the amount of $350,000., with all other cross-claims dismissed. Perle tries to soften his conduct by characterizing it as merely his "unjust enrichment," and demonize assignor Fiero Brothers by providing this court with irrelevant, highly prejudicial matter, intended to crucify assignor Fiero Brothers on unrelated matter. However, this desperate attempt should have no more sway here than it did when presented by Perle as part of his cross-claim in the NASD arbitration proceeding.

When all is said and done, and when the evidence is examined by this court, there is no doubt that the NASD Arbitration Panel awarded compensatory damages to assignor for securities fraud perpetrated against Fiero Brothers, which damaged Fiero Brothers, in the sum of $350,000, and benefitted, profited or unjustly enriched Perle. This debt, is non-dischargeable under bankruptcy code section 523(a)(19). Moreover, on the same conduct, involving several of the same transactions, this court has determined this same conduct, these same acts, are non-dischargeable under bankruptcy code section 523(a)(6).

1  Therefore, for the reasons set forth herein, and in Plaintiff's Motion, Plaintiff
2  urges this court to ignore Perle's irrelevant material, and, instead, to remain true to its prior
3  findings, on the same facts as presented in Plaintiff's Motion, and hold that Plaintiff's
4  Judgment against Perle is not dischargeable under 15 U.S.C. §523(a)(6) and, additionally,
5  15 U.S.C. § 523(a)(19).

## II. ARGUMENT

### A. NO TRIABLE ISSUE OF MATERIAL FACT EXISTS THAT PLAINTIFF'S JUDGMENT IS NON DISCHARGEABLE UNDER 523(A)(19).

Perle's Opposition, and the exhibits he submits to this court in support of his Opposition to Plaintiff's Motion establishes that the dispute between Plaintiff's assignor Fiero Brothers, Inc. ("Fiero Bros.") and Perle was for fraud in the sale of securities, to wit, the buy-back of shares of Shopping.com stock, for Fiero Bros at an unjustifiable excessive price above the market.

Attempting his own hand at revisionist history, Perle seeks to cast himself in a better light by offering to this court incomplete and self-serving exhibits (See, Perle, Exhibit 1 compared to Exhibit 1 to Akins Declaration offered in support of this Reply which includes the entire Perle Exhibit 1, including Exhibit D (Perle's complaint against his former brokers for defamation and their alleged defamatory statements attached as A-F thereto). Nonetheless, Perle's own evidence demonstrates that this dispute is a securities fraud case involves Perle's conduct of orchestrating the fraudulent buy-ins of Shopping.com stock against short sellers, including Fiero Brothers, at above-market prices (See, Perle Exhibit 2 (responding to the NASD's inquiry as to the fairness of the recent buy-ins against naked short-sellers of Shopping.com stock), Exhibit 3 (Fiero Brother's counsel's letter stating "Despite warnings from NASD Regulation, Inc., Wedbush conducted an above-market buy-in of Fiero and others on March 19, 1998 at prices $12.75 above the market price at which other buy-ins simultaneously were conducted." p.2, 1st para.), Perle Ex. 4, ( arguing Fiero Brothers assumed the risk in shorting IBUY stock after it believed the market was manipulated."), Perle Exhibit 5 (challenge to Fiero's First Claim), and Perle Ex.

6 (Fiero Brother's letter brief opposing Perle motion to dismiss, including Exhibits demonstrating Perle's fraudulent scheme to manipulate the market (Charts B and D (F0025283-259, but see, Exhibit 2 to Akins Decl. for missing page), Perle's control of Shopping.com stock (Charts A and C), and Wedbush's knowledge that it was wrong buying-in at the above market price (F0025283-259, but see, Exhibit 2 to Akins Decl. for missing page). Perle's Exhibits 7, 8, and 10-13 concern the testimony of Perle's purported expert witness, Robert Lowry, primarily focusing on Perle's counter-claims against Fiero Brothers of market manipulation of Shopping.com stock and defamation, which conclusion was simply not accepted by nor reflected in the NASD Arbitration Panel September 1998 Arbitration Award. Further, Perle's exhibits evidence certain of the methodologies used by Fiero Brothers to arrive at its damages arising from Perle's multiple (at least four occasions) fraudulent, wilful and malicious buy-ins of Shopping.com stock against Fiero Brothers that resulted in compensatory damages (Perle Exhibits 9 and 14).[1]

