Leslie Schwaebe Akins (SBN 138678)
LESLIE SCHWAEBE AKINS, A LAW CORPORATION
7157 Argonauta Way
Carlsbad, CA 92009
Tel: 760-931-2920
Fax: 760-603-0547

Attorney for Plaintiff,
Alfonso Fiero

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CERY BRADLEY PERLE,<br><br>Debtor.<br><br>ALFONSO FIERO,<br><br>Plaintiff,<br><br>vs.<br><br>CERY BRADLEY PERLE,<br><br>Defendant. | CASE NO. LA 01-26497-BB<br><br>[Chapter 7]<br><br>Adv. No.: ADV-06-01971-BB<br><br>The Honorable S. Bluebond - 626<br><br>**PLAINTIFF ALFONSO FIERO'S RESPONSE TO DEFENDANT CERY PERLE'S SEPARATE STATEMENT OF FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**<br><br>**DATE: December 17, 2009**<br>**TIME:  2:00 p.m.**<br>**CTRM: 1475**<br><br>DATE FILED: September 13, 2006<br>DISCOVERY CUT OFF: July 31, 2009<br>TRIAL DATE: None set |

///

///

///

1   Plaintiff Alfonso Fiero hereby files this Response to Defendant Cery Perle's

2   Separate Statement of Facts and Evidence In Support of Opposition to Plaintiff's

3   Motion for Summary Judgment.

| 4 | **UNCONTROVERTED FACTS** | **SUPPORTING** | **PLAINTIFF'S** |
|---|---|---|---|
| 5 | | **EVIDENCE** | **RESPONSE** |
| 6 | | | |
| 7 | 1. Shopping.com was a California | 1. Declaration of Cery | 1. Undisputed. |
| 8 | company which sold retail goods on | Bradley Perle, ¶4 | |
| 9 | the internet. | | |
| 10 | | | |
| 11 | 2. Its initial public offering occurred | 2. Dec. of Cery Bradley | 2. Undisputed. |
| 12 | in November 1997 at $9. | Perle, ¶4 | |
| 13 | | | |
| 14 | 3. Waldron acted as the | 3. Dec. of Cery Bradley | 3. Undisputed. |
| 15 | underwriter of Shopping.com. | Perle, ¶4 | |
| 16 | | | |
| 17 | 4. Shopping.com traded on the | 4. Dec. of Cery Bradley | 4. Undisputed. |
| 18 | NASDAQ bulletin board market | Perle, ¶4 | |
| 19 | under the ticker IBUY. | | |
| 20 | | | |
| 21 | 5. After IBUY's initial public | 5. Dec. of Cery Bradley | 5. Undisputed as |
| 22 | offering, Waldron acted as a | Perle, ¶4 | to Waldron acting |
| 23 | market maker in the stock along | | as a market maker. |
| 24 | with 12-20 other market makers. | | |
| 25 | | | |
| 26 | 6. The bulletin board market is | 6. Dec. of Cery Bradley | 6. Objection. |
| 27 | similar to the ancient dealer market | Perle, ¶5 | Lacks foundation; |
| 28 | known as the over-the-counter | | inadmissible |

| | | |
|---|---|---|
| 1 | market.  The difference is that in | opinion; |
| 2 | the bulletin board market, dealers | inadmissible |
| 3 | post their quotes and report their | hearsay. |
| 4 | trades into an electronic medium | |
| 5 | known as the bulletin board. | |
| 6 | | |
| 7 | 7. In 1997-98, the number of rules | 7. Dec. of Cery Bradley | 7. Objection: Lacks |
| 8 | governing the bulletin board market | Perle, ¶5 | foundation; |
| 9 | was less than the rules governing | | inadmissible |
| 10 | the NASDAQ market. | | opinion; |
| 11 | Nonetheless, there were rules that | | inadmissible |
| 12 | governed short selling in the | | hearsay. |
| 13 | bulletin board market.  All retail | | |
| 14 | public customers and broker | | |
| 15 | dealers, who were not market | | |
| 16 | makers, were required when | | |
| 17 | engaging in naked short selling into | | |
| 18 | the bulletin board market, to make | | |
| 19 | an affirmative determination that | | |
| 20 | the stock is borrowable in the event | | |
| 21 | a demand for delivery is made. | | |
| 22 | | | |
| 23 | 8. Since market makers were | 8. Dec. of Cery Bradley | 8.  Objection: |
| 24 | exempt from this requirement, it | Perle, ¶5 | Lacks foundation; |
| 25 | was possible for market makers to | | inadmissible |
| 26 | sell short stock that they could not | | hearsay; |
| 27 | borrow and did not own. | | inadmissible |
| 28 | | | opinion; relevancy; |

| | | argumentative; lacks personal knowledge. |
|---|---|---|
| 9. Fiero Brothers was a market maker in IBUY who misused its ability to sell naked shorts. Fiero Brothers had also previously engaged in similar manipulative short selling activities in other securities. | 9. Dec. of Cery Bradley Perle, ¶14 | 9. Objection: Argumentative; Lacks foundation; Inadmissable Opinion; Inadmissable Hearsay. |
| 10. Fiero Brothers is a nationally reputed aggressive short seller who had gained notoriety for its short selling activities in connection with the 1995 failure of Hanover Sterling, an over the counter firm and its clearing firm, Alder Coleman. John Fiero was the president and sole owner of Fiero Brothers (There were no "brothers" in Fiero Brothers. John Fiero chose the name because he | 10. Exhibits 17, 18, 19 | 10. Objection: Lacks foundation; inadmissible hearsay; lacks personal knowledge; relevancy; probative value is outweighed by prejudicial effect; argumentative. |

1 | thought that it "had a nice ring.")