Moreover, Perle's Opposition, at a minimum, concedes that the NASD Arbitration Panel found against Perle on Fiero Brothers' claims for the wrongful, indefensible multiple buy-ins of Shopping.com stock at above market price (or, as phrased in the Third Claim, at excessive market price), which conduct violates NASD Rule 11810(c)(1)(C), resulting in an award of compensatory damages to Fiero Brothers in the amount of $350,000. On this basis alone, Plaintiff is entitled to summary judgment of non-dischargeability under Section 523(a)(19).

Section 523(a)(19) excepts from discharge debts arising from a judgment, order or settlement agreement based upon the debtor's violation of certain federal securities laws, state securities laws or regulations under federal securities laws or state securities laws, or for common law fraud, deceit or manipulation in connection with the purchase or sale of any security. 4 COLLIER ON BANKRUPTCY § 523.01 (15th revised ed. 2004). *MCI*

---

[1] Perle Exhibits 16-20 have nothing to do with the instant non-dischargeability proceeding, nor the underlying NASD Arbitration which resulted in the Arbitration Award against Perle. These exhibits are also irrelevant to or post-date Perle's counter claim. Regardless, Exhibits 16-20 are irrelevant, unduly prejudicial, and Plaintiff moves the court to strike these exhibits.

*Worldcom Network Servs. v. Graphnet, Inc.* (3rd Cir. N.J. 2006), 2005 U.S. Dist. LEXIS 40835. Section 523(a)(19) incorporates by reference § 3(a)(47) of the Securities Exchange Act of 1934, which defines "securities laws" to mean the Securities Act of 1933, the Securities Exchange Act of 1934, the Public Utility Holding Company Act of 1935, the Trust Indenture Act of 1939, the Investment Company Act of 1940, the Investment Advisers Act of 1940 and the Securities Investor Protection Act of 1970, including the rules and regulations promulgated thereunder. *Smith v. Gibbons (In re Gibbons)* (S.D. N.Y. 2003) 289 B.R. 588, 592.

Fiero Brothers' First Cause of Action in its Second Amended Statement of Claim asserted that Perle's buy-ins of Shopping.com stock at above market prices violated NASD Uniform Practice Code Rule 11810(c)(1)(C), which states:

> (C) As provided in paragraph (c)(1)(A) and (B) hereof, members must be prepared to defend the price at which the "buy-in" is executed relative to the current market at the time of the "buy-in."

NASD Uniform Code of Conduct Rule 11810(c)(1)(C).

Section 523(a)(19) plainly indicates that the conditions must be independently satisfied - securities violations must have occurred and a settlement (or other final resolution of the claim, such as an arbitration award or judgment) must be completed. *Peterman v. Whitcomb (In re Whitcomb)*, 303 B.R. 806, 810 (Bankr. N.D. Ill. 2004) (debt nondischargeable under section 523(a)(19) if two conditions met.). Thus, the exception to discharge focuses on securities violations rather than resolutions of allegations of securities violations. *Mollasgo v. Tills (In re Tills)*, 2009 Bankr. LEXIS 3598. Both of these requirements are met in this case.

First, the rules of the NASD are implemented and maintained pursuant to the Securities and Exchange Act of 1934. The NASD Arbitration Panel clearly found, at minimum, as conceded by Perle, that he violated this securities rule, which resulted in Perle indefensibly and unjustly receiving more than $350,000 that was Fiero Brothers'

///

Main Document    Page 10 of 19

property. Therefore, this violation, and resulting arbitration award and judgment, satisfies the requirements for non-dischargeability under 523(a)(19).