2

| 3 | 11. John Fiero opened Fiero | 11. Exhibits 18 and 19 | 11. Objection: |
| 4 | Brothers in 1991 with $250,000 in | | Lacks foundation; |
| 5 | capital from his own savings and by | | inadmissible |
| 6 | 1995, Fiero Brothers' capital had | | hearsay; lacks |
| 7 | increased to $8-9 million. | | personal |
| 8 | | | knowledge; |
| 9 | | | relevancy; |
| 10 | | | probative value is |
| 11 | | | outweighed by |
| 12 | | | prejudicial effect; |
| 13 | | | argumentative. |
| 14 | | | |
| 15 | 12. On February 6, 1998, the | 12. Exhibit 17 | 12. Objection: |
| 16 | Department of Enforcement filed a | | Lacks foundation; |
| 17 | complaint against Fiero Brothers | | inadmissible |
| 18 | and its President John Fiero | | hearsay; lacks |
| 19 | alleging that during January and | | personal |
| 20 | February 1995, Fiero Brothers and | | knowledge; |
| 21 | John Fiero had colluded with other | | relevancy; |
| 22 | defendants to carry out a "Bear | | probative value is |
| 23 | raid" in order to manipulate the | | outweighed by |
| 24 | price of 10 securities ("Hanover | | prejudicial effect; |
| 25 | Stock") underwritten by Hanover | | argumentative. |
| 26 | Sterling & Co., Inc. ("Hanover"). | | |

27

28

| | | |
|---|---|---|
| 13. In a bear raid, a manipulator uses short selling as a tool for a manipulation. A short seller attempts to drive down the price of the security by artificially creating an imbalance of sell-side interest. | 13. Exhibit 18, pg. 3, FN 1 | 13. Objection: Lacks foundation; inadmissible hearsay; lacks personal knowledge; relevancy; probative value is outweighed by prejudicial effect; argumentative. |
| 14. The Department of Enforcement also alleged that in carrying out the bear raid, Fiero Brothers employed threats and coercion to extort large blocks of the Hanover Stock from Hanover for below market prices to cover their short positions. Fiero Brothers allegedly violated a number of securities rules and regulations including NASD Rule 3370(b)(2)(B), and Section 10(b) of the Securities Exchange Act, SEC Rule 10b-5. | 14. Exhibit 17; Exhibit 19, pg. 3 | 14. Objection: Lacks foundation; inadmissible hearsay; lacks personal knowledge; relevancy; probative value is outweighed by prejudicial effect; argumentative. |

| | | |
|---|---|---|
| 1 | 15. In response to the Department | 15. Exhibit 19, pg. 5 | 15. Objection: |
| 2 | of Enforcement's allegations, Fiero | | relevancy; Exhibit |
| 3 | Brothers alleged that "Hanover was | | 19's probative |
| 4 | controlled by a gang of outlaws that | | value is |
| 5 | used Hanover for their economic | | outweighed by |
| 6 | benefit to the detriment of its | | prejudicial effect. |
| 7 | customers, the public, other broker- | | |
| 8 | dealers." | | |

10. 16. Fiero Brothers claimed that     16. Exhibit 19, pg. 5     16. Objection:
11. Hanover was itself engaged in a                                relevancy; Exhibit
12. fraudulent scheme to manipulate                               19's probative
13. the market for the Hanover                                    value is
14. securities with the intention of                              outweighed by
15. "pumping" the price of the Hanover                            prejudicial effect.
16. securities to unjustifiable heights
17. before "dumping" them on gullible
18. purchasers.  Fiero Brothers sought
19. a dismissal of the charges against
20. it based on these allegations.