Perle takes exception to the application of the federal securities laws and NASD rules to this situation, claiming that said laws are to protect investors, not brokers. (Perle Separate Statement, ¶ 53; Fehn Decl.¶ 13 (omitted and objected to by Plaintiff.)  Perle, and his counsel Mr. Fehn, are incorrect. The Securities Act of 1933, 15 U.S.C. §77(a) et. seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78(a) et. seq., were promulgated for the protection of investors and brokers. In *United States v. Naftalin*, 441 U.S. 768, 770 (1979), the court held that § 17 (a)(1) the Securities Act of 1933, 48 Stat. 84, as amended, 68 Stat. 686, 15 U. S. C. § 77q (a)(1), prohibits frauds against brokers as well as investors. Section 17(a) of the 1933 Act makes it unlawful "for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly --

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

15 U.S.C. §77q(a)(1).

In that case, Naftalin did not contest that his conduct violated §17(a) of the 1933 Act, but argued the Court of Appeals correctly held that § 17 (a)(1) applies solely to frauds directed against investors, and not to those against brokers. *United States v. Naftalin*, 441 U.S. 771-772. In reversing the Court of Appeal's decision, the U.S. Supreme Court stated:

> "Nothing on the face of the statute supports this reading of it. Subsection (1) makes it unlawful for "any person in the offer or sale of any securities . . . directly or indirectly . . . to employ any device, scheme, or artifice to defraud . . . ." (Emphasis added.) The statutory language does not require that the victim of the fraud be an investor -- only that the fraud occur "in" an offer or sale. . . .

LA-01-26497-BB

> An offer and sale clearly occurred here. Respondent placed sell orders with the brokers; the brokers, acting as agents, executed the orders; and the results were contracts of sale, which are within the statutory definition, 15 U. S. C. § 77b (3). Moreover, the fraud occurred "in" the "offer" and "sale." 4 The statutory terms, which Congress expressly intended to define broadly, see H. R. Rep. No. 85, 73d Cong., 1st Sess., 11 (1933); 1 Loss 512 n. 163; cf. SEC v. National Securities, Inc., 393 U.S. 453, 467 n. 8 (1969), are expansive enough to encompass the entire selling process, including the seller/agent transaction. Section 2 (3) of the Act, 48 Stat. 74, as amended, 68 Stat. 683, 15 U. S. C. § 77b (3), states:
>
>> 'The term "sale" . . . shall include every contract of sale or disposition of a security or interest in a security, for value. The term . . . 'offer' shall include every attempt or offer to dispose of . . . a security or interest in a security, for value." (Emphasis added.)
>
> This language does not require that the fraud occur in any particular phase of the selling transaction. At the very least, an order to a broker to sell securities is certainly an "attempt to dispose" of them.'"

*United States v. Naftalin*, 441 U.S. at 771-772. Furthermore, the U.S. Supreme Court stated that the protections afforded by the Securities Acts of 1933 and 1934 applied to both investors and to brokers:

> "the purpose of the Act was to protect the investing public and honest business. In enacting the Securities and Exchange Act, the Senate said that: "The aim is to prevent further exploitation, of the public by the sale of unsound, fraudulent, and worthless securities through misrepresentation; to place adequate and true information before the investor, to protect honest enterprise, seeking capital by honest presentation against the competition afforded by dishonest securities offered to the public through dishonest promotion, to restore the confidence of the prospective investor in his ability to select sound securities, to bring into productive channels of industry and development capital which has grown, timid to the point of hoarding, and to aid in providing employment and restoring buying and consuming power," S. Rep. No. 47 73rd Cong. 1st Sess. 1 (1939).
> The NASD Rules of the Uniform Practice Code

*United States v. Naftalin*, 441 U.S. 771-772. Clearly, the NASD Arbitration Panel rejected Perle's counter-claims, and found Fiero Brothers' interest worthy of protection, and awarded Fiero Brothers compensatory damages of $350,000, which award was confirmed to judgment.