22. 17. Fiero Brothers modus operandi   17. Exhibit 19, pgs. 9-10   17. Objection:
23. in conducting the bear raid was as                             Lacks foundation;
24. follows: The bear raids were                                  inadmissible
25. conducted in two stages.  In the                              hearsay; lacks
26. first stage, on January 19, 1995,                             personal
27. Fiero Brothers registered as a                                knowledge;
28. market maker in the Hanover                                   relevancy;

| | | |
|---|---|---|
| 1 | Stocks. John Fiero registered as a | probative value is |
| 2 | market maker in the Hanover | outweighed by |
| 3 | Stocks because he believed that | prejudicial effect; |
| 4 | the stocks were overpriced. | argumentative. |
| 5 | | |
| 6 | 18. Between January 19, 1995 and    18. Exhibit 18 | 18. Objection: |
| 7 | January 26, 1995, Fiero Brothers | Lacks foundation; |
| 8 | established substantial short | inadmissible |
| 9 | positions in seven Hanover Stocks. | hearsay; lacks |
| 10 | On January 19, 2005, Fiero | personal |
| 11 | Brothers started with a short | knowledge; |
| 12 | position in only one Hanover Stock | relevancy; |
| 13 | of 7000 securities valued at $8,000. | probative value is |
| 14 | By the end of the day on January | outweighed by |
| 15 | 25, 1995, Fiero Brothers had | prejudicial effect; |
| 16 | aggregated short positions in seven | argumentative. |
| 17 | Hanover Stocks totaling 105,000 | |
| 18 | securities valued at approximately | |
| 19 | $1.2 million. During the same time, | |
| 20 | other defendants also established | |
| 21 | significant short positions in the | |
| 22 | Hanover Stocks which valued over | |
| 23 | $4.5 million. This was a "short | |
| 24 | squeeze." Because Hanover held | |
| 25 | substantial long positions in the | |
| 26 | Hanover Stock, Hanover's financial | |
| 27 | interest was to prevent a decline in | |
| 28 | the price of the Hanover securities. | |

| | | |
|---|---|---|
| 19. Hanover wanted to stop Fiero Brothers' short selling which would have driven down the prices of the Hanover Stocks and eventually driven Hanover out of business. Through intermediaries who negotiated the deal, Hanover reached an agreement with Fiero Brothers and agreed to sell Hanover Stocks at prices set by Fiero Brothers and which were well below the market price. | 19. Exhibit 19, pg. 20 | 19. Objection: Lacks foundation; inadmissible hearsay; lacks personal knowledge; relevancy; probative value is outweighed by prejudicial effect; argumentative. |
| 20. Fiero Brothers covered its short position from the stock sold by Hanover and also sold some of the excess stock, making more than $550,000 in the transaction. On January 27, 2009, after just 8 days as a market maker in the Hanover Stocks, Fiero Brothers withdrew as market maker. | 20. Exhibit 19, pg. 21 | 20. Objection: Lacks foundation; inadmissible hearsay; lacks personal knowledge; relevancy; probative value is outweighed by prejudicial effect; argumentative. |
| 21. In the second stage, Fiero Brothers again began short selling the Hanover Stocks. Between | 21. Exhibit 19, pg. 22 | 21. Objection: Lacks foundation; inadmissible |

| | | |
|---|---|---|
| January 27 and February 3, 1995, Fiero Brothers again established significant short positions in the Hanover Stock. | | hearsay; lacks personal knowledge; relevancy; probative value is outweighed by prejudicial effect; argumentative. |
| 22. Before Fiero Brothers could engage in another "short squeeze," Hanover went out of business on February 24, 1995.  On the same day, Fiero Brothers again registered as a market maker in the Hanover Stocks and continued its short sales of those securities. | 22. Exhibit 19, pg. 22 | 22. Objection: Lacks foundation; inadmissible hearsay; lacks personal knowledge; relevancy; Exhibit 19's probative value is outweighed by prejudicial effect; argumentative. |
| 23. On October 28, 2002, the NASD Hearing panel found that Fiero Brothers had violated NASD Rule 3370(b)(2)(B) which required short sellers to make an affirmative | 23. Exhibit 19, pg. 24 | 23. Objection: Lacks foundation; inadmissible hearsay; lacks personal |

| | | |
|---|---|---|
| 1 | determination, while conducting | knowledge; |
| 2 | naked short sales, whether a stock | relevancy; Exhibit |
| 3 | could be borrowed or otherwise | 19's probative |
| 4 | provided for delivery by the | value is |
| 5 | settlement date. | outweighed by |
| 6 | | prejudicial effect; |
| 7 | | argumentative. |
| 8 | | |
| 9 | 24. The NASD rejected Fiero | 24. Exhibit 19, pg. 24-27 | 24. Objection: |
| 10 | Brothers' claim that as a market | Lacks foundation; |
| 11 | maker they were entitled to an | inadmissible |
| 12 | exception to this affirmative duty. | hearsay; lacks |
| 13 | The NASD concluded that since | personal |
| 14 | Fiero Brothers was not a bona fide | knowledge; |
| 15 | market maker it was not entitled to | relevancy; Exhibit |
| 16 | the exception and had an | 19's probative |
| 17 | affirmative duty to determine | value is |
| 18 | whether a stock was available | outweighed by |
| 19 | before it engaged in short selling. | prejudicial effect; |
| 20 | | argumentative. |
| 21 | | |
| 22 | 25. Fiero Brothers was well aware | 25. Exhibit 19, pg. 31, | 25. Objection: |
| 23 | of the risk involved in short selling. | Exhibit 18, pg. 5 | inadmissible |
| 24 | John Fiero testified that "the penny | hearsay; |
| 25 | stock market was very treacherous" | relevancy; Exhibit |
| 26 | but the "short side has more | 19's probative |
| 27 | rewards at the end of the day." | value is |
| 28 | Fiero Brothers did not engage in | outweighed by |