Moreover, for purposes of determining whether a debt owed by Perle is nondischargeable under 523(a)(19), Perle's characterization of Fiero Brothers' prevailing claim as being for "unjust enrichment," as opposed to securities fraud, or wilful or malicious conduct, is of little consequence as Fiero Brothers pleaded, as to each of its three claims, and as to the acts and conduct giving rise to the violations constituting the claims, that

Perle, was unjustly enriched by the benefit obtained at Fiero Brothers' expense. Simply, the defrauder is unjustly enriched by his fraud, just as the person who fraudulently convert's or destroy's another person's property.

By Perle's own admission, this occurred with his violation of the NASD Rule 11810(c)(1)(C) that resulted in his unjust enrichment and damage to Fiero Brothers, in the amount of $350,000. Moreover, violations of NYSE and NASD rules may be probative in demonstrating a course of conduct amounting to fraud. *Newman v. Rothschild* (S.D.N.Y. 1986), 651 F. Supp. 160, 162-163, citing, *Mauriber v. Shearson/American Express*, 567 F. Supp. 1231, 1238 (S.D.N.Y. 1983). Therefore, as at minimum Perle's conduct constituted a covered securities law and, as alleged and tried in arbitration, evidenced securities fraud, Plaintiff submits that he has met his burden of establishing that his Judgment against Perle is non-dischargeable under 523(a)(19).

**B.    523(A)(19) APPLIES RETROACTIVELY TO PLAINTIFF'S JUDGMENT AGAINST PERLE**

.    Section 523(a)(19) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to indicate that it applies to such debts that result: "before, on, or after the date on which the petition was filed." *Hodges v. Buzzeo (In re Buzzeo)* (W.D. Pa. 2007) 365 B.R. 578, 582. As the court in *Smith v. Gibbons (In re Gibbons)* (S.D.N.Y. 2003) 289 B.R. 588, 595 stated:

> Congress did consider retroactive application of § 523(a)(19) and determined that any potential unfairness was an acceptable price to pay for the countervailing benefits. This conclusion takes into account the legislative history, the context and purpose under which the Act and § 803 was enacted, § 804 (where Congress expressly declined to apply the statute retroactively), and the absence of any contradictory legislative history. HN14Even if the Court were to assume, arguendo, that the application of § 523(a)(19) is prejudicial to a debtor, under Landgraf, this is not a sufficient basis on which to fail to give § 523(a)(19) its intended scope. Within the meaning of Landgraf, Congress has prescribed, with "requisite clarity," the temporal reach of § 523(a)(19).

This issue has already been dealt with by this Court when it denied Perle's Motion to Dismiss Plaintiff's First Amended Complaint regarding his 523(a)(19) claim.

**C.   PERLE'S INDEFENSIBLE, FRAUDULENT BUY-INS OF SHOPPING.COM STOCK CONSTITUTES A WILLFUL AND MALICIOUS INJURY TO PROPERTY AND HENCE CREATED A NON-DISCHARGEABLE DEBT UNDER 11 U.S.C. § 523 (A)(6).**

Perle's indefensible, fraudulent multiple buy-ins of Shopping.com stock at above market price, are no different from, and have the same practical effect, of Perle embezzling or fraudulently converting the monies equal to the amount of the above-market mark-up from Fiero Brothers. Upon the happening of those fraudulent acts, a debt was created in favor of Fiero Brothers, in the amount that was embezzled, i.e., unlawfully converted, which resulted in unjust enrichment to Perle. In *In re Zumwalt* (D.C. Or. 1985), 53 B.R. 277, 281 the Court held nondischargeable debtor general partner's withdrawals of general partnership funds, holding it constituted an embezzlement and a conversion of partnership property in violation of 11 U.S.C. § 523(a)(4) and (6). The Court further stated Defendant's diversion was in violation of Oregon law, and was willful and malicious. The Court noted that while the debtor had authority to apply a portion of partnership's funds, and his unauthorized diversion of other partnership property was willful and malicious and nondischargeable in bankruptcy.