| | | |
|---|---|---|
| 1  any determination of wether the | | prejudicial effect; |
| 2  stock was available, John Fiero | | argumentative. |
| 3  viewed, "buy-ins as an ordinary | | |
| 4  course of business" that are "pretty | | |
| 5  much a bookkeeping function." | | |
| 6 | | |
| 7  26. The NASD held that Fiero | 26. Exhibit 19, pg. 27 | 26. Objection: |
| 8  Brothers were engaged in | | Lacks foundation; |
| 9  speculation, not bona fide market | | inadmissible |
| 10  making transactions, and were not | | hearsay; lacks |
| 11  entitled to the market maker | | personal |
| 12  exception. | | knowledge; |
| 13 | | relevancy; Exhibit |
| 14 | | 19's probative |
| 15 | | value is |
| 16 | | outweighed by |
| 17 | | prejudicial effect; |
| 18 | | argumentative. |
| 19 | | |
| 20  27. The NASD also found that | 27. Exhibit 19, pg. 37-39, | 27. Objection: |
| 21  Fiero Brothers had engaged in | 42 | inadmissible |
| 22  extortion through the use of threats | | hearsay; |
| 23  and coercion to purchase Hanover | | relevancy; Exhibit |
| 24  Stocks from Hanover at discounted | | 19's probative |
| 25  prices. | | value is |
| 26 | | outweighed by |
| 27 | | prejudicial effect; |
| 28 | | argumentative. |

| | | |
|---|---|---|
| 1 | 28. The NASD panel rejected John | 28. Exhibit 19, pg. 35-36 | 28. Objection: |
| 2 | Fiero's testimony concluding that | | inadmissible |
| 3 | "most of his [John Fiero] self- | | hearsay; |
| 4 | serving direct testimony appeared | | relevancy; Exhibit |
| 5 | carefully rehearsed. His newly | | 19's probative |
| 6 | refreshed recollection was | | value is |
| 7 | strangely selective, and in | | outweighed by |
| 8 | response to cross-examination and | | prejudicial effect; |
| 9 | to questions from the Hearing | | argumentative. |
| 10 | Panel, he appeared deliberately | | |
| 11 | evasive, particularly with regard to | | |
| 12 | his relationship and | | |
| 13 | communications with...and other | | |
| 14 | participants in the alleged bear | | |
| 15 | raid." | | |
| 16 | | | |
| 17 | 29. The NASD relied on telephone | 29. Exhibit 19, pg. 40-41 | 29. Objection: |
| 18 | call records introduced by the | | inadmissible |
| 19 | Department of Enforcement to | | hearsay; |
| 20 | conclude that there was a | | relevancy; Exhibit |
| 21 | preexisting arrangement between | | 19's probative |
| 22 | Fiero Brothers and the other | | value is |
| 23 | defendants to engage in extortion. | | outweighed by |
| 24 | | | prejudicial effect; |
| 25 | | | argumentative. |
| 26 | | | |
| 27 | 30. The NASD also concluded that | 30. Exhibit 19, pg. 42 | 30. Objection: |
| 28 | Fiero Brothers had employed the | | inadmissible |

| | | |
|---|---|---|
| 1 | short selling tactics to manipulate | hearsay; |
| 2 | the market in violation of section | relevancy; Exhibit |
| 3 | 10b-5 of the Exchange Act and | 19's probative |
| 4 | NASD Rules 2120 and 2110. | value is |
| 5 | | outweighed by |
| 6 | | prejudicial effect; |
| 7 | | argumentative. |
| 8 | | |
| 9 | 31. The NASD concluded, "Fiero | 31. Exhibit 19, pg. 44-45 | 31. Objection: |
| 10 | Brothers along with other | inadmissible |
| 11 | participants in the bear raid, | hearsay; |
| 12 | concluded that the Hanover Stocks | relevancy; Exhibit |
| 13 | were vulnerable because Hanover | 19's probative |
| 14 | had fraudulently manipulated their | value is |
| 15 | prices to unjustifiable levels, and | outweighed by |
| 16 | applied short selling pressure in | prejudicial effect; |
| 17 | order to extract, through threats | argumentative. |
| 18 | and coercion, a portion of the | |
| 19 | excessive market value of the | |
| 20 | Hanover Stocks. And in the second | |
| 21 | stage, the Fiero Respondents and | |
| 22 | the other short sellers increased | |
| 23 | their naked short selling pressure, | |
| 24 | leading to Hanover's failure, in an | |
| 25 | effort to obtain even more of | |
| 26 | Hanover's gains from the | |
| 27 | fraudulent manipulation of the | |
| 28 | Hanover Stocks. Rather than | |

1  "arbitrage," these short selling

2  activities can best be described as

3  "blackmail." And like other forms of

4  blackmail, they were unlawful

5  regardless whether Hanover was

6  engaged in a fraudulent market

7  manipulation of its own."