Like the defendant in *In re Zumwalt, supra,* Perle may have had the right to buy-in short positions held by short sellers at market prices, the NASD Arbitration Panel, after hearing all of the evidence, not only on Fiero Brothers' claim, but also on Perle's counter-claim, determined that Perle unlawfully took Fiero Brother's property, his mode of operation was the charge of excessive prices above market. This conduct not only constitutes a violation of NASD Rule 11810(c)(1)(C), but is a deceptive practice found to support a claim of Violation of S.E.C. Rule 10b-5, the second claim pleaded by Fiero Brothers and arbitrated against Perle. Regardless of its characterization, the practical effect is the same- the embezzlement and conversion of Fiero Brothers' property. This tortious conduct resulted in Perle's unjust enrichment, and damages that the NASD Arbitration panel ordered be compensated in the amount of $350,000.

Nondischargeability of debt based on a claim of unlawful conversion is also addressed under § 523(a)(6). *In re Himber* (C.D.Ca. 2002) 296 B.R. 217, 225, citing, *In re Thiara*, 285 B.R. 420, 2002 WL 31599495 (9th Cir. B.A.P. Cal.); Collier on Bankruptcy, 15th ed. revised, P 523.12. Injuries covered by the section 523(a)(6) discharge exception are not confined to physical damage or destruction; an injury to intangible personal or property rights is sufficient. Thus, the conversion of another's property without the owner's knowledge or consent, done intentionally and without justification and excuse, is a willful and malicious injury within the meaning of the exception.

Perle's conduct of knowingly orchestrating the fraudulent buy-ins of Shopping.com stock against Fiero Brothers and other short sellers, including Corsair Capital (as was found by this Court in the Corsair Capital adversary proceeding, and by the Securities and Exchange Commission in its separate proceeding against Perle and Waldron (which directly resulted in their expulsion from the NASD and the securities industry), also equates to Perle engaging in a false and deceptive practice. This finding, involving three of the four transactions at issue in Fiero Brothers' NASD action against Perle, was made by the District Court in the S.E.C. action, and was adopted by this Court in the Corsair Capital adversary action, addressed in detail in Plaintiff's Motion.

In *SEC v. Zandford* (2002) 535 U.S. 813, 819-820, the court stated that a broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10(b) and Rule 10b-5. See, also *In re Bauer*, 1947 SEC LEXIS 217, 26 S.E.C. 770 (1947); *In re Southeastern Securities Corp.*, 1949 SEC LEXIS 135, 29 S.E.C. 609 (1949). Again, this claim was made by Fiero Brothers against Perle.

Finally, to prevail on this Motion, Plaintiff does not have to establish that Perle intended to cause willful or malicious injury to Fiero Brothers or to Fiero Brothers' property. A malicious injury means an act by the debtor done with knowing disregard for the rights of another, rejecting the view that the creditor must show that the debtor acted with ill will or malevolent purpose <u>toward the injured party</u>. *In re Hallahan*, 78 B.R. 547, 550. The debtor

1  need not act with ill will or malevolent purpose <u>toward the injured party</u>. In re Iaquinta,
2  (Bkrtcy. N.D. Ill. 1989) 98 Bankr.919, 924.  Thus, "a wrongful act done intentionally, which
3  necessarily produces harm and is without just cause or excuse, may constitute a willful and
4  malicious injury." 3 Collier on Bankruptcy para. 523.16 at 523-117 (15th ed. 1988).  As
5  stated in In re Jones, 369 B.R. 340, 347, on finding a debt non-dischargable under Section
6  523(a)(6), the Jones court stated: "Herein, the Debtor caused willful and malicious injury to
7  Plaintiffs by depleting a lifetime of savings from Mrs. Brewer. The Debtor knew that
8  transferring such large amounts of funds out of Mrs. Brewer's account and into his own
9  personal account would cause injury to her yet he did it in conscious disregard of his
10 fiduciary duties and without just cause or excuse. Accordingly, the Plaintiffs have presented
11 a prima facie case pursuant to 11 U.S.C. § 523 (a)(6) that the debt owed to Plaintiffs is
12 nondischargeable." In re Jones (N.D. Oh. 2007) 369 B.R. at 347.