8

9  32. Fiero Brothers and its President        32. Exhibit 19, pg. 46-47        32. Objection:

10  John Fiero were fined $1 million                                           inadmissible

11  and expelled from the NASD.                                                hearsay;

12                                                                            relevancy; Exhibit

13                                                                            19's probative

14                                                                            value is

15                                                                            outweighed by

16                                                                            prejudicial effect;

17                                                                            argumentative.

18

19  33. Fiero Brothers registered as a          33. Declaration of Cery        33. Objection:

20  marker maker in Shopping.com                Bradley Perle, ¶6              inadmissible

21  and began to naked short sell                                              hearsay; misstates

22  IBUY. Waldron purchased many of                                            the evidence of

23  the shares sold by Fiero Brothers.                                         Fiero Brother's

24  Wedbush, Morgan, Securities, Inc.                                          market making

25  ("Wedbush") was Waldron's                                                  activities; lacks

26  clearing house.                                                            foundation and

27                                                                            declarant's

28                                                                            personal

1

2

3  34. As the purchaser of IBUY             34. Declaration of Cery        34.  Objection;

4  shares with a future delivery date,      Bradley Perle, ¶7             inadmissible

5  Waldron had a right to demand                                          opinion and lacks

6  delivery of the securities it                                          foundation for the

7  purchased. Waldron exercised that                                      basis of opinion

8  right to demand delivery. The                                          stated; Personal

9  demand for delivery was contained                                      knowledge and

10 in a notice sent by the                                                basis for statement

11 DTC/Wedbush. Waldron clears                                            not established.

12 through Wedbush. When the seller                                       Lacks personal

13 (later identified as Fiero Brothers)                                   knowledge

14 failed to deliver, Wedbush acting                                      regarding what

15 on behalf of Waldron had to go to                                      Wedbush had to

16 the marketplace and buy the share                                      do; evidence

17 for the account of the short selling                                   controverted by

18 broker.  All of the buy-in                                             Plaintiff's evidence.

19 transactions were conducted

20 through Wedbush. Defendant was

21 not personally dealing with Fiero

22 Brothers on the buy-in transaction.

23 Defendant was not aware of the

24 identity of the short seller.

25

26

27 35. When a clearing house buys on        35. Declaration of Cery        35. Objection:

28 the account of a short seller who        Bradley Perle, ¶8             inadmissible

knowledge.

1  fails to deliver, the clearing house

2  will poll each and every one of the

3  published market makers to see if

4  any can sell shares with

5  guaranteed delivery. If there was a

6  failed to deliver, Wedbush polled

7  the published market makers for

8  IBUY shares. Wedbush would

9  purchase the IBUY shares from the

10  market makers who could

11  guarantee delivery. If other market

12  makers could not guarantee

13  delivery, then Waldron caused the

14  IBUY shares to be bought in for the

15  account of the uncovered short

16  seller from either its own inventory

17  or from Waldron's customers who

18  were willing to sell. Since there

19  were no other sellers and no

20  established guaranteed market

21  price, Waldron had to set the price.

22  Therefore, Waldron se the price

23  above the last available open

24  market price.

25

26

27  36. There were no regulations

28  governing the setting of prices on a

opinion;
inadmissible
hearsay; lacks
personal
knowledge as to
what Wedbush did
or did not do. Perle
collaterally
estopped from re-
litigating the
securities dispute
with Fiero
Brothers, which
was decided
against him in
September 1998.

36. Declaration of Cery
Bradley Perle, ¶9; Exhibit

36. Objection:
inadmissible

| | | |
|---|---|---|
| 1   buy-in transaction. For instance, | 2; Declaration of Thomas | hearsay and |
| 2   NASD *does not* require that the | Fehn, ¶7; Exhibit 9 | inadmissible |
| 3   buy-in be conducted at the last | | opinion; lacks |
| 4   reported price. NASD also *does* | | personal |
| 5   *not* require that the buy-in be | | knowledge. |
| 6   conducted at any particular range | | Objection to Fehn |
| 7   above the last reported price. | | Declaration ¶ 7 as |
| 8   When the buy-in prices set by | | not supporting |
| 9   Waldron started to become the | | statement. |
| 10   subject of NASDR inquiry, Waldron | | |
| 11   contacted NASD personnel to | | |
| 12   confirm whether there were any | | |
| 13   NASD provisions governing the | | |
| 14   buy-in prices. Waldron was told | | |
| 15   that there were none. | | |
| 16 | | |
| 17   37. At the NASD Arbitration, Fiero | 37. Declaration of Cery | 37. Objection: Mis- |
| 18   Brothers claimed that four buy-in | Bradley Perle, ¶10 | states Fiero |
| 19   transactions executed on February | | Brother's Second |
| 20   12, 1998; March 6, 1998; March | | Amended |
| 21   11, 1998 and March 16, 1998 were | | Statement of |
| 22   excessive. | | Claim. |
| 23 | | |
| 24   38. On March 3, 1998, Fiero | 38. Declaration of Cery | 38. Undisputed. |
| 25   Brothers had filed an ex parte | Bradley Perle, ¶11; | |
| 26   application in the Los Angeles | Declaration of Thomas | |
| 27   Superior Court seeking an | Fehn, ¶5 | |
| 28   injunction to prevent Wedbush and | | |

1 | Waldron from executing a buy-in on

2 | Fiero Brothers' short position. The

3 | court denied Fiero Brothers'

4 | request.