### D. **THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL APPLY TO THE INSTANT PROCEEDING, AND BAR THE RE-LITIGATION OF THE UNDERLYING SECURITIES ARBITRATION AND PERLE'S COUNTER-CLAIMS AGAINST FIERO BROTHERS.**

17 In re McClung, 304 BR 419, 425 (D Idaho 2004), the Court noted that § 523
18 (a)(19) was enacted by Congress in 2002 as part of the Sarbanes-Oxley Act 'to disallow
19 debts incurred in violation of securities fraud laws from being discharged in bankruptcy.'
20 Further, the McClung court noted that one of the purposes of the enactment of this
21 subsection was to avoid the need to 'reprove' the fraud in securities fraud cases, In re
22 McClung at 425.
23     As Perle's Opposition clearly demonstrates, Perle desperately wishes the court to
24 deny Plaintiff's Motion, and, at the very least, require the parties to retry the underlying
25 securities arbitration, knowing full well that the task of litigating a twelve-year old
26 complex securities case will not only be monumental (as seen just from the summary
27 judgement motion), nearly impossible (given the locating of documents and witnesses),
28 but also cost prohibitive.  Yet, as clearly stated in Plaintiff's Motion, this need not be the

case, as the same issues have previously been decided in multiple actions, involving the same parties, issues, facts and transactions.

### E.  PLAINTIFF HAS ACTED IN GOOD FAITH AND DOES NOT HAVE UNCLEAN HANDS.

Perle also seeks to dispose of Plaintiff's assigned Judgment, arguing that it fails to be non-dischargeable due to Plaintiff's "unclean hands." This argument is less than credible, and easily dispensed with. First, Perle conveniently confuses Plaintiff, the assignee, with the alleged nefarious wrongdoer, Fiero Brothers, the assignor. This mistake is fatal as, contrary to Perle's self-serving, unsubstantiated claim, the defense of unclean hands can not be imputed to Plaintiff. Further, Perle offers no evidence that Plaintiff, himself, is guilty of unclean hands.

The doctrine of "unclean hands" demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands or he will be denied relief, regardless of the merits of his claim. *Hopper v. Everett (In re Everett)* (B.C. Az. 2007) 364 B.R. 711, 723. As stated by the *Uwimana* court, "the equitable powers of bankruptcy courts are "available only to . . . creditors with 'clean hands.'" *In re Uwimana*, 274 F.3d 806, 810, citing *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989). Plaintiff is a creditor with "clean hands." There is no evidence to the contrary.

Moreover, in stretching to obtain this "unclean hands" defense, Perle argues evidence of a separate, unrelated, unflattering, NASD Disciplinary Decision against assignor Fiero Brothers involving a matter that occurred some three years earlier to the events involving Perle and Shopping.com. This separate transaction, and any decision by any regulatory body related to that transaction, is wholly irrelevant to this nondischargeability proceeding. Notwithstanding this fact, Perle included part of this material in his counter-claim against Fiero Brothers in the NASD Arbitration.