5 |

6 | 39. At the NASD Arbitration, Fiero          39. Declaration of Cery          39. Undisputed.

7 | Brothers sought damages for these          Bradley Perle, ¶12;

8 | alleged excessive buy-ins. Fiero           Declaration of Thomas

9 | Brothers also claimed that                 Fehn, ¶4; Plaintiff's Ex. 3,

10 | Defendant engaged in artificial            Second Amended

11 | market making, stock parking               Statement of Claim;

12 | arrangements, guarantee against            Plaintiff's Ex. 4, NASD

13 | loss, and fraudulent purchasing.           Award.

14 |

15 | 40. At the NASD Arbitration,                40. Declaration of Cery         40. Undisputed.

16 | Defendant filed an answer and a            Bradley Perle, ¶13;

17 | counter-claim against Fiero                Exhibit 1; Declaration of

18 | Brothers. In the counter claim,            Thomas Fehn, ¶¶5, 7

19 | Defendant alleged claims against

20 | the Fiero Brothers for defamation

21 | and tortuous interference with

22 | business relations. Defendant

23 | alleged that Fiero Brothers had

24 | engaged in manipulative short

25 | selling in IBUY. Defendant also

26 | alleged that Fiero Brothers had

27 | published defamatory statement

28 | with the intention of driving downt

1  the price of IBUY.

2

| | | |
|---|---|---|
| 41. Fiero Brothers' naked short selling in IBUY was similar to Fiero Brothers' conduct in the Hanover securities. | 41. Declaration of Cery Bradley Perle, ¶14 | 41. Objection: inadmissible opinion; lacks foundation; relevancy; argumentative. |
| 42. Although Fiero Brothers was bought in at what it believed was excessively high prices, it continued to sell short. | 42. Declaration of Cery Bradley Perle, ¶15 | 42. Objection: lacks foundation; inadmissible hearsay; lacks personal knowledge. |
| 43. The NASD Arbitration was conducted between September 1-4, 1998. At the NASD Arbitration, Fiero Brothers introduced documentary evidence and witness testimony to allegedly prove its claim of unjust enrichment and market manipulation. Although Fiero Brothers alleged that Defendant engaged in stock parking arrangement, it did not identify even one customer in | 43. Declaration of Cery Bradley Perle, ¶16 | 43. Undisputed as to hearing length; disputed as to stock parking. |

1 | whose account such activities had

2 | taken place.

3 |

4 | 44. During the NASD Arbitration,

5 | Defendant introduced evidence of

6 | Fiero Brothers' fraudulent activity in

7 | Shopping.com. Defendant's expert

8 | testified that between February and

9 | March 1998, Fiero Brothers had

10 | been responsible for manipulating

11 | the market in shopping.com.

12 |

13 | 45. Defendant also introduced

14 | evidence of the defamatory

15 | statements published by Fiero

16 | Brothers.

17 |

18 | 46. Regarding its damages, Fiero

19 | Brothers introduced testimony from

20 | its accountant who informed the

21 | panel of the mathematical

22 | methodology used to determine

23 | Fiero Brothers damages.

24 |

25 |

26 |

27 |

28 |

| | | |
|---|---|---|
| 44. During the NASD Arbitration, Defendant introduced evidence of Fiero Brothers' fraudulent activity in Shopping.com. Defendant's expert testified that between February and March 1998, Fiero Brothers had been responsible for manipulating the market in shopping.com. | 44. Declaration of Cery Bradley Perle, ¶17; | 44. Objection: inadmissible opinion; inadmissible hearsay. |
| 45. Defendant also introduced evidence of the defamatory statements published by Fiero Brothers. | 45. Declaration of Cery Bradley Perle, ¶17 | 45. Objection: inadmissible hearsay. |
| 46. Regarding its damages, Fiero Brothers introduced testimony from its accountant who informed the panel of the mathematical methodology used to determine Fiero Brothers damages. | 46. Declaration of Thomas Fehn, ¶17; Exhibits 13, 14, 15. | 46. Objection: No competent evidence; ¶ 17 Fehn Decl. missing; additionally Exhibits 13-15 unauthenticated and hearsay; lacks foundation. |