In *Uwimana*, the debtors attempted to block creditor Rwanda's adversary proceeding and claim that its debt for alleged defalcation by its debtor ambassador of Rwandan embassy funds was non-dischargeable, by arguing that Rwanda has unclean

hands because it seeks to "persecute" debtors for their political beliefs, and accused Rwanda of an "unholy quest" to undermine debtors' finances and reputation. *In re Uwimana*, supra, at 811. In denying the debtors' defense of unclean hands, the *Uwimana* court stated:

> the [Uwimanas] have produced no evidence that Rwanda was responsible for Aloys Uwimana's decision to spend embassy funds, either by threatening or misleading him. During the bankruptcy hearing Aloys Uwimana did state that if he returned to Rwanda he and his family might face a terrible "fate." But he has never claimed that he sought asylum to avoid punishment by Rwanda. 1 Indeed, Aloys Uwimana asked the district court to take judicial notice of the 1994 State Department Human Rights Report on Rwanda, which concluded that the government of the country did not sanction extra-judicial killings. See *Republic of Rwanda*, 255 B.R. at 677 n.10. At most we can conclude, as the district court did, that Aloys Uwimana was afraid to return to Rwanda because of the general unrest there. Id. at 677. Although we do not minimize this fear, we cannot attribute it to the Republic of Rwanda for purposes of the unclean hands doctrine.

In the present action, Plaintiff did nothing to Perle, and Fiero Brothers' alleged actions concerning Hanover are equally unrelated to Perle or the Shopping.com buy-ins at the center of this nondischargeability action. A court can deny relief under the doctrine of unclean hands only when there is a close nexus between a party's unethical conduct and the transactions on which that party seeks relief. See, *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 78 L. Ed. 293, 54 S. Ct. 146 (1933) (predicate act underlying an unclean hands defense must have an "immediate and necessary relation to the equity that [one] seeks in respect of the matter in litigation"); *Wetzler v. Cantor*, 202 B.R. 573 (D. Md. 1996) (noting that even truthful allegations of self-dealing did not warrant application of "unclean hands" doctrine if the self-dealing was not "connected with the transaction upon which the claimaint sought relief") (citation omitted). The Hanover matter is not connected with the transaction upon which Plaintiff seeks relief. Moreover, the NASD Arbitration Award denied Perle's counter-claim against Fiero Brothers. Simply, the issue of Fiero Brothers' unclean hands has already been decided by the NASD Arbitration Panel against Perle.  Perle should be estopped from asserting his unclean hands defense in this adversary proceeding.

## IV. CONCLUSION

For all of the foregoing reasons, as well as those set forth in Plaintiff's Motion and supporting papers previously filed with the court, summary judgment should be granted in favor of Plaintiff and against Perle as to all claims for nondischargeability at issue in the First Amended Complaint. Alternatively, Plaintiff is entitled to summary adjudication as to each of his claims.

DATED: December 7, 2009

Respectfully submitted,

LESLIE SCHWAEBE AKINS, A.L.C.

By: /s/ Leslie Schwaebe Akins
Leslie Schwaebe Akins, Esq.
Attorney for Plaintiff

In re: Cery Bradley Perle, Debtor

Alfonso Fiero, v. Cery B. Perle
Case Number LA 01-26497-BB
Adv. No. 06-01971 BB

**PROOF OF
ELECTRONIC SERVICE**

STATE OF CALIFORNIA    )
                      )
COUNTY OF SAN DIEGO    )

I am employed in the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is P.O. Box 131253, Carlsbad, California 92013.

On **December 7, 2009**, I served **PLAINTIFF ALFONSO FIERO'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT CERY PERLE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT** on the interested parties in said action, by delivering it as follows:

__X__ Service will be accomplished through an NEF for parties and counsel who are registered CM/ECF users.

| | |
|---|---|
| **Electronic Mail Notice List** | Darrell Palmer:   darrell.palmer@cox.net |
| **The following is the list of parties who are currently on the list to receive e-mail notices for this case.** | United States Trustee (LA): ustpregion16.la.ecf@usdoj.gov |
| | Leslie S Akins:   lsa@stockmarketlaw.com |
| | Pamela Labruyere:   pamela@sgsslaw.com |

I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **December 7, 2009**, at Carlsbad, California.

_/s/ Megaen Ericson_
Megaen Ericson

**PROOF OF SERVICE**