| | | |
|---|---|---|
| 1   47. After considering all of the | 47. Declaration of Cery | 47. Undisputed. |
| 2   evidence and testimony, the NASD | Bradley Perle, ¶18; | |
| 3   panel granted Fiero Brothers | Plaintiff's Ex. 4, NASD | |
| 4   $350,000 in damages.  The NASD | Award; Declaration of | |
| 5   denied Fiero Brothers' request for | Thomas Fehn, ¶19. | |
| 6   punitive damages. | | |
| 7 | | |
| 8   48. While summarizing Fiero | 48. Plaintiff's Ex. 4, | 48. Objection: best |
| 9   Brothers' claim the NASD noted the | NASD Award | evidence rule: |
| 10   amount of damages claimed by | | document speaks |
| 11   Fiero Brothers for each of its | | for itself. |
| 12   causes of action: for the first cause | | |
| 13   of action, the NASD noted | | |
| 14   "$510,000.00 in compensatory | | |
| 15   damages plus interest as a result of | | |
| 16   defendants defrauding claimant," | | |
| 17   and on the third cause action | | |
| 18   "$510,000 plus interest as a result | | |
| 19   of excessive markups, as well as | | |
| 20   costs, and attorney's fees for | | |
| 21   bringing the suit." | | |
| 22 | | |
| 23   49. After considering Plaintiff's | 49. Plaintiff's Ex.4, NASD | 49. Objection: |
| 24   evidence and Defendant's | Award; Declaration of | Argumentative . |
| 25   defenses and counter claims, the | Thomas Fehn, ¶19. | Best evidence rule: |
| 26   NASD ruled partly in favor of Fiero | | the document |
| 27   Brothers and stated: "Respondents | | speaks for itself. |
| 28   Waldron & Co. are jointly and | | |

1  severally liable to and shall pay the

2  claimant the sum of $350,000 in

3  compensatory damages."

4

5  50. The NASD only awarded a

6  portion of the "compensatory

7  damages," which were sought

8  under Fiero Brothers' first cause of

9  action "$510,000.00 in

10 compensatory damages plus

11 interest as a result of the buy-ins."

12 The NASD did not award any

13 damages for any alleged fraud, i.e,

14 the "$3,250,000.00 plus interest as

15 a result of defendants defrauding

16 claimant."

17

18

19

20

21

22

23 51. Fiero Brothers' first cause of

24 action at the NASD Arbitration was

25 for unjust enrichment.

26

27

28

| | | |
|---|---|---|
| 50. Plaintiff's Ex.3, Second Amended Statement of Claim; Plaintiff's Ex.4, NASD Award | | 50. Objection: Argumentative; lacks foundation; inadmissible opinion; lacks personal knowledge. Fiero Brothers' First and Third Claims for buy-ins and excessive mark-ups sought damages of $510,000. Plaintiff's Exhibit 4, NASD Arbitration Award. |
| 51. Declaration of Thomas Fehn, ¶¶10,11; Exhibit 6. | | 51. Objection: Argumentative; Objection to Fehn Decl., ¶¶ 10, 11 as it was omitted and not filed with the |

|  |  |  |
|---|---|---|
|  |  | court or served on opposing counsel. |
| 52. At the NASD Arbitration, Fiero Brothers did not introduce any evidence relating to market manipulation or fraud by Defendant. | 52. Declaration of Thomas Fehn, ¶12 | 52. Objection: Inadmissible hearsay; lacks foundation; Objection to Fehn Decl., ¶ 12 as it was omitted and not filed with the court or served on opposing counsel. |
| 53. This was a dispute between two securities industry professionals. | 53. Declaration of Thomas Fehn, ¶13 | 53. Objection: Inadmissible opinion; Objection to Fehn Decl., ¶ 13 as it was omitted and not filed with the court or served on opposing counsel. |
| 54. At the NASD Arbitration, Fiero Brothers' and Defendant's experts testified that Defendant had not violated any securities regulations | 54. Declaration of Thomas Fehn, ¶13; Exhibit 9 | 54. Objection: Inadmissible hearsay and inadmissible |

| | | |
|---|---|---|
| 1  by setting the buy-ins prices. The | | opinion; assumes |
| 2  experts testified that at a maximum, | | facts not in |
| 3  a reasonableness standard should | | evidence; Perle is |
| 4  be used to set buy-in prices. | | collaterally |
| 5 | | estopped from re- |
| 6 | | litigating his |
| 7 | | securities dispute |
| 8 | | in this adversary |
| 9 | | proceeding, which |
| 10 | | was decided |
| 11 | | against him by the |
| 12 | | NASD Arbitration |
| 13 | | panel in 1998. |
| 14 | | Additionally, |
| 15 | | Objection to Fehn |
| 16 | | Decl., ¶ 13 as it |
| 17 | | was omitted and |
| 18 | | not filed with the |
| 19 | | court or served on |
| 20 | | opposing counsel. |
| 21 | | |
| 22  55. At the NASD Arbitration, | 55. Declaration of | 55. Objection to |
| 23  Defendant's witness Robert W. | Thomas Fehn, ¶¶14, 15; | Fehn Decl., ¶¶ 14, |
| 24  Lowry an expert in the field of | Exhibits 8, 9. | 15  as it was |
| 25  securities regulations provided his | | omitted and not |
| 26  expert testimony.  Mr. Lowry | | filed with the court |
| 27  testified that in his opinion between | | or served on |
| 28  February 1998 and March 1998, | | opposing counsel. |

| | | |
|---|---|---|
| 1   the price increase in the shares of | | Additionally, |
| 2   shopping.com was caused by Fiero | | objection: |
| 3   Brothers' manipulation of the | | inadmissible |
| 4   market. | | hearsay; declarant |
| 5 | | has not |
| 6 | | established his |
| 7 | | personal |
| 8 | | knowledge of the |
| 9 | | facts he testifies |
| 10 | | to. |
| 11 | | |
| 12   56. During the NASD Arbitration, | 56. Declaration of | 56. Objection to |
| 13   Defendant introduced evidence in | Thomas Fehn, ¶16; | Fehn Decl., ¶ 16, |
| 14   its defense and in support of his | Exhibits 10, 11, 12, 16, | and Exhibits 10-12, |
| 15   counter-claim. Defendant | 17. | 16 and 17,  as this |
| 16   introduced evidence of how the | | paragraph was |
| 17   stock prices of all internet shopping | | omitted and not |
| 18   companies were high during that | | filed with the court |
| 19   time.  Defendants also introduced | | or served on |
| 20   evidence of Fiero Brothers' market | | opposing counsel. |
| 21   manipulations in Shopping.com | | Additionally, |
| 22   through naked short selling. The | | objection: |
| 23   disciplinary action instituted by the | | inadmissible |
| 24   SEC against Fiero Brothers for its | | hearsay; declarant |
| 25   manipulative short selling in the | | has not |
| 26   securities underwritten by Hanover | | established his |
| 27   was also introduced. Defendant | | personal |
| 28   also introduced evidence of Fiero | | knowledge of the |

1  Brothers' defamatory conduct and

2  the false statement issued by the

3  Fiero Brothers which were intended

4  to drive down the price of

5  shopping.com. Defendant

6  introduced Fiero Brothers' phone

7  records to show its collusion with

8  others.

facts he testifies

to.  Plaintiff further

objects on the

grounds that Perle

seeks to introduce

irrelevant matter

concerning Fiero

Brothers' unrelated

alleged activities,

unrelated NASD

Disciplinary action,

and alleged market

manipulation of

Shopping.com

stock that was

decided against

Perle by the NASD

Arbitration Panel

as evidenced by

the NASD

Arbitration Award,

and therefore Perle

is collaterally

estopped from re-

litigating its

counter-claims in

this adversary

proceeding.

| | | |
|---|---|---|
| 57. During closing argument, Fiero Brothers' attorney Mr. Russo also explained the methodology used to calculate Fiero Brothers' damages. Mr. Russo also referred to the document created by Fiero Brothers' accountant (Exhibit 14) regarding the methodology used to calculate Fiero Brothers' damages. | 57. Declaration of Thomas Fehn, ¶18; Exhibits 14, 15. | 57. Objection: inadmissible hearsay; assumes facts not in evidence; and lacks foundation and lacks personal knowledge as that has not been established by declarant. |
| 58. Fiero Brothers did not request any factual findings.  Also, Fiero Brothers did not request any clarifications of the award. | 58. Declaration of Thomas Fehn, ¶21. | 58. Objection: lacks foundation; lacks personal knowledge, and basis of statement is not established by declarant. |

Dated: December 7, 2009

Respectfully submitted:

LESLIE SCHWAEBE AKINS, A.L.C.

By: /s/ Leslie Schwaebe Akins
Leslie Schwaebe Akins, Esq.
Attorney for Plaintiff Alfonso Fiero

---

Alfonso Fiero, v. Cery B. Perle
Case Number LA 01-26497-BB
Adv. No. 06-01971 BB

## PROOF OF
## ELECTRONIC SERVICE

STATE OF CALIFORNIA　　)
　　　　　　　　　　　　　)
COUNTY OF SAN DIEGO　　)

　　　I am employed in the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is P.O. Box 131253, Carlsbad, California 92013.

　　　On **December 7, 2009**, I served **PLAINTIFF ALFONSO FIERO'S RESPONSE TO DEFENDANT CERY PERLE'S SEPARATE STATEMENT OF FACTS AND EVIDENCE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT** on the interested parties in said action, by delivering it as follows:

　　__X__　Service will be accomplished through an NEF for parties and counsel who are registered CM/ECF users.

**Electronic Mail Notice List**

**The following is the list of parties who are currently on the list to receive e-mail notices for this case.**

Darrell Palmer:　darrell.palmer@cox.net

United States Trustee (LA):
ustpregion16.la.ecf@usdoj.gov

Leslie S Akins:　lsa@stockmarketlaw.com

Pamela Labruyere:　pamela@sgsslaw.com

I Declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **December 7, 2009**, at Carlsbad, California.

_Megaen Ericson_
Megaen Ericson

## PROOF OF SERVICE